HON. RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT COURT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON;<br><br>    Plaintiff,<br><br>  v.<br><br>LANDMARK TECHNOLOGY A, LLC, and<br>RAYMOND MERCADO, individually,<br><br>    Defendants. | NO. 2:21-cv-00728-RSM<br><br>DECLARATION OF JUSTIN P. WALSH IN SUPPORT OF LANDMARK TECH. A, LLC'S MOT. TO STRIKE STATE'S EXPERTS OR, IN THE ALTERNATIVE, TO GRANT EXTENSION ON REBUTTAL WITNESS REPORTS<br><br>NOTE ON MOTION CALENDAR: FRIDAY, JULY 5, 2024 |

COMES NOW Justin P. Walsh, under penalty of perjury under the laws of the United States of America, and hereby declares as follows:

1.  I am over the age of eighteen, am competent to be a witness, and am the attorney for Defendants.

2.  Defendants issues interrogatories and requests for production to the State in October 2023. The interrogatories specifically requested identification of any person contacted as a result of this litigation, any persons that had discoverable information in this litigation, and any person who conducted any infringement analysis for the State. In addition, the State did not include any potential expert witness names in its initial disclosures, despite those persons having

**Gleam Law, PLLC**
605 First Avenue, Suite 330
Seattle, WA 98104
P: (206) 693-2900
F: (206) 319-4596

discoverable information. This included responses on February 14, 2024, April 25, 2024, and April 29, 2024.

3.        The parties did contemplate a stipulation altering the deadlines for expert reports. However, the Court never granted the same, and expert reports remained due on April 17, 2024, with rebuttal reports due May 17, 2024 (30 days after). No reports were received on April 17, 2024.

4.        On May 31, 2024, the State provided its expert reports, which included two experts whose names were not included in any prior disclosure or responses to interrogatories.

5.        Defendants have worked diligently and secured an expert. However, out of an abundance of caution, Defendants wish to ensure they have the necessary time to adequately address the voluminous reports, and request an extension to July 7, 2024, for its rebuttal experts.

6.        The following exhibits are true and correct copies of the original documents:

a.        The State's Initial Disclosures (Jan. 20, 2023) (Ex. 1);

b.        Excerpts from Defendant LTA's First Interrogatories and Requests for Production to the State (Oct. 10, 2023) (Ex. 2);

c.        Excerpts from State's Initial Responses to LTA's First Interrogatories and Requests for Production to the State (Feb. 14, 2024) (Ex. 3);

d.        Excerpts from State's Second Responses to LTA's First Interrogatories and Requests for Production to the State (Apr. 24, 2024) (Ex. 4);

e.        Excerpts from State's Supplemental Responses to LTA's First Interrogatories and Requests for Production to the State (Apr. 29, 2024) (Ex. 5);

f.        Email and State's Expert Disclosures (exhibits to Strand Report omitted from the exhibit) (May 31, 2024) (Ex. 6);

DECL. OF JUSTIN P. WALSH IN SUPP. OF LANDMARK TECH. A, LLC'S MOT. TO STRIKE STATE'S EXPERTS OR, IN THE ALTERNATIVE, TO GRANT EXTENSION ON REBUTTAL WITNESS REPORTS - 2

**Gleam Law, PLLC**
605 First Avenue, Suite 330
Seattle, WA 98104
P: (206) 693-2900
F: (206) 319-4596

g.      Email and attachment re: expert report of Alex Strand (June 4, 2024) (Ex. 7).

I declare under penalty of perjury under the laws of the United States of America the foregoing is true and correct.

Dated this 14th day of June, 2024 at Seattle, Washington.

_____
Justin P. Walsh, WSBA No. 40696

DECL. OF JUSTIN P. WALSH IN SUPP. OF LANDMARK TECH. A, LLC'S MOT. TO STRIKE STATE'S EXPERTS OR, IN THE ALTERNATIVE, TO GRANT EXTENSION ON REBUTTAL WITNESS REPORTS - 3

**Gleam Law, PLLC**
605 First Avenue, Suite 330
Seattle, WA 98104
P: (206) 693-2900
F: (206) 319-4596

CERTIFICATE OF SERVICE

The undersigned hereby certifies under penalty of perjury under the laws of the United States of America, that on the date noted below, a true and correct copy of the foregoing was delivered and/or transmitted in the manner(s) noted below:

| | | |
|---|---|---|
| ROBERT W. FERGUSON | *Attorneys for Plaintiff* | [  ] Via Messenger |
| Attorney General | | [X] Via Email |
| AARON J. FICKES, WSBA #51584 | | [  ] Via Certified Mail |
| BEN J. BRYSACZ, WSBA #54683 | | [  ] Via U.S. Mail |
| HEIDI C. ANDERSON, WSBA #37603 | | [X] Via ECF |
| Assistant Attorneys General | | |
| Attorneys for Plaintiff State of Washington | | |
| 800 Fifth Avenue, Suite 2000 | | |
| Seattle, WA 98104 | | |

DATED this 14th day of June, 2024, at Seattle, Washington.

s/Joseph A. Hylkema
Joseph A. Hylkema
Paralegal to Justin P. Walsh

**Gleam Law, PLLC**
605 First Avenue, Suite 330
Seattle, WA 98104
P: (206) 693-2900
F: (206) 319-4596

# EXHIBIT 1

The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STATE OF WASHINGTON,

                          Plaintiff,

        v.

LANDMARK TECHNOLOGY A, LLC,
and RAYMOND MERCADO,
individually,

                          Defendants.

NO. 2:21-cv-00728-RSM

STATE OF WASHINGTON'S
INITIAL DISCLOSURES

        Pursuant to Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure, Plaintiff State of Washington ("State") provides the following initial disclosures.

        1.      "[T]he name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." (Fed. R. Civ. P. 26(a)(1)(A)(i)):

//

//

//

STATE OF WASHINGTON'S
INITIAL DISCLOSURES
(2:21-cv-00728-RSM) - 1

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

| Name | Contact Information | Subjects of Discoverable Information |
|---|---|---|
| Raymond Mercado | c/o Justin Walsh<br>Gleam Law<br>605 1st Ave.<br>Suite 330<br>Seattle, WA 98104 | Principal and sole member of Landmark Technology A, LLC (LTA") |
| Rule 30(b)(6) witness(es) for LTA | c/o Justin Walsh<br>Gleam Law<br>605 1st Ave.<br>Suite 330<br>Seattle, WA 98104 | Person or people with knowledge of and affiliated with LTA |
| Any additional individuals associated with LTA | c/o Justin Walsh<br>Gleam Law<br>605 1st Ave.<br>Suite 330<br>Seattle, WA 98104 | Person or people with knowledge of and affiliated with LTA |
| Patrick Ames | 2530 Meridian Pkwy<br>Suite 300<br>Durham, NC 27713 | Current/former Assistant Secretary of LTA |
| Lawrence B. Lockwood | Currently unknown | Principal and member of Landmark Technology, LLC |
| Rule 30(b0(6) witness(es) for Landmark Technology, LLC | Capitol Services, Inc.<br>108 Lakeland Ave.<br>Dover, DE 19901<br>(800) 316-6660 | Person or people with knowledge of and affiliated with Landmark Technology, LLC |
| Any additional individuals associated with Landmark Technology, LLC | Capitol Services, Inc.<br>108 Lakeland Ave.<br>Dover, DE 19901<br>(800) 316-6660 | Person or people with knowledge of and affiliated with Landmark Technology, LLC |
| John A. Lee | Banie & Ishimoto LLP<br>3705 Haven Ave. # 137<br>Menlo Park, CA 94025<br>(650) 241-2771 | Partner, Banie & Ishimoto LLP |
| Jennifer Ishimoto | Banie & Ishimoto LLP<br>3705 Haven Ave. # 137<br>Menlo Park, CA 94025<br>(650) 241-2771 | Partner, Banie & Ishimoto LLP |
| Rule 30(B)(6) witness for Banie & Ishimoto LLC | Banie & Ishimoto LLP<br>3705 Haven Ave. # 137<br>Menlo Park, CA 94025<br>(650) 241-2771 | Person or people with knowledge of and affiliated with Banie & Ishimoto LLP |
| Daniel J. Burroughs | 1727 Rutledge Rd.<br>Longwood, FL 32779<br>(407) 252-3017 | Expert for LTA in *NAPCO, Inc. v. Landmark Technology A, LLC*, No. 1:21-cv-00025 (M.D. N.C.) |
| Scott Hanselman | scott@hanselman.com<br>Other contact information currently unknown | Expert for NAPCO, Inc. in *NAPCO, Inc. v. Landmark Technology A, LLC*, No. 1:21-cv-00025 (M.D. N.C.) |

STATE OF WASHINGTON'S
INITIAL DISCLOSURES
(2:21-cv-00728-RSM) - 2

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

| Rebecca Hartsock | c/o Counsel for State Office of the Washington Attorney General 800 5th Ave., Suite 2000 Seattle, WA 98104 (206) 287-4176 | Senior Investigator/Analyst, Consumer Protection Division, Office of the Washington Attorney General regarding the authentication of various webpage captures |
| Owners/operators of target companies contacted by LTA for licensing fees | Various; known by LTA | Owners/operators of target companies contacted by LTA for licensing fees |
| Witnesses identified in Defendants' initial disclosures | See Defendants' disclosures | See Defendants' disclosures |

Any testifying experts will be disclosed consistent with the deadline for disclosure of expert testimony under Rule 26(a)(2). Likewise, any testifying experts designated by Defendants "are likely to have discoverable information."

2.    "[A] copy—or description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claim or defenses, unless the use would be solely for impeachment." (Fed. R. Civ. P. 26(a)(1)(A)(ii)):

| # | Category | Location |
|---|----------|----------|
| 1. | Written answers and documents produced in response to Civil Investigative Demands directed to LTA and third parties, including but not limited to, the documents referenced in the State's First Amended Complaint | Database of electronic documents utilized by Consumer Protection Division of Attorney General of Washington |
| 2. | Webpage captures | Database of electronic documents utilized by Consumer Protection Division of Attorney General of Washington |
| 2. | Certain publicly available filings from litigation involving Landmark Technology, LLC and LTA | Database of electronic documents utilized by Consumer Protection Division of Attorney General of Washington |
| 4. | Documents and categories identified by Defendants | See Defendants' disclosures |

3.    "[A] computation of each category of damages claimed by the disclosing party— who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each

STATE OF WASHINGTON'S
INITIAL DISCLOSURES
(2:21-cv-00728-RSM) - 3

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  computation is based, including materials bearing on the nature and extent of injuries suffered."

2  (Fed. R. Civ. P. 26(a)(1)(A)(iii)):

3          The State of Washington is not seeking "damages" in this action, as that term is typically

4  used. Instead, the State and, specifically, the Consumer Protection Division of the Office of the

5  Washington Attorney General is authorized to seek restitution, disgorgement, and other equitable

6  remedies in this action pursuant to RCW 19.350.030 and RCW 19.86.080. The Court has broad

7  equitable powers to fashion relief, including restitution of all money and/or property acquired by

8  Defendants as a result of their unlawful acts, as well as money of all amounts paid to Defendants

9  by target companies, and all amounts incurred by target companies responding to, or defendant

10  against, Defendants' unlawful demands. Further, in the event that the specific amount of

11  restitution to consumers is difficult to calculate, the Consumer Protection Division attempts to

12  restore direct restitution to consumers wherever it is reasonably feasible to do so. However,

13  sometimes it is impossible to identify each consumer who was harmed, or the amount of money

14  available for each affected consumer makes it impractical to distribute money directly to

15  consumers. In these situations, the Court might allow a "cy pres" distribution, which means that

16  instead of individual payments, a direct payment is allowed.

17          The State's and, specifically, the Consumer Protection Division of the Office of the

18  Washington Attorney General's basis for seeking civil penalties is RCW 19.86.140, which

19  provides that "every person who violates RCW 19.86.020 shall forfeit and pay a civil penalty of

20  not more than $7,500 for each violation." Pursuant to RCW 19.350.030, a violation of the Patent

21  Troll Prevention Act ("PTPA") "is an unfair or deceptive act in trade or commerce…for purposes

22  of applying the consumer protection act, chapter 19.86 RCW."

23          Specific alleged violations of the PTPA and Consumer Protection Act ("CPA") are set

24  forth in the State's First Amended Complaint. Corporate officers may be personally liable for

25  violations of the CPA by corporations if they "participate[d] in" or "with knowledge approve[d]

26

STATE OF WASHINGTON'S
INITIAL DISCLOSURES
(2:21-cv-00728-RSM) - 4

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    of" the act or practice that violates the CPA. *State v. Ralph Williams' N.W. Chrysler Plymouth,*

2    *Inc.*, 87 Wn.2d 298, 322, 553 P.2d 423 (1976).

3        The amount of civil penalties assessed under the CPA is determined by the trial court's

4    discretionary authority. *See State v. LA Investors, LLC*, 410 P.3d 1183 (Wn. App. 2018). A court

5    may—but is not required to—consider the factors for determining civil penalties outlined by

6    *United States v. Reader's Digest Ass'n, Inc.*, 662 F.2d 955, 959-60 (3d Cir. 1984). Courts may

7    also impose penalties significant enough to deter violations rather than act as "nothing more than

8    an acceptable cost of violation." *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 231

9    (1975); *see also Yousofoufian v. Office of Ron Sims*, 168 Wn.2d 444, 229 P.3d 735 (1975).

10       4.    The State has no records described in Rule 26(a)(1)(A)(iv) for production in this

11   case.

12       5.    The State reserves the right to change and supplement these disclosures pursuant

13   to Rule 26(e) as the pleadings evolve, additional facts are ascertained, additional witnesses are

14   identified, if and when documents are produced, and as the case develops. The State also reserves

15   the right to object to the admissibility of any information disclosed herein and any matter

16   disclosed herein shall not be construed as a waiver of any applicable objections the State may

17   have including, but not limited to, objections based on relevance, attorney-client privilege and

18   other applicable privilege, attorney work product doctrine, burden and confidentiality.

19   //

20   //

21   //

22   //

23   //

24   //

25   //

26   //

STATE OF WASHINGTON'S
INITIAL DISCLOSURES
(2:21-cv-00728-RSM) - 5

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    DATED this 20th day of January, 2023.

2                                              ROBERT W. FERGUSON
                                               Attorney General
3

4                                              *s/ Aaron J. Fickes*
5                                              AARON J. FICKES, WSBA #51584
                                               BEN J. BRYSACZ, WSBA #54683
6                                              BOB HYDE, WSBA #33593
                                               HEIDI C. ANDERSON, WSBA #37603
7                                              Assistant Attorneys General
                                               Attorneys for Plaintiff State of Washington
8                                              800 Fifth Avenue, Suite 2000
                                               Seattle, WA 98104
9                                              (206) 464-7744

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

STATE OF WASHINGTON'S
INITIAL DISCLOSURES
(2:21-cv-00728-RSM) - 6

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STATE OF WASHINGTON;

                Plaintiff,

      v.

LANDMARK TECHNOLOGY A, LLC, and
RAYMOND MERCADO, individually,

                Defendants.

NO. 2:21-cv-00728-RSM

DEFENDANT LANDMARK
TECHNOLOGY A, LLC'S FIRST AND
REQUESTS FOR PRODUCTION TO
PLAINTIFF

TO:         STATE OF WASHINGTON, Plaintiff;

AND TO:    AARON J. FICKES, BEN J. BRYSACZ, HEIDI C. ANDERSON,

              MICHAEL HALL, and BOB HYDE, Attorneys for Plaintiff.

      Defendant LANDMARK TECHNOLOGY A, LLC submits the following Interrogatories

and Requests for Production of Documents under Federal Rules of Civil Rules 26, 33, and 34.

Said Interrogatories are to be answered separately and fully under oath and signed by the person

answering them within thirty (30) days from the date of service of said Interrogatories upon you.

In answering these Interrogatories, you are required to furnish such information as is available to

you, not merely the information which you know of your own personal knowledge. This is

intended to include any information in the possession of the agent or attorney or any investigator

**Gleam Law, PLLC**
605 First Avenue, Suite 330
Seattle, WA 98104
P: (206) 693-2900
F: (206) 319-4596

for the answering party.

Said Requests to Produce Documents are made pursuant to Federal Rule of Civil Rule 34 and include all electronic information. Said Requests are for copies of the documents as specified, to be submitted with the answers to the Interrogatories within the thirty (30) day period allowed by the Rules. Production is requested in the office of counsel for Defendant Landmark Technology A, LLC.

All copies of documents requested should include the request for production or requests for production to which said document is responsive.

These Interrogatories and Requests for Production of Documents are continuing in nature, and Defendant Landmark Technology A, LLC hereby demands that any information coming into the possession of the plaintiff or plaintiff's counsel that would change the answer in any way or supplement the material requested be promptly furnished to Defendant Landmark Technology A, LLC's counsel. In any event such additional supplement or supplemental material or information is requested to be submitted to Defendant Landmark Technology A, LLC's counsel no later than thirty (30) days after receipt by plaintiff herein.

## **DEFINITIONS**

For the purpose of these Interrogatories, the following terms have the following meanings:

(1)     The term "document" shall mean any book, pamphlet, periodical, letter, report, memorandum, notation, message, telegram, cable, record, study, working paper, chart, graph, index, tape, correspondence, e-mail, computer record, records of purchase of sale, contracts, agreements, leases, invoices, electronic or other transcriptions or taping of telephone or personal conversations or conferences, or any and all other written, printed, typed, punched, taped, filmed, or graphic matter, or tangible thing, however produced or reproduced.

DEF. LANDMARK TECHNOLOGY A, LLC'S 1ST INTERROGS. &
REQS. FOR PROD. TO PLAINTIFF STATE OF WASHINGTON - 2

**Gleam Law, PLLC**
605 First Avenue, Suite 330
Seattle, WA 98104
P: (206) 693-2900
F: (206) 319-4596

(2)     The term "identify" or "identification", when used in reference to an individual person, shall mean to state his or her full name, present address, and telephone number, and present position and business affiliation.

(3)     The term "identify" or "identification", when used in reference to a document, means to state the date and author, signer or signers, the addressee, the type of document, all other means of describing it with sufficient particularity, and its present or last known location and custodian.  If any such document was, but is no longer, in your possession or subject to your control, state what disposition was made of it, and the reason for such disposition.

(4)     The term "identify" or "identification", when used in reference to an oral communication, shall mean to state the names, addresses, and telephone numbers of the persons engaged in such communication, the times and places when and where such communication took place, and the substance of each such communication.

(5)     The term "identify" or "identification", when used in reference to an event or transaction, shall mean to state the names, addresses, and telephone numbers of the persons involved, the dates on which such events or transactions took place, and the full description of the substance of such events or transactions.

(6)     The term "identify" or "identification" when used in reference to any other matter in these Interrogatories shall mean to state all information regarding the description and substance of the matter involved up to and including the limits of reasonableness and relevance as provided by law.

(7)     The terms "you", "your", or "Plaintiff" shall mean the STATE OF WASHINGTON individually, as well as its employees, officers, agents, attorneys, consultants, or persons, including entities, employed for any purpose whatsoever with respect to the subject matter of this litigation.

DEF. LANDMARK TECHNOLOGY A, LLC'S 1ST INTERROGS. &
REQS. FOR PROD. TO PLAINTIFF STATE OF WASHINGTON - 3

**Gleam Law, PLLC**
605 First Avenue, Suite 330
Seattle, WA 98104
P: (206) 693-2900
F: (206) 319-4596

(8)     The term "the '508 Patent" shall mean U.S. Patent No. 7,010,508.

(9)     For the purpose of these Interrogatories, words in the masculine gender include the feminine and neuter, the singular number includes the plural and vice versa, and the conjunctive includes the disjunctive and vice versa.

DATED this 10th day of October, 2023.

GLEAM LAW, PLLC

/s/ Justin P. Walsh
Justin P. Walsh, WSBA No. 40696
Gleam Law, PLLC
605 1st Avenue, Ste 330
Seattle, WA 98104
justin@gleamlaw.com
Tel (206) 983-2900
Fax (206) 319-4596
Of Attorneys for Defendant

## INTERROGATORIES AND REQUESTS FOR PRODUCTION

**INTERROGATORY NO. 1:** Please identify any individual or entity that has provided responsive information to any of these interrogatories, including their name, address where they may be served, telephone number, email address, and to which interrogatories they provided responsive information.

**ANSWER:**

**REQUEST FOR PRODUCTION NO. 1:** Please produce all correspondence or documents sent to or received from any individual or entity that has provided responsive information to any of these interrogatories.

DEF. LANDMARK TECHNOLOGY A, LLC'S 1ST INTERROGS. &
REQS. FOR PROD. TO PLAINTIFF STATE OF WASHINGTON - 4

**Gleam Law, PLLC**
605 First Avenue, Suite 330
Seattle, WA 98104
P: (206) 693-2900
F: (206) 319-4596

1

**RESPONSE:**

2

3

4

5

**INTERROGATORY NO. 2:** Please identify any individual or entity the State of

6

Washington has contacted pursuant to this litigation or any pre-litigation civil investigative matter,

7

including, but not limited to, the name, individual contact or contacts (if an entity), address,

8

telephone number, and email address.

9

**ANSWER:**

10

11

12

13

**REQUEST FOR PRODUCTION NO. 2:** Please produce all correspondence or

14

documents sent to or received from any individual or entity the State of Washington has contacted

15

pursuant to this litigation or any pre-litigation civil investigative matter.

16

**RESPONSE:**

17

18

19

20

**INTERROGATORY NO. 3:** Please identify any individual or entity You believe to have

21

discoverable information in this matter, including but not limited to, the name, individual contact

22

or contacts (if an entity), address, telephone number, and email address.

23

**ANSWER:**

24

25

26

27

28

**Gleam Law, PLLC**
605 First Avenue, Suite 330
Seattle, WA 98104
P: (206) 693-2900
F: (206) 319-4596

**REQUEST FOR PRODUCTION NO. 3:** Please produce all correspondence or documents sent to or received from any individual or entity You believe to have discoverable information in this matter.

**RESPONSE:**

**INTERROGATORY NO. 4:** If you contend that any person or entity to which Landmark Technology A, LLC, either sent a settlement demand letter or engaged in litigation, or against whom Landmark Technology A, LLC sought to enforce its rights to the '508 Patent, did not infringe on any, either, or all of claims 1 through 7 or 16 through 17 of the '508 Patent, please describe in detail any basis for such contention as to each such person or entity, including any facts supporting the same.

**ANSWER:**

**REQUEST FOR PRODUCTION NO. 4:** Please produce any and all documents supporting any contention that any person or entity against which Landmark Technology A, LLC sought to enforce its rights to the '508 Patent did not infringe any, either, or all of claims 1 through 7 or 16 through 17 of the '508 Patent.

**RESPONSE:**

DEF. LANDMARK TECHNOLOGY A, LLC'S 1ST INTERROGS. &
REQS. FOR PROD. TO PLAINTIFF STATE OF WASHINGTON - 6

**Gleam Law, PLLC**
605 First Avenue, Suite 330
Seattle, WA 98104
P: (206) 693-2900
F: (206) 319-4596

**REQUEST FOR PRODUCTION NO. 24:** Please produce any and all correspondence between the State and any news or public relations outlet regarding this suit.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 25:** Please produce any and all correspondence, communications, telephone logs, notes, or any other information regarding any and all communications between the State and any representative, agent, attorney, or other person representing NAPCO, Inc.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 26:** Please produce any and all correspondence, communication, telephone logs, notes, or other information regarding any and all communications between the State and any governmental entity, including all subdivisions and agencies of the same, regarding Landmark Technology A, LLC or Mercado.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 27:** Please produce any and all correspondence, communication, telephone logs, notes, or other information regarding any and all communications between the State and any person or entity regarding either Landmark Technology A, LLC; Mercado; or the '508 Patent.

DEF. LANDMARK TECHNOLOGY A, LLC'S 1ST INTERROGS. &
REQS. FOR PROD. TO PLAINTIFF STATE OF WASHINGTON - 21

**Gleam Law, PLLC**
605 First Avenue, Suite 330
Seattle, WA 98104
P: (206) 693-2900
F: (206) 319-4596

**RESPONSE:**

**INTERROGATORY NO. 24:** Please describe in detail any infringement analysis conducted by any person or entity on your behalf regarding the '508 Patent, including, but not limited to:

    (1)    The date the analysis was conducted;

    (2)    Who conducted the analysis;

    (3)    Whether the person conducting the analysis was provided any patent infringement analysis conducted by Landmark Technology A, LLC or Landmark Technology, LLC; and

    (4)    The results of the analysis.

**ANSWER:**

**REQUEST FOR PRODUCTION NO. 28:** Please produce any and all documents pertaining to any infringement analysis conducted by any person or entity on your behalf regarding the '508 Patent.

**RESPONSE:**

**INTERROGATORY NO. 25:** Please describe in detail any calculation of damages you believe to be due from the State as a result of Defendants' alleged conduct, including, but not

DEF. LANDMARK TECHNOLOGY A, LLC'S 1ST INTERROGS. &
REQS. FOR PROD. TO PLAINTIFF STATE OF WASHINGTON - 22

**Gleam Law, PLLC**
605 First Avenue, Suite 330
Seattle, WA 98104
P: (206) 693-2900
F: (206) 319-4596

CERTIFICATE OF SERVICE

The undersigned hereby certifies under penalty of perjury under the laws of the United States of America, that on the date noted below, a true and correct copy of the foregoing was delivered and/or transmitted in the manner(s) noted below:

| | | |
|---|---|---|
| ROBERT W. FERGUSON | *Attorneys for Plaintiff* | [ ] Via Messenger |
| Attorney General | | [X] Via Email |
| AARON J. FICKES, WSBA #51584 | | [ ] Via Certified Mail |
| BEN J. BRYSACZ, WSBA #54683 | | [ ] Via U.S. Mail |
| HEIDI C. ANDERSON, WSBA #37603 | | [ ] Via ECF |
| MICHAEL HALL, WSBA #19871 | | |
| BOB HYDE, WSBA #33593 | | |
| Assistant Attorneys General | | |
| Attorneys for Plaintiff State of Washington | | |
| 800 Fifth Avenue, Suite 2000 | | |
| Seattle, WA 98104 | | |

DATED this 10th day of October, 2023.

/s/ Brittany Duplantis
Brittany Duplantis, Legal Assistant

DEF. LANDMARK TECHNOLOGY A, LLC'S 1ST INTERROGS. &
REQS. FOR PROD. TO PLAINTIFF STATE OF WASHINGTON - 25

**Gleam Law, PLLC**
605 First Avenue, Suite 330
Seattle, WA 98104
P: (206) 693-2900
F: (206) 319-4596

# EXHIBIT 3

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STATE OF WASHINGTON,

          Plaintiff,

v.

LANDMARK TECHNOLOGY A, LLC,
and RAYMOND MERCADO, individually,

          Defendants.

NO. 2:21-cv-00728-RSM

STATE'S RESPONSES AND
OBJECTIONS TO DEFENDANTS'
INTERROGATORIES AND
REQUESTS FOR PRODUCTION TO
PLAINTIFF STATE OF
WASHINGTON

Pursuant to Fed. R. Civ. P. 26, 33, and 34, Plaintiff State of Washington, by and through the Consumer Protection Division of the Attorney General's Office, sets forth its responses and objections to Defendant Landmark Technology A, LLC's (Defendant or LTA) First Set of Interrogatories and Requests for Production to Plaintiff State of Washington.

## I.    GENERAL OBJECTIONS

1.1.    The following General Objections are stated for purposes of preserving certain objections and apply to each interrogatory and request for production (collectively, Requests). Plaintiff objects generally to Defendant's prefatory Instructions and Definitions and to each

STATE'S RESPONSES AND OBJECTIONS TO
DEFENDANTS' INTERROGATORIES AND
REQUESTS FOR PRODUCTION TO PLAINTIFF
STATE OF WASHINGTON - 1
(2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Interrogatory to the extent they purport to impose any duty or obligation beyond those required in the Federal Rules of Civil Procedure and the U.S. District Court for the Western District of Washington Local Civil Rules. Plaintiff neither agrees to nor stipulates to the Defendant's discovery Instructions or Definitions.

1.2.    The following responses are made solely for the purposes of, and in relation to, this litigation, and Plaintiff objects to any other use of these responses.

1.3.    Plaintiff objects to each Request insofar as it seeks materials or information beyond the scope of permissible discovery or irrelevant to the subject matter of this lawsuit and not reasonably calculated to lead to the discovery of admissible evidence.

1.4.    Plaintiff objects to each Request that requires undue burden and expense to supply information that is readily accessible to Defendant or otherwise available in the public domain, including but not limited to the instruction to furnish "such information as is available to you." To the extent that an answer to an interrogatory may be ascertained from Plaintiff's business records and the burden of ascertaining the answer is substantially the same for Defendant, Plaintiff will specify the records from which the answer may be ascertained or derived.

1.5.    Plaintiff objects to each Request to the extent it is cumulative of other Requests or the information sought is obtainable from another source or discovery method that is more convenient, less burdensome, or less expensive.

1.6.    Plaintiff objects to each Request to the extent it calls for information protected and/or privileged from discovery by the attorney client privilege, the attorney work product doctrine, the common interest doctrine and agreement, and/or the privacy rights of third parties.

STATE'S RESPONSES AND OBJECTIONS TO
DEFENDANTS' INTERROGATORIES AND
REQUESTS FOR PRODUCTION TO PLAINTIFF
STATE OF WASHINGTON - 2
(2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

By responding to these Interrogatories, Plaintiff does not intend to waive any applicable privilege or protection.

1.7.    Plaintiff objects to each Request to the extent it seeks the identity of individuals with whom counsel for Plaintiff has communicated in advancing its case, as disclosure of that information would reveal attorney work product. *See United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 270 F. Supp. 3d 220, 225 (D.D.C. 2017) ("Based on this line of reasoning, Plaintiff is 'free to ask for names of persons with knowledge of the facts, but it is not entitled, through [Claimant], to the identification of who among such knowledgeable individuals have been interviewed by [Claimant's counsel].'… After all, to grant such a request would be to reveal to Plaintiff, Claimant's adversary in this litigation, how Claimant and his counsel 'choose to prepare their case, the efforts they undertake, and the people they interview'—all information that falls within the scope of the work-product doctrine.") (citing to *Seven Hanover Assocs., LLC v. Jones Lang LaSalle Americas, Inc.*, 2005 WL 3358597, at *1 n.1 (S.D.N.Y. Dec. 7, 2005); *Dist. Council of New York City and Vicinity of United Bhd. Of Carpenters and Joiners of America*, 1992 WL 208284, at *10); *see also Com. of Mass. v. First Nat. Supermarkets, Inc.*, 112 F.R.D. 149, 152–53 (D. Mass. 1986) ("[I]nterrogatories which seek the names of persons interviewed by an adverse party's attorney together with the dates and places of such interviews are improper.").

1.8.    In the event of the inadvertent release of privileged information, Plaintiff does not waive any applicable privilege and requests that Defendant promptly return, sequester, or destroy the privileged information and any copies in the manner required by Fed. R. Civ. Proc. 26(b)(5).

STATE'S RESPONSES AND OBJECTIONS TO
DEFENDANTS' INTERROGATORIES AND
REQUESTS FOR PRODUCTION TO PLAINTIFF
STATE OF WASHINGTON - 3
(2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1         1.9.     The Consumer Protection Division of the Attorney General's Office has not

2    completed its investigation, discovery in this action, analysis, or preparations for trial. Discovery

3    is ongoing in this matter, and each response is true and correct to the best of the knowledge of

4    the Consumer Protection Division of the Attorney General's Office as of this date. Plaintiff

5    expressly reserves the right to continue its discovery, investigation, and trial preparation and

6    supplement these Responses and Objections at any time. Plaintiff specifically reserves the right

7    to present additional information disclosed through continuing investigation and discovery at

8    trial.

9         1.10.    Plaintiff reserves the right to raise in any subsequent proceeding or in the trial of

10   this or any other action all questions of authenticity, foundation, relevancy, materiality, privilege,

11   and evidentiary admissibility of any information provided or identified in these Responses.

12        1.11.    By responding to the Interrogatories, the State does not concede the relevancy,

13   materiality, or admissibility of any such information.

14        1.12.    Plaintiff objects to the instructions insofar as they impose a continuing duty that

15   conflicts with the requirements of Federal Rule of Civil Procedure 26(e) regarding

16   supplementation.

### OBJECTIONS TO DEFINITIONS

     1.13.    Plaintiff objects to Definition No. 2 ("Identify" or "Identification" with respect

to persons) on the ground that to the extent a Request seeks information produced by third parties

in response to Civil Investigative Demands, such are privileged and protected from discovery

pursuant to RCW 19.86.110.

STATE'S RESPONSES AND OBJECTIONS TO
DEFENDANTS' INTERROGATORIES AND
REQUESTS FOR PRODUCTION TO PLAINTIFF
STATE OF WASHINGTON - 4
(2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1.14.   Plaintiff objects to Definition No. 3 ("Identify" or "Identification" with respect to documents) on the grounds that to the extent this request seeks documents and information produced by third parties in response to Civil Investigative Demands, such are privileged and protected from discovery pursuant to RCW 19.86.110.

1.15.   Plaintiff objects to Definition No. 4 ("Identify" or "Identification" with respect to oral communications) on the grounds that to the extent this request seeks documents and information produced by third parties in response to Civil Investigative Demands, such are privileged and protected from discovery pursuant to RCW 19.86.110.

1.16.   Plaintiff objects to Definition No. 5 ("Identify" or "Identification" with respect to events) on the grounds that to the extent this request seeks documents and information produced by third parties in response to Civil Investigative Demands, such are privileged and protected from discovery pursuant to RCW 19.86.110.

1.17.   Plaintiff objects to Definition No. 6 ("Identify" or "Identification" with respect to any other matter) on the grounds that it is overly broad, vague, and ambiguous and cannot be understood without clarification. Moreover, Plaintiff objects to this Definition as unduly burdensome and as exceeding the requirements of the Superior Court Civil Rules because it does not limit the response requested "to the extent known." Plaintiff further objects to this Definition on that grounds that to the extent this request seeks documents and information produced by third parties in response to Civil Investigative Demands, such are privileged and protected from discovery pursuant to RCW 19.86.110.

1.18.   Plaintiff objects to Definition No. 7 as overly broad. The Consumer Protection (CP) Division of the Washington Attorney General's Office is the only entity for which "party"

STATE'S RESPONSES AND OBJECTIONS TO
DEFENDANTS' INTERROGATORIES AND
REQUESTS FOR PRODUCTION TO PLAINTIFF
STATE OF WASHINGTON - 5
(2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

discovery—including Rule 33 Interrogatories and Rule 34 Requests for Production—is appropriate. Generally, the CP Division does not have possession, custody, or control of documents belonging to or in the possession of other state agencies or divisions, unless such materials are obtained at the direction of Plaintiff's counsel in the course of an investigation and in anticipation of litigation. Should Defendant wish to inquire with these agencies, institutions, or divisions, they must serve subpoenas pursuant to Rule 45. Plaintiff's responses herein understand "You" and "Your" should be read as referring to the CP Division of the Washington State Attorney General's Office, and excluding other Washington State agencies and/or departments.

1.19.   All Requests will be responded to as written and understood by the State of Washington. Plaintiff will not read into any Request any additional language not found in the Request. Each of the foregoing General Objections and objections to Defendant's Definitions and Instructions is incorporated by reference into Plaintiff's specific Responses below. Any objections to all or part of a specific Interrogatory do not limit or restrict Plaintiff's general objections and objections to Defendant's Definitions and Instructions set forth above.

## II.    RESPONSE TO INTERROGATORIES AND REQUESTS FOR PRODUCTION

**INTERROGATORY NO. 1:** Please identify any individual or entity that has provided responsive information to any of these interrogatories, including their name, address where they may be served, telephone number, email address, and to which interrogatories they provided responsive information.

**ANSWER:** Plaintiff specifically objects to this Interrogatory as seeking, in part, information protected and/or privileged from discovery by the attorney client privilege, the attorney work

STATE'S RESPONSES AND OBJECTIONS TO
DEFENDANTS' INTERROGATORIES AND
REQUESTS FOR PRODUCTION TO PLAINTIFF
STATE OF WASHINGTON - 6
(2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   product doctrine, and consulting expert privilege. The information requested is also protected by

2   the attorney work product doctrine in that it encompasses information and/or materials compiled

3   by Plaintiff's counsel in anticipation or furtherance of litigation, together with mental

4   impressions, thought processes, conclusions, legal theories, and legal opinions. In addition, this

5   Interrogatory seeks, in part, information that will be the subject of expert testimony.

6   Accordingly, it is improper under the consulting expert privilege. Plaintiff will identify and

7   disclose its testifying expert witnesses pursuant to the Federal Rules of Civil Procedure, Western

8   District of Washington Local Rules, and the Case Schedule in this matter. To the extent this

9   Interrogatory seeks information produced by third parties in response to Civil Investigative

10  Demands, such are privileged and protected from discovery pursuant to RCW 19.86.110.

11  Plaintiff objects to the term "responsive information" as vague.

12      To the extent this Interrogatory seeks the identity of those individuals with whom counsel

13  for Plaintiff has communicated with in advancing the Plaintiff's case, disclosure of that

14  information would reveal attorney work product. *See* General Objection 1.7. Plaintiff has already

15  provided the names of individuals who may possess knowledge of relevant information in this

16  case. *See* Plaintiff's witness disclosures served on January 20, 2023. Discovery is ongoing and

17  Plaintiff reserves the right to supplement its response to this Interrogatory.

18      Subject to and without waiving said objections, Plaintiff refers Defendant to the operative

19  Complaint; to the parties' initial disclosures; Plaintiff's expert reports to be served on date of

20  disclosure; and to Defendants' responses to Civil Investigative Demands.

21  **REQUEST FOR PRODUCTION NO. 1:** Please produce all correspondence or

22  documents sent to or received from any individual or entity that has provided responsive

23  information to any of these interrogatories.

24  **RESPONSE:** Plaintiff specifically objects to this Request as overly broad, vague, and

25  ambiguous as to the recipient of the referenced correspondence or documents, and reads this

26  request as seeking "correspondence or documents sent to or received by the CP Division . . . that

STATE'S RESPONSES AND OBJECTIONS TO
DEFENDANTS' INTERROGATORIES AND
REQUESTS FOR PRODUCTION TO PLAINTIFF
STATE OF WASHINGTON - 7
(2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

has provided responsive information to the CP Division . . ." Plaintiff also objects to the term "responsive information" as vague. Plaintiff further objects to this Request as seeking, in part, information protected and/or privileged from discovery by the attorney client privilege, the attorney work product doctrine, and consulting expert privilege. The information requested is also protected by the attorney work product doctrine in that it encompasses information and/or materials compiled by Plaintiff's counsel in anticipation or furtherance of litigation, and the selection of these documents call for mental impressions, thought processes, conclusions, legal theories, and legal opinions. In addition, this Request seeks, in part, documents relevant to expert testimony, the production of which is governed by Federal Rule of Civil Procedure 26(b). Accordingly, it is improper under the consulting expert privilege. Plaintiff will identify and disclose its testifying expert witnesses pursuant to the Federal Rules of Civil Procedure, Western District of Washington Local Rules, and the Case Schedule in this matter. To the extent this Request seeks information produced by third parties in response to Civil Investigative Demands, such are privileged and protected from discovery pursuant to RCW 19.86.110.

To the extent this Request seeks the identity of those individuals with whom counsel for Plaintiff has communicated with in advancing the Plaintiff's case, disclosure of that information would reveal attorney work product. *See* General Objection 1.7. Discovery is ongoing and Plaintiff reserves the right to supplement its response to this Request.

Subject to and without waiving said objections, Plaintiff refers Defendant to the operative Complaint; to the parties' initial disclosures; Plaintiff's expert reports to be served on date of disclosure; and to Defendants' responses to Civil Investigative Demands. Plaintiff will conduct a search for responsive documents and will produce non-privileged, responsive documents not already in Defendant's possession.

**INTERROGATORY NO. 2:** Please identify any individual or entity the State of Washington has contacted pursuant to this litigation or any pre-litigation civil investigative matter, including, but not limited to, the name, individual contact or contacts (if an entity),

STATE'S RESPONSES AND OBJECTIONS TO DEFENDANTS' INTERROGATORIES AND REQUESTS FOR PRODUCTION TO PLAINTIFF STATE OF WASHINGTON - 8 (2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON Consumer Protection Division 800 Fifth Avenue, Suite 2000 Seattle, WA 98104-3188 (206) 464-7744

address, telephone number, and email address.

**ANSWER:** Plaintiff specifically objects to this Interrogatory as seeking, in part, information protected and/or privileged from discovery by the attorney client privilege, the attorney work product doctrine, and consulting expert privilege. The information requested is also protected by the attorney work product doctrine in that it encompasses information and/or materials compiled by Plaintiff's counsel in anticipation or furtherance of litigation, and the selection of these documents call for mental impressions, thought processes, conclusions, legal theories, and legal opinions. In addition, this Interrogatory seeks, in part, information relevant to expert testimony, the production of which is governed by Federal Rule of Civil Procedure 26(b). Accordingly, it is improper under the consulting expert privilege. Plaintiff will identify and disclose its testifying expert witnesses pursuant to the Federal Rules of Civil Procedure, Western District of Washington Local Rules, and the Case Schedule in this matter. To the extent this Interrogatory seeks information produced by third parties in response to Civil Investigative Demands, such are privileged and protected from discovery pursuant to RCW 19.86.110. Plaintiff also objects to this Interrogatory as overly broad, vague and ambiguous as to the definition of "any pre-litigation civil investigative matter" in that it could be interpreted as any investigation ever undertaken by the AGO for all of time. It is therefore also unduly burdensome in that it is not limited to information relevant to this case or limited in scope as to time. Additionally, the Interrogatory is overly broad, unduly burdensome, and improper in scope in that it seeks information from the State of Washington as a whole and is not limited to the Plaintiff CP Division. *See* Objection to Definition 7 ("you" and "your"). Plaintiff objects to the compound nature of the Interrogatory.

To the extent this Interrogatory seeks the identity of those individuals with whom counsel for Plaintiff has communicated with in advancing the Plaintiff's case, disclosure of that information would reveal attorney work product. *See* General Objection 1.7. Plaintiff has already provided the names of individuals who may possess knowledge of relevant information in this

STATE'S RESPONSES AND OBJECTIONS TO
DEFENDANTS' INTERROGATORIES AND
REQUESTS FOR PRODUCTION TO PLAINTIFF
STATE OF WASHINGTON - 9
(2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

case. *See* Plaintiff's witness disclosures served on January 20, 2023. Discovery is ongoing and Plaintiff reserves the right to supplement its response to this Interrogatory.

Subject to and without waiving said objections, Plaintiff refers Defendant to the operative Complaint; to the parties' initial disclosures; Plaintiff's expert reports to be served on date of disclosure; and to Defendants' responses to Civil Investigative Demands.

**REQUEST FOR PRODUCTION NO. 2:** Please produce all correspondence or documents sent to or received from any individual or entity the State of Washington has contacted pursuant to this litigation or any pre-litigation civil investigative matter.

**RESPONSE:** Plaintiff specifically objects to this Request as overly broad, vague, and ambiguous as to the recipient of the referenced correspondence or documents, and reads this request as seeking "correspondence or documents sent to or received by the CP Division." Plaintiff also objects to this Interrogatory as overly broad, vague and ambiguous as to the definition of "any pre-litigation civil investigative matter" in that it could be interpreted as any investigation ever undertaken by the AGO for all of time. It is therefore also unduly burdensome in that it is not limited to information relevant to this case or limited in scope as to time. Plaintiff further objects to this Request as seeking, in part, information protected and/or privileged from discovery by the attorney client privilege, the attorney work product doctrine, and consulting expert privilege. The information requested is also protected by the attorney work product doctrine in that it encompasses information and/or materials compiled by Plaintiff's counsel in anticipation or furtherance of litigation, and the selection of these documents call for mental impressions, thought processes, conclusions, legal theories, and legal opinions. In addition, this Request seeks, in part, documents relevant to expert testimony, the production of which is governed by Federal Rule of Civil Procedure 26(b) and subject to the consulting expert privilege. Plaintiff will identify and disclose its testifying expert witnesses pursuant to the Federal Rules of Civil Procedure, Western District of Washington Local Rules, and the Case Schedule in this matter. To the extent this Request seeks information produced by third parties in response to

1    Civil Investigative Demands, such are privileged and protected from discovery pursuant to RCW

2    19.86.110. Additionally, the Interrogatory is overly broad, unduly burdensome, and improper in

3    scope in that it seeks information in the possession of "the State of Washington" and is not

4    limited to the Plaintiff CP Division. *See* Objection to Definition 7 ("you" and "your"). Plaintiff

5    objects to the compound nature of the Request.

6        To the extent this Request seeks the identity of those individuals with whom counsel for

7    Plaintiff has communicated with in advancing the Plaintiff's case, disclosure of that information

8    would reveal attorney work product. *See* General Objection 1.7. Discovery is ongoing and

9    Plaintiff reserves the right to supplement its response to this Request.

10       Subject to and without waiving said objections, Plaintiff refers Defendant to the operative

11   Complaint; to the parties' initial disclosures; Plaintiff's expert reports to be served on date of

12   disclosure; and to Defendants' responses to Civil Investigative Demands. Plaintiff will conduct

13   a search for responsive documents and will produce non-privileged, responsive documents not

14   already in Defendant's possession.

15       **INTERROGATORY NO. 3:** Please identify any individual or entity You believe to

16   have discoverable information in this matter, including but not limited to, the name, individual

17   contact or contacts (if an entity), address, telephone number, and email address.

18       **ANSWER:** Plaintiff specifically objects to this Interrogatory as seeking, in part,

19   information protected and/or privileged from discovery by the attorney client privilege, the

20   attorney work product doctrine, and consulting expert privilege. The information requested is

21   also protected by the attorney work product doctrine in that it encompasses information and/or

22   materials compiled by Plaintiff's counsel in anticipation or furtherance of litigation, and the

23   selection of these documents call for mental impressions, thought processes, conclusions, legal

24   theories, and legal opinions. In addition, this Interrogatory seeks, in part, information that will

25   be the subject of expert testimony, and is therefore subject to the consulting expert privilege.

26   Plaintiff will identify and disclose its testifying expert witnesses pursuant to the Federal Rules

STATE'S RESPONSES AND OBJECTIONS TO
DEFENDANTS' INTERROGATORIES AND
REQUESTS FOR PRODUCTION TO PLAINTIFF
STATE OF WASHINGTON - 11
(2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

of Civil Procedure, Western District of Washington Local Rules, and the Case Schedule in this matter. To the extent this Interrogatory seeks information produced by third parties in response to Civil Investigative Demands, such are privileged and protected from discovery pursuant to RCW 19.86.110. Plaintiff objects to the term "discoverable information" as vague and ambiguous. Additionally, this Interrogatory contains a definition of "you" and "your" that goes beyond the Consumer Protection Division of the Washington Attorney General's Office, and is therefore improper in scope.

To the extent this Interrogatory seeks the identity of those individuals with whom counsel for Plaintiff has communicated with in advancing the Plaintiff's case, disclosure of that information would reveal attorney work product. *See* General Objection 1.7.  Discovery is ongoing and Plaintiff reserves the right to supplement its response to this Interrogatory.

Subject to and without waiving said objections, Plaintiff refers Defendant to the operative Complaint; to Defendants' responses to Civil Investigative Demands; and to the parties' initial disclosures containing the names of individuals who may possess knowledge of relevant information in this case. *See* Plaintiff's witness disclosures served on January 20, 2023. Plaintiff's experts will be disclosed pursuant to the Case Schedule and applicable court rules..

**REQUEST FOR PRODUCTION NO. 3:** Please produce all correspondence or documents sent to or received from any individual or entity You believe to have discoverable information in this matter.

**RESPONSE:** Plaintiff specifically objects to this Request as overly broad, vague, and ambiguous as to the recipient of the referenced correspondence or documents, and reads this request as seeking "correspondence or documents sent to or received by the CP Division." Additionally, the Request contains a definition of "you" and "your" that goes beyond the Consumer Protection Division of the Washington Attorney General's Office, and is therefore improper in scope. Plaintiff further objects to this Request as seeking, in part, information protected and/or privileged from discovery by the attorney client privilege, the attorney work

STATE'S RESPONSES AND OBJECTIONS TO
DEFENDANTS' INTERROGATORIES AND
REQUESTS FOR PRODUCTION TO PLAINTIFF
STATE OF WASHINGTON - 12
(2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

product doctrine, and consulting expert privilege. The information requested is also protected by the attorney work product doctrine in that it encompasses information and/or materials compiled by Plaintiff's counsel in anticipation or furtherance of litigation, and the selection of these documents call for mental impressions, thought processes, conclusions, legal theories, and legal opinions. In addition, this Request seeks, in part, documents and information relevant to expert testimony, the production of which is governed by Federal Rule of Civil Procedure 26(b) and subject to expert privilege and the consulting expert privilege. Plaintiff will identify and disclose its testifying expert witnesses pursuant to the Federal Rules of Civil Procedure, Western District of Washington Local Rules, and the Case Schedule in this matter. To the extent this Request seeks information produced by third parties in response to Civil Investigative Demands, such are privileged and protected from discovery pursuant to RCW 19.86.110. Plaintiff objects to the term "discoverable information" as vague.

To the extent this Request seeks the identity of those individuals with whom counsel for Plaintiff has communicated with in advancing the Plaintiff's case, disclosure of that information would reveal attorney work product. *See* General Objection 1.7. Discovery is ongoing and Plaintiff reserves the right to supplement its response to this Request.

Subject to and without waiving said objections, Plaintiff refers Defendant to the operative Complaint; to the parties' initial disclosures; Plaintiff's expert reports to be served on date of disclosure; and to Defendants' responses to Civil Investigative Demands. Plaintiff will conduct a search for responsive documents and will produce non-privileged, responsive documents not already in Defendant's possession.

**INTERROGATORY NO. 4:** If you contend that any person or entity to which Landmark Technology A, LLC, either sent a settlement demand letter or engaged in litigation, or against whom Landmark Technology A, LLC sought to enforce its rights to the '508 Patent, did not infringe on any, either, or all of claims 1 through 7 or 16 through 17 of the '508 Patent, please describe in detail any basis for such contention as to each such person or entity, including

STATE'S RESPONSES AND OBJECTIONS TO DEFENDANTS' INTERROGATORIES AND REQUESTS FOR PRODUCTION TO PLAINTIFF STATE OF WASHINGTON - 13 (2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON Consumer Protection Division 800 Fifth Avenue, Suite 2000 Seattle, WA 98104-3188 (206) 464-7744

Protection Division of the Washington Attorney General's Office, and is therefore overly broad, vague, ambiguous, and improper in scope. Plaintiff interprets this request as seeking "information regarding any and all communications between the CP Division and . . ." Plaintiff objects to the term "other information" as vague. Plaintiff objects to the compound nature of the Request. Discovery is ongoing and Plaintiff reserves the right to supplement its response to this Request.

Subject to and without waiving said objections, responds as follows: Plaintiff will conduct a search for responsive documents and will produce any non-privileged, responsive documents not already in Defendant's possession.

**INTERROGATORY NO. 24:** Please describe in detail any infringement analysis conducted by any person or entity on your behalf regarding the '508 Patent, including, but not limited to:

    (1)     The date the analysis was conducted;

    (2)     Who conducted the analysis;

    (3)     Whether the person conducting the analysis was provided any patent infringement analysis conducted by Landmark Technology A, LLC or Landmark Technology, LLC; and

    (4)     The results of the analysis.

**ANSWER:** Plaintiff specifically objects to this Interrogatory as seeking, in part, information protected and/or privileged from discovery by the attorney client privilege, the attorney work product doctrine, and consulting expert privilege. The information requested is also protected by the attorney work product doctrine in that it encompasses information and/or materials compiled by Plaintiff's counsel in anticipation or furtherance of litigation, and the selection of these documents call for mental impressions, thought processes, conclusions, legal theories, and legal opinions. In addition, this Interrogatory seeks, in part, information relevant to expert testimony, the production of which is governed by Federal Rule of Civil Procedure 26(b)

1   and subject to the expert privilege. Plaintiff will identify and disclose its testifying expert

2   witnesses pursuant to the Federal Rules of Civil Procedure, Western District of Washington

3   Local Rules, and the Case Schedule in this matter. To the extent this Interrogatory seeks

4   information produced by third parties in response to Civil Investigative Demands, such are

5   privileged and protected from discovery pursuant to RCW 19.86.110. Additionally, the

6   Interrogatory contains a definition of "you" and "your" that goes beyond the Consumer

7   Protection Division of the Washington Attorney General's Office, and is therefore overly broad,

8   unduly burdensome, and improper in scope. *See* Objection to Definition 7 ("you" and "your").

9   Plaintiff reads "you" and "your" to mean the CP Division. Plaintiff objects to the compound

10  nature of the Interrogatory. Discovery is ongoing and Plaintiff reserves the right to supplement

11  its response to this Interrogatory.

12        **REQUEST FOR PRODUCTION NO. 28:** Please produce any and all documents

13  pertaining to any infringement analysis conducted by any person or entity on your behalf

14  regarding the '508 Patent.

15        **RESPONSE:** Plaintiff specifically objects to this Request as seeking, in part,

16  information protected and/or privileged from discovery by the attorney client privilege, the

17  attorney work product doctrine, and consulting expert privilege. The information requested is

18  also protected by the attorney work product doctrine in that it encompasses information and/or

19  materials compiled by Plaintiff's counsel in anticipation or furtherance of litigation, and the

20  selection of these documents call for mental impressions, thought processes, conclusions, legal

21  theories, and legal opinions. In addition, this Request seeks, in part, information that relevant to

22  expert testimony, the production of which is governed by Federal Rule of Civil Procedure 26(b)

23  and subject to the expert privilege. Plaintiff will identify and disclose its testifying expert

24  witnesses pursuant to the Federal Rules of Civil Procedure, Western District of Washington

25  Local Rules, and the Case Schedule in this matter. To the extent this Request seeks information

26  produced by third parties in response to Civil Investigative Demands, such are privileged and

STATE'S RESPONSES AND OBJECTIONS TO
DEFENDANTS' INTERROGATORIES AND
REQUESTS FOR PRODUCTION TO PLAINTIFF
STATE OF WASHINGTON - 100
(2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  protected from discovery pursuant to RCW 19.86.110. Additionally, the Request contains a

2  definition of "you" and "your" that goes beyond the Consumer Protection Division of the

3  Washington Attorney General's Office, and is overly broad, unduly burdensome, and improper

4  in scope. *See* Objection to Definition 7 ("you" and "your"). Plaintiff reads "you" and "your

5  to mean the CP Division. Discovery is ongoing and Plaintiff reserves the right to supplement its

6  response to this Request.

7        Subject to and without waiving said objections, responds as follows: Plaintiff will

8  conduct a search for responsive documents and will produce any non-privileged, responsive

9  documents not already in Defendant's possession.

10  **INTERROGATORY NO. 25:** Please describe in detail any calculation of damages you

11  believe to be due from the State as a result of Defendants' alleged conduct, including, but not

12  limited to:

13        (1)    of revenues or profits you believe to have been improperly gained by Landmark

14                  Technology A, LLC from Washington entities;

15        (2)    Any civil penalties you believe to be due, including your calculation of the same;

16        (3)    Any attorneys' fees you believe to be due, including your calculation of the same.

17  **ANSWER:** Plaintiff specifically objects to this Interrogatory as seeking, in part,

18  information protected and/or privileged from discovery by the attorney client privilege, the

19  attorney work product doctrine, and consulting expert privilege. The information requested is

20  also protected by the attorney work product doctrine in that it encompasses information and/or

21  materials compiled by Plaintiff's counsel in anticipation or furtherance of litigation, and the

22  selection of these documents call for mental impressions, thought processes, conclusions, legal

23  theories, and legal opinions. In addition, this Interrogatory seeks, in part, information relevant to

24  expert testimony, the production of which is governed by Federal Rule of Civil Procedure 26(b)

25  and subject to the expert privilege. Plaintiff will identify and disclose its testifying expert

26  witnesses pursuant to the Federal Rules of Civil Procedure, Western District of Washington

STATE'S RESPONSES AND OBJECTIONS TO
DEFENDANTS' INTERROGATORIES AND
REQUESTS FOR PRODUCTION TO PLAINTIFF
STATE OF WASHINGTON - 101
(2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

$7,500 for each violation." Pursuant to RCW 19.350.030, a violation of the Patent Troll Prevention Act ("PTPA") "is an unfair or deceptive act in trade or commerce…for purposes of applying the consumer protection act, chapter 19.86 RCW."

Specific alleged violations of the PTPA and Consumer Protection Act ("CPA") are set forth in the First Amended Complaint. Corporate officers may be personally liable for violations of the CPA by corporations if they "participate[d] in" or "with knowledge approve[d] of" the act or practice that violates the CPA. *State v. Ralph Williams' N.W. Chrysler Plymouth, Inc.*, 87 Wn.2d 298, 322, 553 P.2d 423 (1976).

The amount of civil penalties assessed under the CPA is determined by the trial court's discretionary authority. *See State v. LA Investors, LLC*, 410 P.3d 1183 (Wn. App. 2018). A court may—but is not required to—consider the factors for determining civil penalties outlined by *United States v. Reader's Digest Ass'n, Inc.*, 662 F.2d 955, 959-60 (3d Cir. 1984). Courts may also impose penalties significant enough to deter violations rather than act as "nothing more than an acceptable cost of violation." *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 231 (1975); *see also Yousofoufian v. Office of Ron Sims*, 168 Wn.2d 444, 229 P.3d 735 (1975).

OBJECTIONS DATED this 14th day of February, 2024.


ROBERT W. FERGUSON
Attorney General


 *s/ Aaron J. Fickes*
Aaron J. Fickes, WSBA No. 51584
Ben J. Brysacz, WSBA No. 54683
Heidi C. Anderson, WSBA No. 37603
Michael Hall, WSBA No. 19871
Bob Hyde, WSBA No. 33593
Assistant Attorneys General
*Attorneys for Plaintiff*

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

**CERTIFICATE OF SERVICE**

I certify that I caused a copy of the foregoing to be served on the following parties via the following methods:

Justin P. Walsh
Gleam Law, PLLC
605 1st Avenue, Suite 330
Seattle, WA 98104
justin@gleamlaw.com

☐ Legal Messenger
☐ First-Class Mail, Postage Prepaid
☐ Certified Mail, Receipt Requested
☒ Email
☒ E-Service

I certify, under penalty of perjury under the laws of the State of Washington, that the foregoing is true and correct.

DATED this 14th day of February, 2024, at Seattle, Washington.

*s/ Aaron J. Fickes*
Assistant Attorney General

STATE'S RESPONSES AND OBJECTIONS TO
DEFENDANTS' INTERROGATORIES AND
REQUESTS FOR PRODUCTION TO PLAINTIFF
STATE OF WASHINGTON - 106
(2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# EXHIBIT 4

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STATE OF WASHINGTON,

Plaintiff,

v.

LANDMARK TECHNOLOGY A, LLC,
and RAYMOND MERCADO, individually,

Defendants.

NO. 2:21-cv-00728-RSM

STATE'S RESPONSES AND
OBJECTIONS TO DEFENDANTS'
INTERROGATORIES AND
REQUESTS FOR PRODUCTION TO
PLAINTIFF STATE OF
WASHINGTON

Pursuant to Fed. R. Civ. P. 26, 33, and 34, Plaintiff State of Washington, by and through the

Consumer Protection Division of the Attorney General's Office, sets forth its responses and

objections to Defendant Landmark Technology A, LLC's (Defendant or LTA) First Set of

Interrogatories and Requests for Production to Plaintiff State of Washington.

## I.  GENERAL OBJECTIONS

1.1.    The following General Objections are stated for purposes of preserving certain

objections and apply to each interrogatory and request for production (collectively, Requests).

Plaintiff objects generally to Defendant's prefatory Instructions and Definitions and to each

STATE'S RESPONSES AND OBJECTIONS TO
DEFENDANTS' INTERROGATORIES AND
REQUESTS FOR PRODUCTION TO PLAINTIFF
STATE OF WASHINGTON - 1
(2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Interrogatory to the extent they purport to impose any duty or obligation beyond those required in the Federal Rules of Civil Procedure and the U.S. District Court for the Western District of Washington Local Civil Rules. Plaintiff neither agrees to nor stipulates to the Defendant's discovery Instructions or Definitions.

1.2.    The following responses are made solely for the purposes of, and in relation to, this litigation, and Plaintiff objects to any other use of these responses.

1.3.    Plaintiff objects to each Request insofar as it seeks materials or information beyond the scope of permissible discovery or irrelevant to the subject matter of this lawsuit and not reasonably calculated to lead to the discovery of admissible evidence.

1.4.    Plaintiff objects to each Request that requires undue burden and expense to supply information that is readily accessible to Defendant or otherwise available in the public domain, including but not limited to the instruction to furnish "such information as is available to you." To the extent that an answer to an interrogatory may be ascertained from Plaintiff's business records and the burden of ascertaining the answer is substantially the same for Defendant, Plaintiff will specify the records from which the answer may be ascertained or derived.

1.5.    Plaintiff objects to each Request to the extent it is cumulative of other Requests or the information sought is obtainable from another source or discovery method that is more convenient, less burdensome, or less expensive.

1.6.    Plaintiff objects to each Request to the extent it calls for information protected and/or privileged from discovery by the attorney client privilege, the attorney work product doctrine, the common interest doctrine and agreement, and/or the privacy rights of third parties.

STATE'S RESPONSES AND OBJECTIONS TO
DEFENDANTS' INTERROGATORIES AND
REQUESTS FOR PRODUCTION TO PLAINTIFF
STATE OF WASHINGTON - 2
(2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    By responding to these Interrogatories, Plaintiff does not intend to waive any applicable privilege

2    or protection.

3          1.7.    Plaintiff objects to each Request to the extent it seeks the identity of individuals

4    with whom counsel for Plaintiff has communicated in advancing its case, as disclosure of that

5    information would reveal attorney work product. *See United States v. All Assets Held at Bank*

6    *Julius Baer & Co., Ltd.*, 270 F. Supp. 3d 220, 225 (D.D.C. 2017) ("Based on this line of

7    reasoning, Plaintiff is 'free to ask for names of persons with knowledge of the facts, but it is not

8    entitled, through [Claimant], to the identification of who among such knowledgeable individuals

9    have been interviewed by [Claimant's counsel].'… After all, to grant such a request would be to

10   reveal to Plaintiff, Claimant's adversary in this litigation, how Claimant and his counsel 'choose

11   to prepare their case, the efforts they undertake, and the people they interview'—all information

12   that falls within the scope of the work-product doctrine.") (citing to *Seven Hanover Assocs., LLC*

13   *v. Jones Lang LaSalle Americas, Inc.*, 2005 WL 3358597, at *1 n.1 (S.D.N.Y. Dec. 7, 2005);

14   *Dist. Council of New York City and Vicinity of United Bhd. Of Carpenters and Joiners of*

15   *America*, 1992 WL 208284, at *10); *see also Com. of Mass. v. First Nat. Supermarkets, Inc.*,

16   112 F.R.D. 149, 152–53 (D. Mass. 1986) ("[I]nterrogatories which seek the names of persons

17   interviewed by an adverse party's attorney together with the dates and places of such interviews

18   are improper.").

19          1.8.    In the event of the inadvertent release of privileged information, Plaintiff does

20   not waive any applicable privilege and requests that Defendant promptly return, sequester, or

21   destroy the privileged information and any copies in the manner required by Fed. R. Civ.

22   Proc. 26(b)(5).

23

24

25

26

STATE'S RESPONSES AND OBJECTIONS TO                          ATTORNEY GENERAL OF WASHINGTON
DEFENDANTS' INTERROGATORIES AND                                      Consumer Protection Division
REQUESTS FOR PRODUCTION TO PLAINTIFF                                  800 Fifth Avenue, Suite 2000
STATE OF WASHINGTON - 3                                                 Seattle, WA 98104-3188
(2:21-cv-00728-RSM)                                                         (206) 464-7744

1.9.     The Consumer Protection Division of the Attorney General's Office has not completed its investigation, discovery in this action, analysis, or preparations for trial. Discovery is ongoing in this matter, and each response is true and correct to the best of the knowledge of the Consumer Protection Division of the Attorney General's Office as of this date. Plaintiff expressly reserves the right to continue its discovery, investigation, and trial preparation and supplement these Responses and Objections at any time. Plaintiff specifically reserves the right to present additional information disclosed through continuing investigation and discovery at trial.

1.10.     Plaintiff reserves the right to raise in any subsequent proceeding or in the trial of this or any other action all questions of authenticity, foundation, relevancy, materiality, privilege, and evidentiary admissibility of any information provided or identified in these Responses.

1.11.     By responding to the Interrogatories, the State does not concede the relevancy, materiality, or admissibility of any such information.

1.12.     Plaintiff objects to the instructions insofar as they impose a continuing duty that conflicts with the requirements of Federal Rule of Civil Procedure 26(e) regarding supplementation.

## OBJECTIONS TO DEFINITIONS

1.13.     Plaintiff objects to Definition No. 2 ("Identify" or "Identification" with respect to persons) on the ground that to the extent a Request seeks information produced by third parties in response to Civil Investigative Demands, such are privileged and protected from discovery pursuant to RCW 19.86.110.

STATE'S RESPONSES AND OBJECTIONS TO
DEFENDANTS' INTERROGATORIES AND
REQUESTS FOR PRODUCTION TO PLAINTIFF
STATE OF WASHINGTON - 4
(2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1.14.   Plaintiff objects to Definition No. 3 ("Identify" or "Identification" with respect to documents) on the grounds that to the extent this request seeks documents and information produced by third parties in response to Civil Investigative Demands, such are privileged and protected from discovery pursuant to RCW 19.86.110.

1.15.   Plaintiff objects to Definition No. 4 ("Identify" or "Identification" with respect to oral communications) on the grounds that to the extent this request seeks documents and information produced by third parties in response to Civil Investigative Demands, such are privileged and protected from discovery pursuant to RCW 19.86.110.

1.16.   Plaintiff objects to Definition No. 5 ("Identify" or "Identification" with respect to events) on the grounds that to the extent this request seeks documents and information produced by third parties in response to Civil Investigative Demands, such are privileged and protected from discovery pursuant to RCW 19.86.110.

1.17.   Plaintiff objects to Definition No. 6 ("Identify" or "Identification" with respect to any other matter) on the grounds that it is overly broad, vague, and ambiguous and cannot be understood without clarification. Moreover, Plaintiff objects to this Definition as unduly burdensome and as exceeding the requirements of the Superior Court Civil Rules because it does not limit the response requested "to the extent known." Plaintiff further objects to this Definition on that grounds that to the extent this request seeks documents and information produced by third parties in response to Civil Investigative Demands, such are privileged and protected from discovery pursuant to RCW 19.86.110.

1.18.   Plaintiff objects to Definition No. 7 as overly broad. The Consumer Protection (CP) Division of the Washington Attorney General's Office is the only entity for which "party"

STATE'S RESPONSES AND OBJECTIONS TO
DEFENDANTS' INTERROGATORIES AND
REQUESTS FOR PRODUCTION TO PLAINTIFF
STATE OF WASHINGTON - 5
(2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

discovery—including Rule 33 Interrogatories and Rule 34 Requests for Production—is appropriate. Generally, the CP Division does not have possession, custody, or control of documents belonging to or in the possession of other state agencies or divisions, unless such materials are obtained at the direction of Plaintiff's counsel in the course of an investigation and in anticipation of litigation. Should Defendant wish to inquire with these agencies, institutions, or divisions, they must serve subpoenas pursuant to Rule 45. Plaintiff's responses herein understand "You" and "Your" should be read as referring to the CP Division of the Washington State Attorney General's Office, and excluding other Washington State agencies and/or departments.

1.19.   All Requests will be responded to as written and understood by the State of Washington. Plaintiff will not read into any Request any additional language not found in the Request. Each of the foregoing General Objections and objections to Defendant's Definitions and Instructions is incorporated by reference into Plaintiff's specific Responses below. Any objections to all or part of a specific Interrogatory do not limit or restrict Plaintiff's general objections and objections to Defendant's Definitions and Instructions set forth above.

## II.    RESPONSE TO INTERROGATORIES AND REQUESTS FOR PRODUCTION

**INTERROGATORY NO. 1:** Please identify any individual or entity that has provided responsive information to any of these interrogatories, including their name, address where they may be served, telephone number, email address, and to which interrogatories they provided responsive information.

**ANSWER:** Plaintiff specifically objects to this Interrogatory as seeking, in part, information protected and/or privileged from discovery by the attorney client privilege, the

STATE'S RESPONSES AND OBJECTIONS TO
DEFENDANTS' INTERROGATORIES AND
REQUESTS FOR PRODUCTION TO PLAINTIFF
STATE OF WASHINGTON - 6
(2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  attorney work product doctrine, and consulting expert privilege. The information requested is

2  also protected by the attorney work product doctrine in that it encompasses information and/or

3  materials compiled by Plaintiff's counsel in anticipation or furtherance of litigation, together

4  with mental impressions, thought processes, conclusions, legal theories, and legal opinions. In

5  addition, this Interrogatory seeks, in part, information that will be the subject of expert testimony.

6  Accordingly, it is improper under the consulting expert privilege. Plaintiff will identify and

7  disclose its testifying expert witnesses pursuant to the Federal Rules of Civil Procedure, Western

8  District of Washington Local Rules, and the Case Schedule in this matter. To the extent this

9  Interrogatory seeks information produced by third parties in response to Civil Investigative

10 Demands, such are privileged and protected from discovery pursuant to RCW 19.86.110.

11 Plaintiff objects to the term "responsive information" as vague.

12         To the extent this Interrogatory seeks the identity of those individuals with whom counsel

13 for Plaintiff has communicated with in advancing the Plaintiff's case, disclosure of that

14 information would reveal attorney work product. *See* General Objection 1.7. Plaintiff has already

15 provided the names of individuals who may possess knowledge of relevant information in this

16 case. *See* Plaintiff's witness disclosures served on January 20, 2023. Discovery is ongoing and

17 Plaintiff reserves the right to supplement its response to this Interrogatory.

18         Subject to and without waiving said objections, Plaintiff refers Defendant to the operative

19 Complaint; to the parties' initial disclosures; Plaintiff's expert reports to be served on date of

20 disclosure; and to Defendants' responses to Civil Investigative Demands.

21         **REQUEST FOR PRODUCTION NO. 1:** Please produce all correspondence or

22 documents sent to or received from any individual or entity that has provided responsive

23 information to any of these interrogatories.

24         **RESPONSE:** Plaintiff specifically objects to this Request as overly broad, vague, and

25 ambiguous as to the recipient of the referenced correspondence or documents, and reads this

26 request as seeking "correspondence or documents sent to or received by the CP Division . . . that

STATE'S RESPONSES AND OBJECTIONS TO
DEFENDANTS' INTERROGATORIES AND
REQUESTS FOR PRODUCTION TO PLAINTIFF
STATE OF WASHINGTON - 7
(2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

has provided responsive information to the CP Division . . ." Plaintiff also objects to the term "responsive information" as vague. Plaintiff further objects to this Request as seeking, in part, information protected and/or privileged from discovery by the attorney client privilege, the attorney work product doctrine, and consulting expert privilege. The information requested is also protected by the attorney work product doctrine in that it encompasses information and/or materials compiled by Plaintiff's counsel in anticipation or furtherance of litigation, and the selection of these documents call for mental impressions, thought processes, conclusions, legal theories, and legal opinions. In addition, this Request seeks, in part, documents relevant to expert testimony, the production of which is governed by Federal Rule of Civil Procedure 26(b). Accordingly, it is improper under the consulting expert privilege. Plaintiff will identify and disclose its testifying expert witnesses pursuant to the Federal Rules of Civil Procedure, Western District of Washington Local Rules, and the Case Schedule in this matter. To the extent this Request seeks information produced by third parties in response to Civil Investigative Demands, such are privileged and protected from discovery pursuant to RCW 19.86.110.

To the extent this Request seeks the identity of those individuals with whom counsel for Plaintiff has communicated with in advancing the Plaintiff's case, disclosure of that information would reveal attorney work product. *See* General Objection 1.7. Discovery is ongoing and Plaintiff reserves the right to supplement its response to this Request.

Subject to and without waiving said objections, Plaintiff refers Defendant to the operative Complaint; to the parties' initial disclosures; Plaintiff's expert reports to be served on date of disclosure; and to Defendants' responses to Civil Investigative Demands. Plaintiff will conduct a search for responsive documents and will produce non-privileged, responsive documents not already in Defendant's possession.

**INTERROGATORY NO. 2:** Please identify any individual or entity the State of Washington has contacted pursuant to this litigation or any pre-litigation civil investigative matter, including, but not limited to, the name, individual contact or contacts (if an entity),

STATE'S RESPONSES AND OBJECTIONS TO DEFENDANTS' INTERROGATORIES AND REQUESTS FOR PRODUCTION TO PLAINTIFF STATE OF WASHINGTON - 8 (2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON Consumer Protection Division 800 Fifth Avenue, Suite 2000 Seattle, WA 98104-3188 (206) 464-7744

1   address, telephone number, and email address.

2   **ANSWER:** Plaintiff specifically objects to this Interrogatory as seeking, in part,

3   information protected and/or privileged from discovery by the attorney client privilege, the

4   attorney work product doctrine, and consulting expert privilege. The information requested is

5   also protected by the attorney work product doctrine in that it encompasses information and/or

6   materials compiled by Plaintiff's counsel in anticipation or furtherance of litigation, and the

7   selection of these documents call for mental impressions, thought processes, conclusions, legal

8   theories, and legal opinions. In addition, this Interrogatory seeks, in part, information relevant to

9   expert testimony, the production of which is governed by Federal Rule of Civil Procedure 26(b).

10  Accordingly, it is improper under the consulting expert privilege. Plaintiff will identify and

11  disclose its testifying expert witnesses pursuant to the Federal Rules of Civil Procedure, Western

12  District of Washington Local Rules, and the Case Schedule in this matter. To the extent this

13  Interrogatory seeks information produced by third parties in response to Civil Investigative

14  Demands, such are privileged and protected from discovery pursuant to RCW 19.86.110.

15  Plaintiff also objects to this Interrogatory as overly broad, vague and ambiguous as to the

16  definition of "any pre-litigation civil investigative matter" in that it could be interpreted as any

17  investigation ever undertaken by the AGO for all of time.  It is therefore also unduly burdensome

18  in that it is not limited to information relevant to this case or limited in scope as to time.

19  Additionally, the Interrogatory is overly broad, unduly burdensome, and improper in scope in

20  that it seeks information from the State of Washington as a whole and is not limited to the

21  Plaintiff CP Division. *See* Objection to Definition 7 ("you" and "your"). Plaintiff objects to the

22  compound nature of the Interrogatory.

23      To the extent this Interrogatory seeks the identity of those individuals with whom counsel

24  for Plaintiff has communicated with in advancing the Plaintiff's case, disclosure of that

25  information would reveal attorney work product. *See* General Objection 1.7. Plaintiff has already

26  provided the names of individuals who may possess knowledge of relevant information in this

STATE'S RESPONSES AND OBJECTIONS TO
DEFENDANTS' INTERROGATORIES AND
REQUESTS FOR PRODUCTION TO PLAINTIFF
STATE OF WASHINGTON - 9
(2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

case. *See* Plaintiff's witness disclosures served on January 20, 2023. Discovery is ongoing and Plaintiff reserves the right to supplement its response to this Interrogatory.

Subject to and without waiving said objections, Plaintiff refers Defendant to the operative Complaint; to the parties' initial disclosures; Plaintiff's expert reports to be served on date of disclosure; and to Defendants' responses to Civil Investigative Demands.

**REQUEST FOR PRODUCTION NO. 2:** Please produce all correspondence or documents sent to or received from any individual or entity the State of Washington has contacted pursuant to this litigation or any pre-litigation civil investigative matter.

**RESPONSE:** Plaintiff specifically objects to this Request as overly broad, vague, and ambiguous as to the recipient of the referenced correspondence or documents, and reads this request as seeking "correspondence or documents sent to or received by the CP Division." Plaintiff also objects to this Interrogatory as overly broad, vague and ambiguous as to the definition of "any pre-litigation civil investigative matter" in that it could be interpreted as any investigation ever undertaken by the AGO for all of time.  It is therefore also unduly burdensome in that it is not limited to information relevant to this case or limited in scope as to time. Plaintiff further objects to this Request as seeking, in part, information protected and/or privileged from discovery by the attorney client privilege, the attorney work product doctrine, and consulting expert privilege. The information requested is also protected by the attorney work product doctrine in that it encompasses information and/or materials compiled by Plaintiff's counsel in anticipation or furtherance of litigation, and the selection of these documents call for mental impressions, thought processes, conclusions, legal theories, and legal opinions. In addition, this Request seeks, in part, documents relevant to expert testimony, the production of which is governed by Federal Rule of Civil Procedure 26(b) and subject to the consulting expert privilege. Plaintiff will identify and disclose its testifying expert witnesses pursuant to the Federal Rules of Civil Procedure, Western District of Washington Local Rules, and the Case Schedule in this matter. To the extent this Request seeks information produced by third parties in response to

1   Civil Investigative Demands, such are privileged and protected from discovery pursuant to RCW

2   19.86.110. Additionally, the Interrogatory is overly broad, unduly burdensome, and improper in

3   scope in that it seeks information in the possession of "the State of Washington" and is not

4   limited to the Plaintiff CP Division. *See* Objection to Definition 7 ("you" and "your"). Plaintiff

5   objects to the compound nature of the Request.

6       To the extent this Request seeks the identity of those individuals with whom counsel for

7   Plaintiff has communicated with in advancing the Plaintiff's case, disclosure of that information

8   would reveal attorney work product. *See* General Objection 1.7. Discovery is ongoing and

9   Plaintiff reserves the right to supplement its response to this Request.

10      Subject to and without waiving said objections, Plaintiff refers Defendant to the operative

11  Complaint; to the parties' initial disclosures; Plaintiff's expert reports to be served on date of

12  disclosure; and to Defendants' responses to Civil Investigative Demands. Plaintiff will conduct

13  a search for responsive documents and will produce non-privileged, responsive documents not

14  already in Defendant's possession.

15      **INTERROGATORY NO. 3:** Please identify any individual or entity You believe to

16  have discoverable information in this matter, including but not limited to, the name, individual

17  contact or contacts (if an entity), address, telephone number, and email address.

18      **ANSWER:** Plaintiff specifically objects to this Interrogatory as seeking, in part,

19  information protected and/or privileged from discovery by the attorney client privilege, the

20  attorney work product doctrine, and consulting expert privilege. The information requested is

21  also protected by the attorney work product doctrine in that it encompasses information and/or

22  materials compiled by Plaintiff's counsel in anticipation or furtherance of litigation, and the

23  selection of these documents call for mental impressions, thought processes, conclusions, legal

24  theories, and legal opinions. In addition, this Interrogatory seeks, in part, information that will

25  be the subject of expert testimony, and is therefore subject to the consulting expert privilege.

26  Plaintiff will identify and disclose its testifying expert witnesses pursuant to the Federal Rules

STATE'S RESPONSES AND OBJECTIONS TO
DEFENDANTS' INTERROGATORIES AND
REQUESTS FOR PRODUCTION TO PLAINTIFF
STATE OF WASHINGTON - 11
(2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

of Civil Procedure, Western District of Washington Local Rules, and the Case Schedule in this matter. To the extent this Interrogatory seeks information produced by third parties in response to Civil Investigative Demands, such are privileged and protected from discovery pursuant to RCW 19.86.110. Plaintiff objects to the term "discoverable information" as vague and ambiguous. Additionally, this Interrogatory contains a definition of "you" and "your" that goes beyond the Consumer Protection Division of the Washington Attorney General's Office, and is therefore improper in scope.

To the extent this Interrogatory seeks the identity of those individuals with whom counsel for Plaintiff has communicated with in advancing the Plaintiff's case, disclosure of that information would reveal attorney work product. *See* General Objection 1.7.  Discovery is ongoing and Plaintiff reserves the right to supplement its response to this Interrogatory.

Subject to and without waiving said objections, Plaintiff refers Defendant to the operative Complaint; to Defendants' responses to Civil Investigative Demands; and to the parties' initial disclosures containing the names of individuals who may possess knowledge of relevant information in this case. *See* Plaintiff's witness disclosures served on January 20, 2023. Plaintiff's experts will be disclosed pursuant to the Case Schedule and applicable court rules..

**REQUEST FOR PRODUCTION NO. 3:** Please produce all correspondence or documents sent to or received from any individual or entity You believe to have discoverable information in this matter.

**RESPONSE:** Plaintiff specifically objects to this Request as overly broad, vague, and ambiguous as to the recipient of the referenced correspondence or documents, and reads this request as seeking "correspondence or documents sent to or received by the CP Division." Additionally, the Request contains a definition of "you" and "your" that goes beyond the Consumer Protection Division of the Washington Attorney General's Office, and is therefore improper in scope. Plaintiff further objects to this Request as seeking, in part, information protected and/or privileged from discovery by the attorney client privilege, the attorney work

STATE'S RESPONSES AND OBJECTIONS TO DEFENDANTS' INTERROGATORIES AND REQUESTS FOR PRODUCTION TO PLAINTIFF STATE OF WASHINGTON - 12 (2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON Consumer Protection Division 800 Fifth Avenue, Suite 2000 Seattle, WA 98104-3188 (206) 464-7744

product doctrine, and consulting expert privilege. The information requested is also protected by the attorney work product doctrine in that it encompasses information and/or materials compiled by Plaintiff's counsel in anticipation or furtherance of litigation, and the selection of these documents call for mental impressions, thought processes, conclusions, legal theories, and legal opinions. In addition, this Request seeks, in part, documents and information relevant to expert testimony, the production of which is governed by Federal Rule of Civil Procedure 26(b) and subject to expert privilege and the consulting expert privilege. Plaintiff will identify and disclose its testifying expert witnesses pursuant to the Federal Rules of Civil Procedure, Western District of Washington Local Rules, and the Case Schedule in this matter. To the extent this Request seeks information produced by third parties in response to Civil Investigative Demands, such are privileged and protected from discovery pursuant to RCW 19.86.110. Plaintiff objects to the term "discoverable information" as vague.

To the extent this Request seeks the identity of those individuals with whom counsel for Plaintiff has communicated with in advancing the Plaintiff's case, disclosure of that information would reveal attorney work product. *See* General Objection 1.7. Discovery is ongoing and Plaintiff reserves the right to supplement its response to this Request.

Subject to and without waiving said objections, Plaintiff refers Defendant to the operative Complaint; to the parties' initial disclosures; Plaintiff's expert reports to be served on date of disclosure; and to Defendants' responses to Civil Investigative Demands. Plaintiff will conduct a search for responsive documents and will produce non-privileged, responsive documents not already in Defendant's possession.

**INTERROGATORY NO. 4:** If you contend that any person or entity to which Landmark Technology A, LLC, either sent a settlement demand letter or engaged in litigation, or against whom Landmark Technology A, LLC sought to enforce its rights to the '508 Patent, did not infringe on any, either, or all of claims 1 through 7 or 16 through 17 of the '508 Patent, please describe in detail any basis for such contention as to each such person or entity, including

STATE'S RESPONSES AND OBJECTIONS TO DEFENDANTS' INTERROGATORIES AND REQUESTS FOR PRODUCTION TO PLAINTIFF STATE OF WASHINGTON - 13 (2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  this Request seeks information produced by third parties in response to Civil Investigative

2  Demands, such are privileged and protected from discovery pursuant to RCW 19.86.110.

3  Additionally, the Request contains a definition of "State" that goes beyond the Consumer

4  Protection Division of the Washington Attorney General's Office, and is therefore overly broad,

5  vague, ambiguous, and improper in scope. Plaintiff interprets this request as seeking

6  "information regarding any and all communications between the CP Division and . . ." Plaintiff

7  objects to the term "other information" as vague. Plaintiff objects to the compound nature of the

8  Request. Discovery is ongoing and Plaintiff reserves the right to supplement its response to this

9  Request.

10         Subject to and without waiving said objections, responds as follows: Plaintiff will

11  conduct a search for responsive documents and will produce any non-privileged, responsive

12  documents not already in Defendant's possession.

13         **INTERROGATORY NO. 24:** Please describe in detail any infringement analysis

14  conducted by any person or entity on your behalf regarding the '508 Patent, including, but not

15  limited to:

16         (1)    The date the analysis was conducted;

17         (2)    Who conducted the analysis;

18         (3)    Whether the person conducting the analysis was provided any patent

19                infringement analysis conducted by Landmark Technology A, LLC or Landmark

20                Technology, LLC; and

21         (4)    The results of the analysis.

22         **ANSWER:** Plaintiff specifically objects to this Interrogatory as seeking, in part,

23  information protected and/or privileged from discovery by the attorney client privilege, the

24  attorney work product doctrine, and consulting expert privilege. The information requested is

25  also protected by the attorney work product doctrine in that it encompasses information and/or

26  materials compiled by Plaintiff's counsel in anticipation or furtherance of litigation, and the

STATE'S RESPONSES AND OBJECTIONS TO
DEFENDANTS' INTERROGATORIES AND
REQUESTS FOR PRODUCTION TO PLAINTIFF
STATE OF WASHINGTON - 99
(2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  selection of these documents call for mental impressions, thought processes, conclusions, legal

2  theories, and legal opinions. In addition, this Interrogatory seeks, in part, information relevant to

3  expert testimony, the production of which is governed by Federal Rule of Civil Procedure 26(b)

4  and subject to the expert privilege. Plaintiff will identify and disclose its testifying expert

5  witnesses pursuant to the Federal Rules of Civil Procedure, Western District of Washington

6  Local Rules, and the Case Schedule in this matter. To the extent this Interrogatory seeks

7  information produced by third parties in response to Civil Investigative Demands, such are

8  privileged and protected from discovery pursuant to RCW 19.86.110. Additionally, the

9  Interrogatory contains a definition of "you" and "your" that goes beyond the Consumer

10  Protection Division of the Washington Attorney General's Office, and is therefore overly broad,

11  unduly burdensome, and improper in scope. *See* Objection to Definition 7 ("you" and "your").

12  Plaintiff reads "you" and "your" to mean the CP Division. Plaintiff objects to the compound

13  nature of the Interrogatory. Discovery is ongoing and Plaintiff reserves the right to supplement

14  its response to this Interrogatory.

15  **REQUEST FOR PRODUCTION NO. 28:** Please produce any and all documents

16  pertaining to any infringement analysis conducted by any person or entity on your behalf

17  regarding the '508 Patent.

18  **RESPONSE:** Plaintiff specifically objects to this Request as seeking, in part,

19  information protected and/or privileged from discovery by the attorney client privilege, the

20  attorney work product doctrine, and consulting expert privilege. The information requested is

21  also protected by the attorney work product doctrine in that it encompasses information and/or

22  materials compiled by Plaintiff's counsel in anticipation or furtherance of litigation, and the

23  selection of these documents call for mental impressions, thought processes, conclusions, legal

24  theories, and legal opinions. In addition, this Request seeks, in part, information that relevant to

25  expert testimony, the production of which is governed by Federal Rule of Civil Procedure 26(b)

26  and subject to the expert privilege. Plaintiff will identify and disclose its testifying expert

STATE'S RESPONSES AND OBJECTIONS TO
DEFENDANTS' INTERROGATORIES AND
REQUESTS FOR PRODUCTION TO PLAINTIFF
STATE OF WASHINGTON - 100
(2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  witnesses pursuant to the Federal Rules of Civil Procedure, Western District of Washington
2  Local Rules, and the Case Schedule in this matter. To the extent this Request seeks information
3  produced by third parties in response to Civil Investigative Demands, such are privileged and
4  protected from discovery pursuant to RCW 19.86.110. Additionally, the Request contains a
5  definition of "you" and "your" that goes beyond the Consumer Protection Division of the
6  Washington Attorney General's Office, and is overly broad, unduly burdensome, and improper
7  in scope. *See* Objection to Definition 7 ("you" and "your"). Plaintiff reads "you" and "your"
8  to mean the CP Division. Discovery is ongoing and Plaintiff reserves the right to supplement its
9  response to this Request.

10        Subject to and without waiving said objections, responds as follows: Plaintiff will
11  conduct a search for responsive documents and will produce any non-privileged, responsive
12  documents not already in Defendant's possession.

13        **INTERROGATORY NO. 25:** Please describe in detail any calculation of damages you
14  believe to be due from the State as a result of Defendants' alleged conduct, including, but not
15  limited to:

16        (1)    of revenues or profits you believe to have been improperly gained by Landmark
17               Technology A, LLC from Washington entities;

18        (2)    Any civil penalties you believe to be due, including your calculation of the same;

19        (3)    Any attorneys' fees you believe to be due, including your calculation of the same.

20        **ANSWER:** Plaintiff specifically objects to this Interrogatory as seeking, in part,
21  information protected and/or privileged from discovery by the attorney client privilege, the
22  attorney work product doctrine, and consulting expert privilege. The information requested is
23  also protected by the attorney work product doctrine in that it encompasses information and/or
24  materials compiled by Plaintiff's counsel in anticipation or furtherance of litigation, and the
25  selection of these documents call for mental impressions, thought processes, conclusions, legal
26  theories, and legal opinions. In addition, this Interrogatory seeks, in part, information relevant to

STATE'S RESPONSES AND OBJECTIONS TO
DEFENDANTS' INTERROGATORIES AND
REQUESTS FOR PRODUCTION TO PLAINTIFF
STATE OF WASHINGTON - 101
(2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1

2          OBJECTIONS DATED this 25th day of April, 2024.

3

4                                    ROBERT W. FERGUSON
5                                    Attorney General

6

7                                     s/ Aaron J. Fickes
                                     Aaron J. Fickes, WSBA No. 51584
8                                    Ben J. Brysacz, WSBA No. 54683
                                     Heidi C. Anderson, WSBA No. 37603
9                                    Michael Hall, WSBA No. 19871
                                     Bob Hyde, WSBA No. 33593
10                                   Assistant Attorneys General
                                     *Attorneys for Plaintiff*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

STATE'S RESPONSES AND OBJECTIONS TO
DEFENDANTS' INTERROGATORIES AND
REQUESTS FOR PRODUCTION TO PLAINTIFF
STATE OF WASHINGTON - 106
(2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1

**CERTIFICATE OF SERVICE**

2          I certify that I caused a copy of the foregoing to be served on the following parties via

3   the following methods:

4

5                                                               ☐Legal Messenger

           Justin P. Walsh                                      ☐First-Class Mail, Postage Prepaid
6          Gleam Law, PLLC
           605 1st Avenue, Suite 330                            ☐Certified Mail, Receipt Requested
7          Seattle, WA 98104                                    ☒Email
8          justin@gleamlaw.com                                  ☐E-Service

9

10         I certify, under penalty of perjury under the laws of the State of Washington, that the

11   foregoing is true and correct.

12

13

14         DATED this 25th day of April, 2024, at Seattle, Washington.

15

16                                              *s/ Aaron J. Fickes*
                                                Assistant Attorney General
17

18

19

20

21

22

23

24

25

26

# EXHIBIT 5

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STATE OF WASHINGTON,

Plaintiff,

v.

LANDMARK TECHNOLOGY A, LLC,
and RAYMOND MERCADO, individually,

Defendants.

NO. 2:21-cv-00728-RSM

STATE'S **FIRST SUPPLEMENTAL** RESPONSES AND OBJECTIONS TO DEFENDANTS' INTERROGATORIES AND REQUESTS FOR PRODUCTION TO PLAINTIFF STATE OF WASHINGTON

Pursuant to Fed. R. Civ. P. 26, 33, and 34, Plaintiff State of Washington, by and through the Consumer Protection Division of the Attorney General's Office, sets forth its responses and objections to Defendant Landmark Technology A, LLC's (Defendant or LTA) First Set of Interrogatories and Requests for Production to Plaintiff State of Washington.

## I.    GENERAL OBJECTIONS

1.1.    The following General Objections are stated for purposes of preserving certain objections and apply to each interrogatory and request for production (collectively, Requests). Plaintiff objects generally to Defendant's prefatory Instructions and Definitions and to each

Interrogatory to the extent they purport to impose any duty or obligation beyond those required in the Federal Rules of Civil Procedure and the U.S. District Court for the Western District of Washington Local Civil Rules. Plaintiff neither agrees to nor stipulates to the Defendant's discovery Instructions or Definitions.

      1.2.    The following responses are made solely for the purposes of, and in relation to, this litigation, and Plaintiff objects to any other use of these responses.

      1.3.    Plaintiff objects to each Request insofar as it seeks materials or information beyond the scope of permissible discovery or irrelevant to the subject matter of this lawsuit and not reasonably calculated to lead to the discovery of admissible evidence.

      1.4.    Plaintiff objects to each Request that requires undue burden and expense to supply information that is readily accessible to Defendant or otherwise available in the public domain, including but not limited to the instruction to furnish "such information as is available to you." To the extent that an answer to an interrogatory may be ascertained from Plaintiff's business records and the burden of ascertaining the answer is substantially the same for Defendant, Plaintiff will specify the records from which the answer may be ascertained or derived.

      1.5.    Plaintiff objects to each Request to the extent it is cumulative of other Requests or the information sought is obtainable from another source or discovery method that is more convenient, less burdensome, or less expensive.

      1.6.    Plaintiff objects to each Request to the extent it calls for information protected and/or privileged from discovery by the attorney client privilege, the attorney work product doctrine, the common interest doctrine and agreement, and/or the privacy rights of third parties.

STATE'S **FIRST SUPPLEMENTAL** RESPONSES
AND OBJECTIONS TO DEFENDANTS'
INTERROGATORIES AND REQUESTS FOR
PRODUCTION TO PLAINTIFF STATE OF
WASHINGTON - 2
(2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

By responding to these Interrogatories, Plaintiff does not intend to waive any applicable privilege or protection.

1.7.     Plaintiff objects to each Request to the extent it seeks the identity of individuals with whom counsel for Plaintiff has communicated in advancing its case, as disclosure of that information would reveal attorney work product. *See United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 270 F. Supp. 3d 220, 225 (D.D.C. 2017) ("Based on this line of reasoning, Plaintiff is 'free to ask for names of persons with knowledge of the facts, but it is not entitled, through [Claimant], to the identification of who among such knowledgeable individuals have been interviewed by [Claimant's counsel].'… After all, to grant such a request would be to reveal to Plaintiff, Claimant's adversary in this litigation, how Claimant and his counsel 'choose to prepare their case, the efforts they undertake, and the people they interview'—all information that falls within the scope of the work-product doctrine.") (citing *Seven Hanover Assocs., LLC v. Jones Lang LaSalle Americas, Inc.*, 2005 WL 3358597, at *1 n.1 (S.D.N.Y. Dec. 7, 2005); *Dist. Council of New York City and Vicinity of United Bhd. Of Carpenters and Joiners of America*, 1992 WL 208284, at *10); *see also Com. of Mass. v. First Nat. Supermarkets, Inc.*, 112 F.R.D. 149, 152–53 (D. Mass. 1986) ("[I]nterrogatories which seek the names of persons interviewed by an adverse party's attorney together with the dates and places of such interviews are improper.").

1.8.     In the event of the inadvertent release of privileged information, Plaintiff does not waive any applicable privilege and requests that Defendant promptly return, sequester, or destroy the privileged information and any copies in the manner required by Fed. R. Civ. Proc. 26(b)(5).

STATE'S **FIRST SUPPLEMENTAL** RESPONSES
AND OBJECTIONS TO DEFENDANTS'
INTERROGATORIES AND REQUESTS FOR
PRODUCTION TO PLAINTIFF STATE OF
WASHINGTON - 3
(2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1.9.    The Consumer Protection Division of the Attorney General's Office has not completed its investigation, discovery in this action, analysis, or preparations for trial. Discovery is ongoing in this matter, and each response is true and correct to the best of the knowledge of the Consumer Protection Division of the Attorney General's Office as of this date. Plaintiff expressly reserves the right to continue its discovery, investigation, and trial preparation and supplement these Responses and Objections at any time. Plaintiff specifically reserves the right to present additional information disclosed through continuing investigation and discovery at trial.

1.10.    Plaintiff reserves the right to raise in any subsequent proceeding or in the trial of this or any other action all questions of authenticity, foundation, relevancy, materiality, privilege, and evidentiary admissibility of any information provided or identified in these Responses.

1.11.    By responding to the Interrogatories, the State does not concede the relevancy, materiality, or admissibility of any such information.

1.12.    Plaintiff objects to the instructions insofar as they impose a continuing duty that conflicts with the requirements of Federal Rule of Civil Procedure 26(e) regarding supplementation.

## OBJECTIONS TO DEFINITIONS

1.13.    Plaintiff objects to Definition No. 2 ("Identify" or "Identification" with respect to persons) on the ground that to the extent a Request seeks information produced by third parties in response to Civil Investigative Demands, such are privileged and protected from discovery pursuant to RCW 19.86.110.

STATE'S **FIRST SUPPLEMENTAL** RESPONSES
AND OBJECTIONS TO DEFENDANTS'
INTERROGATORIES AND REQUESTS FOR
PRODUCTION TO PLAINTIFF STATE OF
WASHINGTON - 4
(2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1.14.    Plaintiff objects to Definition No. 3 ("Identify" or "Identification" with respect to documents) on the grounds that to the extent this request seeks documents and information produced by third parties in response to Civil Investigative Demands, such are privileged and protected from discovery pursuant to RCW 19.86.110.

1.15.    Plaintiff objects to Definition No. 4 ("Identify" or "Identification" with respect to oral communications) on the grounds that to the extent this request seeks documents and information produced by third parties in response to Civil Investigative Demands, such are privileged and protected from discovery pursuant to RCW 19.86.110.

1.16.    Plaintiff objects to Definition No. 5 ("Identify" or "Identification" with respect to events) on the grounds that to the extent this request seeks documents and information produced by third parties in response to Civil Investigative Demands, such are privileged and protected from discovery pursuant to RCW 19.86.110.

1.17.    Plaintiff objects to Definition No. 6 ("Identify" or "Identification" with respect to any other matter) on the grounds that it is overly broad, vague, and ambiguous and cannot be understood without clarification. Moreover, Plaintiff objects to this Definition as unduly burdensome and as exceeding the requirements of the Superior Court Civil Rules because it does not limit the response requested "to the extent known." Plaintiff further objects to this Definition on that grounds that to the extent this request seeks documents and information produced by third parties in response to Civil Investigative Demands, such are privileged and protected from discovery pursuant to RCW 19.86.110.

1.18.    Plaintiff objects to Definition No. 7 as overly broad. The Consumer Protection (CP) Division of the Washington Attorney General's Office is the only entity for which "party"

STATE'S **FIRST SUPPLEMENTAL** RESPONSES
AND OBJECTIONS TO DEFENDANTS'
INTERROGATORIES AND REQUESTS FOR
PRODUCTION TO PLAINTIFF STATE OF
WASHINGTON - 5
(2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

discovery—including Rule 33 Interrogatories and Rule 34 Requests for Production—is appropriate. Generally, the CP Division does not have possession, custody, or control of documents belonging to or in the possession of other state agencies or divisions, unless such materials are obtained at the direction of Plaintiff's counsel in the course of an investigation and in anticipation of litigation. Should Defendant wish to inquire with these agencies, institutions, or divisions, they must serve subpoenas pursuant to Rule 45. Plaintiff's responses herein understand "You" and "Your" should be read as referring to the CP Division of the Washington State Attorney General's Office, and excluding other Washington State agencies and/or departments.

1.19.   All Requests will be responded to as written and understood by the State of Washington. Plaintiff will not read into any Request any additional language not found in the Request. Each of the foregoing General Objections and objections to Defendant's Definitions and Instructions is incorporated by reference into Plaintiff's specific Responses below. Any objections to all or part of a specific Interrogatory do not limit or restrict Plaintiff's general objections and objections to Defendant's Definitions and Instructions set forth above.

## II.   RESPONSE TO INTERROGATORIES AND REQUESTS FOR PRODUCTION

**INTERROGATORY NO. 1:** Please identify any individual or entity that has provided responsive information to any of these interrogatories, including their name, address where they may be served, telephone number, email address, and to which interrogatories they provided responsive information.

**ANSWER:** Plaintiff specifically objects to this Interrogatory as seeking, in part, information protected and/or privileged from discovery by the attorney client privilege, the attorney work

STATE'S **FIRST SUPPLEMENTAL** RESPONSES AND OBJECTIONS TO DEFENDANTS' INTERROGATORIES AND REQUESTS FOR PRODUCTION TO PLAINTIFF STATE OF WASHINGTON - 6 (2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

product doctrine, and consulting expert privilege. The information requested is also protected by the attorney work product doctrine in that it encompasses information and/or materials compiled by Plaintiff's counsel in anticipation or furtherance of litigation, together with mental impressions, thought processes, conclusions, legal theories, and legal opinions. In addition, this Interrogatory seeks, in part, information that will be the subject of expert testimony. Accordingly, it is improper under the consulting expert privilege. Plaintiff will identify and disclose its testifying expert witnesses pursuant to the Federal Rules of Civil Procedure, Western District of Washington Local Rules, and the Case Schedule in this matter. To the extent this Interrogatory seeks information produced by third parties in response to Civil Investigative Demands, such are privileged and protected from discovery pursuant to RCW 19.86.110. Plaintiff objects to the term "responsive information" as vague.

To the extent this Interrogatory seeks the identity of those individuals with whom counsel for Plaintiff has communicated with in advancing the Plaintiff's case, disclosure of that information would reveal attorney work product. *See* General Objection 1.7. Plaintiff has already provided the names of individuals who may possess knowledge of relevant information in this case. *See* Plaintiff's witness disclosures served on January 20, 2023. Discovery is ongoing and Plaintiff reserves the right to supplement its response to this Interrogatory.

Subject to and without waiving said objections, Plaintiff refers Defendant to the operative Complaint; to the parties' initial disclosures; Plaintiff's expert reports to be served on date of disclosure; and to Defendants' responses to Civil Investigative Demands.

**FIRST SUPPLEMENTAL RESPONSE:** Subject to and without waiving the previously asserted objections, Plaintiff further responds that the following entities provided responses, in some form, to Civil Investigative Demands:

The Essential Baking Company, Inc.
c/o Ben Hodges
1111 Third Avenue, Suite 3000

STATE'S **FIRST SUPPLEMENTAL** RESPONSES
AND OBJECTIONS TO DEFENDANTS'
INTERROGATORIES AND REQUESTS FOR
PRODUCTION TO PLAINTIFF STATE OF
WASHINGTON - 7
(2:21-cv-00728-RSM)

1   Seattle, WA 98101
    ben.hodges@foster.com
2   206.447.6282

3   Genesco, Inc.
    c/o Ben Hodges
4   1111 Third Avenue, Suite 3000
5   Seattle, WA 98101
    ben.hodges@foster.com
6   206.447.6282

7   Paint Sundries Solutions, Inc.
    c/o Ben Hodges
8   1111 Third Avenue, Suite 3000
9   Seattle, WA 98101
    ben.hodges@foster.com
10  206.447.6282

11  Specialty Bottle, Inc.
    c/o Ben Hodges
12  1111 Third Avenue, Suite 3000
    Seattle, WA 98101
13  ben.hodges@foster.com
14  206.447.6282

15  Stoneway Electric Supply Co.
    c/o Ben Hodges
16  1111 Third Avenue, Suite 3000
    Seattle, WA 98101
17  ben.hodges@foster.com
    206.447.6282
18

19  Thrift Books, LLC
    c/o Ben Hodges
20  1111 Third Avenue, Suite 3000
    Seattle, WA 98101
21  ben.hodges@foster.com
    206.447.6282
22

23  Totally Chocolate, LLC
    c/o Ben Hodges
24  1111 Third Avenue, Suite 3000
    Seattle, WA 98101
25  ben.hodges@foster.com
    206.447.6282
26

STATE'S **FIRST SUPPLEMENTAL** RESPONSES
AND OBJECTIONS TO DEFENDANTS'
INTERROGATORIES AND REQUESTS FOR
PRODUCTION TO PLAINTIFF STATE OF
WASHINGTON - 8
(2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Jones Soda Co (USA) Inc.
c/o Jeffrey A. Nelson
920 5th Avenue, Suite 3300
Seattle, WA 98104
jeffnelson@dwt.com

Insofar as Plaintiff is asserting privilege with respect to certain information, Plaintiff will provide a privilege log. Discovery is ongoing and Plaintiff reserves the right to supplement its response to this Interrogatory.

**REQUEST FOR PRODUCTION NO. 1:** Please produce all correspondence or documents sent to or received from any individual or entity that has provided responsive information to any of these interrogatories.

**RESPONSE:** Plaintiff specifically objects to this Request as overly broad, vague, and ambiguous as to the recipient of the referenced correspondence or documents, and reads this request as seeking "correspondence or documents sent to or received by the CP Division . . . that has provided responsive information to the CP Division . . ." Plaintiff also objects to the term "responsive information" as vague. Plaintiff further objects to this Request as seeking, in part, information protected and/or privileged from discovery by the attorney client privilege, the attorney work product doctrine, and consulting expert privilege. The information requested is also protected by the attorney work product doctrine in that it encompasses information and/or materials compiled by Plaintiff's counsel in anticipation or furtherance of litigation, and the selection of these documents call for mental impressions, thought processes, conclusions, legal theories, and legal opinions. In addition, this Request seeks, in part, documents relevant to expert testimony, the production of which is governed by Federal Rule of Civil Procedure 26(b). Accordingly, it is improper under the consulting expert privilege. Plaintiff will identify and disclose its testifying expert witnesses pursuant to the Federal Rules of Civil Procedure, Western District of Washington Local Rules, and the Case Schedule in this matter. To the extent this

STATE'S **FIRST SUPPLEMENTAL** RESPONSES AND OBJECTIONS TO DEFENDANTS' INTERROGATORIES AND REQUESTS FOR PRODUCTION TO PLAINTIFF STATE OF WASHINGTON - 9
(2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  Request seeks information produced by third parties in response to Civil Investigative Demands,

2  such are privileged and protected from discovery pursuant to RCW 19.86.110.

3      To the extent this Request seeks the identity of those individuals with whom counsel for

4  Plaintiff has communicated with in advancing the Plaintiff's case, disclosure of that information

5  would reveal attorney work product. *See* General Objection 1.7. Discovery is ongoing and

6  Plaintiff reserves the right to supplement its response to this Request.

7      Subject to and without waiving said objections, Plaintiff refers Defendant to the operative

8  Complaint; to the parties' initial disclosures; Plaintiff's expert reports to be served on date of

9  disclosure; and to Defendants' responses to Civil Investigative Demands. Plaintiff will conduct

10  a search for responsive documents and will produce non-privileged, responsive documents not

11  already in Defendant's possession.

12      **FIRST SUPPLEMENTAL RESPONSE:** Subject to and without waiving the

13  previously asserted objections, Plaintiff further responds that Plaintiff contacted the entities

14  identified in the First Supplemental Response to Interrogatory 1 on April 22, 2024 requesting

15  their consent to produce all materials provided in response to Civil Investigative Demands.

16  Plaintiff has provided those communications to Defendants. If those recipients do not consent,

17  Plaintiff will move for a court order seeking leave to produce said documents to Defendants.

18      In addition to the entities identified in the First Supplemental Response to Interrogatory

19  No. 1, Plaintiff sent Civil Investigative Demands to the following entities:

20

21      Oiselle Running
       c/o Northwest Registered Agent, LLC
22      906 W 2nd Ave, Suite # 100
       Spokane, WA 99201
23
       Shipwreck Beads
24      c/o Glenn S. Vincent
       8560 Commerce Place Dr. NE
25      Lacey, WA 98516

26

STATE'S **FIRST SUPPLEMENTAL** RESPONSES
AND OBJECTIONS TO DEFENDANTS'
INTERROGATORIES AND REQUESTS FOR
PRODUCTION TO PLAINTIFF STATE OF
WASHINGTON - 10
(2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1        Blade Tech
        c/o CT Corporation System
2        711 Capitol Way S, Suite # 204
        Olympia, WA 98501
3

4        Tom Binh
        c/o Patrick Irwin
5        106 Laurel St.
        Port Angeles, WA 98362
6

7        These entities did not provide formal responses to Plaintiff's Civil Investigative Demands. Plaintiff has searched for any responsive documents and will produce any such responsive communications or documents provided by these entities. Insofar as Plaintiff is asserting privilege with respect to certain documents, Plaintiff will provide a privilege log. Discovery is ongoing and Plaintiff reserves the right to supplement its response to this Request for Production.

**INTERROGATORY NO. 2:** Please identify any individual or entity the State of Washington has contacted pursuant to this litigation or any pre-litigation civil investigative matter, including, but not limited to, the name, individual contact or contacts (if an entity), address, telephone number, and email address.

**ANSWER:** Plaintiff specifically objects to this Interrogatory as seeking, in part, information protected and/or privileged from discovery by the attorney client privilege, the attorney work product doctrine, and consulting expert privilege. The information requested is also protected by the attorney work product doctrine in that it encompasses information and/or materials compiled by Plaintiff's counsel in anticipation or furtherance of litigation, and the selection of these documents call for mental impressions, thought processes, conclusions, legal theories, and legal opinions. In addition, this Interrogatory seeks, in part, information relevant to expert testimony, the production of which is governed by Federal Rule of Civil Procedure 26(b). Accordingly, it is improper under the consulting expert privilege. Plaintiff will identify and disclose its testifying expert witnesses pursuant to the Federal Rules of Civil Procedure, Western

STATE'S **FIRST SUPPLEMENTAL** RESPONSES AND OBJECTIONS TO DEFENDANTS' INTERROGATORIES AND REQUESTS FOR PRODUCTION TO PLAINTIFF STATE OF WASHINGTON - 11 (2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

District of Washington Local Rules, and the Case Schedule in this matter. To the extent this Interrogatory seeks information produced by third parties in response to Civil Investigative Demands, such are privileged and protected from discovery pursuant to RCW 19.86.110. Plaintiff also objects to this Interrogatory as overly broad, vague and ambiguous as to the definition of "any pre-litigation civil investigative matter" in that it could be interpreted as any investigation ever undertaken by the AGO for all of time. It is therefore also unduly burdensome in that it is not limited to information relevant to this case or limited in scope as to time. Additionally, the Interrogatory is overly broad, unduly burdensome, and improper in scope in that it seeks information from the State of Washington as a whole and is not limited to the Plaintiff CP Division. *See* Objection to Definition 7 ("you" and "your"). Plaintiff objects to the compound nature of the Interrogatory.

To the extent this Interrogatory seeks the identity of those individuals with whom counsel for Plaintiff has communicated with in advancing the Plaintiff's case, disclosure of that information would reveal attorney work product. *See* General Objection 1.7. Plaintiff has already provided the names of individuals who may possess knowledge of relevant information in this case. *See* Plaintiff's witness disclosures served on January 20, 2023. Discovery is ongoing and Plaintiff reserves the right to supplement its response to this Interrogatory.

Subject to and without waiving said objections, Plaintiff refers Defendant to the operative Complaint; to the parties' initial disclosures; Plaintiff's expert reports to be served on date of disclosure; and to Defendants' responses to Civil Investigative Demands.

**FIRST SUPPLEMENTAL RESPONSE:** Subject to and without waiving the previously asserted objections, Plaintiff further responds as follows: Please see Plaintiff's First Supplemental Response to Interrogatory No. 1, Plaintiff's First Supplemental Response to Request for Production No. 1, and the third parties listed in the communications contemporaneously produced with this supplemental responses.

STATE'S **FIRST SUPPLEMENTAL** RESPONSES
AND OBJECTIONS TO DEFENDANTS'
INTERROGATORIES AND REQUESTS FOR
PRODUCTION TO PLAINTIFF STATE OF
WASHINGTON - 12
(2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    Plaintiff will provide a privilege log. Discovery is ongoing and Plaintiff reserves the right

2    to supplement its response to this Interrogatory.

3    **REQUEST FOR PRODUCTION NO. 2:** Please produce all correspondence or

4    documents sent to or received from any individual or entity the State of Washington has

5    contacted pursuant to this litigation or any pre-litigation civil investigative matter.

6    **RESPONSE:** Plaintiff specifically objects to this Request as overly broad, vague, and

7    ambiguous as to the recipient of the referenced correspondence or documents, and reads this

8    request as seeking "correspondence or documents sent to or received by the CP Division."

9    Plaintiff also objects to this Interrogatory as overly broad, vague and ambiguous as to the

10   definition of "any pre-litigation civil investigative matter" in that it could be interpreted as any

11   investigation ever undertaken by the AGO for all of time.  It is therefore also unduly burdensome

12   in that it is not limited to information relevant to this case or limited in scope as to time. Plaintiff

13   further objects to this Request as seeking, in part, information protected and/or privileged from

14   discovery by the attorney client privilege, the attorney work product doctrine, and consulting

15   expert privilege. The information requested is also protected by the attorney work product

16   doctrine in that it encompasses information and/or materials compiled by Plaintiff's counsel in

17   anticipation or furtherance of litigation, and the selection of these documents call for mental

18   impressions, thought processes, conclusions, legal theories, and legal opinions. In addition, this

19   Request seeks, in part, documents relevant to expert testimony, the production of which is

20   governed by Federal Rule of Civil Procedure 26(b) and subject to the consulting expert privilege.

21   Plaintiff will identify and disclose its testifying expert witnesses pursuant to the Federal Rules

22   of Civil Procedure, Western District of Washington Local Rules, and the Case Schedule in this

23   matter. To the extent this Request seeks information produced by third parties in response to

24   Civil Investigative Demands, such are privileged and protected from discovery pursuant to RCW

25   19.86.110. Additionally, the Interrogatory is overly broad, unduly burdensome, and improper in

26   scope in that it seeks information in the possession of "the State of Washington" and is not

STATE'S **FIRST SUPPLEMENTAL** RESPONSES
AND OBJECTIONS TO DEFENDANTS'
INTERROGATORIES AND REQUESTS FOR
PRODUCTION TO PLAINTIFF STATE OF
WASHINGTON - 13
(2:21-cv-00728-RSM)

limited to the Plaintiff CP Division. *See* Objection to Definition 7 ("you" and "your"). Plaintiff objects to the compound nature of the Request.

To the extent this Request seeks the identity of those individuals with whom counsel for Plaintiff has communicated with in advancing the Plaintiff's case, disclosure of that information would reveal attorney work product. *See* General Objection 1.7. Discovery is ongoing and Plaintiff reserves the right to supplement its response to this Request.

Subject to and without waiving said objections, Plaintiff refers Defendant to the operative Complaint; to the parties' initial disclosures; Plaintiff's expert reports to be served on date of disclosure; and to Defendants' responses to Civil Investigative Demands. Plaintiff will conduct a search for responsive documents and will produce non-privileged, responsive documents not already in Defendant's possession.

**FIRST SUPPLEMENTAL RESPONSE:** Subject to and without waiving the previously asserted objections, Plaintiff further responds as follows: Please see Plaintiff's First Supplemental Response to Interrogatory No. 1 and First Supplemental Response to Request for Production No. 1. Plaintiff has collected and is producing communications to or from third parties. Insofar as Plaintiff is asserting privilege with respect to certain documents, Plaintiff will provide a privilege log. Discovery is ongoing and Plaintiff reserves the right to supplement its response to this Request for Production.

**INTERROGATORY NO. 3:** Please identify any individual or entity You believe to have discoverable information in this matter, including but not limited to, the name, individual contact or contacts (if an entity), address, telephone number, and email address.

**ANSWER:** Plaintiff specifically objects to this Interrogatory as seeking, in part, information protected and/or privileged from discovery by the attorney client privilege, the attorney work product doctrine, and consulting expert privilege. The information requested is also protected by the attorney work product doctrine in that it encompasses information and/or materials compiled by Plaintiff's counsel in anticipation or furtherance of litigation, and the

STATE'S **FIRST SUPPLEMENTAL** RESPONSES AND OBJECTIONS TO DEFENDANTS' INTERROGATORIES AND REQUESTS FOR PRODUCTION TO PLAINTIFF STATE OF WASHINGTON - 14 (2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   selection of these documents call for mental impressions, thought processes, conclusions, legal

2   theories, and legal opinions. In addition, this Interrogatory seeks, in part, information that will

3   be the subject of expert testimony, and is therefore subject to the consulting expert privilege.

4   Plaintiff will identify and disclose its testifying expert witnesses pursuant to the Federal Rules

5   of Civil Procedure, Western District of Washington Local Rules, and the Case Schedule in this

6   matter. To the extent this Interrogatory seeks information produced by third parties in response

7   to Civil Investigative Demands, such are privileged and protected from discovery pursuant to

8   RCW 19.86.110. Plaintiff objects to the term "discoverable information" as vague and

9   ambiguous. Additionally, this Interrogatory contains a definition of "you" and "your" that goes

10  beyond the Consumer Protection Division of the Washington Attorney General's Office, and is

11  therefore improper in scope.

12          To the extent this Interrogatory seeks the identity of those individuals with whom counsel

13  for Plaintiff has communicated with in advancing the Plaintiff's case, disclosure of that

14  information would reveal attorney work product. *See* General Objection 1.7.  Discovery is

15  ongoing and Plaintiff reserves the right to supplement its response to this Interrogatory.

16          Subject to and without waiving said objections, Plaintiff refers Defendant to the operative

17  Complaint; to Defendants' responses to Civil Investigative Demands; and to the parties' initial

18  disclosures containing the names of individuals who may possess knowledge of relevant

19  information in this case. *See* Plaintiff's witness disclosures served on January 20, 2023.

20  Plaintiff's experts will be disclosed pursuant to the Case Schedule and applicable court rules..

21          **FIRST SUPPLEMENTAL ANSWER:** Subject to and without waiving the previously

22  asserted objections, Plaintiff further responds and directs Defendants to the First Supplemental

23  Response to Interrogatory No. 1 and the additional entities identified in response to the First

24  Supplemental Response to Request for Production No. 1. Insofar as Plaintiff is asserting

25  privilege with respect to certain individuals, Plaintiff will provide a privilege log. Discovery is

26  ongoing and Plaintiff reserves the right to supplement its response to this Interrogatory.

STATE'S **FIRST SUPPLEMENTAL** RESPONSES
AND OBJECTIONS TO DEFENDANTS'
INTERROGATORIES AND REQUESTS FOR
PRODUCTION TO PLAINTIFF STATE OF
WASHINGTON - 15
(2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    **REQUEST FOR PRODUCTION NO. 3:** Please produce all correspondence or

2    documents sent to or received from any individual or entity You believe to have discoverable

3    information in this matter.

4    **RESPONSE:** Plaintiff specifically objects to this Request as overly broad, vague, and

5    ambiguous as to the recipient of the referenced correspondence or documents, and reads this

6    request as seeking "correspondence or documents sent to or received by the CP Division."

7    Additionally, the Request contains a definition of "you" and "your" that goes beyond the

8    Consumer Protection Division of the Washington Attorney General's Office, and is therefore

9    improper in scope. Plaintiff further objects to this Request as seeking, in part, information

10   protected and/or privileged from discovery by the attorney client privilege, the attorney work

11   product doctrine, and consulting expert privilege. The information requested is also protected by

12   the attorney work product doctrine in that it encompasses information and/or materials compiled

13   by Plaintiff's counsel in anticipation or furtherance of litigation, and the selection of these

14   documents call for mental impressions, thought processes, conclusions, legal theories, and legal

15   opinions. In addition, this Request seeks, in part, documents and information relevant to expert

16   testimony, the production of which is governed by Federal Rule of Civil Procedure 26(b) and

17   subject to expert privilege and the consulting expert privilege. Plaintiff will identify and disclose

18   its testifying expert witnesses pursuant to the Federal Rules of Civil Procedure, Western District

19   of Washington Local Rules, and the Case Schedule in this matter. To the extent this Request

20   seeks information produced by third parties in response to Civil Investigative Demands, such are

21   privileged and protected from discovery pursuant to RCW 19.86.110. Plaintiff objects to the

22   term "discoverable information" as vague.

23         To the extent this Request seeks the identity of those individuals with whom counsel for

24   Plaintiff has communicated with in advancing the Plaintiff's case, disclosure of that information

25   would reveal attorney work product. *See* General Objection 1.7. Discovery is ongoing and

26   Plaintiff reserves the right to supplement its response to this Request.

STATE'S **FIRST SUPPLEMENTAL** RESPONSES
AND OBJECTIONS TO DEFENDANTS'
INTERROGATORIES AND REQUESTS FOR
PRODUCTION TO PLAINTIFF STATE OF
WASHINGTON - 16
(2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   Subject to and without waiving said objections, Plaintiff refers Defendant to the operative

2   Complaint; to the parties' initial disclosures; Plaintiff's expert reports to be served on date of

3   disclosure; and to Defendants' responses to Civil Investigative Demands. Plaintiff will conduct

4   a search for responsive documents and will produce non-privileged, responsive documents not

5   already in Defendant's possession.

6   **FIRST SUPPLEMENTAL RESPONSE:** Subject to and without waiving the

7   previously asserted objections, Plaintiff further responds as follows: Please see Plaintiff's First

8   Supplemental Response to Request for Production No. 1. Plaintiff has collected and reviewed

9   other communications to or from third parties, and is producing the same. Insofar as Plaintiff is

10  asserting privilege with respect to certain documents, Plaintiff will provide a privilege log.

11  Discovery is ongoing and Plaintiff reserves the right to supplement its response to this Request

12  for Production.

13  **INTERROGATORY NO. 4:** If you contend that any person or entity to which

14  Landmark Technology A, LLC, either sent a settlement demand letter or engaged in litigation,

15  or against whom Landmark Technology A, LLC sought to enforce its rights to the '508 Patent,

16  did not infringe on any, either, or all of claims 1 through 7 or 16 through 17 of the '508 Patent,

17  please describe in detail any basis for such contention as to each such person or entity, including

18  any facts supporting the same.

19  **ANSWER:** Plaintiff specifically objects to this Interrogatory as seeking, in part,

20  information protected and/or privileged from discovery by the attorney client privilege, the

21  attorney work product doctrine, and consulting expert privilege. The information requested is

22  also protected by the attorney work product doctrine in that it encompasses information and/or

23  materials compiled by Plaintiff's counsel in anticipation or furtherance of litigation, which call

24  for mental impressions, thought processes, conclusions, legal theories, and legal opinions. In

25  addition, this Interrogatory seeks, in part, information that will be the subject of expert testimony

26  the production of which is governed by Federal Rule of Civil Procedure 26(b) and subject to the

STATE'S **FIRST SUPPLEMENTAL** RESPONSES
AND OBJECTIONS TO DEFENDANTS'
INTERROGATORIES AND REQUESTS FOR
PRODUCTION TO PLAINTIFF STATE OF
WASHINGTON - 17
(2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Request. Discovery is ongoing and Plaintiff reserves the right to supplement its response to this Request.

Subject to and without waiving said objections, responds as follows: Plaintiff will conduct a search for responsive documents and will produce any non-privileged, responsive documents not already in Defendant's possession.

**FIRST SUPPLEMENTAL RESPONSE:** Subject to and without waiving the previously asserted objections, Plaintiff has engaged in a reasonable search and will produce or log any responsive communications within its possession, custody, or control. Discovery is ongoing and Plaintiff reserves the right to supplement its response to this Request for Production.

**INTERROGATORY NO. 24:** Please describe in detail any infringement analysis conducted by any person or entity on your behalf regarding the '508 Patent, including, but not limited to:

(1)     The date the analysis was conducted;

(2)     Who conducted the analysis;

(3)     Whether the person conducting the analysis was provided any patent infringement analysis conducted by Landmark Technology A, LLC or Landmark Technology, LLC; and

(4)     The results of the analysis.

**ANSWER:** Plaintiff specifically objects to this Interrogatory as seeking, in part, information protected and/or privileged from discovery by the attorney client privilege, the attorney work product doctrine, and consulting expert privilege. The information requested is also protected by the attorney work product doctrine in that it encompasses information and/or materials compiled by Plaintiff's counsel in anticipation or furtherance of litigation, and the selection of these documents call for mental impressions, thought processes, conclusions, legal theories, and legal opinions. In addition, this Interrogatory seeks, in part, information relevant to expert testimony, the production of which is governed by Federal Rule of Civil Procedure 26(b)

STATE'S **FIRST SUPPLEMENTAL** RESPONSES
AND OBJECTIONS TO DEFENDANTS'
INTERROGATORIES AND REQUESTS FOR
PRODUCTION TO PLAINTIFF STATE OF
WASHINGTON - 113
(2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

and subject to the expert privilege. Plaintiff will identify and disclose its testifying expert witnesses pursuant to the Federal Rules of Civil Procedure, Western District of Washington Local Rules, and the Case Schedule in this matter. To the extent this Interrogatory seeks information produced by third parties in response to Civil Investigative Demands, such are privileged and protected from discovery pursuant to RCW 19.86.110. Additionally, the Interrogatory contains a definition of "you" and "your" that goes beyond the Consumer Protection Division of the Washington Attorney General's Office, and is therefore overly broad, unduly burdensome, and improper in scope. *See* Objection to Definition 7 ("you" and "your"). Plaintiff reads "you" and "your" to mean the CP Division. Plaintiff objects to the compound nature of the Interrogatory. Discovery is ongoing and Plaintiff reserves the right to supplement its response to this Interrogatory.

**FIRST SUPPLEMENTAL ANSWER:** Subject to and without waiving the previously asserted objections, Plaintiff further responds and refers to Plaintiff's privilege log. Discovery is ongoing and Plaintiff reserves the right to supplement its response to this Interrogatory.

**REQUEST FOR PRODUCTION NO. 28:** Please produce any and all documents pertaining to any infringement analysis conducted by any person or entity on your behalf regarding the '508 Patent.

**RESPONSE:** Plaintiff specifically objects to this Request as seeking, in part, information protected and/or privileged from discovery by the attorney client privilege, the attorney work product doctrine, and consulting expert privilege. The information requested is also protected by the attorney work product doctrine in that it encompasses information and/or materials compiled by Plaintiff's counsel in anticipation or furtherance of litigation, and the selection of these documents call for mental impressions, thought processes, conclusions, legal theories, and legal opinions. In addition, this Request seeks, in part, information that relevant to expert testimony, the production of which is governed by Federal Rule of Civil Procedure 26(b) and subject to the expert privilege. Plaintiff will identify and disclose its testifying expert

STATE'S **FIRST SUPPLEMENTAL** RESPONSES
AND OBJECTIONS TO DEFENDANTS'
INTERROGATORIES AND REQUESTS FOR
PRODUCTION TO PLAINTIFF STATE OF
WASHINGTON - 114
(2:21-cv-00728-RSM)

witnesses pursuant to the Federal Rules of Civil Procedure, Western District of Washington Local Rules, and the Case Schedule in this matter. To the extent this Request seeks information produced by third parties in response to Civil Investigative Demands, such are privileged and protected from discovery pursuant to RCW 19.86.110. Additionally, the Request contains a definition of "you" and "your" that goes beyond the Consumer Protection Division of the Washington Attorney General's Office, and is overly broad, unduly burdensome, and improper in scope. *See* Objection to Definition 7 ("you" and "your"). Plaintiff reads "you" and "your" to mean the CP Division. Discovery is ongoing and Plaintiff reserves the right to supplement its response to this Request.

Subject to and without waiving said objections, responds as follows: Plaintiff will conduct a search for responsive documents and will produce any non-privileged, responsive documents not already in Defendant's possession.

**FIRST SUPPLEMENTAL RESPONSE** Subject to and without waiving the previously asserted objections, Plaintiff further responds and refers to Plaintiff's privilege log. Discovery is ongoing and Plaintiff reserves the right to supplement its response to this Interrogatory.

**INTERROGATORY NO. 25:** Please describe in detail any calculation of damages you believe to be due from the State as a result of Defendants' alleged conduct, including, but not limited to:

> (1)     of revenues or profits you believe to have been improperly gained by Landmark Technology A, LLC from Washington entities;
>
> (2)     Any civil penalties you believe to be due, including your calculation of the same;
>
> (3)     Any attorneys' fees you believe to be due, including your calculation of the same.

**ANSWER:** Plaintiff specifically objects to this Interrogatory as seeking, in part, information protected and/or privileged from discovery by the attorney client privilege, the attorney work product doctrine, and consulting expert privilege. The information requested is also protected by the attorney work product doctrine in that it encompasses information and/or

STATE'S **FIRST SUPPLEMENTAL** RESPONSES
AND OBJECTIONS TO DEFENDANTS'
INTERROGATORIES AND REQUESTS FOR
PRODUCTION TO PLAINTIFF STATE OF
WASHINGTON - 115
(2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    RESONSES AND OBJECTIONS DATED this 29th day of April, 2024.

2

3                                ROBERT W. FERGUSON
4                                Attorney General

5
                                 */s/ Aaron J. Fickes*
6                                Aaron J. Fickes, WSBA No. 51584
7                                Ben J. Brysacz, WSBA No. 54683
                                 Heidi C. Anderson, WSBA No. 37603
8                                Michael Hall, WSBA No. 19871
                                 Bob Hyde, WSBA No. 33593
9                                Assistant Attorneys General
10                               *Attorneys for Plaintiff*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

STATE'S **FIRST SUPPLEMENTAL** RESPONSES
AND OBJECTIONS TO DEFENDANTS'
INTERROGATORIES AND REQUESTS FOR
PRODUCTION TO PLAINTIFF STATE OF
WASHINGTON - 120
(2:21-cv-00728-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1

## CERTIFICATE OF SERVICE

2
    I certify that I caused a copy of the foregoing to be served on the following parties via

3
the following methods:

4

5
    Justin P. Walsh                          ☐Legal Messenger

6
    Gleam Law, PLLC                          ☐First-Class Mail, Postage Prepaid
    605 1st Avenue, Suite 330                ☐Certified Mail, Receipt Requested

7
    Seattle, WA 98104                        ☒Email

8
    justin@gleamlaw.com                      ☐E-Service

9

10
    I certify, under penalty of perjury under the laws of the State of Washington, that the

11
foregoing is true and correct.

12

13

14
    DATED this 29th day of April, 2024, at Seattle, Washington.

15

16
                                   */s/ Aaron J. Fickes*
                                   Assistant Attorney General

17

18

19

20

21

22

23

24

25

26

STATE'S **FIRST SUPPLEMENTAL** RESPONSES
AND OBJECTIONS TO DEFENDANTS'
INTERROGATORIES AND REQUESTS FOR
PRODUCTION TO PLAINTIFF STATE OF
WASHINGTON - 121
(2:21-cv-00728-RSM)

# EXHIBIT 6

**From:** Raven, Elliot (ATG) ‹elliot.raven@atg.wa.gov›
**Sent:** 2024-05-31 23:42:20 UTC
**To:** Justin Walsh ‹justin@gleamlaw.com›, Brittany Duplantis ‹bduplantis@gleamlaw.com›, Nicole Rash ‹nicole@gleamlaw.com›, and Neil Juneja ‹neil@gleamlaw.com›, CC: Brysacz, Ben (ATG) ‹ben.brysacz@atg.wa.gov›, Hall, Michael K. (ATG) ‹michael.hall@atg.wa.gov›, Hyde, Bob (ATG) ‹robert.hyde@atg.wa.gov›, Aliiasov, Emin (ATG) ‹emin.aliiasov@atg.wa.gov›, Fickes, Aaron (ATG) ‹aaron.fickes@atg.wa.gov›, and Anderson, Heidi (ATG) ‹heidi.anderson@atg.wa.gov›
**Subject:** State of Washington v. Landmark Technology A, LLC, et al. – Expert Reports

Good afternoon,

Please find attached expert reports from David Day and Alex Strand. Mr. Strand's signed signature page will follow.

Sincerely,

**Elliot Raven**

Legal Assistant, Consumer Protection

Seattle — Office of the Attorney General

(206) 254-4264



2024_05_29_FINAL_David Day Exper...
358 KB



2024_05_31_AlexStrandExpertRepor...
6.79 MB

The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STATE OF WASHINGTON,

                    Plaintiff,

        v.

LANDMARK TECHNOLOGY A, LLC and
RAYMOND MERCADO, individually,

                    Defendants.

NO. 2:21-cv-00728-RSM

EXPERT REPORT OF ALEX
STRAND

## I.      INTRODUCTION

My name is Alex Strand and I'm currently employed at Stately Cloud, Inc. as Founder and CEO. Previously I was Chief Technical Officer at Get Together, Inc., where I oversaw the engineering team developing a consumer social app. Before that I was a Director of Engineering at Snap, Inc., where I oversaw the Messaging organization responsible for core messaging functionality of Snapchat. Prior to Snap I was a Senior Manager at Amazon, where I spent the last six years of my tenure responsible for the availability and performance of the Amazon.com website and owned the technical execution of Amazon's highest scale retail events like Black Friday, Cyber Monday and the launch of the first Prime Day event.

I have extensive experience leading multi-disciplinary software engineering teams across the globe for some of the highest scale consumer Internet properties. In addition to my management experience, I have over 20 years of software development experience in areas including the web, mobile applications, distributed systems, databases, and machine learning. I built my first website in 1995 and have in many ways grown up with the web, having had the opportunity to experience the rapid growth in technology over the last three decades. I am also a named inventor on dozens of patents. A list of the granted patents and pending applications naming me as inventor accompanies this report as ***Exhibit A***. My current curriculum vitae is included with this report as ***Exhibit B***.

## II.      COMPENSATION

I am being compensated at a rate of $400 per hour for the time spent preparing this report and for testifying in a deposition or in court regarding the opinions expressed herein. My compensation is not contingent on the opinions I provide or the outcome of this matter.

### III.      PRIOR TESTIMONY

I have not previously testified as an expert witness in any proceeding.

### IV.      TASK AND METHODOLOGY

I have been retained by the Washington State Attorney General's Office and asked to provide an expert opinion as a technology practitioner to the interpretation of United States Patent No. 7,010,508 (the '508 Patent) and its application to certain websites that are alleged to infringe on it. It is my opinion that a person of ordinary skill in the art would have a Bachelor level degree in an area of computing (e.g., computer science, information technology, electrical engineering, etc.) or the equivalent of four years of professional software engineering experience.

In order to prepare my opinion I reviewed the '508 Patent as well as documents from the prosecution history of the patent, the ex parte re-examination process, the covered business method review proceedings involving eBay Enterprises, and *NAPCO v. Landmark Technology A, LLC*. I have also reviewed a collection of demand letters sent from Landmark Technology A, LLC (Landmark) to allegedly infringing companies and claim charts that Landmark prepared in connection with infringement litigation. Finally, I visited some of the websites that Landmark has alleged infringe on the '508 Patent, recognizing that those websites may have changed since Landmark made those allegations. A list of the documents I reviewed accompanies this report as *Exhibit C*.

### V.      SUMMARY OF OPINIONS

My ultimate conclusion is that no reasonable person would believe that the targeted websites could infringe on the '508 Patent. More specifically, my review demonstrates that:

- The websites Landmark targets almost certainly do not utilize the system the '508 Patent describes. There are a number of reasons for this, including:
  - the "forward-chaining" and "backward-chaining" concepts that the patent describes are extremely rarely, if ever, used in eCommerce websites;
  - any activity that could potentially overlap with the '508 Patent's claims would take place on the customer's computer alone;
  - the target companies' websites are often owned and operated by separate host companies;
  - without knowing the source code from the involved web servers, it is impossible to determine the algorithms that the target websites use, making it impossible to determine whether there could be any infringement whatsoever; and
  - the infringement that Landmark alleges relies on an absurdly overbroad interpretation of the '508 Patent, one that would bring virtually the entire Internet within its scope.

- If Landmark genuinely believed that it owns, through the '508 Patent, a fundamental aspect of the Internet, the patent could be worth billions of dollars, and Landmark would target companies such as Amazon, Microsoft, Google, and Apple. Landmark did not target companies that have technology as their core competency—it targeted small and midsize companies across a range of industries that manufacture and/or sell products such as bath salts and soda in order to obtain settlements for ten to twenty thousand dollars. This is illogical and undermines any belief that the Patent is as broad as Landmark claims in its demand letters.

- A reasonable interpretation of the '508 Patent bears no resemblance to the operation of websites generally or the targeted websites I examined. Interpreting the '508 Patent otherwise requires a level of abstraction that makes the patent essentially meaningless.

- Landmark has employed numerous different interpretations of critical elements of the '508 Patent, including for terms such as "backward-chaining" and "forward-chaining," seemingly when it is convenient or helpful for Landmark to do so. The fact that Landmark changes its interpretation of the Patent depending on the context undermines any good faith belief that the websites and businesses Landmark targets are actually engaged in infringement.

## VI.        THE '508 PATENT

United States Patent No. 7,010,508 B1 was granted to inventor Lawrence Lockwood on March 7, 2006, on the basis of a 1995 application to the Patent and Trademark Office (PTO). The granted patent contained 17 claims. On June 27, 2017, the PTO issued Ex Parte Reexamination Certificate 7,010,508 C1 canceling claims 8-15. Claims 2-7 are dependent claims and for this reason I have been asked to focus my analysis on Claim 1.

I am informed that Landmark presently holds the right to enforce the '508 Patent. For ease of reference this report will use "Landmark" to refer to all entities involved in the patent prosecution and its subsequent enforcement.

### A.        Claim 1

Claim 1 of the '508 Patent reads as follows:

*An automated multimedia system for data processing which comprises:*

> *a computerized installation including a database, means for entering data into said database, and a program means for storing, processing, updating, and retrieving data items in response to coded requests from stations in communication with said installation;*

*at least one station including a general purpose computer and a program applicable to said computer for sending said requests to said installation;*

*means for communicating data back and forth between said installation and said station;*

*said station further including:*

> *a mass memory and means associated therewith for storing and retrieving textual and graphical data;*

> *a video display and means associated therewith for displaying textual and graphical data;*

> *means for entering information into said computer;*

> *means for programming sequences of inquiring messages on said video display in accordance with preset routines and in response to said information;*

> *said sequences including instructions to an operator of said station for operating said station; and*

> *means for selectively and interactively presenting to said operator interrelated textual and graphical data describing a plurality of transaction options, and for selectively retrieving data from said mass memory;*

*means for storing information, inquiries, and orders for transactions entered by said operator via said means for entering information;*

*means for transmitting said inquiries and orders to said installation via said means for communicating;*

*means for receiving data comprising operator-selected information and orders from said installation via said means for communicating; and*

*means for interactively directing the operation of said computer, video display, data receiving and transmitting means, and mass memory comprising means for holding an operational sequencing list, means for processing said operator-entered information, inquiries, and orders according to backward-chaining and forward-chaining sequences, and means responsive to the status of said computer, display, mass memory, and data receiving and transmitting means for controlling their operation;*

> *said means for processing including means for analyzing said operator-entered information and means, responsive to said means for analyzing, for presenting additional inquiries in response to said operator-entered information;*
>
> *said computerized installation further including:*
>
>> *means responsive to items received from said station for immediately transmitting selected data retrieved from said database to said station;*
>>
>> *means responsive to an order received from said station for updating data in said database including means for correlating to a particular set of data received from said station;*
>>
>> *whereby said system can be used by a plurality of entities, each using one of said stations, to exchange data, and to respond to inquiries and orders instantaneously or over a period of time.*

Translated to plain language as would be understood by a person skilled in the art, Claim 1 describes in very general terms a system containing two computers connected by a network, in a client-server architecture. The server (or "installation") contains a database and a program that writes to and reads from that database in response to requests from the client. The client (or "station") has a program with a user interface, which can be changed according to instructions sent from the server. The client program also receives a list of operations from the server. Those operations are used by an algorithm that evaluates the operations using forward-chaining and backward-chaining rules. A more detailed discussion of "forward-chaining" and "backward-chaining" is included later in this section. What is important to note here, however, is that the operations themselves take place on the client computer. The server functions essentially as a data storage device, receiving inquiries for data from the client and providing that data in response.

For the benefit of the reader, the Merriam-Webster dictionary gives the following simple definition for the word "algorithm": *"a step-by-step procedure for solving a problem or accomplishing some end."* When using a computer, an algorithm can be expressed as a program

6

which instructs the computer what to do. Computers can only do what they are instructed to do, so algorithms are important to consider because they establish those instructions.

B.     The Specification

While the language of Claim 1 is broad, the '508 Patent's specification almost exclusively describes a system for applying for loans using a specialized computer terminal. The user's experience with the system the specification describes would be similar to that of an automated teller machine (ATM). An ATM is an analogous system because it is a computer terminal, connected via a network to a remote server (at a bank) that is intended to perform a self-service banking activity in place of interacting with a human bank teller. For the user of the ATM at a physical bank location, it may not be clear that they are interacting with a networked computer system because they may assume that the computer inside the ATM is doing all of the work. However, any ATM needs to interact with a remote server over a network connection because the ATM itself doesn't have any knowledge about the user, their bank account balance, and so forth.

The specification of the '508 patent makes the spirit of the invention and the similarity to existing specialized computer systems like ATMs clear. For example, the abstract begins with the summary:

> A system for filing applications with an institution from a plurality of remote sites, and for automatically processing said applications in response to each applicant's credit rating obtained from a credit reporting service comprising a series of self-service terminals remotely linked via a telephone line to a first computer at the institution and to a second computer at the credit reporting service headquarters.

The system this language describes, of remote self-service terminals linked to a central computer at a financial institution, is also how an ATM operates.

The section of the specification titled "BACKGROUND OF THE INVENTION" reinforces this ATM-style loan application system with the following opening sentence:

> *The present invention relates to automatic self-operated terminals, vending machines, and interactive data processing networks. More specifically, this invention relates to terminals used by banking and other financial institutions to make their services available at all hours of the day from various remote locations.*

This language precisely describes an ATM.

In the very next section, "SUMMARY OF THE INVENTION", the specification describes the "principal object" of the invention as thus:

> *The principal object of this invention is to provide an economical means for screening loan applications.*

One can easily substitute the words "allowing consumers to withdraw fund" for "screening loan applications" and thereby describe an ATM.

Given the contextual framing from the "ABSTRACT," "BACKGROUND OF THE INVENTION," and "SUMMARY OF THE INVENTION" sections, the patent describes a type of specialized networked computer system which, in the primary embodiment, facilitates a loan application process. Ordinary technologists in 2024, and likely in 1986, would analogize this specialized networked computer system to be similar in structure and form to an ATM system with the point of differentiation being the facilitation of routine processes such as loan applications instead of retail banking. Depicted visually, the two systems are:





There are two important points here. First, at the time the patent was filed an examiner would recognize the invention described in the specification as being similar in kind to an ATM-like machine and network. The specification notes that "automatic vending machines and self-service terminals have evolved to a high degree of sophistication" which strongly suggests that the '508 invention is extending an existing technology for a new purpose. Second, the specification references the term "loan" 34 times in the body of the specification. Terminology describing the process of loan applications is further cemented in the figures accompanying the specification. In sum, the specification simply describes an ATM-style system for the processing of loan applications.

Although the specification is clear that the object of the primary embodiment is a loan application system, there are three paragraphs at the end of the specification that spoil clarity and require further discussion. These three paragraphs are a departure from the spirit of the invention and introduce ambiguity as to the definiteness of the invention. In order to regain clarity we must examine each of these paragraphs through the contextual lens of the text that comes before them.

> *It should be noted that the system as described could be applied to other forms of transactions in which information has to be acquired from a customer then processed to a decision or into the performance of a particular task. A similar system could be used, for instance, for the preparation and filing of income tax returns. In such case, the assistance that the fictitious person who appears on the video screen can give to the applicant in filling-out the tax form can be easily programmed on the videodisc.*

This paragraph introduces the option that the "automatic loan processing terminal system" could be applied to a different form of transaction, in this case preparing an income tax

return form. Notice that the last sentence of this paragraph describes programming the videodisc to display a different collection of video content than what was described previously for loan applications. This is a reasonable alternative application to displaying video content on the terminal in response to a computation on a remote computer. However, it is important to note that the processes representing the act of applying for a loan and that of preparing an income tax return are not alike. The logic of each process is distinct and the '508 Patent does not describe a general purpose computer that can execute an infinite number of algorithms. The only overlap between the two business processes is that they follow the form of taking input, applying a set of rules and storing an output.

The next paragraph of the specification goes a step further:

> *Related applications of the system include the selection and purchase of stocks and securities, the selection and opening of so-called "self-directed investments" such as Individual Retirement Accounts, and other complex transactions which normally require a great deal of time and attention on the part of the officers of an institution.*

This paragraph introduces the concept that the invention the '508 Patent describes can be applied to the purchase of securities and the opening of investment accounts, which is a significant departure from the preceding text in the specification. In contrast to the prior paragraph covering tax preparation, there is no reference at all to video or other specifics of the '508 Patent. While the opening of an investment account bears some resemblance to applying for a loan, the selection and purchase of securities is a distinct new concept.

The last paragraph of the specification attempts to extend the '508 Patent to securities trading:

> *For instance, the above-described system may be utilized as a trading network between buyers and sellers of securities without changing the hardware components of the system, and with only minor adaptations of the programming routines. Each self-service terminal or station 105 can be used by either a seller or buyer of securities as well as a stock broker or other trading agency. The seller supplies information about the securities in his*

*portfolio that he wants to trade by entering an offer to sell on his station 105. The offer is automatically transferred to the central processor 104 at an institution 101 acting as a clearinghouse. The information about the offer becomes part of a database stored in the memory 108 of the institution, such as in the active case file 111. Any prospective buyer can access the database through one of the stations 105 to evaluate what type of security may be available for purchase. The prospective buyer can then transmit an acceptance of one of the offers stored in the active case file 111 or transmit a counter-offer to purchase the same security at a lower price. The central processor 104 at the institution is used to match buy and sell offers, update the active case files and confirm transactions.*

This final embodiment example describes using the system described in the '508 Patent as a trading network for buying and selling securities. This embodiment bears no resemblance to the original spirit of the system, which enabled a human to interact with a video avatar mimicking a loan officer, and instead introduces a wholly new concept of a marketplace. The attempt to describe the scope of the '508 Patent as a securities marketplace is a jarring logical leap because expanding the scope of the invention to cover this use case would require treating the '508 invention as covering a general networked computer that can support any algorithm. If this were permitted it would have the implication that any networked computer system – including the entirety of the Internet – would be covered by the '508 Patent. This is an absurdly broad interpretation.

To explain: as described in detail below, every website on the Internet follows a basic pattern whereby there is a server that is responding to requests from a client. Typically the client is a computer containing a web browser, which is an application responsible for requesting web pages, processing responses from web servers, drawing the web page and so forth. If the interpretation of the '508 Patent was so broadly abstract to cover any instances of a client computer and a server computer communicating over a network and performing at least one computation on the client computer, it would mean that all websites are infringing. Further, the

commercial Internet that became popular beginning in the 1990s was not the first type of

networked computer system so the implication would be even broader.

C.     **The Prosecution History**

In reviewing the prosecution history it is evident that the terms "backward-chaining" and

"forward-chaining" are an important part of the claims. The exact intent and interpretation of the

terms "backward-chaining" and "forward-chaining" is unclear from the specification of the '508

Patent. Fortunately we can use the prosecution history to understand Landmark's interpretation,

which in its January 1998 appeal brief Landmark took from the IBM Dictionary of Computing

(1993):

> *Forward chaining: An iterative procedure for solving a problem by which the problem is transformed into an instantiation of an axiom or a proven proposition applied to the premises, and another problem to be solved until a conclusion is reached or no further inferences can be made.*
>
> *Backward chaining: An iterative procedure for solving a problem by which the problem is transformed into an instantiation of an axiom or a proven proposition applied to the conclusion, and another problem to be solved until the conclusion is found to be true or the problem is unsolvable.*

The only difference between these definitions is that forward-chaining applies the "axiom or

proven proposition" to "the premises," while backward-chaining applies the "axiom or proven

proposition" to "the conclusion." In other words forward-chaining is data-driven and progresses

forward from data supplied at the beginning of the operation. Backward-chaining, on the other

hand, is goal-driven and works backwards from that goal.

In the 2002 Appeal Brief filed during the prosecution, Landmark agreed with language

the PTO had previously used to describe forward-chaining, i.e., sequences that "designate a way

to emulate human deductive or data-driven reasoning and is generally associated with knowledge

bases that have large numbers of possible solutions, and are frequently used when data is the

12

starting point for solving a problem." In addition, they later assert in the 2003 Reply Brief that "The phrase 'forward-chaining sequence' is a mere paraphrase to qualify the deductive method recited in both independent Claims 1 and 8."

All of these definitions describe *what* is happening when a computer is executing a forward-chaining or backward-chaining program. We first need to recognize that computers only do what they are told to do, and that programs are a set of instructions that are typically performed linearly. The following is a simple example of a program with instructions that add one plus two:

(1) LET A = 1

(2) LET B = 2

(3) LET C = A + B

(4) IF C ≠ 3 PRINT "ERROR"; ELSE PRINT "OK"

A computer will execute the instructions until it reaches the end of the instruction list. It is inaccurate to say that reaching the end of the instruction list is a "goal," rather it is the ordinary conclusion of the computer completing its instructions. Observe that in step (4) the instruction contains a comparison (i.e., whether C is not equal to 3) which will "branch" execution to one of two possible outcomes. This simple example is typical of ordinary programs. The fact that the instructions are executed linearly does not make this "forward-chaining", nor does the presence of "branching" suggest "chaining."

What is missing from the '508 Patent is any description of *how* forward-chaining and backward-chaining would work in the context of the computation occurring on the "station" described in the patent. We have established earlier that Landmark agrees with the definition of the terms as described in the IBM Dictionary of Computing and that the use in the patent is a

term of art. A person skilled in the art who would be knowledgeable about these terms, as defined in the IBM Dictionary of Computing, would be using them in the context of an "expert system." This assertion is supported by IBM themselves using these terms throughout their own patent 4,809,219 (the '219 Patent)[1] which provides the following definition of "expert systems":

> *Expert systems is a term applied to a special kind of problem solving computer program. The general function of expert systems is to solve (or assist in the solution of) problems normally addressed by highly trained and experienced human experts. This is not a new goal; in fact, many successful computer programs have achieved notable success in providing expert levels of performance in certain problem areas. What is different about expert system type programs is the approach taken, and the resulting form of the program itself.*

In the '219 Patent IBM teaches how an expert system will use a collection of "inference rules" instead of a rigid list of instructions that are encoded into a program. These inference rules are used by an "inference engine" to determine how to solve a problem. The inference engine is a specialized program that uses reasoning methods, like forward and backward chaining, to compare data about a problem against the set of inference rules. IBM gives the following explanation to teach about inference rules:

> *An Inference Rule is a statement that has two parts, an if-clause and a then-clause. An example of an Inference Rule is:*
>
> *If the restaurant choice includes French, and the occasion is romantic, Then the restaurant choice is definitely Paul Bocuse.*
>
> *An expert system's Rulebase is made up of many such inference Rules. They are entered as separate Rules and it is the inference engine that uses them together to draw conclusions. Because each Rule is a unit, Rules may be deleted or added without affecting other Rules (though it should affect which conclusions are reached).*

The IBM patent goes on to say explicitly that "There are two main methods of reasoning when using inference Rules: backward chaining and forward chaining," and then describes these terms.

---

[1] A copy of the IBM patent discussed here is attached as ***Exhibit D***.

14

Each inference rule is independent, and each rule that is successfully applied results in a "then-clause" being satisfied. The "chaining" of these rules happens when the result of the application of a first rule to a statement satisfies the "if-clause" of a second rule. To use the IBM example, a set of rules would be:

| If Fritz is green | Then Fritz is a frog |
|---|---|
| If Fritz is a frog | Then Fritz hops |

Then an inference using forward-chaining is:



Note how we start with a statement (i.e., data) and proceed forward from one rule to the next, and that the rules are "chained" (or linked) together. By comparison, an inference using backward-chaining would target a goal as the desired end state and work backwards. Here is how IBM's '219 patent teaches this type of backward-chaining inference:

*Suppose a goal is to conclude that Fritz hops. The Rulebase would be searched and Rule (2) would be selected because its conclusion matches the goal. It is not known that Fritz is a frog, so this station is added to the goal list. The Rulebase is again searched and this time Rule (1) is selected because its then-clause matches the new goal just added to the list. This time, the if clause is known to be true and the goal that Fritz hops is concluded. Because the list of goals determines which Rules are selected and used, this method is called goal driven.*

15

Notably missing from the '508 patent is any reference to an inference engine or other specific method of computation that would satisfy this well-established mechanism of forward-chaining or backward-chaining. The fact remains, however, that these terms, in the very source that Landmark uses to define them, are functioning as components of an inference engine. Therefore, in order for the '508 patent to be reasonably understood we must infer that an inference engine is being used otherwise these terms lose their meaning as would be understood by a person skilled in the art.

A critical implication of the inclusion of an inference engine is that we must apply this pattern of rule-based inferences when considering if any of the targeted websites discussed later are infringing on the '508 patent. Landmark should also explain their assertion in 2014 that "expert systems" are a "niche" area of computer science and not applicable to these definitions.

## VII.     OVERVIEW OF TYPICAL WEBSITE FUNCTIONALITY

Given the ubiquity of consumer Internet usage in 2024, the general public has experience interacting with websites. What is less clear to non-technical audiences is the basic operation and function of websites, which I will provide a simplified summary of. In essence, the act of "visiting" a website is a coordinated set of interactions between a local "client" computer and a remote "server" computer. The client computer corresponds to the "terminal" or "station" that the '508 Patent describes, while the server computer corresponds to the '508 Patent's "installation." Examples of client computers include desktop computers, laptops and mobile devices ("smartphones"). The client computer uses a program called a web browser that provides a graphical interface for user interaction with websites. The web browser on the client computer is responsible for sending data to a remote web server computer, receiving responses from the server and interpreting those responses in order to present the website to the user.

16

Depicted visually, the browser-server relationship appears in this way:



A web server is typically a general purpose computer, connected to the Internet, that receives requests from web browsers. Each of these requests specifies the desired target website page, along with other information that describes identifying information about the web browser and the client computer. The web server can contain pages that don't change ("static content") as well as pages that can change ("dynamic content") based on a variety of factors. For example, a static page could simply display an image, while a dynamic page could display the current time or be personalized with the name of the requesting user. In the case of dynamic pages the web server will typically execute a program and emit the result of that program as the response to the web browser. The web browser is unable to observe the code of the program that is executed on the web server, receiving only the results of the server program's execution.

The response that is sent from the web server to the web browser is a "document" that is written in the hypertext markup language (HTML) format. HTML is a simple language that includes the content of the page, as well as its structure. This structure describes how the web browser should display the document, including, for example, the text of the document (along with its formatting), tables, headings, media like images and so on. HTML documents can also reference other documents that should be requested by the web browser and delivered by the server to improve the user experience. The two most common types of additional referenced

17

documents are cascading style sheets (CSS) and Javascript. CSS is a set of rules that instructs the web browser how to format the display of the HTML document, and includes a much broader set of rules than is available in HTML. Javascript is a programming language that can be executed in the web browser itself in order to provide additional functionality.

It is important to note that the client computer initiates the process of requesting a website page from a web server and that the execution of any programs on the web server itself is not observable by the client computer. By contrast, the web browser on the client computer is responsible for processing HTML, CSS and Javascript documents that are sent from the web server. This is important because as we examine the '508 patent we need to consider the interactions between the computers, where specific programs are executed, and the nature of the programs that are executed.

As a general proposition, however, a typical website would not infringe on the '508 patent. As described above, website operation simply involves requests from a local client to a remote server, potential program execution on the server that the browser cannot observe, delivery of content to the client, and processing of that content locally so that it can be presented to the user. Using an inference engine, including the use of forward-chaining and backward-chaining, would be a grossly inefficient way to perform these tasks. The only resemblance that a website architecture may have to the '508 Patent is that the interaction between a website visitor and the website server occurs on two computers connected by the Internet, which as described earlier is an ordinary operation and is in no way unique to the Internet or the '508 Patent.

## VIII.    TARGETED WEBSITES AND THE '508 PATENT'S CLAIM 1

I have reviewed a list of websites from companies that have received demand letters alleging possible infringement of the '508 patent. This list contained 1,894 websites and it would

be impractical to provide a detailed summary of each website. Instead, I performed an analysis of four specific websites for which I have access to claim charts in order to understand the nature of the alleged infringement. The claim charts contain, for each claim (or sub-section of a claim), a sample URL, screenshot image of the website for that URL, a summary describing how the claim allegedly applies to that URL, and in some cases a screenshot of the source code for at least one document used by the web browser to display the website for that URL. All of the images and source code screenshots are from material that is stored on the client computer; none is drawn from the server.

The four companies are Stoneway Electric Supply Company, The Essential Baking Company, Tom Bihn Inc. and SaltWorks Inc. Each of these companies have websites that are using common web technologies that would be expected of an eCommerce property. Notably, the claim charts for each of the websites contain virtually identical descriptions of how the claims apply to the URL; it appears that in general Landmark simply substituted business names, URLs, and screenshots into each chart without changing its "analysis" of any alleged infringement.

### *Considering each of the claims:*

*1. An automated multimedia system for data processing which comprises*

*1a. a computerized installation including a database, means for entering data into said database, and a program means for storing, processing, updating, and retrieving data items in response to coded requests from stations in communication with said installation;*

The "installation" in Claim 1 refers to a remote server computer, in contrast to the "station" or "terminal" which is a local client computer. The claim charts for this claim provide several examples where an input is provided by the user of the client computer, via a web browser, to induce a web server to provide a different output based on the supplied input.

19

However, Landmark asserts that various behavior in the example "causes data items to be stored in the database." At best, this assertion is not verifiable because, while a database would be used in a typical eCommerce website, the existence and use of a database is not observable by the client computer. In modern website architecture it is most common for a database to exist on a dedicated server, separate from the web server, in which case the client computer has no direct interaction with the server storing the database. It is not possible for the client server to observe where the database is located, and therefore impossible to know whether the "station" is "in communication" with "said installation".

> *1b. at least one station including a general purpose computer and a program applicable to said computer for sending said requests to said installation;*

It is reasonable to interpret the client computer as a "general purpose computer," the web browser as the "program," and the remote server as the "installation" in this section.

> *1c. means for communicating data back and forth between said installation and said station;*

It is reasonable to interpret the Internet connection used by the client computer to reach the web server computer as the "means for communicating data".

> *1d. said station further including:*

> *1d(1). a mass memory and means associated therewith for storing and retrieving textual and graphical data;*

> *1d(2). a video display and means associated therewith for displaying textual and graphical data;*

> *1d(3). means for entering information into said computer;*

It is reasonable to interpret a consumer-grade ordinary computing device (e.g., a desktop computer, laptop, mobile phone, etc.) as containing a "mass memory means", a "video display" and a "means for entering information".

20

*1d(4). means for programming sequences of inquiring messages on said video display in accordance with preset routines and in response to said information;*

The web browser program on the client computer is the "means" that performs these actions.

*1d(5). said sequences including instructions to an operator of said station for operating said station; and*

It is reasonable to assert that the HTML documents being sent from a web server and displayed on a client computer may contain "instructions" to the user who is visiting the website, although not every HTML document sent will include instructions. What is less clear is the intent of the "instructions" provided to the operator. The claim states that the "instructions" to the operator are "for operating said station", which makes sense in the context of the '508 Patent specification because the "station" and the "installation" are two computers that are intentionally coordinated as a system for the specific purpose of a loan application. If the "installation" computer doesn't send an "instruction" to the "station", the "station" has no purpose since the user will be completely unable to apply for a loan. By contrast, an eCommerce website server that sends a page of content containing products for purchase to a customer's computer does not change the functionality or usefulness of the customer's computer itself. The customer can decide if they would like to purchase a product, but could also just as easily navigate away to another website.

In another example provided by Landmark of "account creation" it is not reasonable to assert that the "operator" of the "station" is being "instructed" to perform any action on the "station" itself because the action – if any occurs at all – would more properly be interpreted as an action targeting the web server on behalf of the user by means of the client computer. Put another way, creating an account on a website is an activity that happens on the server not the

client, again using a program that the client cannot observe. More broadly, it is very uncommon that a website page would provide instructions to an "operator" to perform on the "station" itself outside of a few narrow use cases like technical support for a computer issue. I am aware of no eCommerce sites in which a website "instructs" a user to engage in an operation similar to that described in the '508 Patent.

Landmark appears to be providing an alternative interpretation of an "instruction" as being almost any user interface that encourages interaction. For example, in the case of the claim chart for The Essential Baking Company, Landmark suggests that the display of a login page with a username input, password input and "log in" button is a form of "instruction" for "operating said station". This is an overly broad interpretation because it suggests (1) that any user interface is an "instruction," and (2) that the "operator" will necessarily perform an action in response that is "operating said station". The presence of a button on a website should be considered an "affordance" in that it is an optional action provided to the user that they are permitted to interact with but not required to. In the language of computer usage, the presence of a button is not an "instruction" to use the button.

> *1d(6). means for selectively and interactively presenting to said operator interrelated textual and graphical data describing a plurality of transaction options, and for selectively retrieving data from said mass memory;*

It is reasonable to assert that a website page can provide a means for presenting text and graphical data "describing a plurality of transaction options," for example creating an order for products on an eCommerce site. It is ambiguous what the claim attempts to describe as "retrieving data from said mass memory" though it is reasonable to interpret this statement as the general act of reading some portion of data from the client computer in order to display the website page.

*1e. means for storing information, inquiries, and orders for transactions entered by said operator via said means for entering information;*

It is reasonable to interpret this section as referring to a keyboard or other input device being available as the "means for entering information" and that the "information" would be stored on the client computer.

*1f. means for transmitting said inquiries and orders to said installation via said means for communicating;*

This section echoes 1e, but in the context of the "means for communicating". It is reasonable to interpret this section as the "means" being the Internet connection between the client computer and the web server computer.

*1g. means for receiving data comprising operator-selected information and orders from said installation via said means for communicating; and*

It is reasonable to interpret this section as describing a response from a web server computer to a client computer, which may contain information from the user. It is not clear what "orders" refers to in this context, unless it is narrowly scoped to a use case like creating an order for products on an eCommerce website. This, of course, was not a function described in the '508 Patent, which relates to loan applications and not orders on eCommerce sites that did not exist when Landmark first applied for the Patent.

Perhaps for this reason Landmark instead takes a wholly different interpretation of an "orders from said installation" to mean programming code included in documents that are part of the response(s) from the web server computer. In this context Landmark seems to be interpreting "orders" as having a similar meaning to "instructions" that make up a program, in this context the code that is interpreted by the web browser. This is an odd interpretation because the only preceding reference to "orders" in Claim 1 is 1e's reference to "orders for transactions." In the spirit of the specification of the '508 Patent it would be reasonable to interpret an "order for

transactions" to refer to the execution of the instructions in the terminal that create a loan application.

> *1h. means for interactively directing the operation of said computer, video display, data receiving and transmitting means, and mass memory comprising means for holding an operational sequencing list, means for processing said operator-entered information, inquiries, and orders according to backward-chaining and forward- chaining sequences, and means responsive to the status of said computer, display, mass memory, and data receiving and transmitting means for controlling their operation;*

It is reasonable to interpret the majority of this section as describing capabilities of a client computer defined in the earlier claim sections, and to further conclude that the computer has a "means for holding an operational sequencing list" which should be interpreted simply as the computer being able to store a program. Given the prosecution history it is important that we focus on the statement "means for processing said operator-entered information, inquiries, and orders according to backward-chaining and forward- chaining sequences."

There are several important factors to consider when attempting to unpack what is described in 1h:

(1) 1h describes a "means for interactively directing the operation of said computer". That is, the scope of what is being described in 1h is a computation that is happening on the client computer ("station", "said computer") and *not* the web server computer ("installation"). Therefore we need to narrow our focus to the client computer.

(2) "backward-chaining and forward- chaining" should be interpreted using the definition supplied by the IBM Dictionary of Computing (1993), which aligns with how Landmark defined these terms during the prosecution of the patent.

24

(3) "means for processing said operator-entered information, inquiries, and orders" must occur on the client computer because the "means" here is in reference to "said computer" (i.e., the "station" from 1d).

Given the framing above, we can apply the definitions of the specific "backward-chaining" and "forward-chaining" terms as a test to computation that is alleged to be occurring on the client computer when interacting with an allegedly infringing website.

It is first important to draw the distinction between computation that occurs on the client computer versus computation that occurs on the web server computer. In the context of a website, we need to exclude any computation happening on the web server computer. As an example, consider what happens when a user attempts to login to a website. In a typical implementation, a user would use a web browser to enter login and password credential text into text input boxes on a website page that is displayed on the browser. When a user clicks a submit button, the web browser sends the credential data entered by the user to the web server computer. The web server computer will then execute a program – again, using code that is not visible to the client – whose function is to compare the provided input against a known valid set of credentials.

Going deeper in that example, the program will first attempt to retrieve a record (typically from a database) that corresponds to the provided username. The record will include a field representing the password, or a derivative of the password (e.g., an encrypted version). The program will then perform an equality comparison to determine if the supplied password input matches the reference password value from the record. Even though this computation is happening on the web server computer, and therefore not included in the scope of 1h, it is important to note that the program's execution, however it is performed, does not follow the

pattern of rule-based reasoning that Landmark describes in the definition of "backward-chaining" and "forward-chaining".

So, what computation happens on the client computer? As discussed above, the three most common types of documents that can be sent from the web server computer for execution on the client computer are HTML, CSS and Javascript. The execution of HTML and CSS is narrowly scoped to how specific web browsers will interpret those documents, execute code using the interpretation of the documents and produce a result. HTML and CSS have a specific limited set of valid instructions that are defined in the respective specifications for their languages. These instructions are executed in a consistent, well-defined order that does not follow the rule-based reasoning described in the definition of "backward-chaining" and "forward-chaining". Again, the typical implementation for a web browser does not use a rule-based inference engine.

Javascript documents are more interesting because Javascript is a general purpose programming language and the code contained in the Javascript document could theoretically include an inference engine or other programming model supporting rule-based reasoning. Javascript documents are executed by the web browser, which means they are described by 1h because the computation would be occurring on the client computer. The specific execution of the Javascript document and its contents is the clearest area to consider in determining if there is any possibility of infringement.

Let's now consider the supplied definitions for "backward-chaining" and "forward-chaining" from the IBM Dictionary of Computing (1993) as a test, going step by step.

*Backward-chaining: a way to emulate human inductive reasoning or goal-directed reasoning.*

26

There is no evidence that any computation of documents on the client computer, for the websites for the four companies referenced earlier, is attempting to "emulate human inductive reasoning". In a typical implementation of "goal-directed reasoning" an algorithm would attempt to work backwards from an end state or "goal". In order to work backwards, the algorithm needs to be supplied with a "graph" data structure that represents a set of rules. Each rule has a directional connection to zero or more rules, and the path from any one beginning rule to an ending rule could be interpreted as a "chain" in that, similar to a physical chain, rules are linked together to form a sequence. There is no evidence provided that suggests there is an end "goal" state that is being worked backwards from, no evidence of a supplied graph of chained rules and no evidence of an algorithm that executes against those rules.

*It starts with a selection option and works backward to prove its accuracy.*

There is no evidence that any computation of documents on the client computer, for the websites in question, is starting with a "selection option" and working backwards. Landmark supplies several assertions of examples of alleged backwards-chaining but either provides limited technical justification or mischaracterizes where the computation is occurring. Landmark provides an example from The Essential Baking Company stating "the screenshots below evidence a sequence of steps used to (a) add products to a shopping cart, (b) create a customer account (if one has not already been created), (c) provide shipping information and (d) provide billing information, including credit card information and billing address." All of these processes occur on the client computer, and none of them involve backward-chaining at all.

> *Forward chaining: an iterative procedure for solving a problem by which the problem is transformed into an instantiation of an axiom or a proven proposition applied to the premises, and another problem to be solved until a conclusion is reached or no further inferences can be made.*

The structure and execution of the forward-chaining procedure is similar to that of the backward-chaining procedure, with the difference being the reasoning order is inverted. That is, instead of working backwards from a target goal, forward-chaining starts with the data and proceeds towards a goal. This is a form of a so-called "data driven" approach, because the procedure starts with data instead of a goal.

It is accurate to assert that various computations occur on the client computer when interacting with the targeted websites. This is not surprising because it is common for an algorithm to contain steps that analyze or manipulate data. What is less common is the general purpose use of an algorithm that uses a set of chained rules, typically modeled as a graph, to reach a goal. It is even more rare to find these types of algorithms on websites because these algorithms favor complexity at the expense of efficiency, which is reasonable when modeling very complex workflows with a large number of rules. In practice, especially within the last decade, graph-based rule-chained algorithms are commonly found within the scope of machine learning and artificial intelligence.

I was unable to find any evidence that any of the alleged infringing websites use rule-based algorithms, executed on the client computer, which start with a portion of information and proceed in a series of chained inferences. There was likewise no evidence that any problems to be solved had been "transformed into an instantiation of an axiom or a proven proposition".

> *1i. said means for processing including means for analyzing said operator-entered information and means, responsive to said means for analyzing, for presenting additional inquiries in response to said operator-entered information;*

At a surface level it is obvious to any person who has used a website that there must necessarily be a means for processing input and providing an output. It is reasonable to also say

that there may be a mechanism "for presenting additional inquiries in response to said operator-entered information". This is obvious because the nature of an HTML document is to include a link from the document to another document, and it is a common pattern on websites to present sequential pages of content, for example a search results page that includes links to a "next" page or a set of links representing individual pages of a multi-page result set.

What is unclear from this section is where the "means" is occurring. Is the "means" occurring on the client computer ("station") or the web server computer ("installation")? In the context of Claim 1, the "said means for processing" is in the context of the "means for interactively directing the operation of said computer", so it is reasonable to interpret the scope of this section to be the "means" occurring on the client computer. This is an important distinction. In Landmark's claim chart for The Essential Baking Company there are multiple assertions about the "installation of the Accused System" instead of the "station." This is a misapplication of this claim because, as discussed above, this claim is related to the client computer ("station") and not the web server computer ("installation").

*1j. said computerized installation further including:*

*1j(1). means responsive to items received from said station for immediately transmitting selected data retrieved from said database to said station;*

It is reasonable to conclude that the web server computer ("installation") must have a means for "transmitting selected data" in order to serve responses. However, it is not possible for the client computer to observe if there is a "said database" involved in the process of data retrieval on the web server computer, although it is typical practice to do so. Even then, the client computer would not know if the database is on the server or on some other computer to which the server is connected.

*1j(2). Means responsive to an order received from said station for updating data in said database including means for correlating to a particular set of data received from said station;*

As noted in the analysis of 1j(1) it is not possible for the client computer to know if there is a database involved in the process of a web server computer responding to a request. However if a database was used, it would be reasonable to conclude that a means exists for updating data in the database.

*1k. whereby said system can be used by a plurality of entities, each using one of said stations, to exchange data, and to respond to inquiries and orders instantaneously or over a period of time.*

It is reasonable to conclude that the "system" comprising a client computer and a web server computer can be used by "a plurality of entities" because the purpose of these eCommerce websites is to be used by the general public which necessitates being available for multiple users. Likewise, in order to be available for use by multiple users the "stations" need to be able to "exchange data" and "respond to inquiries and orders".

## IX.     CONCLUSION

The central question is if Landmark could have reasonably believed in good faith that the targeted websites infringed on the '508 patent.

With respect to the scope of the '508 patent, the most clear interpretation of the text is to describe a specialized system that provides the ability for a person to apply for a loan using an ATM-like terminal, which uses a network connection for interacting with a centralized computer. That centralized computer contains various data about loans. The terminal computer is periodically sent data from the centralized computer, which is later used in combination with user input from the terminal to perform a computation on the terminal to determine if a loan will be approved. Using the IBM Dictionary of Computing definitions of "backward-chaining" and

"forward-chaining" strongly suggests there is a form of inference engine contained specifically on the terminal that uses a collection of chained rules to determine loan approval.

With respect to website functionality, the typical implementation and structure of an eCommerce website would not use a rule-based inference engine for computation because that type of system is extremely inefficient for the purpose. In practice, I have observed many open source implementations of eCommerce websites over the last two decades as well as the proprietary implementation of the largest eCommerce website in the US. At no point have I observed a general purpose rule-based inference engine being used, nor have I experienced software engineers using the terms "backward-chaining" or "forward-chaining" to describe implementations on eCommerce websites. By contrast, I have observed loose use of these or similar terms when describing machine learning approaches, for example feed-forward neural networks. These are entirely unrelated to eCommerce and general website functionality.

With respect to the demand letters sent to a selection of companies I examined, the letters lacked specificity as to how a reasonable person would apply the invention in the '508 Patent to the targeted websites. The demand letters also strongly imply that the '508 Patent grants the assignee the rights over practically all websites on the Internet, given that the structure of the assertions in the letters describe the general purpose client/server request/reply interaction that is the core of Internet protocols like HTTP and the basic operations of web browsers.

With respect to the specific websites that are alleged to infringe the '508 Patent, I could find no evidence that the websites in question utilized the specific backward-chaining or forward-chaining algorithms described in the patent, to the best that they can be understood. Further, in several cases it was clear that the targeted companies are mere customers of software vendors providing eCommerce services (Shopify). When considering the '508 Patent as a

31

"system", the targeted companies are not the owner and operators of the client computers (which belong to their customers), they are often not the technology owners or operators of the eCommerce website technology contained on the web server computers, they are possibly not even the owner or operator of the web server computers themselves (which may be a vendor), and finally are not the owner or operator of the technology that comprises the web browser.

I have concluded that a reasonable person could not have believed in good faith that the targeted websites infringed on the '508 Patent. In reaching this conclusion, I note:

(1) As noted above, the targeted companies are often only incidentally related to the "system" the '508 patent describes. The technology and structure of the individual components of the system are often not owned by the targeted companies. Further, specific components like the client computer are outside the control and agency of the targeted companies. A target company merely making a website available on the Internet does not create the website and does not require any individual to consume or use that website, and the company vending that website is no more a part of a "system" than are any other incidental components that appear in the interaction between a customer and the company via their website. For example, there are many companies that are involved in the common transit of data over the Internet between any two Internet-connected computers (Comcast, for example) but the companies that participate in that common transit are not participating in any specific construction of actions which uses that common transit as a carrier.

(2) If Landmark genuinely believes that the targeted companies are infringing on the '508 patent, it would necessarily believe that the technology vendors of web

browsers (e.g., Microsoft, Google, Apple, etc.) are complicit in the infringement because virtually all of the functionality alleged is enabled by the web browser software. Landmark would also necessarily believe that massive eCommerce businesses such as Amazon are infringers. It would therefore be in the economic interest of Landmark to pursue legal action against these large technology companies and seek licensing fees or damages from them. The fact that Landmark is instead pursuing legal action against a diverse set of unrelated companies with businesses such as making baked goods, soda and bath salts for tens of thousands of dollars is illogical. If Landmark genuinely believes they have ownership of the core of ubiquitous technologies like web browsers used by businesses that engage in eCommerce the potential economic value would easily be in the ballpark of billions of dollars. It defies reason to believe that Landmark would target these smaller alleged infringers while avoiding the large technology vendors. It is difficult to interpret the targeting of smaller companies, many of whom do not have technology as their core competency, as anything other than predatory bad-faith action.

(3) The most straightforward interpretation of the '508 patent bears no resemblance to any of the alleged infringing websites, or even in general to websites. The assertions that Landmark makes require significant imaginative leaps to even map the concepts from the patent to the alleged infringing websites. This difficulty does not stem from any deep technical aspect of the patent itself, but is instead the result of taking a concrete and well-known idea, expanding that idea to an abstract

33

pattern, and then re-applying that abstract pattern to websites using terse technical or legal language.

(4) The prosecution history for the '508 patent as well as Landmark's positions during subsequent challenges to that patent are troubling because of the shifting stance on what specific terminology means. It should be no surprise to anyone familiar with past arguments related to the '508 patent that I needed to spend a considerable amount of time wrestling with Landmark's use of "backward-chaining" and "forward-chaining". One of the difficulties is that Landmark has taken conflicting viewpoints of what they claim is invented in the '508 patent. For example, the terms "backward-chaining" and "forward-chaining" could be considered terms of art as defined in the IBM Dictionary of Computing. The question then is, in what domain? The most common and typical application of these terms would be in the domain of expert systems where the terms have very specific and easy to understand meaning. However in 2014 Landmark took the position that expert systems belong to a "highly-specialized niche within a niche" and that a person skilled in the art would not have combined features of the '508 patent with those of expert systems. So, which interpretation should be used? And if an existing definition cannot be applied or understood, Landmark needs to clearly articulate one.

_____

ALEX STRAND

Dated: May 31, 2024

The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON, | NO. 2:21-cv-00728-RSM |
| Plaintiff, | EXPERT REPORT OF DAVID L. DAY |
| v. | |
| LANDMARK TECHNOLOGY A, LLC and RAYMOND MERCADO, individually, | |
| Defendants. | |

## I.      INTRODUCTION

1.      I, David L. Day, submit this Expert Report on behalf of Plaintiff State of Washington ("Washington") in the above-captioned litigation against Defendants Landmark Technology A, LLC, and Raymond Mercado, individually, regarding the enforcement of the Washington Consumer Protection Act, Wash. Rev. Code § 19.86 (CPA) and the Patent Troll Prevention Act, Wash. Rev. Code § 19.350 (PTPA).

2.      Good faith licensing of a patent has many defining characteristics. A good faith licensing campaign should only seek to license or enforce a quality patent for which the licensor has invested material resources to conduct due diligence regarding its technical merits, claim definiteness, and scope and relevance of the prior art, if any.

3.      In a good faith licensing campaign, a licensor should enter into negotiations with a potential licensee only when it has a quality patent and diligent investigation indicates that patent is (a) valid, (b) enforceable and (c) being used, or likely to be used, by the potential licensee. The licensor should be willing to provide documented evidence of use, including claim charts, to the licensee for its review. And if a licensor learns during discussions with the licensee that the patent is not likely to be valid or enforceable, or used by the licensee, then the licensor should withdraw that patent.

4.      In a good faith licensing campaign, a licensor generally would not seek licenses from or threaten litigation against a business such as a start-up company, a local retailer, or a small end-user customer unless it directly competes against the licensor.

5.      A good faith licensing campaign will generally include a backward-looking payment for past infringement and a forward-looking royalty for future use. These damages amounts are generally based upon lost profits, reduced sales, or other quantifiable financial losses, as well as the alleged infringer's profits obtained through the infringement. Royalties are generally based upon the market value of the patented invention, the sales volume of the infringing products, and any loss of market share suffered by the patent holder are be taken into account.

6.      Defendant Landmark Technology A, LLC ("LTA") acted directly contrary to these principles.

7.      LTA targeted local retailers and small businesses who lacked the resources to defend themselves in costly patent litigation. LTA then sought small, lump-sum payments from these companies.

8.      LTA behaves consistently with the definition of an abusive patent-assertion entity (PAE). PAEs enforce patent rights, rather than investing in development or commercialization.  Abusive PAEs—popularly called "patent trolls"—assert patents in bad faith, targeting smaller companies that cannot afford protracted litigation and demanding payment of licensing fees.

## I.      QUALIFICATIONS AND EXPERIENCE

9.      I am an expert in the field of intellectual property licensing and technology transfer.  A summary of my qualifications and credentials is set forth below.

10.      I have personally led, overseen, or been deeply involved in over a thousand license and option transactions in my roles with academia, venture capital, small companies and law firms.  Nearly all of these transactions were with private and public companies and were both exclusive and non-exclusive licenses.

11.      I have also achieved RTTP certification.  RTTP is an international standard for evaluating the professional competence and experience of practitioners working in knowledge exchange/knowledge transfer/technology transfer. RTTP defines this as "a collaborative, creative endeavor that translates knowledge and research into impact in society and the economy," whether such practitioners are working in universities, industry or government labs. Evaluations are based on a track record of real world-achievement by a group of peers. There are currently approximately 550 registered RTTP professionals worldwide.

12.      I am currently a consultant for DDay Ventures and advise clients on issues related to licensing and technology transfer.

13.      I am also a Consultant in the Technology Commercialization group for the University of Texas at Austin, an Advisor for Radyus Research, and an Advisory Board Member for LevelSet Capital.

14.     I received a B.S. in Education from Auburn University in 1973, and an Executive Masters in Business Administration from the University of Alabama in 1987.

15.     I joined the University of Alabama at Birmingham's Research Foundation in 1995 as a Licensing Officer and left in 2001 as the Executive Director.

16.     I joined the University of Florida's ("UF") Office of Technology Licensing as Director in 2001, and retired in 2017, as Assistant Vice President.  During my time there, I oversaw the commercialization efforts for UF through licensing, incubation, and other related activities.  Additionally, The Florida Innovation Hub at UF and the Sid Martin Biotechnology Institute reported to me during this time.

17.     I served as Executive Director of the Southeastern BIO Investment and Partnering Forum ("SEBIO") from 2017 to 2020.  SEBIO's mission is to foster the growth of the life sciences industry in the Southeastern United States by promoting entrepreneurship and bringing together the key stakeholders active in the development of the industry, focusing on bio/pharma, medical devices and technology, agricultural biotechnology, animal health, bioinformatics, and biomaterials.  SEBIO (later Southeast Life Sciences Association – SELSA) was a cooperative effort of universities, venture capital firms, private companies, and service providers to provide a showcase to grow especially new, young companies, many of which licensed their patents.

18.     Since leaving employment at SELSA and focusing solely on consulting, I have worked for various universities, startups, and both IP and transactional law firms conversing with over dozens of the leading tech transfer leaders annually.  I presented at the 2022 Association of University Technology Managers ("AUTM") Central meeting in regard to a new method of measuring tech transfer effectiveness and have spoken at many AUTM and other meetings in the past.

19.     I have consulted extensively for The University of Texas at Austin over the past three+ years and assisted with redesigning its technology commercialization program.  Over a dozen new modules have been added to the overall program.

20.     Presently, I also serve on the Advisory Board of LevelSet Capital, a $300 million fund focusing on intellectual property which is specifically designed to serve the university/research institutes technology transfer industry in their licensing efforts.

21.     I served for many years on the BioFlorida (state trade association for the biomedical industries in Florida) Board of Directors & Executive Committees.

22.     I previously served as Vice-Chair of the Board of Directors and Principal Investigator for the Florida Institute for the Commercialization of Public Research (the Institute).  The Institute invested on behalf of the State of Florida in startups companies who had acquired licenses from Florida's research institutions.

23.     I have worked with significant, important and lucrative patents during my career. This includes the base technology patents for Sentricon, the home pest protection system.[1]  These patents are licensed to Dow Agrosciences and were subject to a successful infringement case.  I have also directed and led licensing negotiations regarding a large and significant AAV vector technologies portfolios.  The patents for which I led the licensing were judged to be significant enough by entrepreneurs that over 250 were licensed for new startup companies.

24.     I received the 2012 Volunteer of the Year Award from the Florida Economic Development Council.  I was named as one of the "25 Most Influential People in Southeast Technology Community" by TechJournal South in 2007, and one of the "Must-Know Contacts" in Gainesville by Florida Trend in February 2011.

25.     During my 23 years of running technology transfer operations at two universities, I directed, was active and responsible for, and remained deeply informed of all manner of technology transfer licenses and practices.  To illustrate, in my final year as Assistant Vice President of the University of Florida for Technology Commercialization, my office executed 122 licenses and options.

26.     Cumulatively, I estimate that I have directed and/or been directly involved in the negotiation or 1,000 or more exclusive and non-exclusive licenses and options.  I have seen many variations and developed through experience a firm understanding of what was normal or not in the practice of this field.

27.     My role at The University of Florida gave me annual access to and close conversations with leaders in the field.  That, along with the nature of my consulting since retiring from the University of Florida in 2017, has contributed to me being one of the better-informed people in this field and a recognized expert.

---

[1] https://www.mypmp.net/sponsoredcontent/the-sentricon-story-25-years-of-termite-innovation/

28.     During my time with the University of Florida and since, both as an expert witness and a consultant with venture and law firms, I have become steeped in how licensing generally is applied in cases where patent infringement is alleged or asserted.

29.     My experiences and qualifications are further detailed in my curriculum vitae, which is attached hereto as Exhibit A.

## II.     COMPENSATION

30.     I am being compensated at the rate of $600 per hour for the time spent preparing this Report and for testifying in court regarding the opinions expressed therein.  My compensation is not contingent on the opinions I provide or the outcome of this matter.

## III.     PRIOR TESTIMONY

31.     In the past four years, I have provided expert witness deposition testimony in two cases:  *Univ. of Tennessee Research Foundation v. Caelum Biosciences, Inc.*, Case No. 3:19-cv-508 (E.D. Tenn.), and *Univ. of Pittsburgh of Commonwealth Sys. of Higher Educ. v. Cook Myosite, Inc*., Case No. 2:22-CV-00717-CCW (W.D. Pa.).

## IV.     TASK AND METHODOLOGY

32.     I have been retained by the Washington State Attorney General's Office in connection with its litigation against LTA and Mercado to provide my expert opinion related to patent licensing practices and related subject matter.

33.     In forming the opinions described in the report, I have considered the prosecution documents, various pleadings filed in this case, and the materials cited or otherwise referenced herein.  I have also considered any additional materials identified in Exhibit B. I have also relied on my knowledge, skill, education, experience, and training in the field of intellectual property licensing and technology transfer.

## V.     OPINIONS

<u>PATENT LICENSING</u>

34.     In the patent context, the terms license and licensing mean an agreement between the patent owner (i.e., the licensor) and the person or company that wants to use and benefit from the patent (i.e., the licensee). A license authorizes the licensee to

make or sell the product, design, or technology in the patent, and typically includes a payment from the licensee to the licensor.

35.     Licensing the right to use, sell, or make an invention is a good way for inventors to reap the benefit of the invention, especially when an existing company has a product in the market with the patented technologies utilized without the benefit of a license.  Licensing, rather than selling the patent, allows inventors to keep control of the patent.  Licensing rights are granted to one or several businesses, most typically by way of exclusive or non-exclusive licenses.

36.     Inventors generally target leaders in the industry in order to generate bigger revenues and to lead adoption and licensing by smaller players in any given market.  Typically, in my experience, royalties run from as low as 1-2% up to perhaps 20%, dependent on the market and other factors.

GOOD FAITH PATENT LICENSING

37.     Patent licensing is a $150 billion annual business in the U.S. that facilitates the sharing of inventions with firms that develop them into new products and services. But it is also a business where abuses have occurred. Therefore, industry leaders in many technology fields have developed codes of conduct for ethical and beneficial patent licensing.

38.     During my time at UF and other universities and private companies, I was guided by these types of principles, as were my colleagues. As reasonable, good-faith patent licensing campaign follows these principles as well.

39.     Technology company MOSAID[2] boiled down the code of conduct as follows: licensors and licensees alike must act ethically, responsibly, knowledgably and with rigor to achieve mutual benefit and economic growth.

40.     These basic principles can be expanded into more detailed principles of ethical and beneficial patent licensing behavior for licensors:

    A.     A licensor should only seek to license or enforce a quality patent for which it has invested material resources to conduct due diligence regarding its

_____

[2] MOSAID is a semiconductor technology company incorporated in Ottawa, Canada. It is a recognized leader in the technology industry, and it controls a portfolio of technology patents.

technical merits, claim definiteness, and scope and relevance of the prior art, if any.  In 2023, the U.S. District Court for the Middle District Court of North Carolina analyzed the now-expired U.S. Patent No. 7,010, 508 ("the '508 patent"), and held "that the disputed claim – claim 1 of the '508 patent – is declared invalid for indefiniteness."[3] This court ruling supports my opinion that a reasonable patent owner seeking to license the '508 patent should have known that the '508 patent is essentially worthless from a licensing perspective. It is my understanding that the State's technical expert will opine that the '508 patent is essentially worthless from a technological perspective as well, further underscoring my conclusion.

B.      A licensor should enter into negotiations with a potential licensee only when it has a quality patent and diligent investigation indicates it is (a) valid, (b) enforceable and (c) being used, or likely to be used, by the potential licensee. The licensor should be willing to provide documented evidence of use, including claim charts, to the licensee for its review. And if a licensor learns during discussions with the licensee that the patent is not likely to be valid or enforceable, or used by the licensee, then the licensor should withdraw that patent.  As noted previously, and in other areas of this report, the '508 patent does not meet this criterion.

C.      Although a licensor is by law free to license anywhere in a chain of distribution, a responsible licensor generally should not seek licenses from or threaten litigation against a business such as a start-up company, a local retailer or a small end-user customer unless it directly competes against the licensor.[4] As discussed elsewhere in this report, LTA only targets small businesses, end-users, and local retailers.

41.    The '508 patent was issued in 2006 and claims rights to "automated multimedia data processing network for processing business and financial transaction

---

[3] https://www.ncmd.uscourts.gov/sites/ncmd/files/opinions/21cv25moo_August.pdf
[4] http://www.conversantip.com/wp-content/uploads/Conversant-Patent-Licensing-Principles.pdf#:~:text=Patent%20licensing%20is%20a%20%24150%20billion%20annual%20business,th at%20develop%20them%20into%20new%20products%20and%20services.

between entities from remote sites". LTA's demand letters threaten to sue unless LTA gets paid a $65,000 licensing fee.

42.     Within the licensing community, there is a difference between a "notice letter" and a "demand letter." A notice letter includes a high level of detail that shows that the patent owner has done research, and has at least some plausible rationale to believe that there is or may be ongoing patent infringement. A notice letter typically will also suggest that the patent owner is prepared to negotiate and will invite a discussion.

43.     By contrast, a "demand letter" is merely a threat of further action unless the recipient pays a lump sum. Demand letters are most often crafted by bad actors frequently known as "patent trolls." These bad acting patent trolls intend to intimidate thousands of small businesses into paying a small amount rather than fighting. This is true even if there is no plausible claim of patent infringement.[5]

44.     In the United States, patent owners can seek several different types of remedies when considering patent infringement litigation. Some remedies, like injunctions or orders barring imports, are more prevalent in particular industries. Some, like pharmaceutical and biosimilar exclusivity, are industry specific. Most patent owners suing for infringement in US courts seek monetary damages.

45.     For most patent owners, the amount of recoverable damages for patent infringement is a primary driver when deciding when to bring, defend, or settle patent litigation. The potential damages from litigation also drives (offensive and defensive) licensing decisions and freedom-to-operate analyses (when balancing design-around costs). US patent law guarantees a prevailing patent owner at least "a reasonable royalty."[6]

46.     Because patent litigation is so expensive the patent owners generally only pursue this remedy if the potential damages far outweigh the costs.

PATENT TROLL ACTIVITY IS HARMFUL TO THE ECONOMY

47.     Studies have found that patent trolls are a burden on productive companies and do not promote innovation.  While in most cases the entities termed

---

[5] https://ipwatchdog.com/2014/10/06/ethical-licensing-vs-bad-practices-damaging-the-industry/id=51470/
[6] https://www.finnegan.com/en/insights/articles/u.s.-patent-damages.html

"trolls" are operating within the bounds of the legal system, their aggressive tactics achieve outcomes contrary to the origins of the patent system, as a legislated social contract to foster and protect innovation.

48.     According to an article in IPWatchdog that references the 2019 American Intellectual Property Law Association "Report of Economic Survey," the average litigation cost is about $2.8M for cases with <$25M risk. For cases with over $25M at risk, the cost for litigation is about $4M. Because the costs and risks are high, defendants may settle even non-meritorious suits they consider frivolous.[7]

49.     The direct cost of actions taken by so-called "patent trolls" totaled $29bn in the US in 2011, according to a study by Boston University. These "direct costs" included lawyers' bills and license fees. But authors James Bessen and Michael Meurer - both from Boston University's school of law - said other charges meant their study only reflected part of the impact.

50.     "This [$29bn] figure does not include indirect costs to the defendants' businesses such as diversion of resources, delays in new products, and loss of market share," they wrote.  The authors added that about one quarter of the cost of NPE litigation consisted of legal fees - money, they said, that could otherwise be used to fund innovation.

51.     A 2014 study from Harvard University, Harvard Business School and the University of Texas concluded that firms forced to pay patent trolls reduce R&D spending, averaging $211 million less than firms having won a lawsuit against a troll. That 2014 study also found that trolls tend to sue firms with fewer attorneys on staff, in effect encouraging firms to invest in legal representation at the expense of technology development. The 2014 study reported that trolls tend to opportunistically sue firms with more available cash, even if the firm's available cash was not earned in the technology that is the subject of the patent lawsuit, and targeting the firms long before a product begins turning a profit, thus disincentivizing investment in new technologies.

---

[7]

https://www.bing.com/search?q=how+much+does+it+cost+to+litigate+a+patent+aipla&qs=n&form=QBRE&sp=-1&ghc=1&lq=0&pq=how+much+does+it+cost+to+litigate+a+patent+aipl&sc=4-47&sk=&cvid=FC336BDCF34949EE915D06B49B263DF0&ghsh=0&ghacc=0&ghpl=

## LTA BEHAVES CONSISTENTLY WITHIN THE DEFINITION OF AN ABUSIVE PATENT-ASSERTION ENTITY (PAE)

52.     A "patent assertion entity" (PAE or patent troll) neither invents a product nor uses the resulting patent. PAEs, also called "non-practicing entities," exist solely to monetize existing patents. The typical modus operandi of a PAE is to locate and purchase unused patents, scour the internet for similar products, and then sue or threaten lawsuits for patent infringement unless the alleged infringer pays royalties.

53.     Legitimate NPEs employ a rigorous due diligence process to ensure that the patents they license are of good quality and highly likely to be upheld as valid by the courts and by patent office trial boards. Just as companies that manufacture products do, a legitimate licensing firm generally will resort to litigation to enforce its valid patents only after protracted good-faith negotiations with potential licensees have proven unsuccessful. They do not use the threat of litigation to seek nuisance settlements, nor do they threaten litigation against startup companies, product retailers, or retail consumers unless they directly compete with the licensor.

54.     Patent trolls, on the other hand, often use low-quality or over broad patent claims to threaten litigation against hundreds of small businesses each year, even retail establishments such as coffee shops and hotels. They claim these businesses are infringing their patents simply by doing something as innocuous as scanning a document to email or offering Wi-Fi access to customers. They then demand settlements of a few thousand dollars or threaten the business with an infringement suit that can cost literally millions of dollars to defend against. These suits are known as strike suits—i.e., suits filed to extort nuisance settlements that are less than the cost of litigation—and are unfortunately nothing new in American courts. Similar suits are also filed every year in the personal injury, product liability, and shareholder rights arenas.

## LTA'S BUSINESS MODEL IS BAD FAITH PATENT ASSERTION

55.     Bad faith patent assertions have several non-exclusive characteristics:

a.     They do not include factual allegations concerning the specific areas in which the target's products, services, and technology infringe the patent or are covered by the claims in the patent.

b.      Prior to sending the demand letter, the licensor fails to conduct a realistic analysis comparing the valid claims in the patent to the target's products, services, and technology. Alternatively, the licensor conducts such an analysis, but does not identify specific areas in which the products, services, and technology are realistically covered by the claims in the patent.

c.      The licensor offers to license the patent for an amount that is not based on a reasonable estimate of the value of the license.

d.      The claim or assertion of patent infringement is meritless, and the licensor knew, or should have known, that the claim or assertion is meritless.

e.      The claim or assertion of patent infringement is deceptive.

56.     Over an 18-month period, LTA issued 1,892 separate patent assertion demand letters to 1,176 different target companies in 48 states. First Amended Complaint, Dkt. #42, ¶ 1.2. In its demand letters, LTA relies upon the '508 patent, issued in 2006 on the basis of a 1995 application to the Patent and Trademark Office (PTO). *Id.* In 2014, the PTO found, in a contested matter, that the '508 patent "does not recite a technological feature that is novel and unobvious over the prior art, and is therefore not a technological invention."[8] From a licensing perspective, this is not a valuable patent.

57.     LTA nevertheless asserted the patent at a shocking rate, issuing an average of 24 demands per week. First Amended Complaint, Dkt. #42, ¶ 1.2. LTA primarily targets customer log-in pages on company websites but has also demanded license fees for webpages containing privacy practices, shopping carts, products for sale, and company home pages. *Id.* In short, any business with a web presence is a potential target for LTA.

58.     From a licensing perspective, LTA's claim that it has essentially patented all company websites is far-fetched, and is not supported by its own licensing activities. I will defer to our technical expert on the technical issues with the '508 patent. Nevertheless, based upon my education, experience, and training, a patent that covers what LTA claims the '508 patent covers would be worth an astronomical amount and

---

[8] *Ebay Enter., Inc. Petitioner v. Lawrence B. Lockwood Patent Owner*, 2014 WL 2150045 (Patent Tr. & App. Bd. May 20, 2014).

would thus demand astronomical license fees, not lump sum licensing fees of $7,500 to $30,000 or so from local companies.

59.     A reasonable licensing scheme for a patent as valuable and broad as LTA claims would target the largest allegedly-infringing companies in the industry in order to reap the maximum financial benefit and encourage others in the industry to also accept licenses.  This is exactly what I did in the decades of licensing patents at UF and other institutions and companies. Targeting small business and obtaining small, lump-sum licenses – rather than targeting Amazon, Oracle, Delta Airlines and other larger companies with a large online presence – support the conclusion that LTA knew the '508 patent does not say what LTA claims and is not as valuable as LTA claims.

60.     LTA's licensing scheme is not normal now within the bounds of regularly accepted practice by leading licensing organizations.

## LTA'S LITIGATION PRACTICES ARE NOT NORMAL OR BEST PRACTICE FOR GOOD-FAITH LICENSORS

61.     LTA's practice of avoiding litigation further supports the conclusion that its licensing activities are not in good faith.

62.     Although LTA has filed lawsuits against a handful of alleged infringers (again small, local retailers), it has rapidly settled each of them for a low-dollar lump-sum.

63.     Additionally, LTA has not filed infringement suits against the large tech companies that would necessarily be infringing the '508 patent (assuming the '508 patent is a broad and valuable as LTA claims, of course). This type of litigation activity is the most prevalent industry practice and could yield the largest settlements.

64.     It is not lost on me that these are also the companies best able to defend themselves and dispute LTA claims about the '508 patent. Small local retailers with websites are not positioned to spend the millions of dollars necessary to defend against LTA's claims and invalidate the '508 patent.

65.     Based upon my education, experience, and training, a licensor enforcing its patent in good faith is willing to litigate the validity of its patent when necessary. While at the University of Florida, I was involved in two infringement related cases -

UNIVERSITY OF FLORIDA RESEARCH FOUNDATION, INC., Plaintiff, v. MEDTRONIC PLC, MEDTRONIC, INC., AND COVIDIEN LP, Defendants, and another potential suit.

66.     LTA's refusal to defend its patent in litigation, and its quick lump-sum settlements, supports the conclusion that LTA knew the '508 patent does not say what LTA claims and is not as valuable as LTA claims.

67.     Additionally, it is common to resolve patent infringement lawsuits with a negotiated settlement in which the defendant agrees to pay an ongoing royalty for the intellectual property in question. Through this licensing agreement, the patent owner will enjoy a stream of income. Also, he or she may be able to negotiate for retroactive payments as well.[9]  Actual damages aim to compensate the plaintiff for the losses directly caused by the infringer's actions. The plaintiff must prove the amount of damages suffered due to the infringement, which may include lost profits, reduced sales, or other quantifiable financial losses. The court also considers the defendant's profits obtained through the infringement.

68.     If actual damages are difficult to calculate or insufficient, the court may award reasonable royalties. Reasonable royalties are based on the amount the infringer would have paid to the intellectual property owner if they had negotiated a licensing agreement before the infringement occurred. Factors considered in determining reasonable royalties include the value of the infringed intellectual property, the duration of the infringement, and the profitability of the infringing product or service.[10]

69.     One of the leading licensing organizations in the world is the Licensing Executives Society (LES).  LES has Rules of Ethics which states Rules of Conduct state "members must not misrepresent information to anyone, including their clients, their employers, or opposing parties. In addition, when participating in a transaction involving intellectual property, LES Members must fairly represent the nature, quality, and scope of the rights and/or materials being licensed or sold. Puffing and exaggeration have no place in a transaction involving intellectual property. To the knowledge of the Member,

---

[9] https://www.upcounsel.com/patent-infringement-settlement#:~:text=A%20negotiated%20settlement%20in%20which%20the%20defendant%20agrees,able%20to%20negotiate%20for%20retroactive%20payments%20as%20well.
[10] https://www.mikevestil.com/guides/understanding-infringement-litigation-what-you-need-to-know/

any representations as to performance, reliability, or value of intellectual property must be supported by facts".

## LTA DOES NOT FOLLOW NORMAL OR BEST PRACTICES BY NOT CHARGING ROYALTIES

70.     Even outside of the litigation context, royalty bearing, non-exclusive licenses are common.

71.     Consistent with Section 284 of the Patent Act, licensors can seek backward-looking damages for past infringement and forward-looking royalties for future use of the patent.

72.     Additionally, factors such as the market value of the patented invention, the sales volume of the infringing products, and any loss of market share suffered by the patent holder are be taken into account.

73.     For example, while at the University of Florida, I directed the nonexclusive licensing campaign for a bioag-related patented technology.  We sought damages going backward, and royalties going into the future were based on royalties.  We issued over 50 non-exclusive licensees, all of which agreed to terms based on royalties.

74.     However, LTA does not charge license fees based on royalties from Licensee sales.  Instead seeks small lump sum payments that do not appear to be related to any analysis of backward-looking damages, the actual (minimal, if any) market value of the '508 patent, the web traffic or other sales volume of the allegedly-infringing websites, etc.

75.     If any further developments occur in this litigation that bear upon the opinions I have expressed in this expert report, I reserve the right to supplement or amend this report to take those developments into account.

76.     My work on this matter is ongoing, and the opinions in this report are based on the information I have reviewed and analyzed to-date. I reserve the right to give additional opinions based on information arising subsequent to this report, including new evidence, testimony, arguments or opinions raised or new evidence cited by LTA or its experts, either prior to or during any hearing or trial in this action.

77.     If called to testify, I will, as needed, explain the principles and terminology used in this report.  I may use demonstrative aids and exhibits to illustrate these principles and the opinions expressed.  I have not yet prepared any such demonstrative aids or exhibits for use at trial, but I reserve the right to do so.


David L. Day

Dated: May 29, 2024

16

**EXHIBIT A**

David Day – Consultant

Former Assistant Vice President for Technology Transfer, University of Florida Former Executive Director, Southeast BioInvestors Forum

Day joined the University of Florida's Office of Technology Licensing as Director on April 2, 2001, and retired July 26, 2017, as Assistant Vice President. David oversaw the commercialization efforts for UF through licensing, incubation, and other related activities. Before coming to the University of Florida, from 1994-2001, Day was the Executive Director of the University of Alabama in Birmingham Research Foundation.

David lead the turnaround of the University of Florida's technology transfer program to the point that it was named the #3 technology transfer program out of 220 in the U.S. by the Milken Institute in April of 2017.  Also reporting to Mr. Day is UF's incubator program:  The Florida Innovation Hub at UF and the Sid Martin Biotechnology Institute. The University of Florida's Sid Martin Biotechnology Incubator took top honors worldwide in April 2013, when it was named the 2013 Incubator of the Year by the National Business Incubation Association.  It recently repeated as that award winner, the only incubator to win the World's Best Incubator honor twice in the 31-year history of the award.

While at UF David was one of a small number of university leaders to lead the inception of Osage University Partners, the first and most prominent venture fund which invests in startups from the top universities and research institutions in the US and abroad.  Along with Yale, Duke, U Penn, and Columbia as the original five core partners the concept of utilizing the unused asset of university co-investment rights was pioneered with Osage.

Since leaving UF employment and focusing solely on consulting David's depth and breadth of contacts in the technology transfer world have grown tremendously.  Working for various universities, startups, and both IP and transactional law firms he is conversing with over 100 of the leading tech transfer leaders annually.  Additionally, his

contact with leaders both top and mid-range in the university tech commercialization industry expands to the hundreds per year.  He has been selected to present at a number of AUTM regional and international meetings on various cutting edge aspects of the technology commercialization business.

The University of Texas at Austin has used David extensively over the past three years to redesign its technology commercialization program.  Two dozen new modules have been added to the overall program.  Among those UT Austin duties David stood up the UT Austin Seed Fund.

David also serves on the Advisory Board of LevelSet Capital (a wholly owned subsidiary of Fortress Investments), a $300 million fund focusing on intellectual property which is specifically designed to serve the university/research institutes technology transfer industry.

David was Executive Director of the Southeastern BIO Investment and Partnering Forum (SEBIO) from 2017 to 2020, and one of a handful of founders of the annual conference in 1998.  SEBIO's mission was to foster the growth of the life sciences industry in the Southeastern United States by promoting entrepreneurship and bringing together the key stakeholders active in the development of the industry. SEBIO's geographic footprint included Alabama, Florida, Georgia, North Carolina, South Carolina, Tennessee, and Virginia. SEBIO focused on key industries within the life sciences, including bio/pharma, medical devices and technology, agricultural biotechnology, animal health, bioinformatics, and biomaterials.

Mr. Day serves on the Board of Directors and served for many years and on the Executive Committees of BioFlorida.  Mr. Day previously also served as Vice-Chair of the Board of Directors and Principal Investigator for the Florida Institute for the Commercialization of Public Research.  The Institute was awarded $23 million by the State of Florida to invest in university startups from around the state.  That fund has been successful and is still alive and making new investments off the proceeds of its past successful fundings.[11]

---

[11] https://www.florida-institute.com/

**EXHIBIT B**

| Document | Bates Numbers |
|---|---|
| Amended Complaint, Patent, Defendants' discovery responses (Initial and supplemental) | #434.1 - #434.33, #444.1 - #444.11, LandmarAWSAG000001 - LandmarAWSAG004354, LTA000001 - LTA001615, LTA1639 - LTA1662, LTA2098 - LTA2160. |
| DEFENDANT LANDMARK TECHNOLOGY A, LLC'S MOTION TO DISMISS UNDER RULE 12(b)(6) OR, IN THE ALTERNATIVE, TO STRIKE UNDER RULE 12(f) | No bates numbers |
| DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE COUNTERCLAIMS AND JURY DEMAND PURSUANT TO FRCP 12(f) AND FRCPs 38 AND 39(a)(2) | No bates numbers |
| Signed patent settlement and license agreements | #5.1-#5.7, #89.1-#89.6, #210.1-#210.8, #288.1-#288.7, #369.1-#369.8, #423.1-#423.8, #425.1-#425.8, LTA2098 - LTA2134, LTA2161 - LTA6602 |
| Written discovery responses and MTD pleadings | #430.1- #433.1 (4 docs)<br>#6285.1- #6289.1 (5 docs) |
| Chart of settlements and license agreements | Exhibit C to this report |

**EXHIBIT C**

| Company name | WA or Non-WA | Date of Settlement Agreement / License | Amount | Bates Number |
|---|---|---|---|---|
| Stoneway Electric Supply | WA | 8/6/2020 | $20,000.00 | Doc# 423.1 |
| Totally Chocolate, LLC | WA | 12/26/2017 | $15,000.00 | Doc #369.1 |
| Thrift Books | WA | 1/8/2019 | $18,000.00 | Doc #288.1 |
| Specialty Bottle, Inc. | WA | 5/6/2019 | $18,000.00 | Doc #210.1 |
| Paint Sundries Solutions | WA | 9/1/2017 | $20,000.00 | Signature page Doc is #147.1 |
| Jones Soda | WA | 8/25/2017 | $15,000.00 | Doc #425.1. |
| Gensco, Inc. | WA | 4/30/2018 | $20,000.00 | Doc #89.1 |
| Tom Bihn, Inc. | WA | 5/5/2020 | $19,500.00 | LTA2098 - 2103 |
| SaltWorks, Inc. | WA | 4/9/2021 | $15,000.00 | Bates: LTA002128-LTA002134 |
| Essential Baking Co | WA | 9/20/2019 | $15,000.00 | Signature Doc page LTA002112 |
| **Total of WA Companies** | | | **$175,500.00** | |
| | | | | |
| | | | | |
| U.S. SafetyGear, Inc. | Non-WA (OH) | 6/20/2019 | $30,000.00 | Bates LTA002168. |
| HVAC Distibutors, Inc. | Non-WA (PA) | 12/13/2019 | $20,000.00 | Bates: LTA002428 |
| Southern Pipe & Supply Co. | Non-WA (MS) | 2/10/2020 | $15,000.00 | Bates: LTA002550 |
| ATP Group | Non-WA (IL) | 3/8/2022 | $35,000.00 | Bates: LTA002260 |
| Oakland Pallet Co | Non-WA (CA) | 5/6/2019 | $19,500.00 | Bates: LTA002539 |
| AmeriMark Direct | Non-WA (OH) | 7/28/2020 | $23,000.00 | Bates: LTA002257 |
| Newbury Comics | Non-WA (MA) | 7/31/2019 | $12,500.00 | Bates: LTA002537 |
| The Miami Corporation | Non-WA (OH) | 10/21/2019 | $11,950.00 | Bates: LTA002535 |
| Salem Tools, Inc. | Non-WA (VA) | 11/20/2019 | $15,000.00 | Bates: LTA002548 |
| Art of Beauty, Inc. | Non-WA (OH) | 10/16/2020 | $10,000.00 | Bates: LTA002259 |
| Arctic Office Products | Non-WA (AK) | 9/13/2019 | $22,000.00 | Bates: LTA002256 - LTA002258 |
| Blevins, Inc. | Non-WA (TN) | 10/1/2020 | $15,000.00 | Bates: LTA002263 |
| DBI Holdings, Inc. | Non-WA (MI) | 9/13/2019 | $23,500.00 | Bates: LTA002277 and LTA002286 |
| Fink's Jewelers, Inc. | Non-WA (VA) | 7/21/2020 | $7,500.00 | Bates: LTA002293 |
| Sure Fit Home Products | Non-WA (PA) | 1/21/2021 | $20,000.00 | Bates: LTA002306 and LTA002554 |
| Sterling Distribution | Non-WA (OH) | 6/23/2020 | $26,500.00 | Bates: LTA002552 |

20

| Company name | WA or Non-WA | Date of Settlement Agreement / License | Amount | Bates Number |
|---|---|---|---|---|
| Trivantage, LLC | Non-WA (NC) | 9/1/2021 | $25,000.00 | Bates: LTA002557 |
| Hunter Fan Company | Non-WA (TN) | 4/29/2020 | $19,500.00 | Bates: LTA002427 |
| MP Acquisition, LLC | Non-WA (MI) | 4/15/2021 | $10,000.00 | Bates: LTA002536 |
| Browning Arms Company | Non-WA (UT) | 5/24/2019 | $10,000.00 | Bates: LTA002275 |
| Cigars International | Non-WA (PA) | 10/3/2019 | $25,000.00 | Bates: LTA002276 |
| Frost Electric Supply Co | Non-WA (MO) | 3/13/2020 | $8,000.00 | Bates: LTA002416 |
| The Fruit Guys | Non-WA (CA) | 4/2/2019 | $20,000.00 | Bates: LTA002417 |
| Life's Abundance, Inc. | Non-WA (FL) | 6/11/2021 | $11,000.00 | Bates: LTA002533 |
| Wine.com | Non-WA (CA) | 4/17/2019 | $22,500.00 | Bates: LTA002560 |
| Zippo Manufacturing Co. | Non-WA (PA) | 8/5/2020 | $35,000.00 | Bates: LTA002573 |
| Riverside Paper Co., Inc. | Non-WA (FL) | 12/21/2020 | $10,000.00 | Bates: LTA002547 |
| B.E. Atlas Company | Non-WA (IL) | 6/15/2021 | $12,500.00 | Bates: LTA002261 |
| America's Suppliers dba DollarDays International | Non-WA (AZ) | 12/30/2020 | $20,000.00 | Bates: LTA002424 - LTA002425 |
| Kennedy Office Supply | Non-WA (NC) | 9/13/2019 | $23,500.00 | Bates: LTA002430 and LTA002439 |
| Knix Wear | Non-WA (Canada) | 6/9/2021 | $10,000.00 | Bates: LTA002240 |
| Beauty Industry Group Opco, LLC | Non-WA (UT) | 10/29/2020 | $10,000.00 | Bates: LTA002262 and LTA002457 |
| Rain Bird International | Non-WA (AZ) | 9/19/2021 | $29,000.00 | Bates: LTA002464 |
| LabRepCo | Non-WA (PA) | 2/1/2021 | $10,000.00 | Bates: LTA002451 and LTA002470 |
| BPA Sales, LP | Non-WA (PA) | 10/8/2019 | $25,000.00 | Bates: LTA002274 and LTA002476 |
| KBC Tools, Inc. | Non-WA (MI) | 6/6/2019 | $22,500.00 | Bates: LTA002429 |
| W.S. Badcock Corp. | Non-WA (FL) | 9/21/2020 | $17,500.00 | Bates: LTA002495 |
| Von Maur, Inc. | Non-WA (IL) | 6/24/2019 | $15,000.00 | Bates: LTA005501 and LTA002558 |
| NOW Health Group, Inc. | Non-WA (IL) | 5/27/2021 | $7,500.00 | Bates: LTA002538 |
| Georgia Nut Company | Non-WA (IL) | 10/8/2019 | $25,000.00 | Bates: LTA002426 and LTA002514 |
| Swanson Health Products | Non-WA (ND) | | $26,000.00 | Bates: LTA002555 |
| Promethean Inc. | Non-WA (GA) | 10/23/2019 | $37,500.00 | Bates LTA002526 and LTA002546 |
| IEWC Corp. | Non-WA (WI) | 8/21/2020 | $22,000.00 | Bates: LTA002532 |

| Company name | WA or Non-WA | Date of Settlement Agreement / License | Amount | Bates Number |
|---|---|---|---|---|
| W.C. Bradley Co. | Non-WA (GA) | 12/29/2020 | $20,000.00 | Bates: LTA002559 |
| Wing Enterprises, Inc. | Non-WA (UT) | 9/19/2019 | $18,000.00 | Bates: LTA002566, LTA002572 |
| Mailender, Inc. | Non-WA (OH) | 2/26/2021 | $7,500.00 | Bates: LTA002534 and LTA002579 |
| **Total Non-WA Companies** | | | **$860,950.00** | |
| | | | | |
| **Total of all** | | | **$1,036,450.00** | |

# EXHIBIT 7

**From:** Raven, Elliot (ATG) ‹elliot.raven@atg.wa.gov›
**Sent:** 2024-06-04 15:50:08 UTC
**To:** Justin Walsh ‹justin@gleamlaw.com›, Brittany Duplantis ‹bduplantis@gleamlaw.com›, Nicole Rash ‹nicole@gleamlaw.com›, and Neil Juneja ‹neil@gleamlaw.com›, CC: Brysacz, Ben (ATG) ‹ben.brysacz@atg.wa.gov›, Hall, Michael K. (ATG) ‹michael.hall@atg.wa.gov›, Hyde, Bob (ATG) ‹robert.hyde@atg.wa.gov›, Aliiasov, Emin (ATG) ‹emin.aliiasov@atg.wa.gov›, Fickes, Aaron (ATG) ‹aaron.fickes@atg.wa.gov›, and Anderson, Heidi (ATG) ‹heidi.anderson@atg.wa.gov›
**Subject:** State of Washington v. Landmark Technology A, LLC, et al. **-** Expert Report Sig. Page

Good morning,

Please see the attached for a signature page from Alex Strand.

Best,

**Elliot Raven**

Legal Assistant, Consumer Protection

Seattle — Office of the Attorney General

(206) 254-4264



SignedSigPage_AlexStrand.pdf
788 KB

# EXHIBIT 8

# EXHIBIT 9

# EXHIBIT 10

# EXHIBIT 11

# EXHIBIT 12

# EXHIBIT 13

# EXHIBIT 14

# EXHIBIT 15

# EXHIBIT 16

# EXHIBIT 17

# EXHIBIT 18

# EXHIBIT 19

# EXHIBIT 20

# EXHIBIT 21

# EXHIBIT 22

# EXHIBIT 23

# EXHIBIT 24

# EXHIBIT 25

# EXHIBIT 26

# EXHIBIT 27

# EXHIBIT 28

# EXHIBIT 29

# EXHIBIT 30

# EXHIBIT 31

# EXHIBIT 32

# EXHIBIT 33

# EXHIBIT 34

# EXHIBIT 35

# EXHIBIT 36

# EXHIBIT 37

# EXHIBIT 38

# EXHIBIT 39

# EXHIBIT 40

# EXHIBIT 41

# EXHIBIT 42

# EXHIBIT 43

# EXHIBIT 44

# EXHIBIT 45

# EXHIBIT 46

# EXHIBIT 47

# EXHIBIT 48

# EXHIBIT 49

# EXHIBIT 50

# EXHIBIT 51

# EXHIBIT 52

# EXHIBIT 53

# EXHIBIT 54

# EXHIBIT 55

# EXHIBIT 56

# EXHIBIT 57

# EXHIBIT 58

# EXHIBIT 59

# EXHIBIT 60

# EXHIBIT 61

# EXHIBIT 62

# EXHIBIT 63

# EXHIBIT 64

# EXHIBIT 65

# EXHIBIT 66

# EXHIBIT 67

# EXHIBIT 68

# EXHIBIT 69

# EXHIBIT 70

# EXHIBIT 71

# EXHIBIT 72

# EXHIBIT 73

# EXHIBIT 74

# EXHIBIT 75

# EXHIBIT 76

# EXHIBIT 77

# EXHIBIT 78

# EXHIBIT 79

# EXHIBIT 80

# EXHIBIT 81

# EXHIBIT 82

# EXHIBIT 83

# EXHIBIT 84

# EXHIBIT 85

# EXHIBIT 86

# EXHIBIT 87

# EXHIBIT 88

# EXHIBIT 89

# EXHIBIT 90

# EXHIBIT 91

# EXHIBIT 92

# EXHIBIT 93

# EXHIBIT 94

# EXHIBIT 95

# EXHIBIT 96

# EXHIBIT 97

# EXHIBIT 98

# EXHIBIT 99

# EXHIBIT 100

# EXHIBIT 101

# EXHIBIT 102

# EXHIBIT 103

# EXHIBIT 104

# EXHIBIT 105

# EXHIBIT 106

# EXHIBIT 107

# EXHIBIT 108

# EXHIBIT 109

# EXHIBIT 110

# EXHIBIT 111

# EXHIBIT 112

# EXHIBIT 113

# EXHIBIT 114

# EXHIBIT 115

# EXHIBIT 116

# EXHIBIT 117

# EXHIBIT 118

# EXHIBIT 119

# EXHIBIT 120

# EXHIBIT 121

# EXHIBIT 122

# EXHIBIT 123

# EXHIBIT 124

# EXHIBIT 125

# EXHIBIT 126

# EXHIBIT 127

# EXHIBIT 128

# EXHIBIT 129

# EXHIBIT 130