1

2

3

4

5

6

7                      UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF WASHINGTON
8                               AT SEATTLE

STATE OF WASHINGTON;
9                                              NO. 2:21-cv-00728-RSM
                Plaintiff,
10                                             DECLARATION OF RAYMOND
        v.                                     MERCADO IN SUPPORT OF
11                                             DEFENDANTS' RESPONSE IN
LANDMARK TECHNOLOGY A, LLC, and                OPPOSITION TO PLAINTIFF'S
12 RAYMOND MERCADO, individually,              SECOND MOTION TO AMEND
                                               COMPLAINT
13              Defendants.

14      COMES NOW, Raymond Mercado, under penalty of perjury under the laws of the United

15 States of America, and hereby declares as follows:

16      1.      I am over the age of eighteen, am competent to be a witness, and am the prinvipal

17 of Landmark Technology A, LLC ("LTA").

18      2.      I started performing work for Lawrence Lockwood when I was 12 years old as a

19 personal assistant, taking notes and things of the like. I continued to work with Lockwood

20 throughout college. LT was formed in 2008. I began working with LT as well at that time as a

21 1099 contractor. At that time, I was a Ph.D. student in the political science department at Duke. 3.

22      3.      Some time in between 2008 and 2012, Larry gifted me a 5% stake in Landmark

23

24 DECL. OF RAYMOND MERCADO IN SUPP. OF DEFS.'        **Gleam Law, PLLC**
   RESP. IN OPP'N TO PL.'S 2D MOT. TO AMEND COMPL.   605 First Avenue, Suite 330
   - 1                                               Seattle, WA 98104
                                                     P: (206) 693-2900
                                                     F: (206) 319-4596

1   Technology. At that time, Larry held am 85% interest in the company, his brother, Victor

2   Lockwood, held a 6% interest, and Larry's friend, William "Larry" Buehlman held the lasty 4%.

3       4.    In 2012, Larry appointed me as a contingent managing member if he should reach

4   incapacity. Larry was diagnosed with cancer in 2018 – I believe he said it was neuro-endocrine,

5   but am not certain. He immediately began chemotherapy. Due to the effects of his treatment, he

6   made the decision to invoke the contingent managing member provision. This was then extended.

7       5.    The chemotherapy did not work, and Larry started an experimental treatment. This

8   treatment ended up destroying his liver, resulting in his death December 29, 2018.

9       6.    After his death, I was supposed to receive an additional 25% of Larry's 85%, which

10   would have given me a total 26.25% interest in LT. Through litigation with the estate, on August

11   9, 2021, the Estate was settled, and I purchased what amounted to a total 95% interest in the LT.

12   Thus, I never held any majority interest in LT at the time it was engaging in the patent assertion

13   activities alleged.

14       7.    Though the State has not provided the actual business plan it is alleging, I am

15   familiar with the only business plan I have ever seen related to either Landmark Technology, LLC

16   or Landmark Technology A, LLC. LTA has never had a business plan. Larry did develop a

17   business plan for LT in 2017, which he drafted himself. No such business plan was developed or

18   used for LTA. However, I would note that Larry did not necessarily follow that business plan, as

19   LT bring infringement allegations against several notable and large companies, including, but not

20   limited to, Aeropostale, Oracle, Abercrombie & Fitch, Dunkin' Donuts; Caesar's; Hitachi;

21   Chipotle; Panera; Shutterstock; Wayfair; Zillow; Cinemark; Kenneth Cole; Pier-1; LA-Z Boy;

22   Bridgestone; Cintas; PetSmart; Airgas; Burberry; Tempur-Pedic; World Wrestling Entertainment;

23   ADT; Briggs & Stratton; Hugo Boss; Samsonite; Union Pacific; and eBay. These are all included

24   DECL. OF RAYMOND MERCADO IN SUPP. OF DEFS.'
RESP. IN OPP'N TO PL.'S 2D MOT. TO AMEND COMPL.
- 2

**Gleam Law, PLLC**
605 First Avenue, Suite 330
Seattle, WA 98104
P: (206) 693-2900
F: (206) 319-4596

1  in Exhibit 5 to the Declaration of Justin P. Walsh. This business plan was sent by Lockwood in

2  2017, prior to my being the managing member due to Lockwood's incapacity. At the time, I only

3  held a 5% interest in LT, which did not change until 2021, after LT had ceased patent assertion

4  activity.

5     8. I am also familiar with the August 7, 2020, email referred to by the State. This email

6  had nothing to do with the business plan, but was related to whether a releasee of LTA should be

7  granted exemption from any future patents owned by LTA. At the time, none were planned, but I

8  did not feel it prudent to release someone for potential future conduct related to a patent that was

9  not yet held by LTA.

10     9. Regarding the CID letters provided, and referenced in exhibit 3 to this declaration,

11  in its response to the CID, LTA provided 219 letters to the state referencing the prior '319 Patent

12  of LT, that LTA was following up on the same, and was asserting the '508 Patent. Of those letter,

13  the only one provided even mentioning Washington was one letter to Oseille Running, which was

14  not actually sent to Oseille Running.

15     10. The litigation to date has had an immense financial impact, especially considering

16  the one Washington letter and 5 Washington lawsuits involving LTA resulted in total licensing

17  fees of less than $100,000. I have had to sell my house to finance this litigation.

18     10. The following exhibits are true and correct copies of the original documents:

19     a. The Civil Investigative Demand LTA received from the State, dated May 26, 2020

20      (Ex. 1);

21     b. LTA's response to the Civil Investigative Demand (Ex. 2);

22

23

24  DECL. OF RAYMOND MERCADO IN SUPP. OF DEFS.'
RESP. IN OPP'N TO PL.'S 2D MOT. TO AMEND COMPL.
- 3

**Gleam Law, PLLC**
605 First Avenue, Suite 330
Seattle, WA 98104
P: (206) 693-2900
F: (206) 319-4596

c.    A sampling of letters sent by LTA provided with the Civil Investigative demand which reference both Landmark Technology, LLC ("LT") and the '319 Patent (Ex. 3);

d.    Document from Larry appointing me as contingent managing member of LT (Ex. 4);

e.    Emails invoking contingent managing membership based on incapacity (Ex. 5);

f.    Email extending managing membership based on incapacity (Ex. 6);

g.    Settlement Agreement with Estate of Lawrence Lockwood (Aug. 9, 2021) (Ex. 7).

7.    LTA's 2017 business plan (Ex. 8);

8.    August 7, 2020, email re: whether to release defendant from potential future patents (i.e. – license patents not yet owned by LTA) (Ex. 9).

I declare under penalty of perjury under the laws of the United States of America the foregoing is true and correct.

SO SWORN this 1st day of November 2024.

Raymond Mercado (Nov 1, 2024 19:51 EDT)

Raymond Mercado

DECL. OF RAYMOND MERCADO IN SUPP. OF DEFS.'
RESP. IN OPP'N TO PL.'S 2D MOT. TO AMEND COMPL.
- 4

**Gleam Law, PLLC**
605 First Avenue, Suite 330
Seattle, WA 98104
P: (206) 693-2900
F: (206) 319-4596

CERTIFICATE OF SERVICE

The undersigned hereby certifies under penalty of perjury under the laws of the United States of America, that on the date noted below, a true and correct copy of the foregoing was delivered and/or transmitted in the manner(s) noted below:

| | | |
|---|---|---|
| ROBERT W. FERGUSON | *Attorneys for Plaintiff* | [  ] Via Messenger |
| Attorney General | | [  ] Via Email |
| AARON J. FICKES, WSBA #51584 | | [  ] Via Certified Mail |
| BEN J. BRYSACZ, WSBA #54683 | | [  ] Via U.S. Mail |
| HEIDI C. ANDERSON, WSBA #37603 | | [X] Via ECF |
| BOB HYDE, WSBA ##33593 | | |
| MICHAEL HALL, WSBA #19871 | | |
| Assistant Attorneys General | | |
| Attorneys for Plaintiff State of Washington | | |
| 800 Fifth Avenue, Suite 2000 | | |
| Seattle, WA 98104 | | |

DATED this 1st day of November 2024 at Seattle, Washington.

s/Joseph A. Hylkema
Joseph A. Hylkema
Paralegal to Justin P. Walsh and James P. Ware

DECL. OF RAYMOND MERCADO IN SUPP. OF DEFS.'
RESP. IN OPP'N TO PL.'S 2D MOT. TO AMEND COMPL.
- 5

**Gleam Law, PLLC**
605 First Avenue, Suite 330
Seattle, WA 98104
P: (206) 693-2900
F: (206) 319-4596

# EXHIBIT 1



**Capitol Corporate Services, Inc.**
PO Box 1831
Austin, TX 78767
Phone: (800) 345-4647  Fax: (800) 432-3622
rassop@capitolservices.com

## Service Of Process Transmittal Notice

| | | |
|---|---|---|
| RAYMOND MERCADO<br>LANDMARK TECHNOLOGY A LLC<br>2530 MERIDIAN PKWY STE 300<br>DURHAM NORTH CAROLINA 27713 | **Date Processed:** | 05/26/2020 |
| | **Completed By:** | RSHERRON |
| | **Delivery Method to Client:** | FEDEX 2 DAY LETTER |
| | **Tracking Number:** | 137232906140 |

Enclosed please find legal documents received on behalf of the client named below. These documents are being forwarded in accordance with your instructions.

| **Date / Time Received**<br>05/26/2020  3:30 PM in NORTH CAROLINA | **Transmittal #**<br>NC-187276 | **Delivered to Agent by**<br>CERTIFIED MAIL |
|---|---|---|
| **With Regard to Client**<br>LANDMARK TECHNOLOGY A, LLC | | |
| **Title of Case or Action**<br>IN THE MATTER OF: LANDMARK TECHNOLOGY A, LLC. | | |
| **Case Number**<br>NONE | **Type of Document Served**<br>INTERROGATORIES | |
| **Court Name**<br>OFFICE OF THE ATTORNEY GENERAL STATE OF WASHINGTON | | |
| **Note** | | |



1-187276P

ATTORNEY GENERAL
OF WASHINGTON
800 Fifth Avenue Suite 2000
Seattle WA 98104-3188

7018 0680 0000 4716 5999

Landmark Technology A, LLC
c/o Capitol Corporate Services, Inc.
120 Penmarc Drive, Suite 118
Raleigh, NC 27603



**Bob Ferguson**
# ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue • Suite 2000• MS TB 14 • Seattle WA  98104-3188
(206) 464-7744

May 21, 2020

**SENT VIA CERTIFIED MAIL**

Landmark Technology A, LLC
c/o Capitol Corporate Services, Inc.
120 Penmarc Drive, Suite 118
Raleigh, NC 27603

**RE: *Civil Investigative Demand for Landmark Technologies***

Enclosed please find the State's Civil Investigative Demand for Answers to Interrogatories and Requests for Production of Documents. Your response is due **30 days** from the date of receipt.

Please contact Assistant Attorney General Seann Colgan at (206) 516-2998 or seann.colgan@atg.wa.gov if you have any questions.

Sincerely,

*s/ Lauren Fogerty*
LAUREN FOGERTY
Paralegal

Enclosed (1): Civil Investigative Demand for Answers to Interrogatories and Request for Production of Documents

1
2
3
4
5
6
7          **OFFICE OF THE ATTORNEY GENERAL**
            **STATE OF WASHINGTON**
8

| IN THE MATTER OF: | CIVIL INVESTIGATIVE DEMAND FOR ANSWERS TO INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS |
|---|---|
| LANDMARK TECHNOLOGY A, LLC | |

12   **THE STATE OF WASHINGTON TO:**     **LANDMARK TECHNOLOGY A, LLC**
                                            **c/o Capitol Corporate Services, Inc.**
13                                              **120 Penmarc Drive, Suite 118**
                                           **Raleigh, NC 27603**
14

15      **DEMAND IS HEREBY MADE** upon you by the Consumer Protection Division, Office

16 of the Attorney General, State of Washington, to answer in writing and under oath, the

17 interrogatories contained in this Civil Investigative Demand and to produce the documents

18 requested herein. This demand is made pursuant to RCW 19.86.110. The Attorney General believes

19 you have knowledge relevant to the subject matter of an investigation now in progress. Said

20 investigation involves possible past or current violations of RCW 19.86, and/or RCW 19.350,

21 specifically practices concerning bad faith assertion of patent infringement.

22          **I.**     **TIME AND PLACE OF PRODUCTION**

23      The requested documents are to be produced to Seann Colgan, Assistant Attorney

24 General, at the Attorney General's Office at 800 Fifth Avenue, Suite 2000, Seattle, WA 98104,

25 within thirty (30) days of being served with this Civil Investigative Demand, or at such other

26 time and place as is agreed to by the parties.

CIVIL INVESTIGATIVE DEMAND FOR
ANSWERS TO INTERROGATORIES AND
REQUESTS FOR PRODUCTION OF
DOCUMENTS - 1

          ATTORNEY GENERAL OF WASHINGTON
             Consumer Protection Division
            800 Fifth Avenue, Suite 2000
              Seattle, WA  98104-3188
                (206) 464-7745

## II.    COMMUNICATIONS

All notices, questions, or communications concerning this Civil Investigative Demand should be directed to Seann Colgan, Assistant Attorney General, 800 Fifth Avenue, Suite 2000, Seattle, WA 98104, (206) 516-2998, or by email at seann.colgan@atg.wa.gov.

## III.    INSTRUCTIONS

4.1    Unless otherwise stated in the Interrogatories and Requests for Production below, the relevant time period for which documents and information are requested is **January 1, 2017, to the present**.

4.2    This Civil Investigative Demand requests production of all described documents in your possession, custody, or control without regard to the person or persons by whom or for whom the documents were prepared (e.g., your employees, distributors, representatives, competitors, or others).

4.3    This Civil Investigative Demand includes requests for documents in the possession of your employees, agents, representatives, and others acting on your behalf, including attorneys. **If any document or information is withheld under claim of privilege or confidentiality, identify the document and state the basis for the claim of privilege or confidentiality**, including:

a.    The name of each author, writer, sender, creator, or initiator of such document;

b.    The name of each recipient, addressee, or party for whom such document was intended or to whom the document was sent;

c.    The date of each such document or an estimate thereof if no date appears on the document;

d.    The general subject matter of the document; and

e.    The claimed grounds for withholding the document.

CIVIL INVESTIGATIVE DEMAND FOR
ANSWERS TO INTERROGATORIES AND
REQUESTS FOR PRODUCTION OF
DOCUMENTS - 2

4.4    The requests included in this Civil Investigative Demand impose a continuing duty to produce promptly any responsive information or documents that come into your possession, custody, or control.

4.5    In each instance in which a document is produced in response to a request, produce the current edition, along with all earlier editions or predecessor documents serving the same function, even though the title of earlier documents may differ from current versions.

4.6    The following procedures shall apply to the production of documents and information in response to this Civil Investigative Demand:

    a.    The recipient of this Civil Investigative Demand shall label each responsive document (i.e., Response to Request No. 1, Response to Request No. 2, and so forth), group all documents responsive to a particular request together, and place a label on each group of documents which identifies the corresponding request;

    b.    All attachments to responsive documents or information shall be produced with, and attached to, the responsive documents (or digitally in corresponding order);

    c.    Each responsive document or information shall be produced in its entirety and no portion of any document or information shall be edited, cut, masked, redacted or otherwise altered, unless for applicable privilege which shall be logged according to the procedures set forth above;

    d.    The recipient of this Civil Investigative Demand shall provide a key to all abbreviations used in the documents or information and shall attach the key to the corresponding documents or information.

4.7    Documents or information that may be responsive to more than one (1) numbered request in these Requests need not be submitted more than once. However, for each such document or information, the recipient of this Civil Investigative Demand shall identify all of the numbered requests to which the document or information is responsive. If any responsive document or information has been previously supplied to the Washington Attorney General's

CIVIL INVESTIGATIVE DEMAND FOR
ANSWERS TO INTERROGATORIES AND
REQUESTS FOR PRODUCTION OF
DOCUMENTS - 3

1    Office, you shall identify the document(s) or information previously provided and the date(s) of

2    submission.

3        4.8    You shall consecutively number each page of all documents or information

4    produced with your response, and indicate the total number of pages produced with your

5    response. This page numbering must be separate from and must not alter any original page

6    numbering on the responsive documents or information.

7        4.9    Your responses to these Interrogatories and Requests for Production should

8    include all relevant electronically stored information in your possession, custody, or control.

9    Washington considers electronically stored information to be an irreplaceable source of evidence

10    in this matter. Accordingly, Washington insists that you implement appropriate safeguard against

11    the destruction of evidence until the final resolution of this issue.

12        4.10    Production of electronically stored information and other documents in electronic

13    format shall conform to the standards set forth in **Exhibit A** (attached).

14        4.11    If you are unable to fully answer any particular interrogatory or request for

15    documents, supply all of whatever information is actually available. Designate such incomplete

16    information as incomplete, and accompany the information with an explanation that includes the

17    reasons for the incomplete answer; a description of any and all of your efforts to obtain the

18    information; and the source from which the Office of the Attorney General may obtain

19    information to complete your response. If books, records, or other sources that provide accurate

20    answers are not available, provide your best estimates and describe how you derived the

21    estimates; including the sources or bases of such estimates. Designate estimated data as such by

22    marking it with the "est." notation. If there is no reasonable way for you to make an estimate,

23    provide an explanation.

24        4.12    If particular documents responsive to this Civil Investigative Demand no longer

25    exist for reasons other than the ordinary course of business but you have reason to believe they

26    have been in existence; describe the documents, state the circumstances under which such

CIVIL INVESTIGATIVE DEMAND FOR
ANSWERS TO INTERROGATORIES AND
REQUESTS FOR PRODUCTION OF
DOCUMENTS - 4

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

1  documents were lost or destroyed, and identify persons having knowledge of the content of the

2  documents.

3      4.13  If you contend that the information requested by any document request is

4  privileged in whole or in part or if you otherwise object to any part of any document request, or

5  contend that any identified document would be excluded from production to the Attorney

6  General in discovery regardless of its relevance; state the reasons for such objection or ground

7  for exclusion, and identify each person having knowledge or the factual basis, if any, on which

8  the objection, privilege, or other ground is asserted.

9      4.14  In order for your response to this demand to be complete, submit with your

10  response the attached certification form as executed by the official supervising your compliance

11  with this demand.

12      4.15  **Do not destroy or discard any documents relating to any of these**

13  **Interrogatories or Requests for Production.**

14                  **IV.    DEFINITIONS**

15      3.1  **"Relating to"** means constituting, containing, concerning, discussing,

16  describing, analyzing, identifying, referring to, or stating.

17      3.2  **"You"** and **"your"** refer to **Landmark Technology A, LLC,** and any parent,

18  affiliate, sister, subsidiary, predecessor, successor or assignee of it, and its principals, operating

19  divisions, present or former owners, employees, servants, officers, directors, agents,

20  representatives, attorneys, accountants, independent contractors, distributors, and any other

21  persons or entities acting on behalf of or under the direction, authorization, or control of

22  Landmark Technology A, LLC, including any foreign or overseas affiliates.

23      3.3  **"Document"** or **"documents"** means all computer files and written, recorded,

24  and graphic materials of every kind, including audio material, video material, and photographic

25  material regardless of whether in digital, analog or in another form, in the possession, custody

26  or control of the respondent. The terms "document" and "documents" includes material defined

CIVIL INVESTIGATIVE DEMAND FOR
ANSWERS TO INTERROGATORIES AND
REQUESTS FOR PRODUCTION OF
DOCUMENTS - 5

1  as "writings" and "recordings" in ER 1001(a). The terms "document" and "documents" also

2  includes electronic correspondence and drafts of documents, copies of documents that are not

3  identical duplicates of the originals, and copies of documents the originals of which are not in

4  the possession, custody or control of the respondent.

5    3.4    **"Person"** means any individual, corporation, partnership, limited liability

6  company, government, governmental subdivision, institution of higher education, or any other

7  legal or commercial entity that resides, has its principal place of business, or does business in

8  the State of Washington.

9    3.5    **"Demand"** means a letter, an email, or any other communication sent to a Person,

10  and/or to any present or former owners, employees, servants, officers, directors, agents,

11  representatives, attorneys, accountants, independent contractors, distributors, and any other

12  persons or entities acting on behalf of or under the direction, authorization, or control of such

13  Person, which (a) asserts patent infringement in any manner (for example, but not limited to,

14  assertions that such Person's product(s), service(s), or technology(ies) practice a patent), and/or

15  (b) offers a non-exclusive patent license.

16    3.6    **"Target"** means a Person to whom a Demand was addressed, including any

17  present or former owners, employees, servants, officers, directors, agents, representatives,

18  attorneys, accountants, independent contractors, distributors, and any other persons or entities

19  acting on behalf of or under the direction, authorization, or control of such Person.

20    3.7    **"The '508 Patent"** means United States Patent No. 7,010,508 entitled

21  "Automated Multimedia Data Processing Network."

22    3.8    **"Landmark Technology, LLC"** means that limited liability company currently

23  or formerly organized under the laws of the State of Delaware with its principal place of business

24  at 329 Laurel, San Diego, CA 92101, and any parent, affiliate, sister, subsidiary, predecessor,

25  successor or assignee of it, and its principals, operating divisions, present or former owners,

26  employees, servants, officers, directors, agents, representatives, attorneys, accountants,

CIVIL INVESTIGATIVE DEMAND FOR
ANSWERS TO INTERROGATORIES AND
REQUESTS FOR PRODUCTION OF
DOCUMENTS - 6

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

1  independent contractors, distributors, and any other persons or entities acting on behalf of or

2  under the direction, authorization, or control of Landmark Technology LLC, including any

3  foreign or overseas affiliates.

4  **V.    INTERROGATORIES**

5  **INTERROGATORY NO. 1:**    Describe the corporate structure of Landmark Technology

6  A, LLC, including identification of all parent companies, subsidiaries, and/or affiliated business

7  entities.

8  **ANSWER:**

9

10

11  **INTERROGATORY NO. 2:**    Identify each and every Person who currently holds, or has

12  held in the past, any ownership interest in Landmark Technology A, LLC, by stating each such

13  Person's (a) name, (b) employer(s), and (c) current or last-known residential and/or work

14  address(es).

15  **ANSWER:**

16

17

18  **INTERROGATORY NO. 3:**    Identify each and every Demand, sent by You, at any time

19  on or after December 28, 2018, by stating (a) the name of the Target to whom each such Demand

20  was sent, (b) the date of each such Demand, and (c) the address(es) (including, if applicable,

21  email address(es)) to which each such Demand was sent.

22  **ANSWER:**

23

24

25  **INTERROGATORY NO. 4:**    Identify each and every Demand sent by Landmark

26  Technology, LLC, or anyone acting on behalf of Landmark Technology, LLC, at any time on or

CIVIL INVESTIGATIVE DEMAND FOR
ANSWERS TO INTERROGATORIES AND
REQUESTS FOR PRODUCTION OF
DOCUMENTS - 7

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

1  after January 1, 2017, that referenced the '508 Patent, or any other patent that You currently have

2  any right, title, or interest in, by stating (a) the name of the Target to whom each such Demand

3  was sent, (b) the date of each such Demand, and (c) the address(es) (including, if applicable,

4  email address(es)) to which each such Demand was sent.

5  **ANSWER:**

6

7

8  **INTERROGATORY NO. 5:**       For each Target identified in response to Interrogatory No.

9  4 and/or Interrogatory No. 5, state (a) the amount of money or other consideration, if any, paid

10  to You by such Target at any time on or after the date of the first Demand sent to such Target,

11  and (b) the date of each and every payment of such money or other consideration.

12  **ANSWER:**

13

14

15               **VI.    REQUESTS FOR PRODUCTION**

16  **REQUEST FOR PRODUCTION NO. 1:**       Produce copies of any and all Demands sent by

17  You, dated on or after December 28, 2018.

18  **RESPONSE:**

19

20

21  **REQUEST FOR PRODUCTION NO. 2:**       Produce any and all communications, not

22  already produced in response to Request for Production No. 1, between You any Target to whom

23  You sent a Demand dated on or after December 28, 2018.

24  **RESPONSE:**

25

26

CIVIL INVESTIGATIVE DEMAND FOR
ANSWERS TO INTERROGATORIES AND
REQUESTS FOR PRODUCTION OF
DOCUMENTS - 8

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7745

1    **REQUEST FOR PRODUCTION NO. 3:**      Produce any and all documents, including but

2    not limited to communications, not already produced in response to Requests for Production

3    Nos. 1 and 2, relating to any Target to whom you sent a Demand dated on or after December 28,

4    2018.

5    **RESPONSE:**

6

7

8    **REQUEST FOR PRODUCTION NO. 4:**      Produce copies of any and all Demands sent by

9    Landmark Technology, LLC, at any time on or after January 1, 2017, that referenced the '508

10    Patent, or any other patent that You currently have any right, title, or interest in.

11    **RESPONSE:**

12

13

14    **REQUEST FOR PRODUCTION NO. 5:**      Produce any and all communications between

15    You and any Target to whom Landmark Technology, LLC, sent a Demand of the type described

16    in Request for Production No. 4.

17    **RESPONSE:**

18

19

20    **REQUEST FOR PRODUCTION NO. 6:**      Produce any and all documents, including but

21    not limited to communications, not already produced in response to Requests for Production

22    Nos. 4 and 5, relating to any Target to whom Landmark Technology, LLC, sent a Demand of

23    the type described in Request for Production No. 4.

24    **RESPONSE:**

25

26

CIVIL INVESTIGATIVE DEMAND FOR
ANSWERS TO INTERROGATORIES AND
REQUESTS FOR PRODUCTION OF
DOCUMENTS - 9

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

1    **REQUEST FOR PRODUCTION NO. 7:**    Produce any and all documents related to

2    agreements, however named, between You and any Target, entered into on or after

3    December 28, 2018, which include provisions concerning payment of money or other

4    consideration to You by a Target, and/or which refer to payment of money or other

5    consideration to You by a Target.

6    **RESPONSE:**

7

8

9    **REQUEST FOR PRODUCTION NO. 8:**    Produce all documents, including but not

10   limited to communications, in your possession, custody or control relating to your rights to

11   enforce the '508 Patent and/or to recovery for infringement of the '508 Patent.

12   **RESPONSE:**

13

14

15       **This Civil Investigative Demand is issued pursuant to the powers vested in the**

16   **Attorney General of the State of Washington by RCW 19.86.110 of the Consumer**

17   **Protection Act. The Attorney General is authorized to enforce this demand and failure to**

18   **comply with this demand shall subject you to sanctions as provided in RCW 19.86.110.**

19       DATED this 21st day of May, 2020.

20                                          ROBERT W. FERGUSON
                                           Attorney General
21

22                                          *s/ Seann Colgan*
23                                          Seann Colgan, WSBA # 38769
                                           Assistant Attorney General
24                                          Attorneys for State of Washington
                                           800 Fifth Avenue, Suite 2000
25                                          Seattle, WA 98104
                                           (206) 516-2998
26                                          seann.colgan@atg.wa.gov

CIVIL INVESTIGATIVE DEMAND FOR
ANSWERS TO INTERROGATORIES AND
REQUESTS FOR PRODUCTION OF
DOCUMENTS - 10

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

1

## CERTIFICATION

2    I, _____, having made the foregoing responses to these

3  Interrogatories and Requests for Production of Documents, certify under penalty of perjury under

4  the laws of the State of _____, that I am authorized to sign legal documents on

5  respondent's behalf and know the responses herein to be true, correct, and complete.

6    Signature:        _____

7    Title or Position:    _____

8    Date:          _____

9    City and State:    _____

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CIVIL INVESTIGATIVE DEMAND FOR
ANSWERS TO INTERROGATORIES AND
REQUESTS FOR PRODUCTION OF
DOCUMENTS - 11

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

1

**PROOF OF SERVICE**

2          I certify that I served a copy of this document on the following party via Certified Mail

3    at the following address:

4          **LANDMARK TECHNOLOGY A, LLC**
           **c/o Capitol Corporate Services, Inc.**
5          **120 Penmarc Drive, Suite 118**
           **Raleigh, NC 27603**
6

7          I certify, under penalty of perjury under the laws of the State of Washington, that the

8    foregoing is true and correct.

9          DATED this 21st day of May, 2020, at Seattle, Washington.

10

11                                        *s/ Serina Clark*_____
                                          SERINA CLARK
12                                        Legal Assistant

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CIVIL INVESTIGATIVE DEMAND FOR
ANSWERS TO INTERROGATORIES AND
REQUESTS FOR PRODUCTION OF
DOCUMENTS - 12

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

Washington State Attorney General's Office
Consumer Protection Division
Document Production Standards

This document describes the technical requirements for electronic document productions to the State of Washington Attorney General's Office (AGO), Consumer Protection Division. For productions over 100 pages, we strongly prefer productions to be submitted in electronic form. The suggested formats are based on our experience with many different submissions. Please follow this guide to organize your submission and minimize the chance of incompatibility with our processes and systems.

This is intended to serve as guidance and does not supersede instructions or any request or CID issued by the AGO Consumer Protection Division. We continue to streamline the production process, so please contact the AGO representative identified in the CID to discuss any specific issues you may have with collecting, formatting, or submitting documents.

The AGO Consumer Protection Division uses IPRO Eclipse SE.

Any proposed file formats other than those described below must be discussed with the legal and technical staff of the AGO Consumer Protection Division prior to submission.

### General Production Requirements

1) Reference the specific portion of the request to which you are responding.

2) Submissions should be organized **by custodian**, unless otherwise instructed.

3) Electronically Stored Information (ESI) should be collected according to the ESI guidelines below.

4) The AGO strongly encourages the production of documents in an Eclipse load-ready format with native files. See section 4 below for more detail.

5) Documents designated as confidential pursuant to a protective order should be clearly labeled as such to avoid inadvertent disclosure of confidential information.

6) We strongly prefer productions to be submitted in electronic form. Productions should be submitted on media such as a CD, DVD, thumb drive or hard drive, or sent via a secure File Transfer Protocol. Please clearly mark all productions with the **matter name, producing party,** and **production date**.



# Exhibit A
Revised 10/4/2019

1

Washington State Attorney General's Office
Consumer Protection Division
Document Production Standards

**1. Identification and Collection**

It is highly recommended that parties confer in advance of any large-scale document production. Before you collect electronically stored information (ESI), the AGO is interested in the following information:

    a.  The name of the person from whom the information was obtained;
    b.  Originating file path/folder for the information; and
    c.  To the extent possible, use a forensically sound collection method that preserves the information's metadata.

**2. Processing / Review**

    **a. Deduplication**

    Deduplication vertically within custodian does not require AGO approval. Horizontal or global deduplication must be done in a way that preserves and produces from the people from whom the information was obtained.

    Please contact your AGO representative prior to performing global deduplication.

    Do NOT deduplicate email attachments against loose files or compound documents. Families must be produced intact, except as limited by a claim of privilege.

    **b. Preferred Formats**

        **i. Emails**

        PST files are the preferred format for emails and attachments. The file name must include the name of the email custodian. For native email formats, please contact the AGO representative prior to production to determine the appropriate submission format.

        If redactions are necessary, emails may be produced in TIFF image format with the extracted text of the email, attachments as separate documents and numbered consecutively to the parent email.

        **ii. Instant Messages**

        Because instant messages can be stored in a variety of ways, if instant messages are responsive to a CID, please contact the AGO representative



**Exhibit A**

Revised 10/4/2019

2

Washington State Attorney General's Office
Consumer Protection Division
Document Production Standards

identified in the request to determine the best approach for collecting and producing instant messages.

### iii. Loose ESI

Submit Microsoft Excel, PowerPoint, and Access files in their native formats with the metadata and information described in the "Metadata and other Information Requirements" section below;

Submit other multimedia files in their native formats with the metadata and information described in the "Metadata and other Information Requirements" section below; or

Submit other files and attachments as Group IV single page tiffs, 300 DPI, accompanied by an image load file, extracted text and the metadata and information described in the "Metadata and other Information Requirements" section below.

### iv. Hard Copy Documents

Submit Group IV single page tiffs, 300 DPI, accompanied by an image load file and the metadata provided in the "Metadata and other Information Requirements" section below. File names cannot contain embedded spaces or special characters. Images must be endorsed with sequential Bates numbers in the lower right corner of each image.

Note: Adobe PDF files are **not** acceptable as imaged productions. PDF files are acceptable only when the document content was initially created as a PDF and not converted from another format.

### v. Databases or Data Compilations

Production format will depend on the database platform, size and contents/function of the database. Please contact your AGO representative prior to discuss the proper submission format.

Access to cloud databases can also be arranged in lieu of production.

### vi. Executable Files

Produce executable files separately from documents on separate media and clearly labeled "contains executable files" so that they can be isolated for further inspection.

# Exhibit A

Revised 10/4/2019

3

Washington State Attorney General's Office
Consumer Protection Division
Document Production Standards

### 3. Metadata and other Information Requirements

#### a. Emails

| Field Names | Description |
| --- | --- |
| AltCustodian | List of custodians where the document has been removed as a duplicate |
| BegDoc | Beginning Bates number of the document |
| EndDoc | Bates number of the last page of the document |
| BegAtt | Used for parent/child relationships. For example, an email with attachment.<br>• Linked to BEGDOC—entries in this field should be image keys as defined in the BEGDOC field |
| EndAtt | Identifies the final member of a set of related documents.<br>BEGATTACH field identifies the first member and the document to which the set is related. |
| Custodian | Name of the person from whom the email was obtained |
| EmailBCC | Name(s) of person(s) blind copied on the email |
| EmailCC | Name(s) of person(s) copied on the email |
| EmailDateReceived | Date and Time email was received [format: MM/DD/YYYY HH:MM:SS AM/PM] |
| EmailDateSent | Date and Time email was sent [format: MM/DD/YYYY HH:MM:SS AM/PM] |
| EmailFrom | Names of the person sending the email |
| EmailMessageID | Microsoft Outlook Message ID or similar value in other message systems |
| EmailSubject | Subject Line of Email |
| FileDescription | Description of a native file type |

# Exhibit A
Revised 10/4/2019

Washington State Attorney General's Office
Consumer Protection Division
Document Production Standards

| FileExt | File extension which identifies native file type, such as Microsoft Word (DOC), Excel (XLS), or text (TXT). |
|---|---|
| Filename | Original filename of a native file or the subject of an e-mail message for e-mail records. |
| Folder | File path/folder location of email |
| Hash | Identifying value used for deduplication – MD5 Hash is preferred |
| PgCount | Number of pages in a document (for image collections only). |
| NativeLink | Relative path to the location of native or near-native document Example: \NATIVES\001\AGO000565.XLS |
| Text Link | Relative path to submitted text file: Example: \TEXT\001\AGO000565.XLS |

**b.  Attachments**

| Field Names | Description |
|---|---|
| AltCustodian | List of custodians where the document has been removed as a duplicate |
| BegDoc | Beginning Bates number of the  document |
| EndDoc | Bates number of the last page of the document |
| Custodian | Name of the person from whom the email was obtained |
| DateCreated | Date the file was created [format: MM/DD/YYYY HH:MM:SS AM/PM] |

# Exhibit A

Revised 10/4/2019

5

Washington State Attorney General's Office
Consumer Protection Division
Document Production Standards

| DateModified | Date the file was modified [format: MM/DD/YYYY HH:MM:SS AM/PM] |
| --- | --- |
| FileExt | File extension which identifies native file type, such as Microsoft Word (DOC), Excel (XLS), or text (TXT). |
| Filename | Original filename of a native file with the extension |
| FilePath | File path/folder location of email |
| Hash | Identifying value used for deduplication – MD5 Hash is preferred |
| NativeLink | Relative path to the location of native or near-native document<br><br>Example:<br>\NATIVES\001\AGO000565.XLS |
| ParentID | DocID or beginning bates number of the parent document |
| PgCount | Number of pages in a document (for image collections only) |
| Text Link | Relative path to submitted text file: Example: \TEXT\001\AGO000565.XLS |

c. eDocs

| Field Names | Description |
| --- | --- |
| AltCustodian | List of custodians where the document has been removed as a duplicate |
| BegDoc | Beginning Bates number of the document |



**Exhibit A**

Revised 10/4/2019

6

Washington State Attorney General's Office
Consumer Protection Division
Document Production Standards

| | |
|---|---|
| EndDoc | Bates number of the last page of the document |
| Custodian | Name of the person from whom the email was obtained |
| DateCreated | Date and time the file was created [format: MM/DD/YYYY HH:MM:SS AM/PM] |
| DateModified | Date and time the file was modified [format: MM/DD/YYYY HH:MM:SS AM/PM] |
| Filename | Original filename of a native file with the file extension. |
| FilePath | File path/folder location of email |
| FileExt | File extension which identifies native file type, such as Microsoft Word (DOC), Excel (XLS), or text (TXT) |
| Hash | Identifying value used for deduplication – MD5 Hash is preferred |
| NativeLink | Relative path to the location of native or near-native document Example: \NATIVES\001\AGO000565.XLS |
| Text Link | Relative path to submitted text file: Example: \TEXT\001\AGO000565.XLS |

**d. Hard Copy Documents**

| Field Names | Description |
|---|---|
| AltCustodian | List of custodians where the document has been removed as a duplicate |

# Exhibit A


Revised 10/4/2019

7

Washington State Attorney General's Office
Consumer Protection Division
Document Production Standards

| BegDoc | Beginning Bates number of the document |
|--------|----------------------------------------|
| EndDoc | Bates number of the last page of the document |
| Custodian | Name of the person from whom the document was obtained |
| PgCount | Number of pages in a document (for image collections only) |

### 4. Producing - Load Ready Productions

The AGO strongly encourages the production of documents in an Eclipse load-ready format with native files. Please contact your AGO representative if you would like to submit in a different format so we can ensure compatibility with our systems.

Data produced in an Eclipse load-ready format should meet the following requirements:

- Include native files, extracted text, fielded data, OCR and linked image files, if these elements exist.

- If the production includes imaged emails and attachments, the attachment fields must be included in the delimited text file to preserve the parent/child relationship between an email and its attachments.

- For production with native files, a NATIVELINK field must be included in the delimited text file to provide the file path and name of the native file on the produced storage media. Extracted text must be included in a separate folder, one text file per document.

- The delimited text file must contain an IMAGEKEY field (image key used to reference images in Eclipse Image). The image key must be unique, fixed length and can contain the same value as the Bates number endorsed on each document image.

- The delimited text file must include a header record identifying field names.

- The delimiters for the file must be Eclipse default delimiters as follows:

> Field delimiter - ASCII character 20 Text
> delimiter – ASCII character 254
> Newline indicator – ASCII character 174.

# Exhibit A

Revised 10/4/2019

8

Washington State Attorney General's Office
Consumer Protection Division
Document Production Standards

- OCR text produced to the AGO must be delivered as multi-page text (.txt) files, but the name of the file must match the value in the IMAGEKEY field. OCR text files should reside in their own directory separate from the image and native files.

- Whenever possible (regardless of delivery method), place page markers at the beginning or end of each OCR text page as shown:

  ***SAMPLE-LA0000001***

  The data surrounded by *** is the IMAGEKEY value (see example below).

  **Sample Eclipse Image Cross-reference File:**
  SAMPLE-LA0000001,,E:\001\00010001.TIF,Y,,, SAMPLE-
  LA0000002,,E:\001\00010002.TIF,,,,
  SAMPLE-LA0000003,,E:\001\00010003.TIF,Y,,,
  SAMPLE-LA0000004,,E:\001\00010004.TIF,,,,

- Include a comma delimited Eclipse cross-reference file that contains a line for every image in the database and it needs to consist of six fields per line. The format for the file is as follows:

  *ImageKey, VolumeLabel, ImageFilePath, DocumentBreak, FolderBreak, BoxBreak,*

  - ***ImageKey:*** This is the unique designation that Eclipse and Eclipse Image uses to identify and retrieve an image. This value may be the same as the Bates number endorsed on each image.
  - ***VolumeLabel:*** Leave this field empty.
  - ***ImageFilePath:*** This is the full path to the image file on the produced storage media.
  - ***DocumentBreak:*** This field is used delineate the beginning of a new document. If this field contains the letter "Y," then this is the first page of a document. If this field is blank, then this page is not the first page of a document.
  - ***FolderBreak:*** This field is used to delineate the beginning of a new folder in the same manner as the *DocumentBreak* field. If this information is not available, then it may be left empty.
  - ***BoxBreak:*** This field is used to delineate the beginning of a new box in the same manner as the *DocumentBreak* and *FolderBreak* fields. If this information is not available, then it may be left empty.

# Exhibit A



Revised 10/4/2019

9

# EXHIBIT 2

**OFFICE OF THE ATTORNEY GENERAL**
**STATE OF WASHINGTON**

IN THE MATTER OF:                §    LANDMARK TECHNOLOGY A, LLC'S
                                 §    OBJECTIONS AND RESPONSES TO
LANDMARK TECHNOLOGY A, LLC       §    CIVIL INVESTIGATIVE DEMAND FOR
                                 §    ANSWERS TO INTERROGATORIES AND
                                 §    REQUESTS FOR PRODUCTION OF
                                 §    DOCUMENTS
                                 §
                                 §
                                 §
                                 §
                                 §


**Landmark Technology A, LLC's Objections and Responses to Civil Investigative Demand**
**for Answers to Interrogatories and Requests for Production of Documents.**


Pursuant to Rules 26, 33, 34 of the Washington Rules of Civil Procedure to the extent applicable,

Landmark Technology A, LLC ("Landmark A") hereby provides objections and responses to the

State's Civil Investigative Demand for Answers to Interrogatories and Requests for Production

of Documents ("CID"), as follows:


## GENERAL OBJECTIONS

1.    Landmark A respectfully objects to the CID in its entirety as exceeding the State's

investigative powers and as relating to alleged subject matter that is outside the State's jurisdiction

because the statute purporting to give rise to the alleged possible violations identified in the CID—

the Patent Troll Prevention Act, RCW 19.350—is preempted by federal patent law, and assertions

of federal patent infringement are otherwise outside the jurisdiction of the Washington Consumer

Protection Act, RCW 19.86 *et seq*. *See* RCW 19.86.110(3)(a)("No demand shall: Contain any

requirement which would be unreasonable or improper if contained in a subpoena duces tecum.");

1

*Gen. Fin. Corp. v. FTC*, 700 F.2d 366, 369 (7th Cir. 1983) ("there is no doubt that a court asked to enforce a subpoena will refuse to do so if the subpoena exceeds an express statutory limitation on the agency's investigative powers."); *FEC v. Machinists Non-Partisan Political League*, 655 F.2d 380, 386 (D.C. Cir. 1981) (holding that a court must "assure itself that the subject matter of the investigation is within the statutory jurisdiction of the subpoena-issuing agency."); *see also FTC v. Texaco, Inc*., 555 F.2d 862, 879 (D.C. Cir. 1977) (en banc) (holding that administrative subpoenas should not be enforced if the information sought is irrelevant to "a lawful purpose of the agency"). Here, RCW 19.350 is preempted by federal patent law under *Globetrotter Software, Inc. v. Elan Computer Group, Inc.,* 362 F.3d 1367, 1375-77 (Fed. Cir. 2004) because it lacks a requirement for "a showing that the claims asserted were objectively baseless" before imposing liability. Further, the statute is preempted by federal patent law because the standard of proof for a Washington CPA claim (i.e., a preponderance of the evidence) is lower than the clear and convincing evidence standard required by federal patent law. *See Golan v. Pingel Enterprise, Inc*., 310 F.3d 1360, 1371 (Fed. Cir. 2002) (requiring "clear and convincing evidence" that a patent owner's infringement allegations are "objectively false" before they are "actionable"). Since RCW 19.350 is preempted, and assertions of federal patent infringement are otherwise outside the jurisdiction of the RCW 19.86 *et seq*., Landmark A respectfully maintains that the alleged subject matter of the CID is outside the State's jurisdiction and investigative authority.

2.      Landmark A respectfully objects to the CID in its entirety as exceeding the State's investigative powers and as relating to alleged subject matter that is outside the State's jurisdiction because the statute purporting to give rise to the alleged possible violations identified in the CID—the Patent Troll Prevention Act, RCW 19.350—is unconstitutional under the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution, and under article I, section 12 of

the Washington State Constitution.  *See* U.S. CONST., Amend. 14.  WASH. CONST. art. I, § 12.

Specifically, the Washington statute subjects similarly situated patent owners to disparate

treatment.  For example, RCW 19.350.020 provides that patent owners who are "[a]n inventor of

the patent or an original assignee," or "[a]n institution of higher education" may be viewed by

courts as "person[s] [who have] made an assertion of patent infringement in good faith," while

whereas patent owners who do not meet those arbitrary criteria do not enjoy the presumptions of

good faith set forth in this section.  Further, the statute specifically exempts from liability any

assertions of patent infringement arising from the submission of ANDA's, while subjecting other

categories of patent infringement to potential liability under the statute.  *See* RCW 19.350.020(6).

There is also evidence that the Washington legislature enacted the statute based upon

"impermissible animus" rather than a legitimate legislative purpose.  *Animal Legal Def. Fund v.*

*Wasden*, 878 F.3d 1184, 1200 (9th Cir. 2018) (quotation omitted).  The very title of the statute—

the "Patent Troll Prevention Act"—is prima facie evidence of discriminatory animus.  The term

"patent troll" has been held to be "derogatory."  *HTC Corp. v. Tech. Props. Ltd.*, No. 5-08-cv-

00882, 2013 WL 4782598, at *4 (N.D. Cal. 2013) (excluding the use of the phrase "patent troll"

because of the "derogatory characterization").  As such, the statute is unconstitutional under the

Equal Protection Clause, both facially and as-applied to Landmark A.  Moreover, by subjecting

some patent holders to potential liability while affording other patent holders "privileges or

immunities" by exempting them from liability under the statute, RCW 19.350.020(6) violates

Article I, section 12 of the Washington constitution which provides that "[n]o law shall be passed

granting to any citizen, class of citizens, or corporation other than municipal, privileges or

immunities which upon the same terms shall not equally belong to all citizens, or corporations."

*See Schroeder v. Weighall*, 179 Wash.2d 566, 573-77 (2014) (en banc) (finding no reasonable ground for legislature's decision immunize some defendants from malpractice suits but not others).

3.     Landmark A objects to each and every Interrogatory and Request for Production of Documents ("Requests"), Definition and Instruction to the extent that it requires Landmark A to identify all information, documents and/or things that concern, describe, refer or relate to a particular subject or support a particular contention as such is overly broad, unduly burdensome, vague and ambiguous.

4.     Landmark A objects to the Requests to the extent that they are vague, ambiguous, overly broad, unduly burdensome and oppressive.

5.     Landmark A objects to the Requests on the grounds and to the extent that they seek the disclosure of documents and information privileged from discovery pursuant to the attorney-client privilege, the work product doctrine, the common-interest privilege, and pursuant to privileges under ER 501, RCW 19.86.110(3).

6.     Landmark A objects to the Requests on the ground and to the extent that the Interrogatories purport to require disclosure of information that was prepared in anticipation of litigation, constitutes attorney work product, reveals privileged attorney-client communications, or is otherwise protected from disclosure under applicable privileges, laws or rules.  In responding to these Requests, Landmark A does not intend to waive, and shall not be construed as having waived, any privilege or protection, including but not limited to, the attorney-client and work product privileges.

7.     Landmark A objects to the Requests to the extent that they seek the production of trade secrets or other confidential information of Landmark A, or information that is subject to non-disclosure provisions of contractual agreements.

8.    Landmark A objects to the extent the Interrogatories purport to seek information that is not relevant to the claims or defenses of any party and is not reasonably calculated to lead to the discovery of admissible evidence. *See* CR 26(b)(1), FED. R. CIV. P. 26(b)(1).

9.    Landmark A objects to the Requests, Definitions and Instructions on the ground and to the extent that they impose burdens on Landmark A beyond those contemplated by the Federal Rules of Civil Procedure or other applicable law. Landmark A objects to the extent that the Interrogatories are overbroad and unduly burdensome, as they inquire into matters that go beyond what is relevant to the parties' claims or defenses and purport to impose upon Landmark A an obligation that is greater than those imposed by CR 26(b)(1) or FED. R. CIV. P. 26(b)(2)(C). Landmark A further objects to the extent that the Requests seek documents allegedly sent to persons outside the State of Washington, as such materials would be outside the State of Washington's jurisdiction, and could not possibly give rise to alleged violations of RCW 19.350 or RCW 19.86 *et seq*.

10.    Landmark A objects to the Requests because they are not properly limited to a reasonable time frame. The time period of requested information is from January 1, 2017 to the present —the starting period which predates the December 28, 2018 formation date of Landmark Technology A, LLC, the party upon which the Requests have been served.

11.    Landmark A objects to all the Definitions and Instructions to the extent that such Definitions and Instructions impose on Landmark A undue burden and unnecessary expense and to the extent that such Definitions and Instructions exceed the scope of the requirements of the Washington CR and Federal Rules of Civil Procedure. Accordingly, Landmark A does not agree to be bound by and does not acquiesce in any such Definitions and Instructions unilaterally imposed by Defendants.

12.     Landmark A objects to the Requests to the extent they seek information that is already equally available from public sources.

13.     Landmark A objects to the extent that this topic is improperly directed to and purports to seek information from Landmark A about separate third-party entities/persons allegedly in violation of the Washington CR or the Federal Rules of Civil Procedure.

14.     Landmark A objects to the Definitions, Instructions and Interrogatories to the extent they seek to impose burdens on Landmark A regarding documents not in its possession, custody, or control.

15.     Landmark A objects to the Requests to the extent that they purport to require Landmark A to reach a legal conclusion about any document, thing or event.

16.     Landmark A objects to each and every Request to the extent it calls for expert opinion or legal conclusions.

17.     Landmark A objects to the Requests to the extent that they are duplicative or cumulative of previous discovery propounded or disclosed in this matter.

18.     Landmark A objects to the Definitions of "Landmark Technology A, LLC," "Landmark Technology, LLC," "you," and "your," to the extent that it includes multiple nonparties, and further to the extent it purports to require Landmark A to provide information regardless of whether such information is in Landmark A's possession, custody or control.

19.     Landmark A objects to the Definition of "Relating to" as overly broad and unduly burdensome.

20.     Landmark A objects to the Definition of "person" as overly broad and unduly burdensome and requires the identification of all persons.

21.     Landmark A's responses to the Interrogatories are not intended to be, and shall not be construed as, an admission by Landmark A that any fact or circumstance alleged in the Interrogatories occurred or existed.  Moreover, Landmark A's answers are not intended to be, and shall not be construed as, an agreement or concurrence with Defendants' characterization of any fact or circumstance.

22.     Landmark A submits these responses without conceding the relevancy or materiality of the subject matter of any Interrogatory or the information requested in any such Interrogatory.

23.     The responses contained herein are based on information reasonably available to Landmark A to date.  Landmark A reserves the right to supplement or further amend its responses. Accordingly, Landmark A also reserves the right to supplement, amend, modify, clarify, and revise any objection or response herein.

24.     All such foregoing General Objections are expressly incorporated into the Specific Objections and individual enumerated responses set forth below.

## **RESPONSE TO INTERROGATORY**

**Interrogatory No. 1**

Describe the corporate structure of Landmark Technology A, LLC, including identification of all parent companies, subsidiaries, and/or affiliated business entities.

**Objection and Response to Interrogatory No. 1**

Landmark A objects to this Interrogatory with respect to "affiliated" business entities as vague.

Subject to and without waiving the foregoing objections, Landmark A is a limited liability corporation organized under the laws of the State of North Carolina owned by a single

member.  Landmark A does not have a parent, nor are there subsidiaries that are owned by Landmark A.

**Interrogatory No. 2**

Identify each and every Person who currently holds, or has held in the past, any ownership interests in Landmark Technology A, LLC, by stating each such Person's (a) name, (b) employer(s), and (c) current or last known residential and/or work address(es).

**Objection and Response to Interrogatory No. 2**

Raymond Mercado, self-employed owner of Landmark Technology A, LLC, 2530 Meridian Parkway Suite 300, Durham, NC 27713.

**Interrogatory No. 3**

Identify each and every Demand, sent by You, at any time on or after December 28, 2018, by stating (a) the name of the Target to whom each such Demand was sent, (b) the date of each such Demand, and (c) the addres(es) (including, if applicable, e-mail address(es)) to which each such Demand was sent.

**Objection and Response to Interrogatory No. 3**

Landmark A objects to this Interrogatory as overly broad, and unduly burdensome to the extent that it seeks information for Demands to non-State of Washington "Persons".

Subject to and without waiving the foregoing objections, Landmark A is the exclusive licensee to United States Patent 7,010,508.

On March 7, 2006, United States Patent No. 7,010,508 entitled "Automated Multimedia Data Processing Network" was duly and legally issued to Lawrence B. Lockwood as inventor. See LANDMARKAWSAG003354-3363.  The '508 Patent claims a novel automated multimedia data processing system, including an interactive multimedia terminal employing an

8

unconventional hardware architecture enabling an inventive form of data processing according to backward-chaining and forward-chaining sequences. LANDMARKWSAG004024-30 contains facts concerning the background, technology, and the problems that the '508 Patent solved in which Landmark A recently pled in *Landmark Technology A, LLC v. Stoneway Elecrical Supply Co.*, Civil Action No. 2:20-cv-00974 (W.D. Washington) which is incorporated herein by reference.

Patent law is governed by federal statute. Patent law prevents others from using, making, selling, or offering to sell any patented invention without the permission of the patent owner. *See* 35 U.S.C. § 271 ("Except as otherwise provided in this title, **whoever** without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent") (emphasis added). A patent is presumed valid by statute. *See* 35 U.S.C. § 282(a) ("A patent shall be presumed valid.")

Landmark A has sent letters to those that it believes is practicing its patented technology without its permission. Landmark A has produced letters, bates labelled LANDMARKAWSAG000001-3302, though such production in no way waives Landmark A's objections or position that letters sent to persons outside the State of Washington exceed the State's jurisdiction or the proper scope of the CID. A warning letter of this kind meets the notice requirement under the federal statute "when the recipient is informed of the identity of the patent and the activity that is believed to be an infringement, accompanied by a proposal to abate the infringement, whether by license or otherwise." *See SRI Int'l v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997). Under federal law a patent holder (or an exclusive patent licensee) may not recover damages against a party infringing its patent without first providing

notice of infringement.  *See* 35 U.S.C. § 287 ("no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice"); *see also Virginia Panel Corp. v. MAC Panel Co*., 133 F.3d 860, 869 (Fed. Cir. 1997) ("A patentee must be allowed to make its rights known to a potential infringer so that the latter can determine whether to cease its allegedly infringing activities, negotiate a license if one is offered, or decide to run the risk of liability and/or the imposition of an injunction."); *Concrete Unlimited, Inc. v. Cementcraft, Inc*., 776 F.2d 1537, 1539 (Fed. Cir. 1985) (finding patent holder properly "did only what any patent owner has the right to do to enforce its patent, and that includes threatening alleged infringers with suit").

Demand letters enhance the efficiency of patent infringement resolution, since an exclusive patent licensee such as Landmark can use them to notify others of potentially infringing activity and to initiate a patent licensing agreement.  While simply initiating patent litigation without sending a demand letter is also sufficient to provide "notice" under the statute, resolving infringement claims prior to suit is far less costly to both parties.

 Providing notice of infringement is a prerequisite under federal patent law, and doing so via pre-suit demand letters is desirable as a matter of policy, since it increases the likelihood of resolving infringement claims while avoiding costly litigation.

The letters that Landmark A have sent are protected by the *Noerr-Pennington* doctrine, and shielded from state law claims under federal preemption doctrine as well.  The Federal Circuit has adopted the *Noerr-Pennington* doctrine and its "sham litigation" exception as the test for federal preemption of state-law liability stemming from the assertion of patent rights.  *See,*

*e.g., Globetrotter Software, Inc. v. Elan Computer Group, Inc.,* 362 F.3d 1367 (Fed. Cir. 2004). Similarly, the Ninth Circuit and other courts have extended the *Noerr-Pennington* doctrine to protect pre-litigation demand letters from RICO and state law tort claims. *See Sosa v. DIRECTV, Inc.,* 437 F.3d 923 (9th Cir. 2006) (holding pre-litigation demand letters protected from suit under *Noerr-Pennington* because they fell within the "breathing space" essential to the "fruitful exercise" of the First Amendment) (quoting *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 342 (1974)); *Tichinin v. City of Morgan Hill* (2009), 177 Cal.App.4th 1049, 1068 (finding "*Sosa* and the cases it cites persuasive authority for the proposition that non-petitioning conduct is within the protected "breathing space" of the right to petition); *see also In re Innovatio IP Ventures, LLC Patent Litigation,* 921 F.Supp.2d 903 (N.D. Ill. 2013) (holding pre-suit demand letters asserting claims for patent infringement protected by *Noerr-Pennington,* and dismissing RICO and various state law claims)..

Petitioning immunity under the 1st Amendment of the U.S. Constitution and federal patent law preemption doctrine each preclude state-law tort liability so long as the assertion was not made in "bad faith," which has both objective and subjective components. The Federal Circuit in *Globetrotter* further noted that "[o]ur decision to permit state-law tort liability for only objectively baseless allegations of infringement rests on both federal preemption and the First Amendment," and "bad faith" cannot be satisfied "in the absence of a showing that the claims asserted were objectively baseless." *Id* at 1375-77.

Courts have recognized that a patent holder may have legitimate reasons for not putting all its "cards on the table" even in a complaint for patent infringement, much less in a pre-suit demand letter. *See, e.g., Niazi v. Pressure Products Medical Supplies, Inc.,* 2017 WL 108114, at *2 (W.D. Wis. Jan. 11, 2017) ("[T]here are far too many fair reasons why a [patent owner] might

be unable or justifiably reluctant to put that level of detail in the complaint.").

Landmark A sent one Person in the State of Washington a demand letter, and that letter has been produced bearing the bates label LANDMARKAWSAG000541. Upon a reasonable investigation, Landmark A did not send demand letters to other Persons in the State of Washington. Landmark A has filed lawsuits against the following companies in United States District Court for the Western District of Washington: Specialty Bottle; Essential Baking; Tom Bihn, Inc., and Stoneway Electrical Supply Co. Landmark A did not send demand letters to these companies before it filed suit against them in the United States District Court for the Western District of Washington.

**Interrogatory No. 4**

Identify each and every Demand sent by Landmark Technology, LLC, or anyone acting on behalf of Landmark Technology, LLC, at any time on or after January 1, 2017, that referenced the '508 Patent, or any other Patent that You currently have any right, title, or interest in, by stating (a) the name of the Target to whom each such Demand was sent, (b) the date of each such Demand, and (c) the address(es) (including, if applicable, email address(es)) to which each such Demand was sent.

**Objection and Response to Interrogatory No. 4**

Landmark A objects to this Interrogatory as overly broad, and unduly burdensome to the extent that it seeks information for Demands to non-State of Washington "Persons," which exceeds the State's jurisdiction and the reasonable scope of a CID pursuant to alleged violations of RCW 19.350 or RCW 19.86 *et seq.*, even if not preempted under federal patent law or unconstitutional as a violation of the Equal Protection Clause of the Fourteenth Amendment.

Subject to and without waiving the foregoing objections, Landmark A is the exclusive licensee to United States Patent 7,010,508.

Patent law is governed by federal statute. Patent law prevents others from using, making, selling, or offering to sell any patented invention without the permission of the patent owner. *See* 35 U.S.C. § 271 ("Except as otherwise provided in this title, **whoever** without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent") (emphasis added). A patent is presumed valid by statute. *See* 35 U.S.C. § 282(a) ("A patent shall be presumed valid.")

A warning letter of this kind meets the notice requirement under the federal statute "when the recipient is informed of the identity of the patent and the activity that is believed to be an infringement, accompanied by a proposal to abate the infringement, whether by license or otherwise." *See SRI Int'l v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997). Under federal law a patent holder (or exclusive patent licensee) may not recover damages against a party infringing its patent without first providing notice of infringement. *See* 35 U.S.C. § 287 ("no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice"); *see also Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 869 (Fed. Cir. 1997) ("A patentee must be allowed to make its rights known to a potential infringer so that the latter can determine whether to cease its allegedly infringing activities, negotiate a license if one is offered, or decide to run the risk of liability and/or the imposition of an injunction."); *Concrete Unlimited, Inc. v. Cementcraft, Inc.*, 776 F.2d 1537, 1539 (Fed. Cir. 1985) (finding patent holder properly "did

13

only what any patent owner has the right to do to enforce its patent, and that includes threatening alleged infringers with suit").

Demand letters enhance the efficiency of patent infringement resolution, since an exclusive patent licensee such as Landmark can use them to notify others of potentially infringing activity and to initiate a patent licensing agreement. While simply initiating patent litigation without sending a demand letter is also sufficient to provide "notice" under the statute, resolving infringement claims prior to suit is far less costly to both parties.

Providing notice of infringement is a prerequisite under federal patent law, and doing so via pre-suit demand letters is desirable as a matter of policy, since it increases the likelihood of resolving infringement claims while avoiding costly litigation.

Demand letters are protected by the *Noerr-Pennington* doctrine, and shielded from state law claims under federal preemption doctrine as well. The Federal Circuit has adopted the *Noerr-Pennington* doctrine and its "sham litigation" exception as the test for federal preemption of state-law liability stemming from the assertion of patent rights. *See, e.g., Globetrotter Software, Inc. v. Elan Computer Group, Inc.,* 362 F.3d 1367 (Fed. Cir. 2004). Similarly, the Ninth Circuit and other courts have extended the *Noerr-Pennington* doctrine to protect pre-litigation demand letters from RICO and state law tort claims. *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006) (holding pre-litigation demand letters protected from suit under *Noerr-Pennington* because they fell within the "breathing space" essential to the "fruitful exercise" of the First Amendment) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974)); *Tichinin v. City of Morgan Hill* (2009), 177 Cal.App.4th 1049, 1068 (finding "*Sosa* and the cases it cites persuasive authority for the proposition that non-petitioning conduct is within the protected

14

"breathing space" of the right to petition); *see also In re Innovatio IP Ventures, LLC Patent Litigation*, 921 F.Supp.2d 903 (N.D. Ill. 2013) (holding pre-suit demand letters asserting claims for patent infringement protected by *Noerr-Pennington*, and dismissing RICO and various state law claims).

Petitioning immunity under the 1st Amendment of the U.S. Constitution and federal patent law preemption doctrine each preclude state-law tort liability so long as the assertion was not made in "bad faith," which has both objective and subjective components.  The Federal Circuit in *Globetrotter* further noted that "[o]ur decision to permit state-law tort liability for only objectively baseless allegations of infringement rests on both federal preemption and the First Amendment," and "bad faith" cannot be satisfied "in the absence of a showing that the claims asserted were objectively baseless."  *Id* at 1375-77.  The Washington statute cited in the CID, RCW 19.350.005 – 19.350.900, imposes liability without requiring a showing of "objective baselessness" and, as such, is preempted.  *Id*.  The Washington statute further conflicts with federal patent law in that it has a lower standard of proof than the "clear and convincing evidence" standard required to escape preemption.  *Compare, e.g., State Farm Fire and Cas. Co. v. Huynh*, 92 Wash.App. 454, 471 (1998) (affirming jury verdict by preponderance of the evidence on Washington CPA claim), *with Golan v. Pingel Enterprise, Inc*., 310 F.3d 1360, 1371 (Fed. Cir. 2002) (requiring "clear and convincing evidence" that a patent owner's infringement allegations are "objectively false" before they are "actionable").

Courts have recognized that a patent holder may have legitimate reasons for not putting all its "cards on the table" even in a complaint for patent infringement, much less in a pre-suit demand letter.  *See, e.g., Niazi v. Pressure Products Medical Supplies, Inc*., 2017 WL 108114, at *2 (W.D. Wis. Jan. 11, 2017) ("[T]here are far too many fair reasons why a [patent owner] might

be unable or justifiably reluctant to put that level of detail in the complaint.").

Landmark A does not own or control Landmark Technology nor does Landmark Technology own or control Landmark A.  Upon information and belief, after Gensco, Inc. filed a complaint with the Consumer Protection Division of the Attorney General's Office in January 2018, any letter sent to Persons after that included information set forth in RCW 19.350.020(2)(a)(i)-(iii).  However, nothing in this response implies or should be construed to imply that any letters mailed to Gensco by the Landmark Technology entity were in any way deficient under RCW 19.350.020(2)(a)(i)-(iii), or that Gensco's complaint had any merit.

**Interrogatory No. 5**

For each Target identified in response to Interrogatory No. 4 and/or Interrogatory No. 5, state (a) the amount of money or other consideration, if any, paid to You by such Target at any time on or after the date for the first Demand sent to such Target, and (b) the date of each and every payment of such money or other consideration.

**Objection and Response to Interrogatory No. 5**

Landmark A objects to this Interrogatory as overly broad, and unduly burdensome to the extent that it seeks information about money or other consideration that may have been paid by non-State of Washington "Persons," which exceeds the State's jurisdiction and the reasonable scope of a CID pursuant to alleged violations of RCW 19.350 or RCW 19.86 *et seq*., even if not preempted under federal patent law or unconstitutional as a violation of the Equal Protection Clause of the Fourteenth Amendment.  Further, the information sought would be in violation of contractual obligations that Landmark A has with its licensees.

Subject to and without waiving foregoing objections:  Landmark A is willing to meet and confer regarding this Interrogatory.

## RESPONSE TO REQUESTS FOR PRODUCTION

### REQUESTS FOR PDOCUTION NO. 1

Produce copies of any and all Demands sent by You, dated on or after December 28, 2018.

### Objection and Response to REQUEST FOR PRODUCTION NO. 1

Landmark A objects to this request as overly broad, and unduly burdensome to the extent that it seeks Demands allegedly sent to non-State of Washington "Persons," which exceeds the State's jurisdiction and the reasonable scope of a CID pursuant to alleged violations of RCW 19.350 or RCW 19.86 *et seq*., even if not preempted under federal patent law or unconstitutional as a violation of the Equal Protection Clause of the Fourteenth Amendment..

Subject to and without waiving the foregoing objections, Landmark A produced LANDMARKWSAG000001-3302.

### REQUESTS FOR PDOCUTION NO. 2

Produce any and all communications, not already produced in response to Request for Production No. 1 between You and any target to whom You sent a demand letter dated on or after December 28, 2018.

### Objection and Response to REQUEST FOR PRODUCTION NO. 2

Landmark A objects to this request as overly broad, and unduly burdensome to the extent that it seeks alleged communications with non-State of Washington "Persons," which exceeds the State's jurisdiction and the reasonable scope of a CID pursuant to alleged violations of RCW 19.350 or RCW 19.86 *et seq*., even if not preempted under federal patent law or unconstitutional as a violation of the Equal Protection Clause of the Fourteenth Amendment.  Further, the information sought would be in violation of contractual obligations that Landmark A has with its

17

licensees including confidentiality.

Subject to and without waiving foregoing objections:  Landmark A is willing to meet and confer regarding this Interrogatory.

## REQUESTS FOR PDOCUTION NO. 3

Produce any and all communications, including but not limited, to communications, not already produced in response to Requests for Production Nos. 1 and 2 to any Target to whom you sent a Demand dated on or after December 28, 2018.

## Objection and Response to REQUEST FOR PRODUCTION NO. 3

Landmark A objects to this request as overly broad, and unduly burdensome to the extent that it seeks alleged communications with non-State of Washington "Persons," which exceeds the State's jurisdiction and the reasonable scope of a CID pursuant to alleged violations of RCW 19.350 or RCW 19.86 *et seq*., even if not preempted under federal patent law or unconstitutional as a violation of the Equal Protection Clause of the Fourteenth Amendment.    Further, the information sought would be in violation of contractual obligations that Landmark A has with its licensees including confidentiality..

Subject to and without waiving foregoing objections:  Landmark produced LANDMARKWSAG003003-4354.

## REQUESTS FOR PDOCUTION NO. 4

Produce copies of any and all Demands sent by Landmark Technology, LLC, at any time on or after January 1, 2017, that referenced the '508 Patent, or any other Patent that You currently have any right, title, or interest in.

## Objection and Response to REQUEST FOR PRODUCTION NO. 4

Landmark A objects to this request as overly broad, and unduly burdensome to the extent

18

that it seeks alleged Demands sent to non-State of Washington "Persons," which exceeds the State's jurisdiction and the reasonable scope of a CID pursuant to alleged violations of RCW 19.350 or RCW 19.86 *et seq*., even if not preempted under federal patent law or unconstitutional as a violation of the Equal Protection Clause of the Fourteenth Amendment..

Subject to and without waiving the foregoing objections, Landmark A does not own or control Landmark Technology nor does Landmark Technology own or control Landmark A. Upon information and belief, after Gensco filed a complaint with the Consumer Protection Division of the Attorney General's Office in January 2018, any letter sent by Landmark Technology, LLC to Persons after that included information set forth in RCW 19.350.020(2)(a)(i)-(iii).  However, nothing in this response implies or should be construed to imply that any letters mailed to Gensco by the Landmark Technology entity were in any way deficient under RCW 19.350.020(2)(a)(i)-(iii), or that Gensco's complaint had any merit.

### REQUESTS FOR PDOCUTION NO. 5

Produce any and all communications between You and any Target to whom Landmark Technology, LLC sent a Demand of the type described in Request for Production No. 4

### Objection and Response to REQUEST FOR PRODUCTION NO. 5

Landmark A objects to this request as overly broad, and unduly burdensome to the extent that it seeks alleged communications with non-State of Washington "Persons," which exceeds the State's jurisdiction and the reasonable scope of a CID pursuant to alleged violations of RCW 19.350 or RCW 19.86 *et seq*., even if not preempted under federal patent law or unconstitutional as a violation of the Equal Protection Clause of the Fourteenth Amendment.  Further, the information sought would be in violation of contractual obligations that Landmark A has with its licensees including confidentiality.

19

Subject to and without waiving foregoing objections:

Landmark A sent one Person in the State of Washington a demand letter and Landmark A will produce that letter. Upon a reasonable investigation, Landmark A did not send demand letters to other Persons in the State of Washington. Landmark A has filed lawsuits against the following companies in United States District Court for the Western District of Washington: Specialty Bottle; Essential Baking; Tom Bihn, Inc., and Stoneway Electrical Supply Co. Landmark A did not send demand letters to these companies before it filed suit against them in the United States District Court for the Western District of Washington. Landmark A will search and produce documents responsive to this request that are not privileged or covered by a confidentiality agreement between Landmark A and third party Persons.

**REQUESTS FOR PDOCUTION NO. 6**

Produce any and all communications, including but not limited, to communications, not already produced in response to Request for Production Nos. 4 and 5, relating to any Target to whom Landmark Technology, LLC, sent a Demand of the type described in Requests for Production Nos. 4 and 5, relating to any Target to whom Landmark Technology, LLC, sent a Demand of the type described in Request for Production No. 4.

**Objection and Response to REQUEST FOR PRODUCTION NO. 3**

Landmark A objects to this request as overly broad, and unduly burdensome to the extent that it seeks alleged communications with non-State of Washington "Persons," which exceeds the State's jurisdiction and the reasonable scope of a CID pursuant to alleged violations of RCW 19.350 or RCW 19.86 *et seq*., even if not preempted under federal patent law or unconstitutional as a violation of the Equal Protection Clause of the Fourteenth Amendment. Further, the information sought would be in violation of contractual obligations that Landmark A has with its

licensees including confidentiality.

Subject to and without waiving foregoing objections:

Landmark A does not own or control Landmark Technology nor does Landmark Technology own or control Landmark A.  Landmark A sent one Person in the State of Washington a demand letter and Landmark A will produce that letter.  Upon a reasonable investigation, Landmark A did not send demand letters to other Persons in the State of Washington.  Landmark A has filed lawsuits against the following companies in United States District Court for the Western District of Washington: Specialty Bottle; Essential Baking; Tom Bihn, Inc., and Stoneway Electrical Supply Co.  Landmark A did not send demand letters to these companies before it filed suit against them in  the United States District Court for the Western District of Washington.

**REQUESTS FOR PDOCUTION NO. 7**

Produce any and all documents related to agreements, however named, between You and any Target, entered into on or after December 28, 2018, which include provisions concerning payment of money or other consideration to You by a Target, and/or which refer to payment or other consideration to You by a Target.

**Objection and Response to REQUEST FOR PRODUCTION NO. 7**

Landmark A objects to this request as overly broad, and unduly burdensome to the extent that it seeks documents relating to alleged agreements with non-State of Washington "Persons," which exceeds the State's jurisdiction and the reasonable scope of a CID pursuant to alleged violations of RCW 19.350 or RCW 19.86 *et seq*., even if not preempted under federal patent law or unconstitutional as a violation of the Equal Protection Clause of the Fourteenth Amendment. Further, the information sought would be in violation of contractual obligations that Landmark A

has with its licensees including confidentiality.

Subject to and without waiving foregoing objections:

Landmark A will search and produce documents responsive to this request that are not privileged or covered by a confidentiality agreement between Landmark A and third party Persons.

**REQUESTS FOR PDOCUTION NO. 8**

Produce all documents, including but not limited to communications, in your possession, custody, or control relating to your rights to enforce the '508 Patent and/or to recovery for infringement of the '508 Patent.

**Objection and Response to REQUEST FOR PRODUCTION NO. 7**

Landmark A objects to this request as overly broad, and unduly burdensome to the extent that it seeks alleged documents or communications with non-State of Washington "Persons," which exceeds the State's jurisdiction and the reasonable scope of a CID pursuant to alleged violations of RCW 19.350 or RCW 19.86 *et seq*., even if not preempted under federal patent law or unconstitutional as a violation of the Equal Protection Clause of the Fourteenth Amendment. Further, the information sought would be in violation of contractual obligations that Landmark A has with its licensees including confidentiality.

Subject to and without waiving foregoing objections:

Landmark A produced LANDMARKWSAG003003-04354. Landmark A will search and produce documents responsive to this request that are not privileged or covered by a confidentiality agreement between Landmark A and third party Persons, or after discussions of how non-privileged confidential information of Landmark A will be protected.

Respectfully submitted,

Dated: July 25, 2020

/s/    John Lee

John Lee (WSBA No. 35550)
**BANIE & ISHIMOTO LLP**
3705 Haven Ave. #137
Menlo Park, CA 94025
(650) 241-2771
(650) 241-2770 (Fax)
jlee@banishlaw.com

*Counsel for Landmark Technology A,*
*LLC*

23

# EXHIBIT 3



John A. Lee
Banie & Ishimoto LLP
3705 Haven Ave. #137
Menlo Park, CA 94025
Phone: 650-241-2774
Email: jlee@banishlaw.com

**VIA U.S. MAIL**

March 1, 2019

Mr. Andy Forch
Huckberry, LLC
290 Utah St.
San Francisco, CA 94103

   Re: Infringement of Landmark Technology A, LLC's Patent Rights

Dear Mr. Forch:

   More than a year ago, Landmark Technology, LLC first brought to your attention its understanding that Huckberry, LLC ("Huckberry") data processing systems practice U.S. Patent No. 6,289,319 C2 ("'319 Patent").

   In that first notice, we introduced ourselves as intellectual property counsel for Landmark Technology, LLC ("Landmark"). Landmark has exclusive rights to patents covering certain special-purpose computer, communication and network technologies relating to Internet searching, e-commerce, electronic bill pay, business-to-business transactions, multimedia data processing networks and mobile technologies. Landmark's widely regarded patented technology covers, among other things, special-purpose hardware and software systems supporting key transaction processes and features used in many electronic commerce systems, including structures which exchange business data amongst trading partners.

   In that first notice we also pointed out that Landmark has licensed its patents to over 200 companies across various industries. Landmark's '319 patent ranks extremely high in patent citing activity and has been cited nearly 200 times by the USPTO whereas the average patent has only five citations during its lifetime. Highly cited patents are generally known to be of greater technical importance, and even fewer rise to the level of "pioneer patents" achieved by the Landmark patents. The '319 patent has also been reexamined twice resulting in all original claims being confirmed.

   Having not received a response from Huckberry, Landmark sent a subsquent letter reaffirming its offer of a non-exclusive license to its '319 patent for $65,000.

Since our last communication, Landmark Technology A, LLC, has assumed all substantial rights under the '508 patent and has furthered its analysis and discovered that while indeed Huckberry data processing systems practices Landmark's U.S. Patent No. 6,289,319 C2 that Huckberry multimedia data processing systems, particularly https://huckberry.com/ practices Landmark's U.S. Patent No. 7,010,508 C1 ("'508 Patent")

You will find that the '508 Patent teaches and claims multimedia data processing systems for processing business and financial transactions between entities from remote sites. This includes multimedia data processing systems wherein a computerized installation [as Huckberry's servers], communicate with terminals which use program instructions and act as the user interface [as do those devices interfaced to Huckberry's web servers in communication with Huckberry's servers], sequences are retrieved in response to data entered [as seen in devices interfaced to Huckberry's web servers], and data is updated in central processor storage [as per the functionality of Huckberry's web servers]. For example, the specific functionalities implemented by Huckberry using their servers and devices interfaced to Huckberry's web servers constitutes use of the technology taught within the meaning of Claim 1 of the '508 patent.

We appreciate your attention to this matter and request a response within 15 days of this letter. Please contact me at the phone or email above, or contact my colleague, Jennifer Ishimoto, at ishimoto@banishlaw.com or (650) 241-2773.

Very truly yours,

John A. Lee
Partner
BANIE & ISHIMOTO LLP

Page 2 of 2



John A. Lee
Banie & Ishimoto LLP
3705 Haven Ave. #137
Menlo Park, CA 94025
Phone: 650-241-2774
Email: jlee@banishlaw.com

**VIA U.S. MAIL**

March 1, 2019

Mr. Seth Weinstein
AMDEP Holdings, LLC
7000 W. Palmetto Park Rd., Suite 409
Boca Raton, FL 33433

      Re:     Infringement of Landmark Technology A, LLC's Patent Rights

Dear Mr. Weinstein:

      More than a year ago, Landmark Technology, LLC first brought to your attention its understanding that AMDEP Holdings, LLC ("Ammunition Depot") data processing systems practice U.S. Patent No. 6,289,319 C2 ("'319 Patent").

      In that first notice, we introduced ourselves as intellectual property counsel for Landmark Technology, LLC ("Landmark"). Landmark has exclusive rights to patents covering certain special-purpose computer, communication and network technologies relating to Internet searching, e-commerce, electronic bill pay, business-to-business transactions, multimedia data processing networks and mobile technologies. Landmark's widely regarded patented technology covers, among other things, special-purpose hardware and software systems supporting key transaction processes and features used in many electronic commerce systems, including structures which exchange business data amongst trading partners.

      In that first notice we also pointed out that Landmark has licensed its patents to over 200 companies across various industries. Landmark's '319 patent ranks extremely high in patent citing activity and has been cited nearly 200 times by the USPTO whereas the average patent has only five citations during its lifetime. Highly cited patents are generally known to be of greater technical importance, and even fewer rise to the level of "pioneer patents" achieved by the Landmark patents. The '319 patent has also been reexamined twice resulting in all original claims being confirmed.

      Having not received a response from Ammunition Depot, Landmark sent a subsequent letter reaffirming its offer of a non-exclusive license to its '319 patent for $65,000.

Since our last communication, Landmark Technology A, LLC, has assumed all substantial rights under the '508 patent and has furthered its analysis and discovered that while indeed Ammunition Depot data processing systems practices Landmark's U.S. Patent No. 6,289,319 C2 that Ammunition Depot multimedia data processing systems, particularly https://www.ammunitiondepot .com/customer/account/login/referer/aHR0cHM6Ly93d3cuYW1tdW5pdGlvbmRl cG90LmNvbS9zdXJJ2aXZhbC1ob21l/ practices Landmark's U.S. Patent No. 7,010,508 C1 ("'508 Patent")

You will find that the '508 Patent teaches and claims multimedia data processing systems for processing business and financial transactions between entities from remote sites. This includes multimedia data processing systems wherein a computerized installation [as Ammunition Depot's servers], communicate with terminals which use program instructions and act as the user interface [as do those devices interfaced to Ammunition Depot's web servers in communication with Ammunition Depot's servers], sequences are retrieved in response to data entered [as seen in devices interfaced to Ammunition Depot's web servers], and data is updated in central processor storage [as per the functionality of Ammunition Depot's web servers]. For example, the specific functionalities implemented by Ammunition Depot using their servers and devices interfaced to Ammunition Depot's web servers constitutes use of the technology taught within the meaning of Claim 1 of the '508 patent.

We appreciate your attention to this matter and request a response within 15 days of this letter. Please contact me at the phone or email above, or contact my colleague, Jennifer Ishimoto, at ishimoto@banishlaw.com or (650) 241-2773.

Very truly yours,

John A. Lee
Partner
BANIE & ISHIMOTO LLP

Page 2 of 2



John A. Lee
Banie & Ishimoto LLP
3705 Haven Ave. #137
Menlo Park, CA 94025
Phone: 650-241-2774
Email: jlee@banishlaw.com

**VIA U.S. MAIL**

March 1, 2019

Mr. Peter Bedig Tchilingirian
A.N.S. Xtreme Performance, Inc.
41 Moreland Rd.
Simi Valley, CA 93065

      Re:     Infringement of Landmark Technology A, LLC's Patent Rights

Dear Mr. Tchilingirian:

      More than a year ago, Landmark Technology, LLC first brought to your attention its understanding that A.N.S. Xtreme Performance, Inc. ("A.N.S. Xtreme Performance") data processing systems practice U.S. Patent No. 6,289,319 C2 ("'319 Patent").

      In that first notice, we introduced ourselves as intellectual property counsel for Landmark Technology, LLC ("Landmark"). Landmark has exclusive rights to patents covering certain special-purpose computer, communication and network technologies relating to Internet searching, e-commerce, electronic bill pay, business-to-business transactions, multimedia data processing networks and mobile technologies. Landmark's widely regarded patented technology covers, among other things, special-purpose hardware and software systems supporting key transaction processes and features used in many electronic commerce systems, including structures which exchange business data amongst trading partners.

      In that first notice we also pointed out that Landmark has licensed its patents to over 200 companies across various industries. Landmark's '319 patent ranks extremely high in patent citing activity and has been cited nearly 200 times by the USPTO whereas the average patent has only five citations during its lifetime. Highly cited patents are generally known to be of greater technical importance, and even fewer rise to the level of "pioneer patents" achieved by the Landmark patents. The '319 patent has also been reexamined twice resulting in all original claims being confirmed.

      Having not received a response from A.N.S. Xtreme Performance, Landmark sent a subsequent letter reaffirming its offer of a non-exclusive license to its '319 patent for $65,000.

Since our last communication, Landmark Technology A, LLC, has assumed all substantial rights under the '508 patent  and has furthered its analysis and discovered that while indeed A.N.S. Xtreme Performance data processing systems practices Landmark's U.S. Patent No.  6,289,319 C2 that A.N.S. Xtreme Performance multimedia data processing systems, particularly http://www.ansxtreme.com/login.asp practices Landmark's U.S. Patent No. 7,010,508 C1 ("'508 Patent")

You will find that the '508 Patent teaches and claims multimedia data processing systems for processing business and financial transactions between entities from remote sites.  This includes multimedia data processing systems wherein a computerized installation [as A.N.S. Xtreme Performance's servers], communicate with terminals which use program instructions and act as the user interface [as do those devices interfaced to A.N.S. Xtreme Performance's web servers in communication with A.N.S. Xtreme Performance's servers], sequences are retrieved in response to data entered [as seen in devices interfaced to A.N.S. Xtreme Performance's web servers], and data is updated in central processor storage [as per the functionality of A.N.S. Xtreme Performance's web servers].  For example, the specific functionalities implemented by A.N.S. Xtreme Performance using their servers and devices interfaced to A.N.S. Xtreme Performance's web servers constitutes use of the technology taught within the meaning of Claim 1 of the '508 patent.

We appreciate your attention to this matter and request a response within 15 days of this letter.  Please contact me at the phone or email above, or contact my colleague, Jennifer Ishimoto, at ishimoto@banishlaw.com or (650) 241-2773.

Very truly yours,

John A. Lee
Partner
BANIE & ISHIMOTO LLP

Page 2 of 2



John A. Lee
Banie & Ishimoto LLP
3705 Haven Ave. #137
Menlo Park, CA 94025
Phone: 650-241-2774
Email: jlee@banishlaw.com

**VIA U.S. MAIL**

March 1, 2019

Ms. Heather Shepardson
Rauch Industries, Inc.
3800 A Little Mountain Rd.
Gastonia, NC 28056

  Re: Infringement of Landmark Technology A, LLC's Patent Rights

Dear Ms. Shepardson:

  More than a year ago, Landmark Technology, LLC first brought to your attention its understanding that Rauch Industries, Inc. ("Christopher Radko") data processing systems practice U.S. Patent No. 6,289,319 C2 ("'319 Patent").

  In that first notice, we introduced ourselves as intellectual property counsel for Landmark Technology, LLC ("Landmark"). Landmark has exclusive rights to patents covering certain special-purpose computer, communication and network technologies relating to Internet searching, e-commerce, electronic bill pay, business-to-business transactions, multimedia data processing networks and mobile technologies.  Landmark's widely regarded patented technology covers, among other things, special-purpose hardware and software systems supporting key transaction processes and features used in many electronic commerce systems, including structures which exchange business data amongst trading partners.

  In that first notice we also pointed out that Landmark has licensed its patents to over 200 companies across various industries.  Landmark's '319 patent ranks extremely high in patent citing activity and has been cited nearly 200 times by the USPTO whereas the average patent has only five citations during its lifetime.  Highly cited patents are generally known to be of greater technical importance, and even fewer rise to the level of "pioneer patents" achieved by the Landmark patents.  The '319 patent has also been reexamined twice resulting in all original claims being confirmed.

  Having not received a response from Christopher Radko, Landmark sent a subsquent letter reaffirming its offer of a non-exclusive license to its '319 patent for $65,000.

Since our last communication, Landmark Technology A, LLC, has assumed all substantial rights under the '508 patent and has furthered its analysis and discovered that while indeed Christopher Radko data processing systems practices Landmark's U.S. Patent No. 6,289,319 C2 that Christopher Radko multimedia data processing systems, particularly https://www.christopherradko.com/login.aspx?ReturnURL=%2fmyaccount_Orders.aspx practices Landmark's U.S. Patent No. 7,010,508 C1 ("'508 Patent")

You will find that the '508 Patent teaches and claims multimedia data processing systems for processing business and financial transactions between entities from remote sites. This includes multimedia data processing systems wherein a computerized installation [as Christopher Radko's servers], communicate with terminals which use program instructions and act as the user interface [as do those devices interfaced to Christopher Radko's web servers in communication with Christopher Radko's servers], sequences are retrieved in response to data entered [as seen in devices interfaced to Christopher Radko's web servers], and data is updated in central processor storage [as per the functionality of Christopher Radko's web servers]. For example, the specific functionalities implemented by Christopher Radko using their servers and devices interfaced to Christopher Radko's web servers constitutes use of the technology taught within the meaning of Claim 1 of the '508 patent.

We appreciate your attention to this matter and request a response within 15 days of this letter. Please contact me at the phone or email above, or contact my colleague, Jennifer Ishimoto, at ishimoto@banishlaw.com or (650) 241-2773.

Very truly yours,

John A. Lee
Partner
BANIE & ISHIMOTO LLP

Page 2 of 2

LANDMARKAWSAG000008



John A. Lee
Banie & Ishimoto LLP
3705 Haven Ave. #137
Menlo Park, CA 94025
Phone: 650-241-2774
Email: jlee@banishlaw.com

**VIA U.S. MAIL**

March 1, 2019

Mr. Mark Levitin
OpticsPlanet, Inc.
3150 Commercial Ave.
Northbrook, IL 60062

   Re: Infringement of Landmark Technology A, LLC's Patent Rights

Dear Mr. Levitin:

   More than a year ago, Landmark Technology, LLC first brought to your attention its understanding that OpticsPlanet, Inc. ("OpticsPlanet") data processing systems practice U.S. Patent No. 6,289,319 C2 ("'319 Patent").

   In that first notice, we introduced ourselves as intellectual property counsel for Landmark Technology, LLC ("Landmark"). Landmark has exclusive rights to patents covering certain special-purpose computer, communication and network technologies relating to Internet searching, e-commerce, electronic bill pay, business-to-business transactions, multimedia data processing networks and mobile technologies. Landmark's widely regarded patented technology covers, among other things, special-purpose hardware and software systems supporting key transaction processes and features used in many electronic commerce systems, including structures which exchange business data amongst trading partners.

   In that first notice we also pointed out that Landmark has licensed its patents to over 200 companies across various industries. Landmark's '319 patent ranks extremely high in patent citing activity and has been cited nearly 200 times by the USPTO whereas the average patent has only five citations during its lifetime. Highly cited patents are generally known to be of greater technical importance, and even fewer rise to the level of "pioneer patents" achieved by the Landmark patents. The '319 patent has also been reexamined twice resulting in all original claims being confirmed.

   Having not received a response from OpticsPlanet, Landmark sent a subsquent letter reaffirming its offer of a non-exclusive license to its '319 patent for $65,000.

Since our last communication, Landmark Technology A, LLC, has assumed all substantial rights under the '508 patent  and has furthered its analysis and discovered that while indeed OpticsPlanet data processing systems practices Landmark's U.S. Patent No.  6,289,319 C2 that OpticsPlanet multimedia data processing systems, particularly https://www.opticsplanet.com/ practices Landmark's U.S. Patent No.  7,010,508 C1 ("'508 Patent")

You will find that the '508 Patent teaches and claims multimedia data processing systems for processing business and financial transactions between entities from remote sites.  This includes multimedia data processing systems wherein a computerized installation [as OpticsPlanet's servers], communicate with terminals which use program instructions and act as the user interface [as do those devices interfaced to OpticsPlanet's web servers in communication with OpticsPlanet's servers], sequences are retrieved in response to data entered [as seen in devices interfaced to OpticsPlanet's web servers], and data is updated in central processor storage [as per the functionality of OpticsPlanet's web servers]. For example, the specific functionalities implemented by OpticsPlanet using their servers and devices interfaced to OpticsPlanet's web servers constitutes use of the technology taught within the meaning of Claim 1 of the '508 patent.

We appreciate your attention to this matter and request a response within 15 days of this letter.  Please contact me at the phone or email above, or contact my colleague, Jennifer Ishimoto, at ishimoto@banishlaw.com or (650) 241-2773.

Very truly yours,

John A. Lee
Partner
BANIE & ISHIMOTO LLP

Page 2 of 2

# EXHIBIT 4

**Lawrence B. Lockwood**
**5935 Folsom Drive**
**La Jolla, California 92037-7326**
**(858) 454-4475**

August 10, 2012

I, Lawrence B. Lockwood, am the Managing Member of Landmark Technology LLC, owning 80% of the member units. In the event I become incapacitated or unable to perform duties of the Managing Member, I appoint Raymond A. Mercado, a member of Landmark Technology LLC, to become Managing Member. Raymond A. Mercado will assume all decision-making, authorization to sub-license the patent portfolio that is exclusively licensed to Landmark Technology LLC by me, Lawrence B. Lockwood and all other duties.

Lawrence B. Lockwood

*See attached notarization*

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL CODE § 1189

State of California

County of _San Diego_ }

On _August 10, 2012_ before me, _Anita Wood, Notary Public_,
<small>Here Insert Name and Title of the Officer</small>

personally appeared _Lawrence B. Lockwood_
<small>Name(s) of Signer(s)</small>

[Notary Seal:]
ANITA WOOD
Commission # 1954210
Notary Public - California
San Diego County
My Comm. Expires Oct 24, 2015

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Anita Wood_
<small>Signature of Notary Public</small>

<small>Place Notary Seal Above</small>

**OPTIONAL**

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _Affidavit To Transfer Managing Member_

Document Date: _August 10, 2012_                Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

| RIGHT THUMBPRINT OF SIGNER |
|---|
| Top of thumb here |

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

| RIGHT THUMBPRINT OF SIGNER |
|---|
| Top of thumb here |

© 2010 National Notary Association • NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)                Item #5907

# EXHIBIT 5

PRODUCED IN NATIVE FORMAT

LTA 024975

## Payment Authorizations

**From: Larry Lockwood <lb_lockwood@yahoo.com>**          Mon, Apr 2, 2018 at 10:56 AM PDT (GMT-07:00)
To: John Lee <jlee@banishlaw.com>; Melody Camp <genevieve3290@yahoo.com>; Ph.D. Raymond Mercado
<mercado.raymond@gmail.com>

John, for the next few months I would like you to include Melodi on notifications of payments from licensing that you send me.  That way, Melodi can simply update me by phone of incoming funds.  You have my full authorization to calculate your firm's percent, with the balance deposited In Landmark Technology account, like we do each time. I  am setting up a second computer at the Laurel Street office and want to be sure everything runs smoothly.   I would also like to have Raymond A. Mercado sign the licenses in the next few months with the title MANAGING MEMBER.  After that, I will sign as Managing Member.  Thanks.

Larry

PRODUCED IN NATIVE FORMAT

LTA 024974

**Law Firm**

---

**From: Larry Lockwood <lb_lockwood@yahoo.com>**                    Fri, Aug 3, 2018 at 7:58 PM PDT (GMT-07:00)
To: Ph.D. Raymond Mercado <mercado.raymond@gmail.com>; Melody Camp <genevieve3290@yahoo.com>

    This firm and at least one more are working on the transition.  Multiple tax issues we must address.  I will be putting you in touch with Ken over the weekend.  I have explained you are the Managing Member. Further, I want everything in place if in the event we have a big win from SMRH.  Today I feel fine taking a very long drive down Silver Strand over the bridge, nice lunch at Bar-B-Q-Pit in National City.  Tomorrow, breakfast with Buelhman at D.Z.'s.

Certified Public Accountants & Financial Advisors - Squar Milner

> **Certified Public Accountants & Financial Advisors - Squar Milner**

---

# EXHIBIT 6

## Please Continue as Managing Member

**From: Larry Lockwood <lb_lockwood@yahoo.com>**    Wed, May 16, 2018 at 10:20 AM PDT (GMT-07:00)
To: Ph.D. Raymond Mercado <mercado.raymond@gmail.com>; Melody Camp <genevieve3290@yahoo.com>

Ray, please continue interacting with John on approving settlements, licenses, etc. I have at least three or four more months of treatments with recovery. I begin fourth (4th) session next Tuesday, so next week I'll be at hospital for the three days of Chemo. I continue to feel fine, but just don't have any energy. Please let me know how you are proceeding on our Congressional strategy ? As I read the Complaint of last week, I noted several good points we may add to our Complaint such as quotes from some Justices and admission the application process is flawed.

Larry

# EXHIBIT 7

## SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

This Settlement Agreement and Mutual General Release (the "Agreement") is made and entered into this 2nd day of August, 2021 (the "Effective Date"), by and between Raymond Mercado ("Mercado"), Melody Camp ("Camp"), Research Triangle Innovations, LLC ("Research Triangle") and Landmark Technology A, LLC ("Landmark A"), on the one hand, and Victor Lockwood ("Vic Lockwood"), Landmark Technology, LLC (the "Original Landmark"), and Victor Lockwood in his capacity as Trustee of The Lawrence B. Lockwood Trust (the "Trust"), jointly and severally, on the other hand.  Mercado, Camp, Research Triangle, and Landmark A are sometimes collectively referred to as the "Landmark A Parties".  Vic Lockwood, the Trust and the Original Landmark are sometimes collectively referred to as the "Original Landmark Parties". Mercado, Camp, Research Triangle, Landmark A, the Original Landmark, Vic Lockwood, and the Trust are sometimes hereinafter collectively referred to as the "Parties" and individually as a "Party."

## RECITALS:

**WHEREAS,** Lawrence B. Lockwood ("Larry Lockwood") was the owner of the following patents, U.S. Patent No. 7,010,508 B1, U.S. Patent No. 6,289,319 C1, U.S. Patent 5,576,951 C1, U.S. Patent No. B1 Re 32,115, U.S. Patent No. 5,309,355, U.S. Patent No. 4,567,359, U.S. Patent No. 4,359,631, U.S. Patent No. 276,626, U.S. Patent No. 286,956, Canadian Patent No. 1,236,216, and Canadian Patent No. 1,189,973 (collectively referred to herein as the "Patents"); and

**WHEREAS,** on or about July 16, 2018, Larry Lockwood entered into a "Technology License Agreement" with the Original Landmark, granting the Original Landmark a perpetual exclusive license in and to the Patents and rights associated with the Patents (the "Patent Rights"); and

**WHEREAS,** the Landmark A Parties contend that, on or about December 21, 2018, the Original Landmark entered into a "Patent License and Conveyance Agreement" transferring the Patent Rights in and to the Patents to Research Triangle (the "RTI Transfer"); and

**WHEREAS,** on or about December 26, 2018, Larry Lockwood (acting as Settlor) settled the Trust, which provided that Vic Lockwood was the first successor trustee upon Larry Lockwood's inability to so serve; and

**WHEREAS,** Larry Lockwood funded the Trust with his membership interest in the Original Landmark and the Patents, among other assets (the "Trust Assets"); and

**WHEREAS,** the Trust provided that upon Larry Lockwood's death, the Trust Assets would be distributed to its beneficiaries as follows:

One share of forty-five percent (45%) to Vic Lockwood

One share of twenty-five percent (25%) to Raymond Mercado

One share of five percent (5%) to Melody Camp

---

One share of five percent (5%) to Patrick Nunally

One share of five percent (5%) to Buffy Briggs

One share of five percent (5%) to Karen Malone

One share of ten percent (10%) to William "Larry" Buehlman; and

**WHEREAS**, the Landmark A Parties contend that, on or about December 30, 2018 Research Triangle entered into a "Technology License Agreement" transferring the Patent Rights to Landmark A (the "Landmark A Transfer"); and

**WHEREAS**, on or about December 29, 2018, Larry Lockwood died; and

**WHEREAS**, following Larry Lockwood's death, Mercado and Camp assert that they, for the first time, were provided a copy of a document purported to be the March 11, 2008 Operating Agreement for the Original Landmark (the "Operating Agreement Dispute"); and

**WHEREAS**, up until December 29, 2018 (the date Larry Lockwood died), the Operating Agreement and subsequent gifts of units by the Original Landmark resulted in the following membership interests in the Original Landmark:

85% interest of issued membership units to Larry Lockwood, which Larry Lockwood held in the Trust;

6% interest of issued membership units to Vic Lockwood

5% interest of issued memberships units to Raymond Mercado

4% interest of issued membership units to William "Larry" Buehlman; and

**WHEREAS**, accounting for the distributions to be made from the Trust following Larry Lockwood's death, the following represents the anticipated membership interests in the Original Landmark after Trust distributions are made:

44.25% interest of issued membership units to Vic Lockwood

26.25% interest of issued membership units to Raymond Mercado

4.25% interest of issued membership units to Melody Camp

4.25% interest of issued membership units to Patrick Nunally

4.25% interest of issued membership units to Buffy Briggs

4.25% interest of issued membership units to Karen Malone

12.5% interest of issued membership units to William "Larry" Buehlman

(the "Original Landmark Anticipated Membership Interest"); and

**WHEREAS**, there is a dispute between Mercado, Camp and Vic Lockwood and the Original Landmark as to whether Vic Lockwood's membership units entitle him to voting rights in the Original Landmark (the "Voting Interest Dispute"); and

**WHEREAS**, Vic Lockwood acting as both Trustee for the Trust and as purported managing member of the Original Landmark dispute that there was proper authorization for the RTI Transfer and the Landmark A Transfer (the "Patent Rights Dispute"); and

**WHEREAS**, on or about November 4, 2020, Mercado and Camp filed a civil complaint in San Diego Superior Court, Case No. 37-2020-00040414-CU-WT-CTL, alleging claims against the Original Landmark and Vic Lockwood for (1) Failure to Pay Wages, (2) Failure to Timely Pay Wages During Employment, (3) Failure to Timely Pay Wages Due to Termination, (4) Failure to Reimburse Expenses, (5) Failure to Provide Meal and Rest Periods, (6) Unfair/Unlawful Business Practices, (7) Retaliation, (8) Wrongful Termination in Violation of Public Policy, (9) Account Stated, (10) Breach of Contract, (11) Breach of Covenant of Good Faith and Fair Dealing, (12) Aiding and Abetting Breach of Fiduciary Duty, (13) Fraudulent Concealment, (14) Quantum Meruit, and (15) Quasi-Contract/Unjust Enrichment (the "Employment Dispute"); and

**WHEREAS**, the Parties are now desirous of fully and finally settling any and all disputes between the Parties and to enter into a definitive settlement agreement, and have agreed to settle all of their differences on the terms and in the manner set forth in this Agreement.

**NOW THEREFORE**, the Parties, in recognition of the mutual covenants contained in this Agreement, and with the mutual desire to prevent the burdens and costs of additional litigation, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, agree as follows:

## AGREEMENT:

Each Party, in consideration of the promises and concessions made by the other, hereby compromises and settles any and all past, present, or future claims, demands, obligations, or causes of action, whether based on tort, contract, or other theories of recovery, which that Party has, or which may later accrue to or be acquired by that Party, against the other Party and the other Party or Parties predecessors and successors in interest, heirs, and assigns, as well as past, present, and future employees, affiliates, and partners, arising from the subject matter of the Patents, and/or the Patent Rights, and/or the RTI Transfer, and/or the Trust Assets, and/or the Landmark A Transfer, and/or the Operating Agreement Dispute, and/or the Original Landmark Anticipated Membership Interest, and/or the Voting Interest Dispute, and/or the Patent Rights Dispute, and/or the Employment Dispute, and/or the Trust, and/or the administration of the Trust, and/or any claims which arise out of or relate to the administration of Larry Lockwood's estate, on the following terms and conditions:

**1.0      INCORPORATION OF RECITALS**

The Recitals to this Agreement are incorporated into and shall constitute a part of this Agreement.

/ / /

---

**2.0      TERMS OF SETTLEMENT**

      **2.1      Sale of the Trust's and Vic Lockwood's Interests In the Patents and In The Original Landmark.**  In consideration of the mutual releases set forth in this Agreement, Vic Lockwood and the Trust each agree to sell any interest he or it has in the Patents and any interest he or it has in the Original Landmark Anticipated Membership Interest to Landmark A, other than the 4% interest in Original Landmark held by William "Larry" Buehlman outside the Trust, in exchange for payment of Fifty Five Thousand U.S. Dollars ($55,000.00 USD) (the "Settlement Payment"). The Settlement Payment shall be paid from monies held in the client trust account of Banie & Ishimoto for the benefit of the Original Landmark and/or Landmark A, and Mercado, Camp, and the Landmark A Parties shall give written authorization for Banie & Ishimoto to distribute the funds to Vic Lockwood as Trustee for the Trust within five (5) business days after the date all Parties execute this Agreement.  Once the Settlement Payment is completed, Vic Lockwood, the Original Landmark, and the Trust shall release any and all ownership right to any other funds held in trust by Banie & Ishimoto, and such other funds, if any, shall be released to and disposed of by the Landmark A Parties as they direct to Banie & Ishimoto.

      **2.2      Assignment of the Patents.** Concurrent with the execution of this Agreement, the Trust shall execute the Patent Assignment, attached hereto as Exhibit "A" and incorporated herein.

      **2.3      Warranties.**  The Trust and Vic Lockwood, and each of them, represent and warrant to Mercado, Camp and Landmark A as follows: (a) the Trust and Vic Lockwood have full power and authority to consummate the sale of their respective interests in the Patents and the Original Landmark Anticipated Membership Interest to Landmark A; (b) neither the sale of their respective interests in the Patents nor the sale of their respective interests in the Original Landmark Anticipated Membership Interest will conflict with or result in any violation of, or constitute a default under, the terms of any agreement or other instrument, judgment, decree, order, award, law or regulation by which either the Original Landmark, Vic Lockwood or the Trust is bound, or, to the extent the sale or transfer of their interests does constitute such a default, the Parties to this Agreement waive any and all claims they may have to object to the sale or transfer or to purchase any and all of such interests; (c) the Trust and Vic Lockwood are conveying to Landmark A good and marketable title to any and all rights and/or interest either the Trust or Vic Lockwood has in the Patents and the Original Landmark Anticipated Membership Interest, other than the 4% interest in Original Landmark held by William "Larry" Buehlman outside the Trust, free and clear of any and all liens, encumbrances, equities, claims, restrictions, options, proxies or other agreements of any kind whatsoever, (d) this Agreement is in accordance with all provisions of the Operating Agreement, and (e) to the extent actually known by Vic Lockwood and/or the Trust, the Original Landmark has not entered into any agreements or incurred any material liabilities, debts, claims and/or losses (whether liquidated or unliquidated, secured or unsecured, absolute, accrued, contingent or otherwise) other than those incurred in the ordinary course of business and that have been disclosed to the Landmark A Parties.

      **2.4      Indemnification by Vic Lockwood and the Trust.** Vic Lockwood and the Trust, jointly and severally, agree to indemnify, defend and hold harmless Mercado, Camp and/or Landmark A, and each of them, and their affiliates, directors, officers, employees, and their respective successors, heirs and assigns (collectively, the "Original Landmark Indemnified

Parties") against any and all liability, damage, loss, and/or expense (including reasonable attorney's fees, expert fees and any and all other costs associated with or arising from litigation or other legal action) incurred by or imposed upon the Original Landmark Indemnified Parties in connection with claims, suits, actions, demands, or judgments arising out of a breach of any of the Warranties specified in Section 2.3 of this Agreement.

      2.5    **Indemnification by the Landmark A Parties.**  The Landmark A Parties, jointly and severally, agree to indemnify, defend and hold harmless the Original Landmark Parties, and each of them, and their affiliates, directors, officers, employees, and their respective successors, heirs and assigns (collectively, the "Landmark A Indemnified Parties") against any and all liability, damage, loss, and/or expense (including reasonable attorney's fees, expert fees and any and all other costs associated with or arising from litigation or other legal action) incurred by or imposed upon the Landmark A Indemnified Parties in connection with claims, suits, actions, demands, or judgments arising out the Landmark A Parties' enforcement or use of the Patents or the Patent Rights occurring at any time since the RTI Transfer.

      2.6    **Cooperation.**  To the extent reasonably practicable, Vic Lockwood, and/or the Trust shall provide reasonable cooperation (at no out of pocket cost to Vic Lockwood or the Trust) with the Landmark A Parties, in connection with any action or proceeding (or any appeal from any action or proceeding) which relates to Landmark A and/or the Original Landmark and/or the Patents, including the current action brought by Washington Attorney General's office, including Case No. 21-2-06348-5 in the King County Superior Court, and Case No. 2:21-cv-00728-RSM in the United States District Court for the Western District of Washington.  To the extent such cooperation is needed, the Landmark A Parties shall send written request to Vic Lockwood's attorney, Edwin Boniske, at Higgs Fletcher & Mack LLP. With respect to Vic Lockwood, this provision shall survive any termination of this Agreement and shall terminate automatically three years after the full execution of this Agreement.  With respect to the Trust only, this provision shall terminate when the Trust administration is completed.

      2.7    **Confidential Communications.**  The Parties agree that any and all written and verbal communications between the Parties regarding Landmark A and/or the Original Landmark, the Patents and/or the Patent Rights, up to and including all settlement negotiations, (collectively, the "Confidential Communications") are confidential and proprietary and no Party will disclose any of the Confidential Communications without express, written notification to the other Parties and only as ordered by a Court of competent jurisdiction or in connection with discovery compelled by the laws of any jurisdiction having authority over any matter relating to one or more of the Parties, and that the Confidential Communications shall be maintained in confidence in accordance with the terms of Section 4.2, below.

      2.8    **Dismissal of Civil Action With Prejudice.**  Within seven (7) days after this Agreement is fully executed by all of the Parties, Mercado and Camp shall file a Request for Dismissal of the Employment Dispute, seeking the dismissal of all claims against all parties thereto *with prejudice*, and will provide a confirmed copy to counsel for Vic Lockwood and the Trust.

      2.9    **Ownership of Claims.**  The Parties represent and warrant that neither Party has assigned or transferred, or purported to assign or transfer, all or any part of any claim released by this Agreement.

---

    **2.10**  <u>No Other Actions.</u>  The Parties, and each of them, covenant and represent that, other than the Employment Dispute, no Party has filed any complaints or charges or lawsuits against any of the other Parties with any governmental agency or court.

    **2.11**  <u>Compromise and Settlement.</u>  The Parties agree that this compromise and settlement shall constitute a bar to all past, present, and future claims between the Parties arising out of or relating to the subject matter of this Agreement.

### 3.0     MUTUAL GENERAL RELEASES

    **3.1**  <u>Release of the Landmark A Parties.</u>  Except for the obligations imposed under this Agreement, the Original Landmark Parties, and each of them, in consideration of the terms of this Agreement, hereby compromises, settles, and releases the Landmark A Parties, and each of them, and their respective employees, partners, owners, officers, directors, managers, members, shareholders, insurers, successors, spouses, children, heirs and assigns (collectively, the "<u>Landmark A Released Parties</u>") of and from, any and all past, present or future claims, demands, agreements, obligations or causes of action, whether based on tort, contract or other theories of recovery, arising out of or relating to the Patents, and/or the Patent Rights, and/or the RTI Transfer, and/or the Trust Assets, and/or the Landmark A Transfer, and/or the Operating Agreement, and/or the Original Landmark Anticipated Membership Interest, and/or the Voting Interest Dispute, and/or the Patent Rights Dispute, and/or the Employment Dispute.  The Original Landmark Parties, and each of them, respectively acknowledge and agree that the release each of the Original Landmark Parties have, respectively, given to each of the Landmark A Released Parties by means of the preceding sentence applies to all claims for injuries, damages or losses to each of its own person and property, real or personal, whether those injuries, damages or losses are known or unknown, foreseen or unforeseen, patent or latent, which the Original Landmark Parties, and each of them, may have against the Landmark A Released Parties.

    **3.2**  <u>Release of the Original Landmark Parties.</u>  Except for the obligations imposed under this Agreement, the Landmark A Parties, and each of them, in consideration of the terms of this Agreement, hereby compromise, settle, and release the Original Landmark Parties, and each of them, and their respective employees, partners, owners, officers, directors, managers, members, shareholders, insurers, successors, spouses, children, heirs and assigns (collectively, the "<u>Original Landmark Released Parties</u>") of and from, any and all past, present or future claims, demands, agreements, obligations or causes of action, whether based on tort, contract or other theories of recovery, arising out of or relating to the Patents, and/or the Patent Rights, and/or the RTI Transfer, and/or the Trust, and/or the administration of the Trust, and/or the Trust Assets, and/or the estate of Larry Lockwood, and/or the Landmark A Transfer, and/or the Operating Agreement, and/or the Original Landmark Anticipated Membership Interest, and/or the Voting Interest Dispute, and/or the Patent Rights Dispute, and/or the Employment Dispute.  The Landmark A Parties, and each of them, acknowledge and agree that the release each has of the Landmark A Parties have, respectively, given to each of the Original Landmark Released Parties by means of the preceding sentence applies to all claims for injuries, damages or losses to each of its own person and property, real or personal, whether those injuries, damages or losses are known or unknown, foreseen or unforeseen, patent or latent, which the Landmark A Parties, and each of them, may have against the Original Landmark Released Parties.

    **3.3**   <u>**Disclaimer and Waiver of Trust Interests.**</u>   Each of the Landmark A Parties hereby disclaims and waives any and all interest he, she, or it may have in, and any and all rights he, she, or it may have under, the Trust and/or its assets, including without limitation rights to an accounting, rights to any distributions from the Trust, any rights to information regarding the Trust, any other rights under Division 9 of the California Probate Code, and any other rights the Landmark A Parties may have in the Trust and/or its assets. Each of the Landmark A Parties waives any and all interest he, she, or it may have in or against the estate of Larry Lockwood.

    **3.3**   <u>**Section 1542 Waiver.**</u>  Each Party certifies that it has read the following provisions of California Civil Code Section 1542:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

    Each Party waives the application of California Civil Code Section 1542. Each Party understands and acknowledges that the significance and consequence of this waiver of California Civil Code Section 1542 is that even if it should eventually suffer additional damages arising out of the claims released herein, it will not be able to make any claim for those damages. Furthermore, each Party acknowledges that it consciously intends these consequences even as to claims that it does not know exist, and that, if known, would materially affect its decision to execute this Agreement, regardless of whether its lack of knowledge is the result of ignorance, oversight, error, negligence or any other cause. Each Party acknowledges that it has read, understands, and agrees to the above.

**4.0**     **MISCELLANEOUS PROVISIONS**

    **4.1**   <u>**Agreement Not to Be Construed as an Admission.**</u>  This Agreement is entered into by the Parties solely for the purpose of compromising and settling the matters in dispute. It does not constitute, nor shall it be construed to constitute, an admission of any liability or responsibility by any of the Parties

    **4.2**   <u>**Agreement to be Kept Confidential.**</u>  Except as otherwise mandated by law (including discovery statutes mandating disclosure of information in connection with a legal proceeding) or order of a Court of competent jurisdiction, the Parties, and each of them, agree not to disclose the terms, amount, or existence of this Agreement to anyone other than a member of the Party's immediate family, attorney or tax advisor and, even as to such a person, only if the person is informed of and agrees to honor this confidentiality requirement. Such a person's violation of this confidentiality requirement shall be treated as a violation of this Agreement by the Party so disclosing. This Section shall not prohibit disclosure of the terms, amount, or existence of this Agreement either (1) to the extent necessary legally to enforce this Agreement, (2) the minimum extent necessary for the Parties to effectuate Sections 2.4, 2.5, and/or 2.8 above, or (3) pursuant to validly issued subpoena. In the event that a Party is asked how the Employment

Dispute was resolved, such Party may respond that "the matter was resolved to the mutual satisfaction of the parties," or words of similar import. No other statement may be made regarding the subject matter of this Agreement. Under no circumstances will the fact of the Settlement Payment, or the amount of such payment (or any characterization of the Settlement Payment), or other terms of this Agreement be disclosed, except as otherwise expressly provided herein.

        **4.3**    <u>Notices.</u>  All notices, requests, demands and other communications to be given by either Party to the other Party pursuant to this Agreement must be in writing sent by First Class U.S. certified or registered mail, postage prepaid, personally served, or sent via Federal Express, or comparable overnight delivery service. Notice will be deemed received effective upon receipt of the mailed notice or the overnight delivery, or upon the date of personal service, as applicable. All notices must be sent to the Parties at the addresses set forth below, or as otherwise designated by the Parties in writing:

| **To the Landmark A Parties:** | **To the Original Landmark Parties:** |
|---|---|
| Ros M. Lockwood, Esq. | Edwin Boniske, Esq. |
| Burkhalter Kessler Clement & George, LLP | Higgs Fletcher & Mack LLP |
| 2020 Main Street, Suite 600 | 401 West "A" Street, Suite 2600 |
| Irvine, California 92614 | San Diego, California 92101 |
| rlockwood@bkcglaw.com | boniske@higgslaw.com |

        **4.4**    <u>Mutual Non-Disparagement.</u> Each Party agrees not to criticize, denigrate or otherwise disparage any of the other Parties, or any of their Patents, Patent Rights, products, services, processes, experiments, policies, practices, standards of business conduct, or areas or techniques of research; provided, however, that nothing in this Agreement shall prohibit a Party from enforcing their legal rights or complying with any lawful subpoena or court order.

        **4.5**    <u>Integration, Modification, and Waiver.</u> This Agreement, including all documents referenced herein (all of which are incorporated into the Agreement), constitutes and contains the entire agreement and understanding concerning the subject matter between the Parties, sets forth all inducements made by any Party to any other party with respect to any of the subject matter, and supersedes and replaces all prior and contemporaneous negotiations, proposed agreements or agreements, whether written or oral. Each of the Parties acknowledges to each of the other Parties that no other party nor any agent or attorney of any other Party has made any promise, representation or warranty whatsoever, express or implied, written or oral, not contained herein concerning the subject matter hereof to induce it to execute this Agreement, and each of the Parties acknowledges that he has not executed this Agreement in reliance on any promise, representation or warranty not contained herein. No supplement, modification, or amendment of this Agreement will be binding unless executed in writing by all the Parties. No action or failure to act will constitute a waiver of any right or duty under this Agreement, nor will any action or failure to act constitute an approval of, or acquiescence in, any breach. No waiver of any of the provisions of this Agreement will be deemed, or will constitute, a waiver of any other provision, whether or not similar, nor will any waiver constitute a continuing waiver. No waiver will be binding unless executed in writing by the Party making the waiver.

        **4.6**    <u>Time of the Essence.</u> All times stated in this Agreement are of the essence.

**4.7    Headings.**  All Section headings contained in this Agreement are for convenience of reference only, do not form a part of this Agreement and will not in any way affect the meaning or interpretation of this Agreement.

**4.8    Authority.**  The undersigned individuals execute this Agreement on behalf of the respective Parties, and both the Parties and the undersigned individuals represent that undersigned individuals are authorized to enter into and execute this Agreement on behalf of such Parties.

**4.9    Counterparts and Facsimile Signatures.**  This Agreement may be executed in any number of counterparts, using facsimiles, scanned copies of signatures, or through a verified electronic signature (e.g., DocuSign), each of which will be deemed an original, but all of which together will constitute one and the same instrument.

**4.10    Further Assurances.**  The Parties agree to execute all instruments and documents of further assurance and will do any and all such acts as may be reasonably required to carry out their obligations and to consummate the transactions contemplated.

**4.11    Binding Effect and Assignment.**  This Agreement is binding upon and will inure to the benefit of the Parties and each of the Party's respective successors, predecessors, shareholders, assigns, heirs, and affiliates, without time limitation.  Notwithstanding the foregoing, this Agreement may be assigned by a Party only with the prior written consent of all of the other Parties.

**4.12    Governing Law, Jurisdiction, and Venue.**  This Agreement will be governed by and construed and enforced in accordance with the laws of the State of California, without giving effect to its conflict of laws provisions.  Furthermore, the Parties agree that any action or proceeding brought to enforce or declare rights arising out of or relating to this Agreement will be brought exclusively in the Superior Court of California in and for the County of San Diego, California, and the Parties further consent to the jurisdiction of said Courts and waive any claims of forum non conveniens or any other claims relating to venue.  Moreover, the Parties specifically agree that the San Diego Superior Court shall retain jurisdiction to enforce the terms of this Agreement pursuant to California Code of Civil Procedure, section 664.6.

**4.13    Interpretation.**  The Parties have participated jointly in the negotiation and drafting of this Agreement.  In the event an ambiguity or question of intent arises, this Agreement will be construed as if drafted jointly by the Parties and no presumption or burden of proof will arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.

**4.14    Severability.**  In the event that any provision of this Agreement is deemed invalid, illegal, or unenforceable, all other provisions of the Agreement that are not affected by such invalidity, illegality or unenforceability, will remain in full force and effect.  Further, the Parties hereby agree that if any such provision is deemed invalid, illegal or unenforceable, that provision will be limited or eliminated in scope, power or effect to the minimum extent necessary so that this Agreement will otherwise remain in full force and effect and enforceable to the maximum extent permitted by law.

**4.15    Attorneys' Fees.**  If any legal action or other proceeding is brought to interpret or enforce the provisions of this Agreement, or otherwise in connection with this Agreement, the prevailing party (as defined by California law) will be entitled to recover its reasonable costs, including, without limitation, attorneys' fees, court costs, witness and expert fees and other costs incurred in the action or proceeding (including any appeals and retrials), in addition to any other relief which the prevailing party may be entitled.

**4.16    Cumulative Remedies.**  The rights and remedies in this Agreement are cumulative, and in addition to, any duties, obligations, rights and remedies otherwise provided by law.

**4.17    Advice of Counsel.**  Each Party acknowledges and agrees that it has been represented by its own independent legal counsel with respect to entering into this Agreement, and that each Party has given mature and careful thought to this Agreement.

**IN WITNESS WHEREOF**, the Parties hereto have executed this Settlement Agreement and Mutual General Release, as of the date set forth below.

**APPROVED AND ACCEPTED:**

Dated: 08/09 2021          **RAYMOND MERCADO**

Raymond Mercado

Dated: 08/09, 2021         **MELODY CAMP**

Melody Camp

Dated: 08/09 2021          **LANDMARK TECHNOLOGY A, LLC**

Raymond Mercado, its Managing Member

---

Settlement Agreement and Mutual General Release                    Page 10 of 11

Dated: _08 / 09_ 2021          **RESEARCH TRIANGLE INNOVATIONS, LLC**

Raymond Mercado, its Managing Member

Dated: _AuG 3_ 2021          **THE LAWRENCE B. LOCKWOOD TRUST**

Victor Lockwood, as Trustee

Dated: _AuG 3_ 2021          **LANDMARK TECHNOLOGY, LLC**

Victor Lockwood, its Managing Member

Dated: _AuG 3_ 2021          **VICTOR LOCKWOOD**

Victor Lockwood

# EXHIBIT 8

## LANDMARK BUSINESS PLAN FOR '319 PATENT

In September, the '319 patent expires then having a six year period to enforce litigation for infringement against companies that have been put on notice.  An expired patent has a narrower reading as compared to the broader reading of a live patent.  Hence, defendants will have a more difficult time alleging invalidity arguments against the '319 patent.  During the past several years Landmark has mailed initial letters to license and follow-up letters to license to over 1,300 selected companies.  Each of these companies was carefully screened and determined to infringe the '319 patent.  Each of these companies range in value from $ 20 million to $300 million, distributed throughout the United States.

A key to settlement of a complaint in a timely manner are the local rules of the court.  Landmark should select those districts that have the most favorable rules, specifically time for discovery.  It is believed the Business Plan should incorporate five (5) simultaneous complaints throughout the United States and file a new complaint as soon as a defendant is in the settlement stage.  In addition to the most favorable local rules, another consideration are the number of potential companies in that given district ?    It is more expedient if the local counsel has several companies in its district to file complaints.

The business model assumes settlement in the $ 35k area to compensate for local counsel.  The business model assumes from the date of filing the complaint, the defendant settles 90 days later.  Of course, some will settle faster and some will delay, but overall a 90 day period is reasonable.    Therefore, in theory, a local counsel would have four complaints per year, making their involvement financially profitable. Assuming a 90 day cycle of four (4) complaints per year multiplied by five (5) defendants at any given time, would result in twenty settlements.  That number of defendants is a low-risk business model of avoiding having a group defense form and/or the filing of a CBM.

Assuming twenty complaints per year multiplied by the six year period, that is only 120 companies, about 10% of our potential universe of companies that have been put on notice of the '319 patent.  Therefore, we will carefully select the best candidates for litigation.  This business model is executed at the same time the '508 patent is being licensed.

# # #

LTA 035980

### *MELODI, OUR PREVIOUS MEMOS FOR REFERENCE.*

John cannot continue to file in WA on a consistent basis as you said yourself, referring to a judge's perspective of Landmark -- Therefore, we need atty's scattered throughout the U.S. -- NY, IN, CT, NC, MO (that would be Missouri), IL, OH, (which we have) and a few others... Aside from John's WA filings, we should be looking at outside counsel settling for NO less (unless unusual circumstances) than $40k (remember the notices are going out at $65k) --

With your payroll (Patrick, Ray and Mel) being $20k and you earning $15k would require a NET of $35k/mo., with a commission rate of $35% (John & outside counsel) on top of that means that the GROSS to cover expenses would be $50k - So your figures are accurate!

IF we churn 3 licenses from filing-complaints at $40k (commission being 35% or $14k), Landmark nets $26k X 3 monthly filings = $78k/mo. X 12 months = $936k/yr. So what I come up with, is a little more refined BUT VERY close to your figures of FIVE which is TWO suits greater earning an add'l $26k X 2 $52k/mo, providing a cushion OR income

Bottom line:  We need to do 3 licenses/month, using outside counsel, with a settlement rate of $40k to net Landmark $936k/yr.  ANYTHING greater is a cushion

FURTHER.... THIS is how Jen "finds" a CO atty -- Promise of MORE work!

I am SO glad you took time to put this together -- Landmark needs a model that EVERYONE understands and is working with/toward!

---------------------------------------------
On Tue, 12/12/17, Larry Lockwood <lb_lockwood@yahoo.com> wrote:

Subject: Financial Model
To: "Melody Camp" <genevieve3290@yahoo.com>, "Ph.D. Raymond Mercado" <mercado.raymond@gmail.com>
Date: Tuesday, December 12, 2017, 8:27 PM

*PaGe 1*

LTA 035981

Save
this financial model so you understand my
thinking.      Assume
Landmark needs to net $ 50k per month.   Assume $
50k would equal $ 50k x 12 months = $ 600k.  But we
have a 35% commission to John and an outside counsel (John
taking 20% & outside counsel 15%).  So we need to
gross $ 900k minus 35% = Landmark's 65% or $
540,000.  So you can see we need to gross about $ 900k
to yield $ 540,000 per year or about $ 65k per month for
Landmark.      Let's then shoot
for $ 900k gross per year.  Let's assume the
average litigation settles for $ 30k.  Then $ 900k
divided by $ 30k equals 30 lawsuits.  So you need 30
lawsuits per year.  Now the average lawsuit settles in
say 90 days.  So that is four (4) cycles per
year.  You then divide 4 cycles into the required 30
lawsuits which means at any given time you have 5 active
lawsuits across the country.  Five (5) is not enough at
that amount of settlement ($ 30k) to file CBM for
defendants.  Therefore, its a safe number for
us.    In summary, at any given time we
have five (5) lawsuits in process at the $ 30k number.
Obviously, if we dip below $ 30k we need more or if we
exceed $ 30k we need fewer as we make more income.  But
to me that is a safe number.  You have over 1,000
companies so we have plenty to choose from.  So our
minimum number of outside counsel is five (5) at any given
time.  But we want to be able to bounce back and forth
from state to state, so we really need say ten (10) outside
counsels.  But you can see the model works fine with a
very low risk to Landmark.
    Now John is registered
in Calif. and Wash. state.  So to achieve our magic
five (5) we really only need three outside counsel.  I
believe we already have two (2).  But you get the idea,
we are close to a workable number of states to conduct
litigation without relying on mailing.
    This is what I plan to present to
John on Sunday or by phone on Monday.      Larry

PAGe 2

LTA 035982

# EXHIBIT 9

PRODUCED IN NATIVE FORMAT

LTA 038171

## Re: Landmark A - Zippo

**From: Raymond Mercado <raymercadolandmark@gmail.com>**    Fri, Aug 7, 2020 at 2:50 PM PDT (GMT-07:00)
To: John Lee <jlee@banishlaw.com>
Cc: Melody Camp <melodycamp123@yahoo.com>; Patrick Nunally <patrick@nunally.com>

Agree with that John -- although de facto all our other work is likely going to be via other entities, you're totally right there's no reason to give so broad a release to them (and I don't even know if it would be enforceable!). The other changes look good too.

- Ray

On Fri, Aug 7, 2020 at 4:02 PM John Lee <jlee@banishlaw.com> wrote:
    Ray: Edits from Zippo.

    The one thing we can't agree to is this below addition of theirs.


        "Licensed Patents" means the '319 patent, the '508 patent, any continuations, continuations-in-part, divisionals, or reissues of the '319 patent or the '508 patent, and any patents or patent applications later assigned to Landmark or that Landmark may in the future acquire, own or control, the claims of which read cover, or are alleged to cover, any aspect of Company's EDI-enabled systems or e-commerce sites, as well as any continuations, continuations-in-part, divisionals, or reissues of such patents and patent applications (collectively the "Licensed Patents").


    Recommend changing

        "Licensed Patents" means the '319 patent, the '508 patent, any continuations, continuations-in-part, divisionals, or reissues of the '319 patent or the '508 patent, and any patents or patent applications ~~later~~ owned by ~~assigned to~~ Landmark ~~or that Landmark may in the future acquire, own or control, the claims of which read cover, or~~ that are alleged to cover, any aspect of Company's EDI-enabled systems or e-commerce sites, as well as any continuations, continuations-in-part, divisionals, or reissues of such patents and patent applications (collectively the "Licensed Patents").


    **John A. Lee**
    Banie & Ishimoto LLP
    3705 Haven Ave #137
    Menlo Park, CA 94025
    Tel.: (650) 241-2774
    Fax: (650) 241-2770


        Begin forwarded message:

        **From:** "Elkins, David S." <david.elkins@squirepb.com>
        **Subject: RE: Landmark A - Zippo**
        **Date:** August 6, 2020 at 5:30:34 PM PDT
        **To:** John Lee <jlee@banishlaw.com>

        **PRIVILEGED AND CONFIDENTIAL**
        **SETTLEMENT COMMUNICATION – FED. R. EVID. 408**

        John,

        Attached for your consideration is the draft you send with our proposed revisions tracked.

        Regards,

David

**David S. Elkins**
Squire Patton Boggs (US) LLP
☎ +1 650 843 3378
▯ +1 415 531 6103

---

**From:** Elkins, David S. <david.elkins@squirepb.com>
**Sent:** Wednesday, August 5, 2020 9:46 AM
**To:** John Lee <jlee@banishlaw.com>
**Subject:** RE: Landmark A - Zippo

**PRIVILEGED AND CONFIDENTIAL**
**SETTLEMENT COMMUNICATION – FED. R. EVID. 408**

John,

Thanks very much.  I will review and get back to you asap.

David

**David S. Elkins**
Squire Patton Boggs (US) LLP
☎ +1 650 843 3378
▯ +1 415 531 6103

---

**From:** John Lee <jlee@banishlaw.com>
**Sent:** Wednesday, August 5, 2020 9:26 AM
**To:** Elkins, David S. <david.elkins@squirepb.com>
**Subject:** [EXT] Re: Landmark A - Zippo

**FRE 408 Privileged and Confidential**

David,

Here is the draft license review for comments and edits.

John

**John A. Lee**
Banie & Ishimoto LLP
3705 Haven Ave #137
Menlo Park, CA 94025
Tel.: (650) 241-2774
Fax: (650) 241-2770

> On Jul 31, 2020, at 11:44 AM, Elkins, David S. <david.elkins@squirepb.com>
> wrote:

**PRIVILEGED AND CONFIDENTIAL**
**SETTLEMENT COMMUNICATION – FED. R. EVID. 408**

Hi John,

Zippo will agree to pay $35,000 on the assumptions that the resulting license:

1.  Is fully paid-up;
2.  Is portfolio-wide (including both Landmark entities – i.e., we do not want to settle with Landmark Technology A only to get an infringement assertion by Landmark Technology);
3.  Extends to Zippo and its affiliates; and

We reach agreement on Landmark's form of agreement.

Please let me know whether the above assumptions are correct.

Best,

David

**David S. Elkins**
Squire Patton Boggs (US) LLP
☎ +1 650 843 3378
▯ +1 415 531 6103

---

**From:** John Lee <jlee@banishlaw.com>
**Sent:** Friday, July 31, 2020 9:55 AM
**To:** Elkins, David S. <david.elkins@squirepb.com>
**Subject:** [EXT] Landmark A - Zippo

David:  Spoke with my client after our call, the counter offer that they tendered yesterday, is their best and final.

John

**John A. Lee**
Banie & Ishimoto LLP
3705 Haven Ave #137
Menlo Park, CA 94025
Tel.: (650) 241-2774
Fax: (650) 241-2770

-----------------------------------------------------------------------
45 Offices in 20 Countries.

This message is confidential and may be legally privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system; you must not copy or disclose the contents of this message or any attachment to any other person.

For information about how Squire Patton Boggs processes EU personal data that is subject to the requirements of the EU General Data Protection Regulation, please see our Privacy Notice regarding the processing of EU personal data about clients and other business contacts pursuant to the GDPR at www.squirepattonboggs.com.

Squire Patton Boggs (US) LLP is part of the international legal practice Squire Patton Boggs, which operates worldwide through a number of separate legal entities. Please visit www.squirepattonboggs.com for more information.

#US
-----------------------------------------------------------------

--
**Raymond A. Mercado, Ph.D.**
Managing Member | Landmark Technology A, LLC
Tel. (858) 401-9732