1
2
3
4
5
6                                                        The Honorable Ricardo S. Martinez

7                              UNITED STATES DISTRICT COURT
                              WESTERN DISTRICT OF WASHINGTON
8                                        AT SEATTLE

9    STATE OF WASHINGTON,                    NO. 2:21-cv-00728-RSM

10                        Plaintiff,         SECOND AMENDED COMPLAINT
                                             FOR INJUNCTIVE AND OTHER
11       v.                                  RELIEF

12   LANDMARK TECHNOLOGY A, LLC;
     RAYMOND MERCADO, individually;
13   PATRICK NUNALLY, individually; and
     MELODY CAMP, individually,
14
                          Defendants.
15

16          Since at least January 2016, Defendants Raymond Mercado, Melody Camp, and Patrick

17   Nunally have been in the business of bad faith patent assertion. They have done so under the

18   names Landmark Technology, LLC and Landmark Technology A, LLC, with the assistance of

19   California attorneys John Lee and Jennifer Ishimoto, and while he was alive, with the guidance

20   of Lawrence Lockwood (a former owner of Landmark Technology, LLC). Regardless of the

21   name of the entity, though, the scheme has remained the same – to identify and target companies

22   with e-commerce websites, blanket thousands of targets with mail-merged form demand letters,

23   and then attempt to extort a nuisance value "license fee" from the targets to avoid costly

24   infringement litigation. Just as Goldilocks sought porridge and a bed, Defendants spend

25   considerable time and effort identifying and targeting companies that are "just right."

26

1     The target companies need to be just large enough to be able to afford to pay some

2  portion of Defendants' $65,000 "license fee" demand, but not so large as to be able to afford to

3  challenge the validity of the junk patents at issue or sophisticated enough about patent

4  infringement to litigate the alleged infringement to a verdict. When Defendant Camp identifies

5  a target company that was too large or too sophisticated, Defendant Mercado vetoes sending

6  them a demand letter. When Defendant Nunally uncovers that a target company could

7  potentially be indemnified by a large e-commerce platform provider that could afford to defend

8  a lawsuit, Defendant Mercado instructs the group to hold off. When a target company pushes

9  back too hard or appears overly "litigious" (in Defendant Mercado's own words), Defendants

10  simply walk away.

11     Defendants are not now and never were in the business of legitimate patent enforcement.

12  Defendants are patent trolls in the business of generating small chunks of revenue in large

13  volumes. Defendant Mercado has even referred to Defendants' business model as a "patent troll

14  model." Defendants' scheme is nationwide (including targeting Washington businesses) and

15  has weekly production goals, and each participant has a defined role in ensuring Defendants

16  identify and target enough companies to meet Defendants' predetermined revenue objectives.

17  With virtually every website that has a search or shopping cart function a potential target,

18  Defendants can afford to walk away from the vast majority of targets and still meet their revenue

19  goals. In short, Defendants' business has never been about patents; it has always been about

20  profits.

21     The Attorney General of the State of Washington brings this action against Defendants

22  in the name of the State, or as *parens patriae* on behalf of persons residing in the State, to

23  enforce the provisions of the Washington Consumer Protection Act, Wash. Rev. Code § 19.86

24  (CPA) and the Patent Troll Prevention Act, Wash. Rev. Code § 19.350 (PTPA).

25

26

SECOND AMENDED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF
(2:21-CV-00728-RSM) - 2

# I.    INTRODUCTION

1.1    Defendant Landmark Technology A, LLC ("LTA") is a patent-assertion entity (PAE) owned, controlled and operated by the individual Defendants. PAEs enforce patent rights, rather than investing in development or commercialization. Abusive PAEs—popularly called "patent trolls"—assert patents in bad faith, targeting smaller companies that cannot afford protracted litigation, and demanding payment of licensing fees.  Patent trolls typically assert patents *ex post facto*, after the companies they target have independently invented or begun using a technology allegedly covered by a patent, and frequently only after it has become ubiquitous in the industry. Although patent trolls rarely succeed on patent infringement claims in court, the vast majority of disputes end in settlements because patent litigation is costly and disruptive for defendants, and patent trolls often offer to settle for amounts well below litigation costs to make the business decision to settle an obvious one. Commentators have argued, and studies have found, that patent trolls are a burden on productive companies and do not promote innovation.

1.2    Defendants' business model is bad faith patent assertion, and it has been that way whether acting under the name Landmark Technology, LLC or under the name of Defendant LTA. For example, over an 18-month period, Defendants issued at least 1,892 separate patent assertion demand letters under the LTA name to at least 1,176 different target companies in 48 states. In these LTA demand letters, Defendants rely upon U.S. Patent No. 7,010,508 ("the '508 patent"), issued in 2006 on the basis of a 1995 application to the Patent and Trademark Office (PTO). In 2014, the PTO found, in a contested matter, that the '508 patent "does not recite a technological feature that is novel and unobvious over the prior art, and is therefore not a technological invention." *Ebay Enter., Inc. Petitioner v. Lawrence B. Lockwood Patent Owner*, 2014 WL 2150045 (Patent Tr. & App. Bd. May 20, 2014). In other words, it is invalid.

1.3    The PTO's *Ebay* ruling confirmed exactly what companies targeted by Defendants have been telling Defendants for years – the patents relied upon by Defendants are invalid, and those patents' claims do not encompass the entire universe of e-commerce websites

SECOND AMENDED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF
(2:21-CV-00728-RSM) - 3

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

(as Defendants claim). Rather than litigate with companies that push back, though, Defendants either negotiate a quick settlement or simply walk away.

1.4     Thus, until recently, Defendants were never required to litigate the actual scope of the '508 Patent. That changed when Defendants targeted NAPCO, a North Carolina tool company. Rather than roll over and pay Defendants' demand, NAPCO filed suit and litigated the merits of the '508 Patent. On August 4, 2023, the U.S. District Court for the Middle District of North Carolina formally invalidated Claim 1 of the '508 patent—the only claim to which the demand letters specifically refer. *See NAPCO, Inc. v. Landmark Technology A, LLC*, No. 1:21-CV-00025, 2023 WL 5000756 (M.D.N.C. Aug. 4, 2023). Defendants and NAPCO settled this lawsuit on or about October 2, 2024 on undisclosed terms.

1.5     Given the *Ebay* ruling, the dozens of letters from companies telling Defendants the '508 Patent (and U.S. Patent No. 6,289,319 before it) was invalid and did not cover the activity at issue, and the invalidation ruling in *NAPCO*, as well as other factors, Defendants knew and have always known—both objectively and subjectively—that their patent assertion activity is done in bad faith. Indeed, Defendant Mercado even refers to Defendants' scheme as a "patent troll model."

1.6     Defendants nevertheless assert the patent at a shocking rate, issuing an average of 24 demands per week. Defendants primarily target customer log-in pages on company websites, but have also demanded license fees for webpages containing privacy practices, search capabilities, shopping carts, products for sale, and company home pages. In short, any business with a web presence is a potential target for Defendants. While absurd on its face that Defendants have patented all company websites, individual businesses lack the resources needed to combat Defendants' extortive demands.

1.7     In 2015, the Washington Legislature enacted the PTPA specifically to combat predatory patent troll activity. Legislative findings concerning the purpose of the PTPA are set forth in the Act:

SECOND AMENDED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF
(2:21-CV-00728-RSM) - 4

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

> The legislature finds that abusive patent litigation, and especially the assertion of bad faith infringement claims, can harm Washington's economy. A person or business that receives a demand asserting such claims faces the threat of expensive and protracted litigation and may determine that it has no choice but to settle and to pay a licensing fee, even if the claim is meritless. This is especially so for small and medium-sized entities and nonprofits lacking adequate resources to investigate and defend themselves against the infringement claims. Not only do bad faith patent infringement claims impose a significant burden on individual Washington businesses and other entities, they also undermine Washington's efforts to attract and nurture information technology and knowledge-based businesses. Resources expended to avoid the threat of bad faith litigation are no longer available to invest, develop and produce new products, expand, or hire new workers, thereby harming Washington's economy. Through this legislation, the legislature seeks to protect Washington's economy from abusive and bad faith assertions of patent infringement, while not interfering with federal law or legitimate patent enforcement actions.

Wash. Rev. Code § 19.350.005.

1.8     Defendants' bad faith assertions of patent infringement violate the PTPA, which is a *per se* violation of the CPA. In addition, Defendants' bad faith demands, and misleading and deceptive statements included in its demand letters, violate the CPA directly.

## II.    PARTIES

2.1     The Consumer Protection Division of the Attorney General's Office brings this action in the name of the State of Washington, or as *parens patriae* on behalf of persons residing in the state. Wash. Rev. Code § 19.86.080, .085; Wash. Rev. Code § 19.350.030.

2.2     Defendant Landmark Technology A, LLC (LTA) is a North Carolina registered company with its principal place of business in North Carolina. LTA does not have any parents or subsidiaries.

2.3     Defendant Raymond Mercado is and has been at all times material to this lawsuit, the sole owner and member of LTA. Upon information and belief, Raymond Mercado enjoys complete control over decisions made on behalf of LTA. Furthermore, upon information and belief, Raymond Mercado is the alter ego of LTA—there is a unity of interest and ownership such that any separate personalities of LTA and Raymond Mercado do not exist. Raymond

SECOND AMENDED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF
(2:21-CV-00728-RSM) - 5

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Mercado also is and was, at all times material to this lawsuit, the managing member and 95% owner of Landmark Technology, LLC. Raymond Mercado participated in the wrongful conduct at issue in this lawsuit, or with knowledge approved of the wrongful conduct at issue in this lawsuit. Raymond Mercado is a North Carolina resident.

2.4    Defendant Melody Camp is Raymond Mercado's mother and is and has been at all times material to this lawsuit an integral part of the violations at issue in this lawsuit. Melody Camp is and was an agent, employee, or consultant of LTA at all times material to this lawsuit, was an agent, employee, or consultant of Landmark Technology, LLC at all times material to this lawsuit, or was otherwise acting in concert with Defendants Raymond Mercado and Patrick Nunally at all times material to this lawsuit. Melody Camp participated in the wrongful conduct at issue in this lawsuit, or with knowledge approved of the wrongful conduct at issue in this lawsuit. Melody Camp is a North Carolina resident.

2.5    Defendant Patrick Nunally is and has been at all times material to this lawsuit an integral part of the violations at issue in this lawsuit. Patrick Nunally is and was an agent, employee, or consultant of LTA at all times material to this lawsuit, was an agent, employee, or consultant of Landmark Technology, LLC at all times material to this lawsuit, or was otherwise acting in concert with Defendant Raymond Mercado at all times material to this lawsuit. Patrick Nunally participated in the wrongful conduct at issue in this lawsuit, or with knowledge approved of the wrongful conduct at issue in this lawsuit.

2.6    Nonparty John Lee is a California-based attorney who is also licensed to practice law in Washington and in the U.S. District Court for the Western District of Washington. The demand letters at issue in this lawsuit were sent under John Lee's signature, but based upon the documents produced in this lawsuit by Defendants LTA and Mercado most if not all of those letters were sent to John Lee from Defendants as pre-signed .pdf documents. John Lee and his law partner Jennifer Ishimoto acted in concert with Defendants to negotiate the nuisance value "license fees" at issue in this lawsuit, as well as to engage in litigation at Defendants' direction.

SECOND AMENDED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF
(2:21-CV-00728-RSM) - 6

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  John Lee filed and defended some of that litigation in the U.S. District Court for the Western

2  District of Washington. John Lee is a resident of California.

3      2.7.    Upon information and belief, nonparty Landmark Technology, LLC is a now-

4  defunct Delaware company that was an active company at all times material to this lawsuit.

5  Raymond Mercado is and was, at all times material to this lawsuit, the managing member and

6  95% owner of Landmark Technology, LLC. Raymond Mercado, Melody Camp, and Patrick

7  Nunally participated in the wrongful conduct of Landmark Technology, LLC at issue in this

8  lawsuit, or with knowledge approved of the wrongful conduct of Landmark Technology, LLC

9  at issue in this lawsuit. For purposes of this lawsuit, all allegations against Landmark

10  Technology, LLC are allegations against Raymond Mercado, Melody Camp, and Patrick

11  Nunally.

12              ## III.    JURISDICTION AND VENUE

13      3.1    The Attorney General is authorized by statute to bring suit to enforce the CPA

14  and the PTPA. Wash. Rev. Code § 19.86.080(1); 19.350.030.

15      3.2    This Court has personal jurisdiction over Defendants LTA, Raymond Mercado,

16  Melody Camp, and Patrick Nunally (together, "Defendants") pursuant to

17  Wash. Rev.Code § 19.86.160, Wash. Rev. Code § 4.28.180, and Wash. Rev. Code § 4.28.185,

18  because LTA has purposely availed itself of the privilege of conducting business in the State of

19  Washington, including sending letters to Washington resident businesses asserting patent

20  infringement, entering into licensing agreements with Washington resident businesses, which

21  Raymond Mercado signs on behalf of LTA, and availing itself of courts within the State of

22  Washington to assert complaints for patent infringement. The violations of Wash. Rev. Code §§

23  19.86 and 19.350 alleged herein arise from or are connected with these transactions. Exercise of

24  personal jurisdiction over Defendants comports with traditional notions of fair play and

25  substantial justice, and jurisdiction is not inconsistent with the United States Constitution or the

26  Washington State Constitution.

SECOND AMENDED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF
(2:21-CV-00728-RSM) - 7

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

3.3    Defendants have engaged in the conduct set forth in this Complaint in the Western District of Washington.

3.4    Venue is proper the United States District Court for the Western District of Washington pursuant to U.S.C. § 1391(b) because LTA sent demand letters asserting patent infringement to businesses in the Western District of Washington, and entered into licensing agreements with businesses in the Western District of Washington, which Raymond Mercado signed on LTA's behalf.

## IV.    FACTS

### A.    Defendants' "Business Plan"

4.1    On or about December 17, 2017, Defendants Raymond Mercado and Melody Camp (in consultation with Lawrence Lockwood) created a "business plan" that would set the financial goals and serve as a blueprint for Defendants' bad faith patent assertion activities going forward.

4.2    In the 2017 business plan document, titled "LANDMARK BUSINESS PLAN FOR '319 PATENT," Defendants admit that in the preceding few years they "mailed initial letters to license and follow-up letters to license to over 1,300 selected companies . . . rang[ing] in value from $20 million to $300 million, distributed throughout the United States."

4.3    The "business plan" makes clear that the goal of the scheme is a quick settlement at a target sum of somewhere around $35,000, noting that Defendants Mercado, Nunally and Camp were paid a total of $20,000 per month, Lawrence Lockwood was paid $15,000 per month, and John Lee was paid 35% of settlement proceeds. The scheme required gross revenue of $50,000 per month to cover these employee/consultant payments and ideally has Defendants "churn" at least 3 settlements per month at $40,000 each.

4.4    The "business plan" intentionally sought to keep the number of patent infringement lawsuits low because that "number of defendants is a low-risk business model of avoiding having a group defense form and/or the filing of a CBM." A CBM is a Covered

Business Method review, which was an administrative means to challenge the validity of a patent related to a financial product or service within the U.S. Patent and Trademark Office. The CBM program ended in 2020. While it was active, a CBM could be a more cost-effective option to challenge a patent than federal litigation, but Defendants kept their optimum settlement amount at $30,000 and their lawsuit numbers low because that "is not enough at that amount of settlement ($ 30k) [for targets] to file [a] CBM. . . ." Thus, the low litigation numbers and the low settlement amount were both intended to drive target companies to nuisance value settlements well below the costs to defend themselves from Defendants' bad faith patent assertion activity.

4.5    The "business plan" was not the first time Defendants put their scheme in writing. In an email dated January 18, 2016, nonparty Lawrence Lockwood described Defendants' prior patent assertion activity as resulting in 150 licenses between 2008 and 2014, and that the "average time for settlement . . . was at the fourth month," and that "[s]ome were sooner, some delayed for six months." Lockwood's email made clear that the ultimate goal of the scheme was to extract these quick, high-volume settlements rather than face serious litigation: "Our philosophy is its better to pick-up lots of nickels than bet everything on one big lawsuit . . . It also reduces the huge investment in trial preparation and risk."

4.6    Although the "business plan" initially was based upon asserting U.S. Patent No. 6,289,319 C2 (the '319 Patent) under the name of Landmark Technology, LLC, Defendants eventually adopted the same methods for asserting U.S. Patent No. 7,010,508 C1 (the '508 Patent) by Defendant LTA. In an email dated August 7, 2020, Defendant Mercado even indicated that Defendants were likely to continue this same scheme with a new entity or entities in the future. Thus, the "business plan" was the blueprint of Defendants' continuing scheme that operated under the names of Landmark Technology, LLC and Landmark Technology A, LLC.

SECOND AMENDED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF
(2:21-CV-00728-RSM) - 9

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

**B.      Defendants' Bad Faith Patent Assertion Activity**

**1.      Target Identification**

4.7      Defendants utilize a multi-step, weekly process to identify and target companies from which to extort a settlement. Each Defendant has a defined role in the scheme, and each plays a crucial part in the bad-faith nature of Defendants' improper patent troll activity. Defendants strive to send out 15-18 mail-merged demand letters on a weekly basis, along with follow-up letters to certain target companies. Based upon the documents Defendants Mercado and LTA have produced, the steps in Defendants' process are as follows.

4.8      First, Defendant Melody Camp uses one or more databases to create a list of companies that employ some type of e-commerce website. Camp and the other Defendants refer to these companies as "targets."[1] Defendant Camp performs a rudimentary check of potential target companies' websites to confirm they have search functionality and/or a shopping cart or similar e-commerce function because, according to Defendants, the '508 Patent (and the '319 Patent before it) covers virtually all e-commerce websites. Defendant Camp then utilizes Manta, Panjiva, Dun & Bradstreet, and other similar tools to research the target companies' headquarters location, revenue, subsidiaries, and related financial information. The goal of this research is to ensure the target company is located in a favorable jurisdiction and has the right amount of revenue. Ideal target companies have just enough revenue to pay Defendants' nuisance value "license fee" but not so much revenue that they can afford sophisticated attorneys and experts to litigate the merits of the patents at issue.

4.9      Second, Defendant Camp sends the initial list of potential target companies to Defendant Patrick Nunally. Defendant Nunally performs a "platform check" on the websites of the potential target companies and rates them as either "yes" [proceed] or "no" [do not proceed].

---

[1] Based upon the documents produced in this litigation by Defendants LTA and Mercado, in limited instances Defendant Mercado, Defendant Nunally, and/or John Lee identified potential target companies. Those targets still went through the process described in this Second Amended Complaint.

SECOND AMENDED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF
(2:21-CV-00728-RSM) - 10

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

This "platform check" ostensibly is to identify the e-commerce platform each potential target company utilizes. However, one main purpose of the "platform check" is to weed out those potential target companies that utilize a large third-party e-commerce platform rather than a custom-designed or open-source platform. This is because Defendants wish to avoid a scenario in which a large company steps in to defend and indemnify a target company against Defendants' baseless infringement claims, which could lead to a well-funded company challenging the validity of the patents at issue and Defendants' bad faith patent troll activity.

4.10    Third, Defendant Raymond Mercado reviews the updated list of potential target companies. Defendant Mercado's role is to identify and prioritize those potential target companies that will, in his opinion, settle fast, while deprioritizing or eliminating potential target companies that Defendant Mercado deems—in his own words —"too litigious," a "DJ risk" (i.e., a company that may defend its rights by filing a declaratory judgment action), "too sophisticated in patent issues," "too much of a headline grabber," "strange people," contain "any family-owned mom-and-pop implications, even in the name of the company and even if it's not really true," and similar considerations that have nothing to do with good faith patent assertion activity. Defendant Mercado also removes from the list or deprioritizes companies likely to be represented by certain lawyers and law firms that have pushed back against Defendants' bad faith patent activity in the past, for example Defendant Mercado instructed Defendants to "[r]emove DBC Irrigation Supply [as a target] because it's located in Colorado, where Rachael Lamkin is admitted." Defendant Mercado also determines whether Defendants should prioritize or deprioritize potential targets in certain states, prioritizing companies in what Defendant Mercado deems favorable jurisdictions and deprioritizing companies in states with what Defendant Mercado deems unfavorable jurisdictions. Consistent with Defendants' "business plan," one factor Defendant Mercado (and the other Defendants) considered in prioritizing / deprioritizing jurisdictions is the concern of having too many target companies in the same jurisdiction at the same time because Defendants "didn't want a 'group' to form" to challenge

SECOND AMENDED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF
(2:21-CV-00728-RSM) - 11

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

the patents at issue, particularly through a Covered Business Method (CBM) administrative challenge at the U.S. Patent and Trademark Office. Finally, Mercado instructs Defendants to pause or cease sending demand letters in those states where the respective Attorney General's Office is investigating Defendants, such as Minnesota and Washington.

4.11    Fourth, Defendant Nunally and/or Defendant Camp assembles a series of mail-merged form letters for transmission to target companies by attorney John Lee. Each of these letters is sent to John Lee in .pdf format, with his signature already affixed in the signature block. As discussed in greater detail below, the first category of these letters is a group of 15-18 mail-merged form letters that demand a settlement from target companies (and even contain the same typos) concerning the '319 or '508 Patent. A second category is a group of mail-merged follow up letters to target companies who did not respond to an initial demand letter concerning the '319 or '508 Patent. A third category is a group of mail-merged follow up letters to target companies who received a demand letter concerning the '319 Patent.

4.12    Fifth, John Lee transmits the pre-signed, mail-merged demand letters to target companies.

**2.    LT Demand Letters**

4.13    Defendant Mercado created Defendant LTA on or about December 28, 2018. However, as detailed herein, Defendants' bad faith patent assertion activity predates the formation of LTA. Defendants' pre-LTA bad faith patent assertion activity was virtually indistinguishable from Defendants' LTA activity, it was just done under the name Landmark Technology, LLC (LT). Both the LT and LTA activity described in this complaint amount to a continuing series of uninterrupted acts by all Defendants. Stated more simply, Defendants Raymond Mercado, Melody Camp, and Patrick Nunally have been engaged in a continuing scheme that violates the PTPA and CPA since approximately January 2016, and included Defendant LTA in the scheme as of the date it was created in December 2018.

SECOND AMENDED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF
(2:21-CV-00728-RSM) - 12

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

4.14    Defendants utilized the same mail merge process described above when sending demand letters concerning both the '319 Patent and the '508 Patent under the name of Landmark Technology, LLC as they did when sending demand letters concerning the '508 Patent under the name of LTA. Other than Lawrence Lockwood, who passed away in December 2018, the key participants in the scheme remained the same throughout the operative timeframe at issue in this litigation – Defendants Raymond Mercado, Melody Camp, and Patrick Nunally issuing letters under Lee's signature.

4.15    Based upon the documents produced by Defendants LTA and Mercado thus far in this litigation, the scheme at issue in this Complaint came to fruition in January/February 2016 when the group brought in California lawyers Jennifer Ishimoto and John Lee (who is admitted to practice in Washington and in this Court).

4.16    Defendants Mercado, Melody Camp, and Patrick Nunally sent out the first batch of LT demand letters on May 6, 2016, to seven companies. The group quickly shifted into the mail merged demand letter process described above, with Melody Camp emailing the first proposed mail merge to the group on May 23, 2016. She titled these documents "Mail Merge #1."

4.17    Washington figured prominently in the scheme's earliest letters as Jones Soda was targeted on May 13, 2016, and Papa Murphy's Holdings was targeted on May 24, 2016.

4.18    The group eventually progressed into weekly, sequentially numbered mail merge packets for mailing by John Lee, and did so both before and after LTA was formed. Indeed, the group assembled 104 weekly mail merge packets for mailing by John Lee before LTA was formed in December 2018, then proceeded forward with uninterrupted sequential numbering thereafter:

- Mail Merge #1 – May 23, 2016;

- Mail Merge #94 – September 21, 2018;

- Mail Merge #104 – December 5, 2018;

- **Defendant LTA is formed on December 28, 2018**;

- Mail Merge #105 – January 25, 2019;

- Mail Merge #175 – September 4, 2020, etc.

4.19    Thus, between May 2016 and December 5, 2018, Defendants sent hundreds or thousands of letters under the name of Landmark Technology, LLC asserting that business entities had infringed the '319 Patent and/or the '508 Patent (the "LT demand letters"). The recipients of the LT demand letters are located throughout the United States, including Washington State.

4.20    Defendants' LT demand letters do not contain factual allegations relating to the specific target company webpage(s) that it alleges infringe. Rather, Defendants utilize form letters, containing identical infringement allegations. Only the name of the target company and the URL of the allegedly infringing webpage changes from letter to letter.

4.21    Other than noting that the patent rights at issue are owned/licensed by Landmark Technology, LLC, Defendants' LT demand letters are materially identical to the LTA demand letters detailed in the next section of this complaint.[2]

4.22    Defendants' scheme eventually targeted at least 54 Washington companies, resulting in settlements with at least 18 Washington companies.

**3.    LTA Demand Letters**

4.23    Between January 11, 2019, and July 24, 2020, Defendants sent numerous letters under the name of LTA asserting that business entities had engaged in patent infringement ("LTA demand letters"). The recipients of such demand letters ("target companies") are located in 48 states of the United States, including Washington State.

4.24    Defendants have continued to send LTA demand letters after July 24, 2020.

---

[2] After the formation of LTA, Defendant Mercado made an edit to initial form demand letter in August 2020.

SECOND AMENDED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF
(2:21-CV-00728-RSM) - 14

1    4.25    The LTA demand letters do not contain factual allegations relating to the specific

2    target company webpage(s) that it alleges infringe. Rather, Defendants utilize form letters,

3    containing identical infringement allegations, which it has issued to more than 1,000 different

4    companies. Only the name of the target company and the URL of the allegedly infringing

5    webpage changes from letter to letter.

6    4.26    Defendants utilize three different form letters for the LTA demand letters. The

7    first LTA form demand letter ("form demand letter A") is addressed to a target company,

8    contains the subject line "Infringement of Landmark Technology A, LLC's Patent Rights" and

9    provides as follows (substituting **NAME** for the name of each target company and **WEBPAGE**

10    for the allegedly infringing webpage):

11    We are intellectual property counsel for Landmark Technology A, LLC

12    ("Landmark"). Landmark has exclusive rights to patents covering certain special-purpose computer, communication and network technologies relating to Internet searching, e-commerce, electronic bill pay, business-to-business transactions,

13    multimedia data processing networks and mobile technologies. Landmark's widely regarded patented technology covers, among other things, special-purpose

14    hardware and software systems supporting key transaction processes and features used in many electronic commerce systems, including structures which exchange

15    business data amongst trading partners.

16

17    Landmark's patents have been licensed to over 200 companies across various industries. Landmark's patents rank extremely high in patent citing

18    activity and have been cited nearly 200 times by the USPTO whereas the average patent has only five citations during its lifetime. Highly cited patents are generally

19    known to be of greater technical importance, and even fewer rise to the level of "pioneer patents" achieved by the Landmark patents.

20

21    Landmark believes that **NAME** automated multimedia data processing network systems, particularly **WEPAGE** through practices U.S. Patent No.

22    7,010,508 C1 ("'508 Patent"). You will find that the '508 Patent teaches and claims automated multimedia data processing network for processing business

23    and financial transactions between entities from remote sites. This includes data processing systems wherein a computerized installation acts on inquiries and

24    orders from stations [as do **NAME**'s servers], communicates with stations which use program instructions and act as the user interface [as do those devices

25    interfaced to **NAME**'s web servers in communication with **NAME**'s servers], sequences are retrieved in a forwardly/backwardly chained response (as defined

26

by the inventor) to data entered into a text input field [as seen in devices interfaced to **NAME**'s web servers], and data is updated in a computerized installation storage [as per the functionality of **NAME**'s web servers]. For example, the specific functionalities implemented by **NAME** using their servers and devices interfaced to **NAME**'s web servers constitutes use of the technology taught within the meaning of Claim 1 of the '508 patent.

Landmark is currently offering **NAME** a non-exclusive license to its '508 patent, for $65,000. This offer represents a substantial discount to the historic licensing price of Landmark's portfolio, and will not be available in the event of litigation.

We appreciate your attention to this matter and request a response within 15 days of this letter. Please contact me at the phone or email above, or contact my colleague, Jennifer Ishimoto, at ishimoto@banishlaw.com or (650) 241-2773.

4.27    Form demand letter A is printed on the letterhead of Banie & Ishimoto LLP, 3705 Haven Ave. #137, Menlo Park, CA 94025, and signed by John A. Lee, Partner, Banie & Ishimoto LLP.

4.28    The second LTA form demand letter ("form demand letter B"), like form demand letter A, is addressed to a target company, contains the subject line "Infringement of Landmark Technology A, LLC's Patent Rights" and provides as follows (substituting **NAME** for the name of each target company and **WEBPAGE** for the allegedly infringing webpage):

More than a year ago, Landmark Technology, LLC first brought to your attention its understanding that **NAME** data processing systems practice U.S. Patent No. 6,289,319 C2 ("'319 Patent").

In that first notice, we introduced ourselves as intellectual property counsel for Landmark Technology, LLC ("Landmark"). Landmark has exclusive rights to patents covering certain special-purpose computer, communication and network technologies relating to Internet searching, e-commerce, electronic bill pay, business-to-business transactions, multimedia data processing networks and mobile technologies. Landmark's widely regarded patented technology covers, among other things, special-purpose hardware and software systems supporting key transaction processes and features used in many electronic commerce systems, including structures which exchange business data amongst trading partners.

SECOND AMENDED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF
(2:21-CV-00728-RSM) - 16

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

In that first notice we also pointed out that Landmark has licensed its patents to over 200 companies across various industries. Landmark's '319 patent ranks extremely high in patent citing activity and has been cited nearly 200 times by the USPTO whereas the average patent has only five citations during its lifetime. Highly cited patents are generally known to be of greater technical importance, and even fewer rise to the level of "pioneer patents" achieved by the Landmark patents. The '319 patent has also been reexamined twice resulting in all original claims being confirmed.

Having not received a response from **NAME**, Landmark sent a subsequent [*sic*] letter reaffirming its offer of a non-exclusive license to its '319 patent for $65,000.

Since our last communication, Landmark Technology A, LLC, has assumed all substantial rights under the '508 patent and has furthered its analysis and discovered that while indeed **NAME** data processing systems practices Landmark's U.S. Patent No. 6,289,319 C2 that **NAME** multimedia data processing systems, particularly **WEBPAGE** practices Landmark's U.S. Patent No. 7,010,508 C1 ("'508 Patent")

You will find that the '508 Patent teaches and claims multimedia data processing systems for processing business and financial transactions between entities from remote sites. This includes multimedia data processing systems wherein a computerized installation [as **NAME**'s servers], communicate with terminals which use program instructions and act as the user interface [as do those devices interfaced to **NAME**'s web servers in communication with **NAME**'s servers], sequences are retrieved in response to data entered [as seen in devices interfaced to **NAME**'s web servers], and data is updated in central processor storage [as per the functionality of **NAME**'s web servers]. For example, the specific functionalities implemented by **NAME** using their servers and devices interfaced **NAME**'s web servers constitutes use of the technology taught within the meaning of Claim 1 of the '508 patent.

We appreciate your attention to this matter and request a response within 15 days of this letter. Please contact me at the phone or email above, or contact my colleague, Jennifer Ishimoto, at ishimoto@banishlaw.com or (650) 241-2773.

4.29    Form demand letter B, like form demand letter A, is printed on the letterhead of Banie & Ishimoto LLP, 3705 Haven Ave. #137, Menlo Park, CA 94025, and signed by John A. Lee, Partner, Banie & Ishimoto LLP.

4.30    The third LTA form demand letter ("form demand letter C"), like form demand letters A and B, is addressed to a target company, contains the subject line "Infringement of

SECOND AMENDED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF
(2:21-CV-00728-RSM) - 17

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Landmark Technology A, LLC's Patent Rights" and provides as follows (substituting **NAME** for the name of each target company **PRIOR DATE** for the date of a prior demand letter sent to the same target company, and **FUTURE DATE** for the date by which LTA demands a response):

> In **PRIOR DATE**, Landmark offered a non-exclusive license to its '508 patent for $65,000. Since that time, Landmark Technology A, LLC, has assumed all substantial rights under the '508 patent. A month has elapsed and **NAME** has not responded.

> The current amount for a non-exclusive license to the '508 patent expires **FUTURE DATE**. Please contact me as soon as possible.

4.31    Form demand letter C, like form demand letters A and B, is printed on the letterhead of Banie & Ishimoto LLP, 3705 Haven Ave. #137, Menlo Park, CA 94025, and signed by John A. Lee, Partner, Banie & Ishimoto LLP.

<u>January 2019</u>

4.32    On or about January 11, 2019, Defendants sent form demand letter A to 15 target companies located in Arizona, California, Florida, Iowa, Massachusetts, Nebraska, New Jersey, New York, Ohio, Oklahoma, Pennsylvania, and Tennessee, and form letter C to 18 target companies located in California, Connecticut, Florida, Illinois, Indiana, New Jersey, New Mexico, New York, Ohio, Pennsylvania, and Washington.

4.33    On or about January 18, 2019, Defendants sent form demand letter A to 15 target companies located in California, Connecticut, Iowa, Massachusetts, Michigan, Minnesota, New Jersey, New York, Ohio, Pennsylvania, Utah and form letter C to 10 target companies located in Arizona, Connecticut, Illinois, Kentucky, New York, Ohio, Pennsylvania, and Tennessee.

4.34    On or about January 25, 2019, Defendants sent form demand letter A to 15 target companies located in Arizona, California, Connecticut, Iowa, Illinois, Louisiana, Massachusetts, New Jersey, New York, Ohio, Pennsylvania, Utah, and Wisconsin, and form letter C to 14 target companies located in Arizona, California, Florida, Illinois, Mississippi, North Carolina, New Jersey, New York, Utah and Wisconsin.

SECOND AMENDED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF
(2:21-CV-00728-RSM) - 18

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

4.35    In total, Defendants sent 87 demand letters in January 2019.

February 2019

4.36    On or about February 1, 2019, Defendants sent form demand letter A to 15 target companies located in California, Florida, Iowa, Louisiana, Massachusetts, New Jersey, New York, Ohio, Pennsylvania, Tennessee, Virginia and Wisconsin.

4.37    On or about February 8, 2019, Defendants sent form demand letter A to 15 target companies located in California, Florida, Iowa, Illinois, Louisiana, Massachusetts, Nebraska, New Jersey, New York, South Dakota and Tennessee, form demand letter B to four target companies located in California, Georgia, Missouri, and Virginia, and form demand letter C to 10 target companies located in Arizona, California Iowa, Massachusetts, Nebraska, New Jersey, New York and Ohio.

4.38    On or about February 15, 2019, Defendants sent form demand letter A to 18 target companies located in Arizona, California, Colorado, Connecticut, Florida, Illinois, Indiana, Massachusetts Michigan, Missouri, Nevada, New York, Pennsylvania, and Virginia, form demand letter B to five target companies located in California, Colorado, Montana, New York and Tennessee, and form demand letter C to 14 target companies located in California, Iowa, Illinois, Massachusetts, Michigan, Minnesota, New Jersey, New York, Pennsylvania, Tennessee, and Utah.

4.39    On or about February 22, 2019, Defendants sent form demand letter A to 16 target companies located in Arizona, California, Georgia, Idaho, Illinois, Michigan, Missouri, North Carolina, New Jersey, New York, Pennsylvania, Rhode Island and South Carolina form demand letter B to five target companies located in California, Florida, Michigan, and North Carolina, and form demand letter C to 13 target companies located in Arizona, California, Connecticut, Iowa, Illinois, Louisiana, Massachusetts, New Jersey, New York, Pennsylvania and Wisconsin.

4.40    In total, Defendants sent 115 demand letters in February 2019.

SECOND AMENDED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF
(2:21-CV-00728-RSM) - 19

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

<u>March 2019</u>

4.41    On or about March 1, 2019, Defendants sent form demand letter A to 18 target companies located in Arkansas, Arizona, California, Florida, Georgia, Illinois, Indiana, Kentucky, Massachusetts, Michigan, North Carolina, New Hampshire, New York, Pennsylvania, Virginia, and Vermont, form demand letter B to five target companies located in California, Florida, Illinois, and North Carolina, and form demand letter C to 14 target companies located in California, Florida, Iowa, Louisiana, Massachusetts, New Jersey, New York, Pennsylvania, Tennessee, Virginia, and Wisconsin.

4.42    On or about March 7, 2019, Defendants sent form demand letter A to 18 target companies located in California, Colorado, Florida, Georgia, Illinois, Indiana, Louisiana, Minnesota, Missouri, North Carolina, New York, Oklahoma, and Virginia, form demand letter B to five target companies located in Indiana, Kentucky, Maine, Pennsylvania and Washington, and form demand letter C to 12 target companies located in Arizona, California, Florida, Iowa, Illinois, Louisiana, Massachusetts, New York, South Dakota, and Tennessee.

4.43    On or about March 15, 2019, Defendants sent form demand letter A to 18 target companies located in California, Florida, Georgia, Illinois, Indiana, Kansas, Massachusetts, Maryland, Michigan, Minnesota, Missouri, North Dakota, New York, and Wisconsin form demand letter B to five target companies located in California, Connecticut, Michigan, New York and Pennsylvania, and form demand letter C to 18 target companies located in Arizona, California, Colorado, Connecticut, Florida, Illinois, Indiana, Massachusetts, Michigan, Missouri, Nevada, New York, Pennsylvania, and Virginia.

4.44    On or about March 22, 2019, Defendants sent form demand letter A to 18 target companies located in California, Florida, Illinois, Kansas, Massachusetts, Maryland, Michigan, Minnesota, Missouri, New Jersey, New York, Pennsylvania, and Rhode Island form demand letter B to five target companies located in California, New York, and Pennsylvania, and form demand letter C to 15 target companies located in Arizona, California, Georgia, Idaho, Illinois,

SECOND AMENDED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF
(2:21-CV-00728-RSM) - 20

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  Michigan, North Carolina, New Jersey, New York, Pennsylvania, Rhode Island, and

2  South Carolina.

3    4.45    On or about March 29, 2019, Defendants sent form demand letter A to 18 target

4  companies located in Alabama, California, Florida, Illinois, Louisiana, Massachusetts,

5  Minnesota, Missouri, New Jersey, New York, Pennsylvania, South Carolina, and Wisconsin,

6  form demand letter B to five target companies located in Arizona, California, Illinois, New York,

7  and Utah, and form demand letter C to 18 target companies located in Arkansas, Arizona,

8  California, Florida, Georgia, Illinois, Indiana, Kentucky, Massachusetts, Michigan,

9  North Carolina, New Hampshire, New York, Pennsylvania, Virginia, and Vermont.

10    4.46    In total, Defendants sent 192 demand letters in March 2019.

11    April 2019

12    4.47    On or about April 12, 2019, Defendants sent form demand letter A to 18 target

13  companies located in California, Florida, Hawaii, Illinois, Indiana, Kentucky, Michigan,

14  Minnesota, Missouri, New Jersey, New York, Pennsylvania, Utah, Vermont, and Wisconsin,

15  form demand letter B to 5 target companies located in California, Massachusetts, New Jersey,

16  New York, and Tennessee, and form demand letter C to 18 target companies located in

17  California, Florida, Georgia, Illinois, Indiana, Kansas, Massachusetts, Maryland, Michigan,

18  Minnesota, Missouri, North Dakota, New York, and Wisconsin.

19    4.48    On or about April 19, 2019, Defendants sent form demand letter A to 18 target

20  companies located in California, Colorado, Florida, Georgia, Illinois, Massachusetts, Michigan,

21  Minnesota, Missouri, New Hampshire, New Jersey, New York, Pennsylvania, Utah, and

22  Wisconsin, form demand letter B to five target companies located in California, Maryland, and

23  New York, and form demand letter C to 17 target companies located in California, Florida,

24  Illinois, Kansas, Massachusetts, Maryland. Michigan, Minnesota, Missouri, New Jersey, New

25  York, Pennsylvania, and Rhode Island.

26

SECOND AMENDED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF
(2:21-CV-00728-RSM) - 21

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

4.49    On or about April 24, 2019, Defendants sent form demand letter C to 18 target companies located in Alabama, California, Florida, Illinois, Louisiana, Massachusetts, Minnesota, Missouri, New Jersey, New York, Pennsylvania, South Carolina, and Wisconsin.

4.50    On or about April 26, 2019, Defendants sent form demand letter A to 15 target companies located in Alabama, California, Florida, Illinois, Kentucky, Maryland, New Jersey, New York, Pennsylvania, Utah, Virginia, and Wisconsin, and form demand letter B to 6 target companies located in Georgia Minnesota, New Jersey, and New York.

4.51    In total, Defendants sent 120 demand letters in April 2019.

May 2019

4.52    On or about May 3, 2019, Defendants sent form demand letter B to five target companies located in Connecticut, Massachusetts, New York, Pennsylvania, and Wisconsin, and form demand letter C to 18 target companies located in California, Florida, Hawaii, Illinois, Kentucky, Louisiana, Minnesota, Missouri, North Carolina, New Jersey, New York, Pennsylvania, Virginia, and Wisconsin.

4.53    On or about May 10, 2019, Defendants sent form demand letter B to five target companies located in Colorado, Massachusetts, Missouri, and New York, and form demand letter C to 18 target companies located in California, Florida, Hawaii, Illinois, Indiana, Kentucky, Michigan, Minnesota, Missouri, New Jersey, New York, Pennsylvania, Utah, Vermont, and Wisconsin.

4.54    On or about May 17, 2019, Defendants sent form demand letter B to five target companies located in New Hampshire, New York, Tennessee, and Wisconsin, and form demand letter C to 15 target companies located in California, Colorado, Florida, Massachusetts, Michigan, Minnesota, Missouri, New Hampshire, New Jersey, New York, Pennsylvania, Virginia, and Wisconsin.

4.55    On or about May 24, 2019, Defendants sent form demand letter B to five target companies located in Kansas, New Jersey, Pennsylvania, Vermont, and Wisconsin.

4.56    On or about May 31, 2019, Defendants sent form demand letter B to five target companies located in Colorado, Michigan, North Carolina, and New York.

4.57    In total, Defendants sent 76 demand letters in May 2019.

June 2019

4.58    On or about June 7, 2019, Defendants sent form demand letter B to five target companies located in Minnesota, North Carolina, New York, and Wisconsin, and form demand letter C to 14 target companies located in Alabama, California, Florida, Illinois, Kentucky, Maryland, New Jersey, New York, Pennsylvania, Virginia, and Wisconsin.

4.59    On or about June 14, 2019, Defendants sent form demand letter A to 10 target companies located in Alabama, California, Hawaii, Maryland, Minnesota, Missouri, New York, and Wisconsin, and form demand letter B to five target companies located in California, Colorado, North Carolina, Pennsylvania, and Virginia.

4.60    On or about 21, 2019, Defendants sent form demand letter A to 15 target companies located in California, Connecticut, Florida, Maryland, Maine, Michigan, Minnesota, Missouri, North Carolina, New York, Ohio, Pennsylvania, Wisconsin, and form demand letter B to four target companies located in Connecticut, Louisiana, New Hampshire, and New York.

4.61    On or about June 28, 2019, Defendants sent form demand letter A to 18 target companies located in Alabama, California, Colorado, Florida, Iowa, Maryland, Maine, Michigan, Minnesota, Nebraska, Nevada, New York, Ohio, Pennsylvania, Tennessee, and Wisconsin, and form demand letter B to five target companies located in California, Florida, Minnesota, New York, and Virginia.

4.62    In total, Defendants sent 76 demand letters in June 2019.

July 2019

4.63    On or about July 5, 2019, Defendants sent form demand letter A to 18 target companies located in California, Connecticut, Florida, Illinois, Maryland, Minnesota, Missouri, North Carolina, New York, Ohio, Oklahoma, Pennsylvania, Virginia, Vermont, and Wisconsin,

SECOND AMENDED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF
(2:21-CV-00728-RSM) - 23

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  and form demand letter B to five target companies located in Florida, New York, Pennsylvania,

2  Virginia, and Wisconsin.

3       4.64  On or about July 12, 2019, Defendants sent form demand letter A to 18 target

4  companies located in Alabama, California, Colorado, Connecticut, Florida, Minnesota,

5  Missouri, New York, Ohio, Oklahoma, Rhode Island, South Carolina, Tennessee, and

6  Wisconsin, form demand letter B to one target company located in California, and form demand

7  letter C to 23 target companies located in Alabama, California, Connecticut, Florida, Hawaii,

8  Maryland, Maine, Michigan, Minnesota, Missouri, North Carolina, New York, Ohio, and

9  Wisconsin.

10       4.65  On or about July 19, 2019, Defendants sent form demand letter A to 18 target

11  companies located in California, Georgia, Illinois, Indiana, Maryland, Michigan, Minnesota,

12  New Jersey, New Mexico, New York, Ohio, Oklahoma, Utah, Vermont, and Wisconsin, and

13  form demand letter B to five target companies located in California, Florida, Illinois, and

14  Massachusetts.

15       4.66  On or about July 26, 2019, Defendants sent form demand letter A to 18 target

16  companies located in Alabama, California, Georgia, Illinois, Indiana, Maryland, Michigan,

17  Minnesota, North Carolina, New Jersey, New York, Ohio, Pennsylvania, Vermont, and

18  Wisconsin, form demand letter B to five target companies located in California, Indiana, North

19  Carolina, and Nevada, and form demand letter C to 17 target companies located in Alabama,

20  California, Colorado, Florida, Iowa, Maryland, Maine, Minnesota, Nebraska, Nevada, New

21  York, Ohio, Pennsylvania, Tennessee, and Wisconsin.

22       4.67  In total, Defendants sent 128 demand letters in July 2019.

23       <u>August 2019</u>

24       4.68  On or about August 2, 2019, Defendants sent form demand letter A to 18 target

25  companies located in California, Illinois, Kentucky, Maryland, Minnesota, Missouri,

26  North Carolina, New Hampshire, New York, Ohio, Pennsylvania, Utah, Virginia, and

SECOND AMENDED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF
(2:21-CV-00728-RSM) - 24

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Wisconsin, form demand letter B to five target companies located in Colorado, Georgia, Illinois, and North Carolina, and form demand letter C to 17 target companies located in California, Connecticut, Florida, Illinois, Maryland, Minnesota, Missouri, North Carolina, New York, Ohio, Oklahoma, Pennsylvania, Virginia, Vermont, and Wisconsin.

4.69    On or about August 9, 2019, Defendants sent form demand letter A to 18 target companies located in Arizona, California, Illinois, Michigan, Minnesota, Missouri, New Jersey, New York, Ohio, Pennsylvania, Tennessee, Virginia, Vermont, and Wisconsin, form demand letter B to five target companies located in Colorado, Georgia, Indiana, Massachusetts and North Carolina, and form demand letter C to 18 target companies located in Alabama, California, Colorado, Connecticut, Florida, Minnesota, Missouri, New York, Ohio, Oklahoma, Rhode Island, South Carolina, Tennessee, and Wisconsin.

4.70    On or about August 16, 2019, Defendants sent form demand letter A to 18 target companies located in California, Florida, Illinois, Indiana, Maryland, Maine, Michigan, Minnesota, Missouri, North Carolina, New Jersey, New York, Ohio, South Carolina, Wisconsin, form demand letter B to five target companies located in California, Indiana, Massachusetts, Minnesota, and Tennessee, and form demand letter C to 18 target companies located in California, Georgia, Illinois, Indiana, Maryland, Michigan, Minnesota, New Jersey, New Mexico, New York, Ohio, Oklahoma, Utah, Vermont, and Wisconsin.

4.71    On or about August 23, 2019, Defendants sent form demand letter A to 18 target companies located in Arizona, California, Colorado, Connecticut, Florida, Georgia, Illinois, Kansas, Louisiana, Maine, Missouri, New Jersey, New York, Ohio, Pennsylvania, and Wisconsin, form demand letter B to five target companies located in California, Colorado, Indiana, Massachusetts, and Wisconsin, and form demand letter C to 17 target companies located in Alabama, California, Georgia, Illinois, Maryland, Michigan, Minnesota, North Carolina, New Jersey, New York, Ohio, Pennsylvania, Vermont, and Wisconsin.

4.72    On or about August 30, 2019, Defendants sent form demand letter A to one target company located in Tennessee.

4.73    In total, Defendants sent 163 demand letters in August 2019.

September 2019

4.74    On or about September 6, 2019, Defendants sent form demand letter A to 10 target companies located in Illinois, Massachusetts, Michigan, Minnesota, New Jersey, New York, Ohio, Pennsylvania, and Wisconsin.

4.75    On or about September 13, 2019, Defendants sent form demand letter A to 10 target companies located in Connecticut, Georgia, Illinois, Minnesota, New Jersey, New York, Ohio, Pennsylvania, and Wisconsin.

4.76    On or about September 20, 2019, Defendants sent form demand letter A to 15 target companies located in Arizona, Florida, Illinois, Kentucky, Massachusetts, Michigan, Missouri, North Carolina, New Jersey, New York, Ohio, Pennsylvania, Virginia, Wisconsin, and form demand letter C to 29 target companies located in Arizona, Illinois, Kentucky, Maryland, Michigan, Minnesota, Missouri, North Carolina, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, Tennessee, Virginia, Vermont, and Wisconsin.

4.77    On or about September 27, 2019, Defendants sent form demand letter A to 15 target companies located in Connecticut, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, North Carolina, New Jersey, New York, Ohio, Tennessee, and Wisconsin, and form demand letter C to 31 target companies located in Arizona, Connecticut, Florida, Georgia, Illinois, Indiana, Kansas, Louisiana, Maryland, Maine, Michigan, Minnesota, Missouri, North Carolina, New Jersey, New York, Ohio, Pennsylvania, South Carolina, and Wisconsin.

4.78    In total, Defendants sent 110 demand letters in September 2019.

October 2019

4.79    On or about October 4, 2019, Defendants sent form demand letter A to 15 target companies located in Florida, Georgia, Illinois, Massachusetts, Minnesota, Mississippi,

SECOND AMENDED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF
(2:21-CV-00728-RSM) - 26

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Nebraska, New Jersey, New York, Ohio, Pennsylvania, and Wisconsin, and form demand letter C to 25 target companies located in Alabama, Arizona, Connecticut, Georgia, Idaho, Illinois, Indiana, Massachusetts, Michigan, Minnesota, North Carolina, New Jersey, New York, Ohio, Pennsylvania, Tennessee, and Wisconsin.

4.80    On or about October 11, 2019, Defendants sent form demand letter A to 15 target companies located in Arizona, Florida, Illinois, Michigan, Minnesota, North Carolina, Nebraska, New Jersey, New York, and Ohio, and form demand letter C to 10 target companies located in Connecticut, Georgia, Illinois, Minnesota, New Jersey, New York, Ohio, Pennsylvania, and Wisconsin.

4.81    On or about October 18, 2019, Defendants sent form demand letter A to 15 target companies located in Florida, Illinois, Maryland, Minnesota, Mississippi, North Carolina, New Jersey, New York, Ohio, Rhode Island, Utah, Vermont, and Wisconsin, and form demand letter C to 14 target companies located in Arizona, Florida, Illinois, Kentucky, Massachusetts, Michigan, Missouri, North Carolina, New Jersey, New York, Ohio, Virginia, and Wisconsin.

4.82    On or about October 25, 2019, Defendants sent form demand letter A to 10 target companies located in Florida, Illinois, Minnesota, North Carolina New Jersey, New York, Ohio, and Utah, form demand letter B to eight target companies located in Arizona, Florida, Georgia, Massachusetts, New Hampshire, New York, and South Carolina, and form demand letter C to 14 target companies located in Connecticut, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, Ohio, Tennessee, and Wisconsin.

4.83    In total, Defendants sent 126 demand letters in October 2019.

November 2019

4.84    On or about November 1, 2019, Defendants sent form demand letter A to 10 target companies located in Florida, Illinois, Indiana, Massachusetts, North Carolina, New Jersey, New York, Ohio, and South Carolina, form demand letter B to eight target companies located in Indiana, Massachusetts, Mississippi, North Carolina, New York, and Ohio, and form

demand letter C to 15 target companies located in Florida, Georgia, Illinois, Massachusetts, Minnesota, Mississippi, New Jersey, New York, Ohio, Pennsylvania Utah, and Wisconsin.

4.85   On or about November 8, 2019, Defendants sent form demand letter A to 12 target companies located in Florida, Kentucky, North Dakota, New Jersey, New York, Ohio, and Tennessee, form demand letter B to eight target companies located in Illinois, Indiana, North Carolina, New York, and Ohio, and form demand letter C to 15 target companies located in Arizona, Florida, Illinois, Michigan, Minnesota, North Carolina, Nebraska, New Jersey, New York, and Ohio.

4.86   On or about November 15, 2019, Defendants sent form demand letter A to 10 target companies located in Alaska, Alabama, Illinois, New York, Ohio, Pennsylvania, Tennessee, Utah, and Wisconsin, and form demand letter C to 15 target companies located in Florida, Illinois, Maryland, Minnesota, Mississippi, North Carolina, New Jersey, New York, Ohio, Rhode Island, Utah, Vermont, and Wisconsin.

4.87   On or about November 29, 2019, Defendants sent form demand letter A to 10 target companies located in Alabama, Hawaii, Illinois, New Jersey, Nevada, New York, Ohio, Pennsylvania, and Utah, form demand letter B to five target companies located in Georgia, Illinois, Indiana, and New York, and form demand letter C to eight target companies located in Florida, Illinois, Minnesota, New Jersey, New York, Ohio, and Utah.

4.88   In total, Defendants sent 116 demand letters in November 2019.

December 2019

4.89   On or about December 6, 2019, Defendants sent form demand letter A to 14 target companies located in Alabama, Arkansas, Arizona, Delaware, Florida, Iowa, Illinois, Michigan, Minnesota, Missouri, Nebraska, Nevada, Oklahoma, and Wisconsin, form demand letter B to five target companies located in Indiana, Nevada, Pennsylvania, and Tennessee, and form demand letter C to 14 target companies located in Florida, Illinois, Indiana, Kentucky, Massachusetts, North Dakota, New Jersey New York, and Ohio.

4.90    In total, Defendants sent 33 demand letters in December 2019.

January 2020

4.91    On or about January 3, 2020, Defendants sent form demand letter A to 10 target companies located in Arkansas, Arizona, Florida, Nevada, New York, Ohio, Pennsylvania, Tennessee, Utah, and Wisconsin, form demand letter B to five target companies located in Illinois, Massachusetts, North Carolina, Ohio, and Utah, and form demand letter C to 20 target companies located in Alaska, Alabama, Hawaii, Illinois, New Jersey, Nevada, New York, Ohio, Pennsylvania, Tennessee, Utah, and Wisconsin.

4.92    On or about January 10, 2020, Defendants sent form demand letter A to 15 target companies located in Florida, Georgia, Indiana, Kentucky, Maryland, Michigan, Minnesota, Nevada, New York, Ohio, Utah, and Wisconsin, form demand letter B to five target companies located in Idaho, Kentucky, Massachusetts, Pennsylvania, Tennessee, and form demand letter C to 14 target companies located in Alabama, Arkansas, Arizona, Delaware, Florida, Iowa, Illinois, Michigan, Minnesota, Missouri, Nebraska, Nevada, Oklahoma, and Wisconsin.

4.93    On or about January 17, 2020, Defendants sent form demand letter A to 15 target companies located in Florida, Iowa, Illinois, Indiana, Kansas, Kentucky, Maryland, Maine, New York, Ohio, South Carolina, Tennessee, Utah, and Wisconsin, and form demand letter B to five target companies located in Georgia, Illinois, Indiana, Michigan, and Tennessee.

4.94    On or about January 24, 2020, Defendants sent form demand letter A to 10 target companies located in Arizona, Florida, Illinois, Michigan, Minnesota, New York, Ohio, Pennsylvania, Utah, and Wisconsin, and form demand letter B to five target companies located in Georgia, Illinois, Kentucky, Tennessee, and Wisconsin.

4.95    On or about January 31, 2020, Defendants sent form demand letter A to 10 target companies located in L, Georgia, Illinois, Michigan, Minnesota, New Jersey, New York, Ohio, Tennessee, and Virginia, form demand letter B to five target companies located in Connecticut, Florida, North Dakota, New York, and West Virginia, and form demand letter C to nine target

SECOND AMENDED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF
(2:21-CV-00728-RSM) - 29

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    companies located in Arkansas, Arizona, Florida, Nevada, New York, Pennsylvania, Tennessee,

2    Utah, and Wisconsin.

3         4.96    In total, Defendants sent 128 demand letters in January 2020.

4    February 2020

5         4.97    On or about February 7, 2020, Defendants sent form demand letter A to 10 target

6    companies located in Florida, Georgia, Illinois, Indiana, Mississippi, New Jersey, Pennsylvania,

7    Utah, Virginia, and Wisconsin, form demand letter B to five target companies located in

8    Kentucky, Michigan, Nebraska, and Pennsylvania, and form demand letter C to 15 target

9    companies located in Florida, Georgia, Indiana, Kentucky, Maryland, Michigan, Minnesota,

10   Nevada, New York, Ohio Utah, and Wisconsin.

11        4.98    On or about February 14, 2020, Defendants sent form demand letter A to 10 target

12   companies located in Arizona, Florida, Georgia, Illinois, Michigan, New Jersey, New York,

13   Ohio, Utah, and Wisconsin, form demand letter B to five target companies located in Kentucky,

14   Oklahoma, Pennsylvania, and Virginia, and form demand letter C to 15 target companies located

15   in Florida, Iowa, Illinois, Indiana, Kansas, Kentucky, Maryland, Maine, New York, Ohio,

16   South Carolina, Tennessee, Utah, and Wisconsin.

17        4.99    On or about February 21, 2020, Defendants sent form demand letter A to 10 target

18   companies located in Florida, Georgia, Massachusetts, Michigan, Minnesota, New Jersey, Ohio,

19   Pennsylvania, Virginia, and Wisconsin, form demand letter B to five target companies located

20   in Georgia, Idaho, Kentucky, North Carolina, and Pennsylvania, and form demand letter C to 10

21   target companies located in Arizona, Florida, Illinois, Michigan, Minnesota, New York, Ohio,

22   Pennsylvania, Utah, and Wisconsin.

23        4.100  On or about February 28, 2020, Defendants sent form demand letter A to 10 target

24   companies located in Florida, Massachusetts, Michigan, Minnesota, New York, Ohio,

25   Pennsylvania, Tennessee Virginia, and Wisconsin, form demand letter B to five target companies

26   located in Arizona, Illinois, Mississippi, Tennessee, and Utah, and form demand letter C to 10

SECOND AMENDED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF
(2:21-CV-00728-RSM) - 30

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

target companies located in Florida, Georgia, Illinois, Michigan, Minnesota, New Jersey, Ohio, Tennessee, and Virginia.

4.101   In total, Defendants sent 110 demand letters in February 2020.

March 2020

4.102   On or about March 6, 2020, Defendants sent form demand letter A to 10 target companies located in Florida, Massachusetts, Michigan, Missouri, North Carolina, New Jersey, New York, Pennsylvania, Tennessee, and Utah, form demand letter B to five target companies located in Florida, Kentucky, Maryland, Michigan, and North Carolina, and form demand letter C to 10 target companies located in Florida, Georgia, Illinois, Indiana, Mississippi, New Jersey, Pennsylvania, Utah, Virginia, and Wisconsin.

4.103   On or about March 13, 2020, Defendants sent form demand letter A to 10 target companies located in Florida, Illinois, Michigan, Missouri, North Carolina, New Jersey, New York, Oklahoma, Tennessee, and Utah, form demand letter B to five target companies located in Arizona, Iowa, Kentucky, Louisiana, and New Jersey, and form demand letter C to eight target companies located in Florida, Georgia, Illinois, Michigan, New York, Ohio, Utah, and Wisconsin.

4.104   In total, Defendants sent 48 demand letters in March 2020.

May 2020

4.105   On or about May 15, 2020, Defendants sent form demand letter A to 10 target companies located in Florida, Illinois, Massachusetts, Maryland, Michigan, Missouri, North Carolina, New Jersey, New York, and South Dakota, form demand letter B to five target companies located in Illinois, Indiana, Michigan, South Dakota, and Wyoming, and form demand letter C to nine target companies located in Florida, Georgia, Massachusetts, Michigan, Minnesota, New Jersey, Pennsylvania, Virginia, and Wisconsin.

4.106   On or about May 22, 2020, Defendants sent form demand letter A to 10 target companies located in Illinois, Kansas, Maryland, Michigan, Minnesota, Nebraska, New Jersey,

SECOND AMENDED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF
(2:21-CV-00728-RSM) - 31

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Ohio, Pennsylvania, and Tennessee, form demand letter B to five target companies located in Kansas, Michigan, Minnesota, and South Carolina, and form demand letter C to nine target companies located in Florida, Massachusetts, Michigan, Minnesota, New York, Ohio, Pennsylvania, Tennessee, and Virginia.

4.107  On or about May 29, 2020, Defendants sent form demand letter A to 10 target companies located in Florida, Georgia, Illinois, Kansas, Kentucky, Massachusetts, Missouri, New Jersey, New York, and Ohio, form demand letter B to five target companies located in Arizona, Iowa, New Jersey, Ohio, and South Carolina, and form demand letter C to nine target companies located in Florida, Massachusetts, Michigan, Missouri, North Carolina, New Jersey, Pennsylvania, Tennessee, and Utah.

4.108  In total, Defendants sent 72 demand letters in May 2020.

June 2020

4.109  On or about June 5, 2020, Defendants sent form demand letter A to 10 target companies located in Florida, Iowa, Kansas, Massachusetts, Missouri, North Carolina, New Hampshire, New Jersey, New York, and Pennsylvania, form demand letter B to five target companies located in Arizona, Maryland, Minnesota, Ohio, and Tennessee, and form demand letter C to nine target companies located in Florida, Illinois, Michigan, North Carolina, New Jersey, New York, Oklahoma, Tennessee, and Utah.

4.110  On or about June 12, 2020, Defendants sent form demand letter A to 10 target companies located in Florida, Iowa, Massachusetts, Missouri, New Jersey, New York, Ohio, Pennsylvania, and Virginia, form demand letter B to five target companies located in Connecticut, Illinois, New Jersey, Pennsylvania, and South Carolina, and form demand letter C to 10 target companies located in Florida, Illinois, Massachusetts, Maryland, Michigan, Missouri, North Carolina, New Jersey, New York, and South Dakota.

4.111  On or about June 19, 2020, Defendants sent form demand letter A to 10 target companies located in Arizona, Florida, Georgia, Illinois, Massachusetts, North Carolina, New

Jersey, New York, and South Carolina, form demand letter B to five target companies located in Georgia, Missouri, North Carolina, New Hampshire, and Pennsylvania, and form demand letter C to 10 target companies located in Illinois, Kansas, Maryland, Michigan, Minnesota, Nebraska, New Jersey, Ohio, Pennsylvania, and Tennessee.

4.112   On or about June 26, 2020, Defendants sent form demand letter A to nine target companies located in Florida, Massachusetts, Missouri, North Carolina, New Jersey, New York, and Pennsylvania, form demand letter B to five target companies located in Georgia, Illinois, Louisiana, New Jersey, and Rhode Island, and form demand letter C to 10 target companies located in Florida, Georgia, Illinois, Kansas, Kentucky, Massachusetts, Missouri, New Jersey, New York, and Ohio.

4.113   In total, Defendants sent 98 demand letters in June 2020.

July 2020

4.114   On or about July 3, 2020, Defendants sent form demand letter A to 10 target companies located in Arizona, Florida, Kansas, Massachusetts, Michigan, North Carolina, New Jersey, New York, and Ohio, form demand letter B to five target companies located in Illinois, Indiana, Pennsylvania, and Tennessee, and form demand letter C to 10 target companies located in Florida, Iowa, Kansas, Massachusetts, Missouri, North Carolina, New Hampshire, New Jersey, New York, and Pennsylvania.

4.115   On or about July 10, 2020, Defendants sent form demand letter A to 10 target companies located in Florida, Illinois, Indiana, Minnesota, New Jersey, New York, Oklahoma, Pennsylvania, and Wisconsin, form demand letter B to five target companies located in Alabama, Maine, Minnesota, Montana, and North Dakota, and form demand letter C to nine target companies located in Florida, Iowa, Massachusetts, New Jersey, New York, Ohio, Pennsylvania, and Virginia.

4.116   On or about July 17, 2020, Defendants sent form demand letter A to 10 target companies located in Arizona, Florida, Idaho, Illinois, Michigan, Minnesota, Missouri, New

York, and Ohio, form demand letter B to two target companies located in Michigan and Mississippi, and form demand letter C to nine target companies located in Arizona, Florida, Georgia, Illinois, Massachusetts, North Carolina, New Jersey, New York, and South Carolina.

4.117   On or about July 24, 2020, Defendants sent form demand letter A to 10 target companies located in Florida, Illinois, Massachusetts, New Mexico, New York, Ohio, Oklahoma, Rhode Island, and British Columbia, form demand letter B to five target companies located in Arkansas, Illinois, Louisiana, Pennsylvania, and Wisconsin, and form demand letter C to nine target companies located in Florida, Massachusetts, Missouri, North Carolina, New Jersey, New York, and Pennsylvania.

4.118   In total, Defendants sent 93 demand letters in June 2020.

### 4.   Abandoned Enforcement

4.119   At certain times, companies targeted by Defendants wrote back to Defendants, challenging the validity of the '319 and/or '508 Patents or Defendants' claims about what these patents legitimately cover. Based upon the documents produced by Defendants LTA and Mercado thus far in this litigation, almost four dozen separate companies have sent these types of letters to Defendants.

4.120   Rather than defend what they claim are incredibly important and valuable patent rights, Defendants simply walk away from target companies that push back strongly. As detailed in other portions of this complaint, the vast majority of Defendants' demand letters go unanswered as well. Thus, Defendants simply walk away from the vast majority of all companies Defendants claim infringe the patents at issue.

4.121   For example, Defendants sent Gold Coast Ingredients a form demand letter on October 12, 2018, a follow up letter on November 29, 2018, and apparently sent a "long form" claim chart on or around January 10, 2019. Counsel for Gold Coast sent back a detailed, comprehensive, 12-page response letter dated February 26, 2019. In that letter, counsel for Gold Coast meticulously details why the '508 Patent is invalid and why there was no infringement,

even going so far as to warn Defendants that Gold Coast would seek Fed. R. Civ. P. 11 sanctions should Defendants file suit. Rather than defend their patent rights or their allegations of infringement, Defendants simply and silently abandoned enforcement efforts against Gold Coast Ingredients.

4.122   Based upon the documents produced by Defendants LTA and Mercado thus far in this litigation, Defendants have walked away from at least 47 target companies who pushed back on Defendants' claims of infringement since approximately August 2018.

4.123   Not only do Defendants walk away from such target companies, they preemptively avoid other companies represented by the same law firms that have warned Defendants of their bad faith patent assertion. For example, Defendants do all in their power to avoid companies represented by patent litigator Rachael Lamkin, the law firms of Butler & Mitchell LLP and Fish & Richardson, and other attorneys and law firms. The inverse is also true – Defendants prioritize companies represented by law firms who have "settled fast" in past encounters.

4.124   Defendants' willingness to so quickly abandon claims of infringement rather than defend their patent rights further emphasizes that Defendants are primarily concerned with leveraging the threat of expensive patent litigation to maximize fast and easy nuisance-value settlements. *See, e.g., Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327 (Fed. Cir. 2011) ("The record supports the district court's finding that Eon–Net acted in bad faith by exploiting the high cost to defend complex litigation to extract a nuisance value settlement from Flagstar."). Defendants are not now and never have been concerned with legitimate patent enforcement activity regarding the '319 and '508 Patents.

### 5.    Litigation

4.125   Defendants periodically sue target companies that refuse to pay. For example, between January 1, 2017 and October 9, 2018, Defendants filed 17 patent infringement lawsuits in the name of Landmark Technology, LLC, including five against Washington companies.

Since January 2019, Defendants have filed 14 patent infringement lawsuits in the name of LTA, including five against Washington companies.

4.126  On information and belief, Defendants filed suit only against target companies that had responded to Defendants' demand letters but were at an impasse with settlement negotiations.

4.127  As alleged above, Defendants' "business plan" intentionally sought to keep the number of patent infringement lawsuits and the settlement demand low because that "number of defendants is a low-risk business model of avoiding having a group defense form and/or the filing of a CBM" and the optimum settlement at $30,000 "is not enough at that amount . . . [for targets] to file [a] CBM. . . ."

4.128  Companies that receive demand letters from Defendants also periodically file suit, seeking a declaration of non-infringement. Between January 1, 2017 and June 6, 2018, 12 such suits were filed against Landmark Technology, LLC. Since January 2019, 13 such suits have been filed against LTA.

4.129  In order to maximize profit and avoid any legitimate challenge to the validity of the '319 and '508 Patents, Defendants invariably seek to settle all litigation quickly. Regardless of whether initiated by Defendants or by a target company, the vast majority settle within a few months of filing.

4.130  At least ten Washington companies have settled with Defendants for payment of licensing fees between $15,000 and $20,000 each. On information and belief, another eight Washington companies settled with Defendants for unknown amounts. In each of the LTA settlements, Defendant Raymond Mercado signed the settlement and licensing agreement on behalf of LTA as the company's "Managing Member."

4.131  As alleged above, in an 18-month period between January 11, 2019, and July 24, 2020, Defendants sent demand letters under the LTA name to 1,176 different target companies in 48 states. Despite this large number of target companies, Defendants only filed suit against or

SECOND AMENDED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF
(2:21-CV-00728-RSM) - 36

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

defended a lawsuit filed by 19 of those companies (1.6%) in the name of LTA in that same time frame, and only settled with 27 target companies (2.3%) in the name of LTA in that same time frame. Thus, on information and belief, Defendants walked away from more than 96% of the target companies in that time frame.

4.132   Furthermore, every one of the 19 lawsuits in which Defendants were involved in that same time frame settled or were dismissed. None proceeded to trial or verdict. Indeed, in the only judicial proceeding to date in which the validity of the '508 patent has been fully litigated, the *NAPCO* court determined that its operative claim was invalid.

**C.      The '319 and '508 Patents**

4.133   Defendants assert, in their demand letters, that target companies are infringing upon either or both of U.S. Patent No. 6,289,319 C2 (the '319 Patent) and U.S. Patent No. 7,010,508 C1 ("the '508 Patent").

4.134   The '319 Patent was issued on September 11, 2001, to Lawrence B. Lockwood, as inventor. Lockwood filed the patent application in 1994 as a continuation of other patent applications—most of which he abandoned—dating back to 1984. The '319 Patent expired on September 11, 2018.

4.135   The '319 Patent is entitled, "Automatic business and financial transaction processing system" and it relates to what Lockwood describes as a "system for filing applications with an institution from a plurality of remote sites, and for automatically processing said applications in response to each applicant's credit rating obtained from a credit reporting service…." The background for the '319 Patent states, "The present invention relates to automatic self-operated terminals, vending machines, and interactive data processing networks. More specifically, this invention relates to terminals used by banking institutions to make their services available at all hours of the day from various remote locations."

4.136  The '508 patent was issued on March 7, 2006, to Lawrence B. Lockwood, as inventor. Similar to the '319 Patent, Lockwood filed the patent application for the '508 Patent in 1995 as a continuation of numerous other patent applications—most of which he abandoned—dating back to 1984.

4.137  Prior to Defendant Raymond Mercado, Lockwood owned Landmark Technology, LLC. Through a complex series of transactions and transfers in late 2018, Defendants purportedly transferred the rights in the '319 and '508 Patents from Landmark Technology, LLC and Lockwood to LTA.

4.138  The '508 patent is titled "Automated Multimedia Data Processing Network," and claims to patent the abstract idea of automated data processing of business transactions between remote computer terminals. Lockwood's application for the '508 patent was twice rejected by PTO patent examiners.

4.139  The Abstract for the '508 patent provides as follows:

A system for filing applications with an institution from a plurality of remote sites, and for automatically processing said applications in response to each applicant's credit rating obtained from a credit reporting service comprising a series of self-service terminals remotely linked via a telephone line to a first computer at the institution and to a second computer at the credit reporting service headquarters. Each remote terminal comprises a video screen and a video memory which holds image-and-sound-generating information arranged to simulate the aspect and speech of an application loan officer on the video screen. The simulated loan officer is used to acquire loan request data from the applicant by guiding him through an interactive sequence of inquiries and answers. The system may be utilized as a trading network whereby stations are used by sellers and buyers to place and accept offers for securities, the central installation acting as a central computerized database where all transactions are processed and the various data items stored and automatically updated.

4.140  The Background of the Invention for the '508 patent provides as follows:

The present invention relates to automatic self-operated terminals, vending machines, and interactive data processing networks. More specifically, this invention relates to terminals used by banking and other financial institutions to make their services available at all hours of the day from various remote locations.

Loan processing has traditionally been a labor-intensive business which represents the major activity of banks and other financial institutions. In the processing of a loan application, numerous forms have to be filled-out, loan officers have to explain payment schedules and generally guide the applicant through the loan application process. The financial institution then has to process the application and either telephone, mail, or communicate acceptance or rejection of the loan in person to the applicant. The complexity of the process has so far prevented the application of automatic terminals to this important part of financial institution activities. Automatic vending machines and self-service terminals have evolved to a high degree of sophistication as disclosed in U.S. Pat. No. 4,359,631 Lockwood, et al. Yet, this high degree of sophistication has not been put to use in the more complex types of goods and services distribution which requires a great deal of interaction between individuals or between individuals and institutions.

4.141   The Summary of the Invention for the '508 patent provides as follows:

The principal object of this invention is to provide an economical means for screening loan applications. When one considers that up to 75% of persons applying for loans fail to meet the financial institution qualification criteria, one realizes that a great deal of labor is required by loan officers before a qualified applicant presents himself.

Another object of the invention is to standardize the reporting and interpretation of credit ratings and their application to loan application processing.

A further object of the invention is to reduce the amount of paperwork and processing time required by each loan application.

It is also an object of the invention to offer a more personal way to apply for credit. Many applicants who would not hesitate to use a mechanical device to place their inquiry are reluctant to inquire about loans requiring face-to-face interaction with a loan officer.

These and other objects are achieved by means of a system that ties together financial institution data processing, the computer services of a credit reporting bureau, and a plurality of remote terminals. Each remote terminal displays the live image of a fictitious loan officer who helps the applicant through an interactive series of questions and answers designed to solicit from the applicant all the information necessary to process his loan application. The terminal can acquire credit rating information about the applicant from the credit reporting bureau and make a decision based on all the information gathered about the credit worthiness of the applicant and the amount of loan to which he is entitled. The loan amount is then communicated to the applicant and to the financial institution for further processing of the loan.

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

4.142   Defendants (whether under the name Landmark Technology, LLC or LTA, and regardless of whether they assert the '319 or '508 Patent) do not target financial institutions that might be expected to make use of loan processing technologies. Rather, the companies targeted by Defendants run the gamut of industries. For example, in just one month (July 2020), Defendants sent LTA demand letters to businesses in the following industries: air and oil filters; apparel; appliances; automotive supplies; building supplies; candy; college housing supplies; consumer electronics; custom vehicles; department stores; event ticketing; fabrics; florist; fluid connectors; food service; furniture; grocery; hardware; headsets; health and beauty; HVAC; industrial supplies; inventory management; jewelry; kitchen products; manufactured housing; material handling; mattress; paper; pet products; petroleum; pharmacy services; pipe distributor; printers; sales and marketing; salon supplies; scientific laboratory supplies; seeds; shoes; sporting goods; steam cleaners; and, water supplies.

4.143   The webpages Defendants allege are infringing in its demand letters are unrelated to loans, loan processing, or credit reporting. The majority of demand letters sent by Defendants identify a simple, customer log-in page on a company website as infringing the '508 patent. Defendants' demand letters also identify the following types of webpages as infringing: company home pages, shopping carts, search pages, products pages, privacy practices, new customer registration, and ordering pages.

4.144   Based upon the documents Defendants LTA and Mercado have produced in this lawsuit, Defendants assert that the '508 Patent, like the '319 Patent before it, covers essentially the entire universe of e-commerce websites with search or shopping cart features. In Defendant Camp's own words, "ALL E-commerce sites are 'created' equal" when it comes to Defendants' claims about the scope of the '508 Patent. This extremely and almost farcically broad interpretation of the scope of Defendants' patent rights would make the '508 Patent worth billions of dollars and would make it the envy of Amazon, Google, and other tech giants. The real scope and value of the '508 Patent, and the '319 Patent before it, is laid bare by the nuisance

SECOND AMENDED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF
(2:21-CV-00728-RSM) - 40

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

value, low five-figure "license fees" Defendants have extorted from small businesses over the years.

## V.    FIRST CAUSE OF ACTION

**(Violation of Wash. Rev. Code § 19.86 – *Per Se* Acts or Practices Based on Violation of Wash. Rev. Code § 19.350)**

5.1    The State realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

5.2    The Attorney General may bring an action in the name of the State, or as *parens patriae* on behalf of persons residing in the State, against any person to restrain and prevent the doing of any act prohibited by the Consumer Protection Act, Wash. Rev. Code § 19.86 ("CPA") or declared to be unlawful.

5.3    To establish a violation of the CPA in an action brought by the Attorney General, the State must prove that a defendant committed an unfair or deceptive act or practice, occurring in trade or commerce, and public interest impact. Causation and harm are not elements of a CPA action brought by the Attorney General.

5.4    The Attorney General may bring an action in the name of the state, or as *parens patriae* on behalf of persons residing in the State, to enforce the Patent Troll Prevention Act, Wash. Rev. Code § 19.350.

5.5    The practices covered by the PTPA are matters vitally affecting the public interest for the purpose of applying the CPA in an action brought by the Attorney General, and a violation of the PTPA is an unfair or deceptive act in trade or commerce for purposes of applying the CPA.

5.6    The PTPA prohibits persons from making assertions of patent infringement in bad faith.

5.7    Defendant LTA is a "person" under the applicable statutory definition of that term.

SECOND AMENDED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF
(2:21-CV-00728-RSM) - 41

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

5.8     Defendant Raymond Mercado is a "person" under the applicable statutory definition of that term.

5.9     Defendant Melody Camp is a "person" under the applicable statutory definition of that term.

5.10    Defendant Patrick Nunally is a "person" under the applicable statutory definition of that term.

5.11    Under the PTPA, the Court may consider a number of "nonexclusive factors" as evidence that a person has made an assertion of patent infringement in bad faith, as well as "[a]ny other factor the court determines to be relevant."

5.12    The conduct described in the foregoing allegations establishes that Defendants made assertions of patent infringement in bad faith under the PTPA, including (i) issuing form demand letters to target companies that do not contain factual allegations specific to target company products, services, or technology, (ii) failing to conduct analysis comparing patent claims to target companies' products, services, or technology before making demands, (iii) making false, misleading, or deceptive statements in demand letters concerning the existence, prominence, scope and licensing price of Defendants' asserted patent rights, and (iv) making identical infringement allegations against hundreds of companies, on the basis of absurdly overbroad patent assertions.

5.13    Under the PTPA, the Court may also consider a number of "nonexclusive factors" as evidence that a person has made an assertion of patent infringement in good faith, as well as "[a]ny other factor the court determines to be relevant."

5.14    The conduct described in the foregoing allegations establishes that Defendants did not make assertions of patent infringement in good faith under the PTPA, including (i) failing to engage in reasonable analysis to establish a reasonable, good faith basis for believing target companies were infringing, (ii) failing to negotiate an appropriate remedy for its infringement assertions in a reasonable manner, (iii) failing to demonstrate reasonable business practices in

SECOND AMENDED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF
(2:21-CV-00728-RSM) - 42

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

efforts to enforce the '508 patent, (iv) failing to demonstrate the merits of its infringement assertions through litigation, and (v) failing to make any substantial investment in the use or commercialization of the '508 patent.

5.15    As the sole owner, shareholder, member, and managing member of LTA, Raymond Mercado directs, controls, participates in, and/or knowingly approves of the activities and practices described in the foregoing paragraphs.

5.16    Melody Camp directs, controls, participates in, and/or knowingly approves of the activities and practices described in the foregoing paragraphs.

5.17    Patrick Nunally directs, controls, participates in, and/or knowingly approves of the activities and practices described in the foregoing paragraphs.

5.18    To the extent the Court finds that to avoid preemption the State must show, in addition to the elements of a claim under the PTPA brought by the Attorney General, that "bad faith" under applicable federal patent law must be pleaded (which is not alleged), the foregoing allegations demonstrate a pattern or practice of successive patent infringement assertions by Defendants, which were made without regard to the merits of such assertions, and therefore constitute "bad faith." *See California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S. Ct. 609, 612, 30 L. Ed. 2d 642 (1972); *USS-POSCO Indus. v. Contra Costa Cty. Bldg. & Const. Trades Council*, AFL-CIO, 31 F.3d 800 (9th Cir. 1994).

5.19    To the extent the Court finds that to avoid preemption the State must show, in addition to the elements of a claim under the PTPA brought by the Attorney General, that "bad faith" under applicable federal patent law must be pleaded, and that the test applicable to a single proceeding or assertion is applicable (which is not alleged), the foregoing allegations demonstrate that Defendants made assertions of patent infringement that were, in the first place, objectively baseless, and in the second place, made in subjective bad faith. *See Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993); *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*,

362 F.3d 1367 (Fed. Cir. 2004). Specifically with respect to objective baselessness, LTA's misrepresentations regarding the scope and value of the '508 patent are objectively baseless, and the '508 patent's invalidity likewise renders Defendants' infringement assertions objectively baseless.

5.20    To the extent the Court finds that to avoid preemption the State must show, in addition to the elements of a claim under the PTPA brought by the Attorney General, that "bad faith" under applicable federal patent law must be pleaded (which is not alleged), the allegations set forth under this cause of action are supported by clear and convincing evidence.

## VI.    SECOND CAUSE OF ACTION

**(Violation of Wash. Rev. Code § 19.86 – Unfair or Deceptive Acts or Practices)**

6.1    The State realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

6.2    The Attorney General may bring an action in the name of the State, or as *parens patriae* on behalf of persons residing in the State, against any person to restrain and prevent the doing of any act prohibited by the Consumer Protection Act, Wash. Rev. Code § 19.86 ("CPA") or declared to be unlawful.

6.3    Defendant LTA is a "person" under the applicable statutory definition of that term.

6.4    Defendant Raymond Mercado is a "person" under the applicable statutory definition of that term.

6.5    Defendant Melody Camp is a "person" under the applicable statutory definition of that term.

6.6    Defendant Patrick Nunally is a "person" under the applicable statutory definition of that term.

6.7    To establish a violation of the CPA in an action brought by the Attorney General, the State must prove that a defendant committed an unfair or deceptive act or practice, occurring in

SECOND AMENDED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF
(2:21-CV-00728-RSM) - 44

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

trade or commerce, and public interest impact. Causation and harm are not elements of a CPA action brought by the Attorney General.

6.8     The conduct described in the foregoing allegations establishes that Defendants have committed unfair or deceptive acts or practices under the CPA, including making bad faith assertions of patent infringement, and making deceptive statements in demand letters concerning the existence, prominence, scope and licensing price of Defendants' asserted patent rights.

6.9     The unfair or deceptive acts and practices described in the foregoing paragraphs were committed by Defendants in the course of trade or commerce.

6.10    The unfair or deceptive acts and practices described in the foregoing paragraphs affected the public interest.

6.11    As the sole owner, shareholder, member, and managing member of LTA, Raymond Mercado directs, controls, participates in, and/or knowingly approves of the activities and practices described in the foregoing paragraphs.

6.12    Melody Camp directs, controls, participates in, and/or knowingly approves of the activities and practices described in the foregoing paragraphs.

6.13    Patrick Nunally directs, controls, participates in, and/or knowingly approves of the activities and practices described in the foregoing paragraphs.

6.14    To the extent the Court finds that to avoid preemption the State must show, in addition to the elements of a claim under the PTPA brought by the Attorney General, that "bad faith" under applicable federal patent law must be pleaded (which is not alleged), the foregoing allegations demonstrate a pattern or practice of successive patent infringement assertions by Defendants, which were made without regard to the merits of such assertions, and therefore constitute "bad faith." *See California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S. Ct. 609, 612, 30 L. Ed. 2d 642 (1972)*; USS-POSCO Indus. v. Contra Costa Cty. Bldg. & Const. Trades Council*, AFL-CIO, 31 F.3d 800 (9th Cir. 1994).

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

6.15    To the extent the Court finds that to avoid preemption the State must show, in addition to the elements of a claim under the PTPA brought by the Attorney General, that "bad faith" under applicable federal patent law must be pleaded, and that the test applicable to a single proceeding or assertion is applicable (which is not alleged), the foregoing allegations demonstrate that Defendants made assertions of patent infringement that were, in the first place, objectively baseless, and in the second place, made in subjective bad faith. *See Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993); *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1367 (Fed. Cir. 2004). Specifically with respect to objective baselessness, Defendants' misrepresentations regarding the scope and value of the '508 patent are objectively baseless, and the '508 patent is invalid.

6.16    To the extent the Court finds that to avoid preemption the State must show, in addition to the elements of a claim under the PTPA brought by the Attorney General, that "bad faith" under applicable federal patent law must be pleaded (which is not alleged), the allegations set forth under this cause of action are supported by clear and convincing evidence.

## VII.    PRAYER FOR RELIEF

Wherefore, the State prays for the following relief:

7.1    Injunctive relief enjoining Defendants from taking any actions to enforce the '508 Patent and '319 Patent, including issuing demand letters and/or filing patent infringement lawsuits.

7.2    Restitution of all money and/or property acquired by Defendants as a result of their unlawful acts, as well as restitution of all amounts paid to Defendants by target companies, and all amounts incurred by target companies responding to, or defending against, Defendants' unlawful demands.

7.3    Civil penalties for each violation of the PTPA and/or CPA committed by Defendants, in the maximum amount permitted by law.

7.4    Attorneys' fees and costs incurred by the State during the investigation and litigation of this matter.

SECOND AMENDED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF
(2:21-CV-00728-RSM) - 46

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    7.5    Such other relief as the Court deems just and proper.

2    DATED this 14th day of January, 2025.

3                                    ROBERT W. FERGUSON
                                     Attorney General
4

5                                    _s/ Bob Hyde_
6                                    AARON J. FICKES, WSBA No. 51584
                                     BOB HYDE, WSBA No. 33593
7                                    BEN J. BRYSACZ, WSBA No. 54683
                                     MICHAEL HALL, WSBA No. 19871
8                                    HEIDI C. ANDERSON, WSBA No. 37603
                                     Assistant Attorneys General
9                                    Attorneys for Plaintiff State of Washington
                                     800 Fifth Avenue, Suite 2000
10                                   Seattle, WA 98104
                                     (206) 464-7744
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

SECOND AMENDED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF
(2:21-CV-00728-RSM) - 47